IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MADISON HOBLEY,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )
                                         )
CHICAGO POLICE COMMANDER JON BURGE,      )
DET. ROBERT DWYER, DET. JAMES LOTITO,    )
DET. VIRGIL MIKUS, DET. DANIEL McWEENEY, )
DET. JOHN PALADINO, SGT. PATRICK         )
GARRITY, and the CITY OF CHICAGO,        )
                                         )
            Defendants.                  )     JURY TRIAL DEMANDED

**03C 3678**

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

DOCKETED
MAY 3 0 2003

## COMPLAINT

NOW COMES Plaintiff, MADISON HOBLEY, by his attorneys, LOEVY & LOEVY and ANDREA D. LYON, and complaining of Defendants, JON BURGE, ROBERT DWYER, JAMES LOTITO, DANIEL McWEENEY, JOHN PALADINO, VIRGIL MIKUS, PATRICK GARRITY (collectively, "Defendant Officers"), and the CITY OF CHICAGO, states as follows:

### Introduction

1.    This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2.    Specifically, as a result of egregious police misconduct and abuse more fully described below, Plaintiff Madison Hobley was wrongfully convicted for a heinous set of crimes which he did not commit.  In all, Mr. Hobley spent more than sixteen years in prison, thirteen of which were on death row, after the Defendant Officers conspired to secure his conviction unlawfully by means of police torture and false reports that Mr. Hobley had supposedly confessed.

3.  After asserting his innocence for more than a decade, the Illinois Supreme Court eventually granted Mr. Hobley leave to conduct extensive discovery into the circumstances of his conviction and the now-notorious pattern of systematic and institutional Area 2 police abuses that produced it. Through the efforts of his counsel, Andrea D. Lyon of the Center for Justice in Capital Cases of the DePaul College of Law, as well as Kurt Feuer, working *pro bono* for the firm of Ross & Hardies, Mr. Hobley was able to prove facts establishing both his innocence and the reprehensible pattern of police abuse that gave rise to his wrongful conviction.

4.  After reviewing the extensive evidence of Mr. Hobley's innocence and the deceitful and unlawful actions of the Defendant Officers, on January 10, 2003, then-Governor George Ryan granted Mr. Hobley a full pardon on grounds of innocence. Mr. Hobley was subsequently released from death row after spending sixteen years and four days wrongfully incarcerated.

**Jurisdiction and Venue**

5.  This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

6.  Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within district.

**The Parties**

7.  Plaintiff, Madison Hobley, was at all relevant times a citizen of the United States and a resident of Cook County, Illinois.

2

8. Defendant City of Chicago is an Illinois municipal corporation, and is and/or was the employer of each of the Defendant Officers. The City of Chicago is responsible for the acts of the Defendant Officers while employed by the City of Chicago and while acting within the scope of their employment.

9. All of the individual Defendants are present or former Chicago Police Officers. At all times relevant hereto, Defendant Jon Burge was a duly appointed commander of the City of Chicago Police Department's (hereafter, the "Department") Area 2 Violent Crimes Division and/or Bomb and Arson Division; Defendant Virgil Mikus is or was a detective of the Department's Bomb and Arson Division; Defendant Patrick Garrity is or was a Sergeant in the Department's Crime Laboratory; and Defendants Robert Dwyer, James Lotito, Virgil Mikus, Daniel McWeeney, John Paladino are or were detectives in the Department's Area 2 Violent Crimes Division of which Jon Burge was the Commander.

### Background

10. In January 1987, Plaintiff Madison Hobley lived with his wife, Anitta, and infant son, Phillip, in an apartment building on Chicago's south side, where he worked for a medical supply company. Prior to the wrongful conviction described in this complaint, Mr. Hobley had no previous criminal convictions.

11. Early in the morning hours of January 6, 1987, Mr. Hobley awoke to the sound of a fire alarm. Dressed only in shorts and a T-shirt, Mr. Hobley went from his family's apartment at the top of the inner stairwell on the third floor, into the hallway to investigate the source of the alarm.

3

12. Believing that he saw smoke coming from under the door of an apartment across from his, Mr. Hobley walked past the stairway door towards the unit down the hall. Mr. Hobley then heard a loud sound as the fire door failed, releasing a raging fire. The glass partition exploded, and a wall of fire and smoke erupted from the stairwell, preventing Mr. Hobley from returning to his wife and baby son.

13. Blocked by the fire, Mr. Hobley attempted to shout to his family, urging them to head for a window to escape. He then crawled down the hall and out of the building via the back stairs. Mr. Hobley never again saw either his wife or his son.

14. Despite the confusion of the inferno around him, and the fear he felt for the safety of his family, Mr. Hobley's immediate reaction was to help others in their time of need. He helped save the life of a neighbor's baby when he helped catch the child as it was dropped out of a second-floor window.

### Attempts to Coerce a Confession

15. Upon discovering that Mr. Hobley survived the fire and his family did not, the Defendant Officers immediately concluded that Mr. Hobley was responsible, deliberately ignoring information about a disgruntled former tenant who had been recently evicted from the building for selling drugs, and failing to pursue any other evidence or leads to find the real perpetrator of the crime. Instead, the Defendant Officers closed their case before it even began, taking Mr. Hobley from his mother's home less than five hours after he escaped from the deadly fire that killed his wife, Anitta, and young son, Phillip.

4

16.   The now-infamous Area 2 Violent Crimes detective bureau, of which most of the Defendant Officers were members, spent the entire day interrogating and torturing Mr. Hobley, who was at the time highly distraught over the tragic loss of his family.

17.   In an attempt to coerce Mr. Hobley into confessing to starting the fire, a crime for which Mr. Hobley was completely innocent, Defendants Lotito and Dwyer proceeded to torture Mr. Hobley.  Specifically, they beat Mr. Hobley, placed a plastic bag over his head until he suffocated and lost consciousness (a practice known in Area 2 and elsewhere as "bagging"), used racially offensive language, and made other threats as they repeatedly attempted to get Mr. Hobley to falsely confess to the arson and murders which he did not commit.

18.   Despite the torture and abuse, at no time did Madison Hobley confess.  Mr. Hobley refused to confess to any crimes because he did not commit any crimes.

19.   Unable to coerce Mr. Hobley into confessing, the Defendant Officers were undeterred, creating a false oral confession that they claimed he gave on the day of the fire.

20.   The claim by the Defendant Officers that Mr. Hobley had confessed was a lie.  In fact, the only written documents created contemporaneously with the interrogation reflect nothing but Mr. Hobley's repeated denials.

21.   Defendant Dwyer subsequently claimed that he had to throw away Mr. Hobley's "confession" because it was supposedly rendered illegible after coffee purportedly spilled on it.

5

## Additional Conspiratorial Acts

22.  In furtherance of the conspiracy to frame Mr. Hobley and to support the phony "confession" which the Defendant Officers had supposedly secured, one or more of them conspired to plant physical evidence at the scene of the crime, to wit, they pretended to "find" a gas can at the scene of the fire.

23.  In reality, this gas can had been confiscated in another, unrelated case some three weeks prior to the fire for which Mr. Hobley was wrongfully convicted. One or more of the Defendant Officers had removed the can from the Evidence and Recovered Property Section of the Chicago Police Department ("ERPS") and placed it at the scene of the crime where it was "discovered" some fourteen hours after the fire. Indeed, the gas can used to convict Mr. Hobley was clean, showing no signs that it had "survived" the blaze that destroyed Mr. Hobley's home: soot, plaster, heat damage, i.e. traditional evidence of fire and fire suppression, were absent from the can.

24.  The Defendant Officers proceeded to conceal information indicating that the gasoline can introduced into evidence during Mr. Hobley's trial was not in fact used to start the fatal fire, but, rather, had been seized earlier at another unrelated fire and planted on the scene in an attempt by Defendant Officers to implicate Mr. Hobley unjustly.

25.  The Defendant Officers also deliberately withheld an exculpatory fingerprint report from testing conducted by the Chicago Police Department crime lab on the gasoline can.

6

26. In furtherance of the conspiracy to frame Mr. Hobley for crimes he did not commit, the Defendant Officers later produced two individuals who claimed to have seen Mr. Hobley purchase gasoline the night of the fire. One of the individuals could not be certain of his identification, and, only after persistent undue and improper pressure from the Defendant Officers, stated that perhaps Mr. Hobley (whom the Defendants showed him in a line-up) may have "favored" the man he saw purchase gasoline.

27. Long after he was convicted, Mr. Hobley also discovered that the second witness was being "helped" by the Defendant Officers with the witness' own criminal problems, including an arson that had occurred approximately six weeks later, committed in the same manner and within only a few blocks of Mr. Hobley's apartment building. The Defendant Officers, including Commander Jon Burge, thus provided assistance to the primary witness against Mr. Hobley in exchange for falsely implicating Mr. Hobley, and then proceeded to withhold this exculpatory information notwithstanding their knowledge that they had a duty to make it known to Mr. Hobley.

28. The Defendant Officers, including Defendant Garrity, also proceeded to falsely report that Mr. Hobley had failed a polygraph examination, when in fact there is no evidence that Mr. Hobley had failed such an examination.

### Plaintiff's Wrongful Conviction

29. As a direct and proximate cause of the Defendant Officers' unlawful and deceitful actions, including making false

7

claims of an alleged oral confession, planting of making false evidence, tainting of witnesses (and withholding information about these circumstances), and withholding of exculpatory evidence, Plaintiff Madison Hobley was wrongfully convicted of arson and seven counts of murder, crimes he did not commit.

30. Thereafter, Mr. Hobley was sentenced to death. He then spent more than sixteen years in prison, over thirteen of which were on Death Row before Governor Ryan granted him the above-described pardon based on his innocence in January 2003.

31. In addition to suffering extreme physical pain and discomfort from the beatings and other physical abuse he experienced at the hands of the Defendant Officers, Mr. Hobley has suffered enormous mental anguish and emotional distress. After losing his family under the most tragic of circumstances, Mr. Hobley then had to bear the loss of his freedom and the indignities of prison and death row despite his innocence. Moreover, he had to do so while mourning his wife and infant son's death with a death sentence hanging over his head, a sword of Damocles poised to finish the destruction of him and his family. The Defendant Officers not only framed him for killing his family, they tried to kill him.

32. This travesty of justice ran its course because the City of Chicago turned a blind eye to the wave of police corruption in Area 2 which gave rise to this and other wrongful convictions. Unfortunately, Mr. Hobley was not the first to accuse Lotito or Dwyer -- members of Burge's now-infamous Area 2 Violent Crimes Division team -- of police torture.

8

33. In fact, there was a pattern and practice of torture of suspects by Area 2 Violent Crimes detectives during the relevant time period, as supported by many official findings by internationally recognized experts in torture and abuse, investigative agencies, administrative tribunals, and state and federal court judges and juries. Even the Department's own Office of Professional Standards ("OPS") was forced to conclude in November of 1990 that the physical abuse at Area 2, which included "psychological techniques and planned torture," was "systematic," "methodical," and that police command members, including Jon Burge, "were aware of the systematic abuse and perpetuated it either by actively participating in same or failing to take any action to bring it to an end." OPS Burge Report, Goldston Section, 11/2/90, pp. 2-3.

### Count I -- 42 U.S.C. § 1983

### Police Torture

34. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

35. As described above, Defendants Dwyer and Lotito beat Madison Hobley and placed a plastic typewriter cover over his head, intentionally causing Mr. Hobley to suffocate while other Defendant Officers looked on without intervening.

36. As a result of Defendants Dwyer and Lotito's unjustified and excessive use of force, Mr. Hobley suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other consequential damages.

9

37.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

38.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.   As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of constitutional violation at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.   As a matter of both policy and practice, the Department facilitates the very type of constitutional violation at issue here by failing to adequately punish and discipline prior instances of misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Mr. Hobley;

c.   Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Department violated the constitutional rights of citizens in a manner similar to that alleged by Mr. Hobley on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.   Municipal policy-makers are aware of (and condone and facilitate by their inaction) a "code of silence" in

10

the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

e.    The City of Chicago failed to timely act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries described herein.

39.    In fact, the abuses committed by the Defendant Officers and others in Area 2 are now a matter of record. These abuses were only belatedly confronted by the Department after public attention and overwhelming evidence forced the Department's hand.  For example:

a.    In November of 1990 the Office of Professional Standards of the Chicago Police Department found that the physical abuse at Area 2, which included "psychological techniques and planned torture," was "systematic" and "methodical," and that police command members, including Jon Burge, "were aware of the systematic abuse and perpetuated it either by actively participating in same or failing to take any action to bring it to an end."  OPS Burge Report, Goldston Section, 11/2/90, pp. 2-3.

b.    In the same report, the OPS found, based on "the overwhelming body of evidence which supports the allegations," that charges against Jon Burge and other officers who "burned and electrically shocked [a prisoner] and failed to stop this torture, should be sustained."  OPS Burge Report, Sanders Section, 11/2/90.

11

c.    In August of 1989, a U.S. Federal Court Jury hearing the Andrew Wilson civil rights case found that the Chicago Police Department had a policy and practice of torturing certain suspects in police custody at Area 2.  <u>Wilson v. City of Chicago</u>, No. 86-C-2360.

d.    In 1999, Federal District Court Judge Milton Shadur found that "it is now common knowledge that in the early to mid-1980's Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions.  Both internal police accounts and numerous lawsuits and appeals brought by suspects alleging such abuse substantiate that those beatings and other means of torture occurred as an established practice, not just on an isolated basis."  <u>United States ex. rel. Maxwell v. Gilmore</u>, 1999 WL 130331 (N.D.Ill.) at *14.

e.    In 1993, the Seventh Circuit Court of Appeals found that then-Superintendent "Brceczek had received many complaints . . . that officers in Area 2 Violent Crimes, the police unit in which Wilson was tortured, were abusing suspects; such abuse was in fact common at Area 2."  <u>Wilson v. City of Chicago</u>, 6 F.3d 1233, 1240 (7th Cir. 1993).

f.    In 1997, the Seventh Circuit found that Jon Burge acted in the scope of his employment "when he tortured Wilson" because he "was enforcing the criminal law of Illinois overzealously by extracting confessions from criminal suspects by improper means."  <u>Wilson v. City of Chicago</u>, 120 F.3d 681, 683-85 (7th Cir. 1997).

g.    After a seven week hearing, the Chicago
Police Board found that Burge had tortured Andrew Wilson in the
manner alleged and ordered that he be fired.  It additionally
found that other detectives were aware of the abuse.  In re Burge
et. al., 91-1856-8, Findings and Decision of the Police Board of
the City of Chicago, February 10, 1993.  In February 1994, the
Circuit Court of Cook County affirmed the Police Board decision,
Burge v. Police Board of the City of Chicago, 93 CH 2265, as did
the Illinois Appellate Court on December 15, 1995.  O'Hara, Burge
and Yucaitis v. Police Board of the City of Chicago, No.
1-94-0999, 2462, and 2475 (consolidated) Appellate Court, First
District, 12/15/95 Order.

h.    The Illinois Supreme and Appellate Courts and
the U.S. District Court have reversed convictions and/or ordered
new hearings and trials on the basis of evidence of confessions
coerced by torture in the following cases: People v. Wilson, 116
Ill. 2d 29 (1987); People v. Banks, 192 Ill. App. 3d 986 (1989);
People v. Cannon, 293 Ill. App. 3d 694 (1997); People v.
Patterson, 192 Ill. 2d 93 (2000); People v. Bates, 267 Ill. App.
3d 503 (1994); People v. King, 192 Ill. 2d 189 (2000); People v.
Howard, 84 C 13134, Ill. Sup. Ct. order of 6/18/99; United States
ex. rel. Maxwell v. Gilmore, 1999 WL 130331 (N.D.Ill. ).

i.    Former Police Superintendent Richard
Brceczek, who was Superintendent when many of the torture
allegations arose, now concedes that there "is no doubt in my
mind that Burge and his men tortured some suspects."  Chicago
Tribune, April 29, 2002.

## Count II -- 42 U.S.C. § 1983

### Failure to Intervene

40.    Each of the Paragraphs of this Complaint is
incorporated as if restated fully herein.

41.    During the torture of Mr. Hobley described more
fully above, Defendants Mikus and Garrity, and possibly others,
stood by without intervening to prevent the violence to which
Plaintiff was subjected by Defendants Lotito and Dwyer.

42.    As a result of the Defendant Officers' failure to
intervene to prevent the unjustified and excessive use of force,
Plaintiff suffered pain and injury, as well as emotional
distress.    These Defendant Officers had a reasonable opportunity
to prevent this harm, but failed to do so.

43.    The misconduct described in this Count was
objectively unreasonable and was undertaken intentionally with
willful indifference to Plaintiff's constitutional rights.

44.    The misconduct described in this Count was
undertaken pursuant to the policy and practice of the Chicago
Police Department in the manner described in preceding
paragraphs.

## Count III -- 42 U.S.C. § 1983

### Due Process

45.    Each of the Paragraphs of this Complaint is
incorporated as if restated fully herein.

46.    As described more fully above, the Defendant
Officers, while acting under color of law and within the scope of

14

their employment as police officers, deprived Plaintiff of his constitutional right to a fair trial.

47. Each of the Defendant Officers deliberately withheld exculpatory evidence, as well as provided false evidence, thereby misleading and misdirecting the state criminal prosecution of the Plaintiff. To wit, the Defendant Officers provided false allegations that were the bases of the criminal complaint, withheld exculpatory evidence throughout the proceedings, and fabricated evidence that was the bases of the criminal prosecution. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

48. Specifically, the Defendants concealed the fact that Mr. Hobley had never confessed as alleged by the prosecution at trial, assisted in tainting the testimony of the witnesses who testified against Mr. Hobley, assisted in planting the gas can, the physical evidence at the scene of the fire which was then used to convict Mr. Hobley, and/or assisted in withholding the exculpatory fingerprint report relating to said gas can. All of these Defendants then proceeded to conceal these facts from Mr. Hobley and the criminal court.

49. The misconduct of the Defendant Officers also resulted in the criminal conviction of Mr. Hobley, thereby denying him his Constitutional right to a fair trial as it is secured to Mr. Hobley in the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

50. As a result of the violation of his constitutional right to fair trial, Plaintiff suffered injuries, including but not limited to emotional distress.

51. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

52. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.

### COUNT IV -- Section 1983

### Conspiracy to Deprive Constitutional Rights

53. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

54. Prior to date of the constitutional injuries suffered by Plaintiff in this case, it was agreed among the police officer Defendants, on the one hand, and the individuals who comprise the Office of Professional Standards on the other hand, that if any members of the Chicago Police Department were subsequently accused by citizens of wrongdoing, then the O.P.S. employees, including the aforementioned investigators, would actively endeavor to deem those citizen complaints unfounded or unsustained, even where police officers in fact violated citizens' rights (hereafter, the "Agreement").

55. The Agreement referenced in the preceding paragraph is the policy and practice of the Chicago Police Department, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.

56. As a direct and proximate result of the illicit prior Agreement referenced above, Plaintiff's rights were violated.

57. Specifically, Plaintiff was subjected to excessive force and other constitutional injuries as a direct result of the Agreement with O.P.S. employees to decline to sustain citizen complaints even where meritorious. Because of this Agreement, the Defendant Officers were encouraged to believe they could act with a sense of impunity and without fear of any repercussions, even where they purposefully violated the rights of Chicago residents. In this manner, the alleged Agreement proximately caused the injuries suffered by Plaintiff in this case.

58. After the fire at issue in Mr. Hobley's case, the Defendant Officers further conspired, and continue to conspire, to deprive Mr. Hobley of his constitutional rights to be free of police torture, false arrest and malicious prosecution as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

59. Specifically Defendants Burge, Lotito, Dwyer, Paladino, Garrity, and Mikus all reached an agreement to conceal the fact that Mr. Hobley had never confessed to the murders as alleged by the prosecution at the criminal trial, as well as the fact that Mr. Hobley had not failed a polygraph as reported by Defendant Garrity. Defendants Burge, McWeeney and Paladino, as well as some or all of the other Defendant Officers, also reached an agreement either to assist in tainting the testimony of the witnesses who testified against Mr. Hobley or else to assist in

17

planting the gas can, the physical evidence at the scene of the fire which was then used to convict Mr. Hobley; all of these Defendants then proceeded to agree to conceal all of these facts, as well as the exculpatory fingerprint report, from Mr. Hobley and the criminal court.

60. In this manner, the Defendant Officers, acting in concert with other unknown co-conspirators, including persons who are not members of the Chicago Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

61. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

62. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

63. As a proximate result of the conspiracy, Plaintiff suffered financial damage, as well as severe emotional distress and anguish.

64. This conspiracy was undertaken for the additional purpose of punishing Mr. Hobley for exercising his First Amendment right to speak out about matters of public concern, namely, the police abuses described above.

65. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs.

## COUNT V -- State Law Claim

### Civil Conspiracy

66. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

67. As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

68. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

69. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

70. As a proximate result of Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish.

## COUNT VI -- State Law Claim

### Intentional Infliction of Emotional Distress

71. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

72. The acts and conduct of the Defendant Officers as set forth above were extreme and outrageous. The Defendants Officers intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Hobley.

19

73.   Said actions and conduct did directly and proximately cause severe emotional distress to Mr. Hobley and thereby constituted intentional infliction of emotional distress.

74.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

75.   As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish.

## COUNT VII -- State Law Claim

### Battery

76.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

77.   As described more fully in the preceding paragraphs, Plaintiff was physically abused by the Defendant Officers without justification or provocation.

78.   The actions of the Defendant Officers constituted offensive physical contact, undertaken willfully and wantonly, proximately causing Plaintiff's bodily injuries.

79.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

## COUNT VIII -- Section 1983

### False Arrest

80.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

20

81.   Plaintiff was improperly seized and arrested without legitimate probable cause, to wit, Plaintiff was denied liberty without justification in violation of the Constitution.

82.   As a result of the above-described wrongful infringement of Plaintiff's rights, Plaintiff has suffered damages, including but not limited to substantial mental distress and anguish.

83.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

### COUNT IX -- State Law Claim

### Illinois Hate Crime Act, 720 ILCS 5/12-7.1

84.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

85.   In the manner described more particularly above, the Defendant Officers did commit an assault and battery upon Plaintiff by reason of Plaintiff's race, thereby committing a hate crime as defined by Illinois statute.

86.   As a proximate result of this hate crime, Plaintiff suffered damages, including physical injuries and emotional distress.

87.   The misconduct alleged herein was within the scope of the Defendant Officers' employment.

88.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

## COUNT IX -- State Law Claim

### Malicious Prosecution

89.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

90.   Plaintiff was improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

91.   The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

92.   Statements of the Defendant Officers regarding Plaintiff's alleged culpability were made with knowledge that the statements were false and perjured.  In so doing, Defendant Officers fabricated evidence and withheld exculpatory information.

93.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

94.   As a result of this misconduct, Plaintiff has suffered and continues to suffer injuries including pain and suffering.

## COUNT XI - State Law Claim

### Respondeat Superior

95. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

96. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of their employment.

97. Defendant City of Chicago is liable as principal for all torts committed by its agents.

## COUNT XII - State Law Claim

### Indemnification

98. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

99. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

100. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, MADISON HOBLEY, respectfully requests that this Court enter judgment in his favor and against Defendants, JON BURGE, ROBERT DWYER, JAMES LOTITO, DANIEL McWEENEY, JOHN PALADINO, VIRGIL MIKUS, PATRICK GARRITY, and the CITY OF CHICAGO, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiff, MADISON HOBLEY, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

Arthur Loevy
Jon Loevy
Michael Kanovitz
Jon Rosenblatt
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900


Professor Andrea D. Lyon
The Center for Justice in Capital Cases
        of the DePaul College of Law
25 East Jackson Blvd.
Chicago, IL 60604
(312) 362-8402

24



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**Plaintiff(s):** Madison Hobley

**Defendant(s):** Chicago Police Commander Jon Burge, Det. Robert Dwyer, Det. James Lotito, Det. Virgil Mikus, Det. Daniel McWeeney, Det. John Paladino, Sgt. Patrick Garrity, and the City of Chicago

**DOCKETED**

**MAY 3 0 2003**

County of Residence:

County of Residence:

Plaintiff's Atty: Loevy & Loevy
312 N. May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

Defendant's Atty:

**JUDGE ASPEN**

**03C 3678**

II. Basis of Jurisdiction: **3. Federal Question (U.S. not a party)**

**MAGISTRATE JUDGE
GERALDINE SOAT BROWN**

III. Citizenship of Principal Parties
(Diversity Cases Only)
Plaintiff:- **N/A**
Defendant:- **N/A**

IV. Origin : **1. Original Proceeding**

V. Nature of Suit: **440 Other Civil Rights**

VI.Cause of Action: **42 U.S.C. Section 1983**

VII. Requested in Complaint
Class Action:
Dollar Demand:
Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature:

Date: 5/29/03

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**   Revised: 06/28/00

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JUDGE ASPEN

In the Matter of

Madison Hobley
v.
Chicago Police Commander Jon Burge, Det. Robert Dwyer, Det.
James Lotito, Det. Virgil Mikus, Det. Daniel McWeeney, Det. John
Paladino, Sgt. Patrick Garrity, and the City of Chicago

Case Number: **03C  3678**

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR

Madison Hobley, Plaintiff

DOCKETED
MAY 3 0 2003

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME  Jon Loevy | NAME  Arthur Loevy |
| FIRM  Loevy & Loevy | FIRM  Loevy & Loevy |
| STREET ADDRESS  312 N. May Street, Suite 100 | STREET ADDRESS  same |
| CITY/STATE/ZIP  Chicago, IL 60607 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 243-5900    FAX NUMBER (312) 243-5902 | TELEPHONE NUMBER    FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  02618254 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?  YES ☑  NO ☐ | MEMBER OF TRIAL BAR?  YES ☑  NO ☐ |
| TRIAL ATTORNEY?  YES ☑  NO ☐ | TRIAL ATTORNEY?  YES ☐  NO ☑ |
| | DESIGNATED AS LOCAL COUNSEL?  YES ☑  NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME  Mike Kanovitz | NAME  Jon Rosenblatt |
| FIRM  Loevy & Loevy | FIRM  Loevy & Loevy |
| STREET ADDRESS  same | STREET ADDRESS  same |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER    FAX NUMBER | TELEPHONE NUMBER    FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?  YES ☑  NO ☐ | MEMBER OF TRIAL BAR?  YES ☑  NO ☐ |
| TRIAL ATTORNEY?  YES ☐  NO ☑ | TRIAL ATTORNEY?  YES ☐  NO ☑ |
| DESIGNATED AS LOCAL COUNSEL?  YES ☑  NO ☐ | DESIGNATED AS LOCAL COUNSEL?  YES ☑  NO ☐ |

1-3