# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MADISON HOBLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 03 C 3678 |
| | ) | |
| CHICAGO POLICE COMMANDER | ) | Judge Marvin Aspen |
| JON BURGE, DET. ROBERT DWYER, | ) | |
| DET. JAMES LOTITO, DET. VIRGIL | ) | Magistrate Brown |
| MIKUS, DET. DANIEL McWEENEY, | ) | |
| DET. JOHN PALADINO, SGT. PATRICK | ) | |
| GARRITY and THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

*FILED SEP 18 2003 UNITED STATES DISTRICT COURT*

*DOCKETED SEP 25 2003*

---

## DEFENDANTS MEMORANDUM OF LAW IN SUPPORT
## OF THEIR JOINT MOTION TO DISMISS

---

HINSHAW & CULBERTSON
222 N. LASALLE ST., SUITE 300
CHICAGO, ILLINOIS 60601-1081
(312) 704-3000

*Attorneys for defendant, City of Chicago*

STEVEN M. PUISZIS
 *Of Counsel*

HERVAS, SOTOS CONDON & BERSANI
333 PIERCE ROAD, SUITE 195
ITASCA, ILLINOIS 60143
(630) 773-4774

*Attorneys for the individual defendants*

JAMES G. SOTOS
 *Of Counsel*



# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ....................................................................................... ii

I. INTRODUCTION .............................................................................................. 1

II. SUMMARY OF ARGUMENT – GROUNDS OF DISMISSAL
   FOR EACH THEORY OF POLICE MISCONDUCT ......................................... 2

   A. Use of Excessive Force To Procure A Confession. ..................................... 2

   B. Creation of a False Confession ................................................................. 2

   C. False Report That Plaintiff Failed Polygraph ........................................... 3

   D. Tainting the Testimony of Witnesses ....................................................... 3

   E. Planting Gas Can at the Fire Scene ......................................................... 4

   F. Withholding Exculpatory Fingerprint Report ........................................... 4

   G. Unlawful Arrest Without Probable Cause. ............................................... 5

III. STATEMENT OF FACTS .................................................................................. 5

   A. Operative Dates. ..................................................................................... 5

   B. Unlawful Arrest, False Confession and "Torture" Allegations. ................. 6

   C. Alleged Exculpatory Fingerprint Evidence. .............................................. 7

   D. The Planted Gas Can .............................................................................. 8

   E. The Concealed Polygraph Result ............................................................. 11

   F. Tainting The Testimony of the Witness ................................................... 11

IV. CITY HAS NO §1983 MUNICIPAL LIABILITY
    IN THE ABSENCE OF A CONSTITUTIONAL VIOLATION ............................ 12

V. STATUES OF LIMITATION BAR PLAINTIFF'S VARIOUS CLAIMS ................ 12

VI. PLAINTIFF FAILS TO PLEAD AN
    ACTIONABLE §1983 CONSPIRACY CLAIM ................................................... 16

   A. Intra-Corporate Conspiracy Doctrine. ...................................................... 16

   B. Failure to Properly Plead Conspiracy. ...................................................... 17

   C. *Christopher v. Harbury* Mandates Dismissal. ......................................... 17

   D. Conspiracy Not Actionable Where Its Object Does Not Violate the
      Constitution ........................................................................................... 18

   E. Conspiracy And Concealment of False Testimony Absolutely Immune ........... 19

VII. PLAINTIFF FAILS TO STATE AN
ACTIONABLE DUE PROCESS CLAIM. ...................................................20

VIII. AVAILABILITY OF STATE REMEDIES WARRANTS
DISMISSAL OF PLAINTIFF'S DUE PROCESS CLAIM ................................23

IX. COLLATERAL ESTOPPEL BARS RELITIGATION OF
THOSE ISSUES RESOLVED TO PLAINTIFF'S DETRIMENT ........................23

    A. Pardon Does Not Negate Collateral Estoppel. ........................................28

X. UNITS OF LOCAL GOVERNMENT ARE IMMUNE
WHEN THEIR EMPLOYEES ARE NOT LIABLE IN TORT ...........................29

## TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*Allen v. McCurry*, 449 U.S. 90 (1980)......................................................................23, 24

*Ashafa v. City of Chicago*, 146 F.3d 459 (7th Cir. 1998) ..............................................12

*Booker v. Ward, 94* F.3d 1052 (7th Cir. 1996) ............................................................13

*Briscoe v. LaHue*, 460 U.S. 325 (1983)........................................................................19

*Cefalu v. Village of Elk Grove*, 211 F.3d. 416 (7th Cir. 2000)........................................18

*Christman v. Hanrahan*, 500 F.2d 65 (7th Cir. 1974) ..................................................20

*Christopher v. Harbury*, 536 U.S. 403 (2002)..........................................................17, 18

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986).........................................................12

*Collier v. Davis,* 301 F.3d 843 (7th Cir. 2002)........................................................21, 22

*Doherty v. City of Chicago*, 75 F.3d 318 (7th Cir. 1996)...............................................23

*Donald v. Polk County*, 836 F.2d 376 (7th Cir. 1988).................................................25

*Edwards v. Cabera*, 58 F.3d 290 (7th Cir. 1995)........................................................27

*Farrar v. City of Chicago*, 2001 WL 184979 (N.D. Ill, Feb. 22, 2001).........................16

*Felker v. Thomas*, 52 F.3d 907 (11th Cir. 1995)..........................................................20

*Gauger v. Hendle*, 2002 WL 31130087 (N.D. Ill., Sept. 24, 2002)...............................20

*Gonzalez v. Entress*, 133 F.3d 551 (7th Cir. 1998)................................................................13, 14

*Haring v. Prosise*, 462 U.S. 306 (1983) ..............................................................................24

*Heck v. Humphrey*, 512 U.S. 477 (1994).............................................................................14

*Hill v.Shobe*, 93 F.3d 418 (7th Cir. 1996)............................................................................18

*Hostrop v.Bd. of Jr. College Dist. No. 515*, 523 F.2d 569 (7th Cir. 1975)....................................18

*House v. Belford*, 956 F.2d 711 (7th Cir. 1992) .....................................................................19

*Hudson v. Palmer*, 468 U.S. 517 (1984)..............................................................................23

*Ienco v. City of Chicago*,286 F.3d 994 (7th Cir. 2002) ..............................................................20

*Illinois State Chamber of Commerce v. Pollution Control Board*,
78 Ill.2d 1 (1979) ......................................................................................................25

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ............................................................................19

*Ingraham v. Wright*, 430 U.S. 651 (1977) ............................................................................23

*Jennings v. Emry*, 910 F.2d 1434 (7th Cir. 1990)....................................................................24

*Jensen v. Foley*, 295 F.3d 745 (7th Cir. 2002).......................................................................24, 25

*Joiner v. Benton Community Bank*, 82 Ill.2d 40 (1985) ..............................................................27

*Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999)....................................................................19

*Kelly v. Myler*, 149 F.3d 641 (7th Cir. 1999)..........................................................................17

*Khatchik v. County of Cook*, 00 C 6039, 2001 WL 118897 (N.D. Ill., Oct. 4, 2001)....................15

*Kinerman v.Izzo*, 22 Ill.2d 73 (1961) ..................................................................................16

*Leavelle v. Kieffer*, 189 F.3d 492 (7th Cir. 1999) ....................................................................14

*Long v. Williams*, 155 F. Supp.2d 938 (N.D. Ill. 2001)...........................................................12, 15

*Lowe v. First Union National Bank*, No. 02 C 6591, 2002 WL 31870573 (N.D. Ill.) ..................24

*Luciano v. Waubonsee Community College*,
245 Ill.App.3d 1077, 614 N.E.2d 904 (2d Dist. 1993) ............................................................15

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,465 U.S. 75 (1984)..................................................24

*Montana v. United States*, 440 U.S. 147................................................................................24

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)...................................................................23

*Newsome v.McCabe*, 319 F.3d 301 (7th Cir. 2003)...................................................................20

*Niehus v. Liberio*, 973 F.2d 526 (7th Cir. 1992)......................................................................18

*Nolan v. Johns-Mansville Asbestos*, 85 Ill.2d 161 (1981) ...........................................................15

*Parents Against Controlled Choice v. Board of Educ.*,
No. 97 C 50326, 1999 WL 7905 (N.D. Ill.)...................................................................24

*Parratt v. Taylor*, 451 U.S. 527 (1981).........................................................................23

*People v. Barnes*, 88 Ill.2d 225 (1981) .......................................................................11

*People v. Hobley*, 159 Ill.2d 272 (1994)................................................................*passim*

*People v .Hobley*, 182 Ill.2d 404 (1998)................................................................*passim*

*People v. Woods*, 184 Ill.2d 130 (1998)........................................................................25

*Pruitt v. McAdory*, 337 F.3d 912 (7th Cir. 2003) ........................................................23

*Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857 (7th Cir. 199...........................17

*Sank v. Poole*, 231 Ill.App.3d 780 (4th Dist. 1992).......................................................29

*Scherer v. Balkema*, 840 F.2d 437 (7th Cir. 1998) ........................................................13

*Simonsen v. Board of Education of the City of Chicago*,
2002 WL 230777 (N.D. Ill., Feb. 14, 2002), .........................................................17

*Simpon v. Rowan*, 73 F.3d 134 (7th Cir. 1996)............................................................14

*Spiegel v. Cortese*, 196 F.3d 717 (7th Cir. 1999) .........................................................17

*Tabor v.City of Chicago*, 10 F. Supp.2d 988 (N.D. Ill. 1998) ........................................16

*Talarico v. Dunlop*, 177 Ill.2d 185, 685 N.E.2d 325 (1997) ..........................................28

*Tesch v. City of Green Lake*, 157 F.3d 465 (7th Cir. 1998)..............................................12

*Thiele v. Kennedy*, 18 Ill.App.3d 465 (3d Dist. 1974)....................................................29

*Travis v. Gary Comm. Mental Health Ctr., Inc.*, 921 F.2d 108 (7th Cir. 1990) ..............16

*Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000) .....................................................12

*Treece v. Village of Naperville*, 903 F. Supp. 1251 (N.D. Ill. 1995)...............................15

*United States v. Morris*, 80 F.3d 1151 (7th Cir. 1996) ..................................................20

*United States v. Munsingwear*, 340 U.S. 360 (1950)....................................................27

*Valentino v. Hilquist*, 337 Ill.App.3d 461 (1st Dist. 2003)..........................................15

*Washington v. Summerville*, 1996 WL 166910 (N.D. Ill., April 4, 1996) .....................15

*Washington v. Summerville*, 127 F. 3d 552 (7th Cir. 1997)....................................13, 14

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) ...........................................................19

*Wilson v.Garcia*, 471 U.S. 261 (1985)........................................................................12

*Wilson v. Giesen*, 956 F.2d 738 (7th Cir. 1992) ..........................................................13

*Wolf v. Black Hawk College*, 268 Ill.App.3d 808, 646 N.E.2d 1 (3d Dist. 1995) .........15

*Wright v Illinois Dept. of Children & Family Services*, 40 F.3d 1492 (7th Cir. 1994) .................16

**Constitutional Provisions**

Ill. Const. 1970, art. VI, §1 ...........................................................................................29

**Statutes**

705 ILCS 505/8(c) .................................................................................................~~23~~ ~~8~~

725 ILCS 5/115-19 ........................................................................................................11

745 ILCS 10/8-101 ...................................................................................................12, 15

745 ILCS 10/2-109 .......................................................................................................29

# I. INTRODUCTION

Plaintiff has pled a medley of claims against the City of Chicago and seven of its current and former police officers. Those claims focus on seven acts of alleged police misconduct by the individual defendants. Plaintiff claims that several of the defendants used excessive force in an attempt to coerce a confession from him (Ex. A, ¶¶17, 36). That is the focus of his claim in Counts I (excessive force), II (failure to intervene), VII (battery), and IX (Illinois Hate Crime Act). Plaintiff's due process claim in Count III, and his federal and state law conspiracy claims (Counts IV and V respectively) set forth five other acts of alleged misconduct. There, plaintiff alleges that various defendants: created a false confession, which plaintiff claims he never made and then concealed the fact he never confessed (Ex. A, ¶¶19, 48, 59); reported falsely that plaintiff failed a polygraph examination and then concealed the fact he had not failed the polygraph (Ex. A, ¶¶28, 59); assisted in tainting the testimony of witnesses by improperly pressuring one witness to identify plaintiff in a lineup and by providing assistance to another on a pending criminal charge which was then concealed (Ex. A, ¶¶26, 27, 48, 59); planted a gas can at the scene of the fire which they had removed from the Evidence and Recovered Property Section (ERPS) of the Chicago Police Department after it had been inventoried in an unrelated arson (Ex. A, ¶¶23, 48, 59); and withheld an exculpatory fingerprint report relating to the gasoline can (Ex. A, ¶¶25, 48, 59). Plaintiff claims that as a result of this alleged misconduct, he was denied his right to a fair trial. The last act of alleged misconduct is set forth in Count VIII where plaintiff claims he was unlawfully arrested without probable cause (Ex. A, ¶81). Plaintiff's remaining state-law claims which are intentional infliction of emotional distress (Count VI), malicious prosecution (Count X), *respondeat superior* (Count XI) and indemnification (Count XII) all flow from the same allegations of misconduct.

Plaintiff's allegations of police misconduct were extensively litigated during the course of his underlying criminal and post-conviction proceedings. The state judicial opinions which addressed plaintiff's criminal and post-conviction proceedings reveal that plaintiff's various claims are time barred. They further demonstrate that plaintiff is collaterally estopped from relitigating the issues now asserted in the captioned matter. All but one of plaintiff's claims of alleged police misconduct now before this Court were resolved against him in those underlying

proceedings. The only theory not addressed in the state-court proceedings involves plaintiff's allegation concerning his polygraph examination, the results of which were not introduced at his criminal trial. Those decisions document that plaintiff's constitutional rights were not violated and that no violation of *Brady v. Maryland* occurred during the course of plaintiff's criminal trial.[1]

## II. SUMMARY OF ARGUMENT – GROUNDS OF DISMISSAL FOR EACH THEORY OF POLICE MISCONDUCT

### A. USE OF EXCESSIVE FORCE TO PROCURE A CONFESSION

The Seventh Circuit has repeatedly held that claims of excessive force or unlawful arrest under the Fourth Amendment accrue when the alleged misconduct occurred. Plaintiff's arrest and the officers' alleged used of excessive force occurred on January 7, 1987. Consequently, plaintiff's excessive force claim in Count I and his failure to intervene claim in Count II, which are subject to a two-year limitations period, are now time barred. Similarly, plaintiff's state law actions for battery in Count VII and under the Illinois Hate Crime Act in Count IX, are subject to a one-year limitations period and are time barred.

Additionally, plaintiff is collaterally estopped from relitigating the issue of whether excessive force was used against him in an attempt to coerce a confession. Prior to his original trial, plaintiff moved to suppress his confession (which he contends he never made) claiming it was involuntary in that it was the product of physical and verbal abuse during the interrogation process. That motion was denied and the trial court's ruling was affirmed on direct appeal by the Illinois Supreme Court.

### B. CREATION OF A FALSE CONFESSION

This contention, like plaintiff's claim that his confession was involuntary, was also made during the course of the underlying proceedings and was rejected by the Supreme Court. Thus, plaintiff is collaterally estopped from relitigating that claim.

---

[1]    The Illinois Supreme Court's opinion which affirmed plaintiff's conviction on direct appeal, *People v. Hobley*, 159 Ill.2d 272 (1994) is attached as Exhibit B. It is hereafter referred to as *Hobley I*. The court's opinion relating to plaintiff's post-conviction appeal, *People v. Hobley*, 182 Ill.2d 404 (1998) (*Hobley II*) is attached as Exhibit C. Judge Dennis J. Porter's July 8, 2002 Memorandum Opinion and Order following the evidentiary hearing held on plaintiff's post-conviction petition is attached as Exhibit D. Plaintiff's motion filed in the Illinois Supreme Court withdrawing his appeal of Judge Porter's ruling is attached as Exhibit E. The Supreme Court's order granting the motion to withdraw is attached as Exhibit F and its mandate entering judgment and dismissing Hobley's appeal with prejudice is attached as Exhibit G.

To the extent that plaintiff's claims in Counts III and IV are based on the theory that the defendants conspired with one another to conceal the fact that plaintiff allegedly did not confess and then falsely testified that he did, that aspect of their claims would be barred by the defense of absolute immunity. Additionally, because there can be no *Brady* violation if either the defendant or his attorney knows of the allegedly exculpatory information prior to trial and because plaintiff knew what he said to the police officers, he cannot claim *Brady* was violated by arguing that the police failed to disclose that he allegedly did not confess. Therefore, to the extent plaintiff's claims in Counts III or IV turn on this theory, they fail to state a claim upon which relief can be granted.

### C. FALSE REPORT THAT PLAINTIFF FAILED POLYGRAPH

Plaintiff contends that the defendants falsely reported that he failed a polygraph examination. However, he does not allege that the results of the polygraph were ever admitted at his trial, nor does he allege that he could and would have introduced the polygraph results at trial had they been favorable. Indeed, under Illinois law, neither the existence nor the results of a polygraph examination are admissible. Thus, plaintiff's due process right to a fair trial was not abridged, and to the extent his claim in Count III is premised upon the polygraph theory, it should be dismissed. Where the object of a conspiracy does not violate a person's constitutional rights, there can be no actionable §1983 conspiracy. To the extent plaintiff's §1983 conspiracy claim in Count IV involves the contention that defendants allegedly conspired to conceal the "true" results of the polygraph, it fails to state a claim upon which relief can be granted.

### D. TAINTING THE TESTIMONY OF WITNESSES

To the extent plaintiff's claims in Counts III and IV turn on the theory that defendants improperly pressured a witness to identify Hobley in a lineup, those claims are simply non-actionable. Plaintiff cannot claim *Brady* was violated in connection with his lineup and he is collaterally estopped from relitigating the issue. The Illinois Supreme Court noted that plaintiff's defense attorney was present for and witnessed the lineup. That attorney testified at Hobley's criminal trial that the witness (Kenneth Stewart) failed to identify his client. There was no concealment of the circumstances surrounding the lineup identification and thus, plaintiff cannot state an actionable §1983 due process or conspiracy claim under this theory.

-3-

To the extent plaintiff's theory in Counts III and IV relate to the assistance allegedly provided to another witness by defendant Burge, there was no *Brady* violation, and plaintiff is collaterally estopped from relitigating the issue. At plaintiff's post-conviction evidentiary hearing held before Judge Dennis Porter, it was determined that Hobley's trial attorneys had in their possession information indicating that the witness (Andre Council) had received assistance from Burge but never sought to use that information on cross-examination at trial. The Seventh Circuit recently held that *Brady* was not violated where a criminal defense counsel was aware that a witness had something to gain by implicating the defendant in order to deflect blame from himself, but failed to explore that point of cross-examination.

### E. PLANTING GAS CAN AT THE FIRE SCENE

The Illinois Supreme Court ordered that plaintiff was entitled to an evidentiary hearing on his post-conviction petition in light of his assertion that a second gasoline can recovered at the fire scene was concealed by the State by cataloging evidence under a second RD number that was never disclosed to his criminal defense attorneys. Plaintiff subsequently abandoned that theory during the post-conviction proceedings when it was determined that the second RD number was in fact disclosed to Hobley's original criminal defense attorneys and it was shown his attorneys actually issued subpoenas under that second RD number. Plaintiff next claimed that a gas can inventoried in an unrelated arson was planted at the scene of the fire. After reviewing documentary evidence and listening to witnesses' testimony, Judge Porter concluded there was no credible evidence supporting this theory. Plaintiff is now bound by that determination and is collaterally estopped from relitigating the issue. Consequently, his claims in Counts III and IV should be dismissed to the extent they are based on this theory.

### F. WITHHOLDING EXCULPATORY FINGERPRINT REPORT

In the post-conviction evidentiary hearing held before Judge Porter, it was determined that well before his original trial commenced, Hobley's trial attorneys were aware that a gasoline can recovered from the fire scene was submitted to the crime lab for testing and no fingerprints were found on the can. Thus, the fact that the actual fingerprint report itself was allegedly not produced did not violate *Brady* because Hobley's defense team was aware of the information contained in the report. Plaintiff is now collaterally estopped from relitigating the

issue.  Thus, plaintiff's due process claim in Count III and his §1983 conspiracy claim in Count IV are not actionable.

### G. UNLAWFUL ARREST WITHOUT PROBABLE CAUSE

As to plaintiff's claim that he was arrested without probable cause, his state law false arrest claim in Count VIII is subject to a one-year limitations period.  That cause of action accrued when plaintiff was arrested on January 7, 1987.  Therefore, it is barred by the statute of limitations.   Moreover, the Supreme Court affirmed that probable cause existed for plaintiff's arrest and collateral estoppel precludes relitigation of that determination.

## III. STATEMENT OF FACTS

### A. OPERATIVE DATES

On *January 6, 1987*, a fire was set in an apartment building located at 1121-23 East 82nd Street in Chicago, Illinois.  Plaintiff was arrested the following day, on *January 7, 1987*. *Hobley I*, 159 Ill.2d at 282.  On *February 18, 1987*, Hobley was indicted for felony murder, arson and aggravated arson.  *Id.* at 281-82.  On *March 31, 1994*, the Illinois Supreme Court affirmed on direct appeal plaintiff's conviction, concluding the evidence against him was "overwhelming."  *Id.* at 308, 314.

Plaintiff filed his first post-conviction petition on *May 30, 1995* and thereafter filed several amendments to that petition.  The State moved to dismiss Hobley's second amended petition.  That motion was granted without holding an evidentiary hearing.  *Hobley II*, 182 Ill.2d at 427 (1998).  On *May 29, 1998*, the Illinois Supreme Court affirmed in part and reversed in part the trial court's dismissal of plaintiff's second amended post-conviction petition.  The court in *Hobley II* concluded that plaintiff was entitled to an evidentiary hearing on two issues, whether the State violated Hobley's constitutional rights under *Brady* and whether the jurors at his trial were intimidated during the course of their deliberations.  *Id.* at 470.   The court in *Hobley II* rejected the remainder of plaintiff's arguments in his post-conviction petition.

On remand, an evidentiary hearing was held before Judge Dennis J. Porter.  During the course of that hearing, plaintiff filed a third amended petition for post-conviction relief on *October 21, 1999*.  In that third amended petition, Hobley claimed that a State's witness, Andre Council, had been given consideration for his testimony that was not disclosed to the

defense and that "the prosecutor's use of the gas can at trial was a knowing use of false evidence, i.e., the gas can was planted." (Ex. D, p. 3). On *July 8, 2002,* following the conclusion of that evidentiary hearing Judge Porter issued a 33-page Memorandum Opinion and Order denying plaintiff's petition for post-conviction relief (Ex. C). Plaintiff then appealed Judge Porter's ruling to the Illinois Supreme Court. On *January 10, 2003,* while Hobley's appeal was pending before the Illinois Supreme Court, Governor Ryan issued Hobley a pardon (Ex. A, ¶4). On *January 21, 2003,* plaintiff filed a motion in the Illinois Supreme Court to withdraw his appeal of Judge Porter's ruling (Ex. E). On *April 4, 2003,* the Supreme Court grated plaintiff's motion to withdraw (Ex. F), and issued its mandate dismissing the appeal with prejudice on *April 25, 2003.* (Ex. G). Plaintiff filed his pending action on *May 29, 2003* (Dkt. No. 1).

### B. UNLAWFUL ARREST, FALSE CONFESSION AND "TORTURE" ALLEGATIONS

Plaintiff claims that several defendants used excessive force against him in an attempt to coerce a confession, but claims that at no time did he ever confess (Ex. A, ¶¶17, 18). In his §1983 due process and conspiracy claims in Counts III and IV, plaintiff contends that defendants concealed the fact that he had never confessed as claimed by the prosecution at trial (Ex. A, ¶¶48, 59). In Count VIII, plaintiff also claims he was falsely arrested. Plaintiff originally made these assertions at his criminal trial. There, Hobley denied that he ever confessed to setting the fire in his apartment building. *Hobley I,* 159 Ill.2d at 286. Plaintiff also moved to suppress the confessions which he claimed he never made, on the grounds that the police did not have probable cause to arrest him, *Id.* at 290, and that the confessions were involuntary because "they were procured through physical and verbal abuse." *Id.* at 294. The day after his arrest, "photographs were taken of [Hobley] showing scrapes on his wrist and a small bruise in the middle of his chest." *Id.* Hobley claimed those injuries were proof of his physical abuse during the interrogation.

In *Hobley I,* the Illinois Supreme Court found that probable cause existed for plaintiff's arrest, *Id.* at 291-92, and then addressed plaintiff's contention that his confessions were involuntary. Recognizing that it was the State's burden to demonstrate "by clear and convincing evidence, that the injuries were not inflicted as a means of producing the confession," the court concluded that the State had met its burden. *Id.* at 294-95. It

specifically observed that "[w]hile defendant claims to have been beaten and kicked numerous times during his interrogation by the police, the only injuries present on the defendant the next day were a small bruise on the middle of his chest and "scrapes around his wrists." *Id.* at 295. The court noted that an assistant state's attorney observed Hobley tugging at his handcuffs while he was waiting to speak with her which explained the scrapes on plaintiff's wrists and it further observed that no testimony or medical evidence was presented by Hobley that he did not have the bruise on his chest prior to his arrest. *Id.* at 294-95. The court recognized that Hobley's claimed "injuries were not commensurate with his alleged beatings" and concluded that his confessions had been properly admitted at trial. *Id.* at 295.

In its subsequent opinion addressing plaintiff's petition for post-conviction relief, the Illinois Supreme Court concluded that *res judicata* barred the plaintiff from relitigating the issue of the "voluntariness" of his confessions. *Hobley II*, 182 Ill. 2d at 428. In *Hobley II*, plaintiff argued that the court should relax the *res judicata* bar and revisit the issue in light of newly discovered evidence of police brutality at Area 2. In rejecting that argument, the court noted the inconsistency of plaintiff's position: "in order for the jury to have concluded that [Hobley's] confessions were coerced, the jury would have had to believe [Hobley's] testimony that he was physically abused, but disbelieve his testimony that he did not confess." *Id.* at 450. It concluded that Hobley's argument "was not a particularly persuasive one for the defense." *Id.*

## C. ALLEGED EXCULPATORY FINGERPRINT EVIDENCE

Plaintiff claims in Counts III and IV that an exculpatory fingerprint report from the Chicago police department crime lab concerning the gasoline can recovered from the scene of the fire was concealed from him (Ex. A, ¶¶25,48, 59). This issue was raised by Hobley at his criminal trial through a motion for a mistrial. The prosecutors denied the existence of a fingerprint report and opened their file to Hobley's attorneys. No report was found and the motion was denied. *Hobley I*, 159 Ill.2d at 306. On direct appeal, plaintiff claimed *Brady* had been violated. The Supreme Court in *Hobley I* observed that "the contents of the fingerprint report, assuming a fingerprint report ever existed are unknown." *Id.* at 307. Therefore, it analyzed Hobley's argument under *Arizona v. Youngblood* and concluded that sanctioning the

State was inappropriate under the circumstances. The court noted there was "overwhelming evidence of defendant's guilt separate from the gasoline can." *Id.* at 308.

In his post-conviction appeal to the Supreme Court, Hobley argued that there were two "RD numbers" assigned to his case, that a report filed under one of the "RD numbers" indicated that a two-gallon gas can had been submitted for fingerprint testing and that the results of those tests were negative. The court concluded that Hobley was entitled to an evidentiary hearing under *Brady* in light of those assertions. *Hobley II*, 182 Ill.2d at 429.

Following the evidentiary hearing ordered by the Supreme Court in *Hobley II*, Judge Porter concluded that Hobley's trial attorneys knew that the gasoline can had been sent to the crime lab for testing and that no fingerprints were found on the can. He noted this information was contained in police reports that were tendered to the defense and found in the defense trial file which was still in the possession of the Public Defender's Office (Ex. D, pp. 7-8). He concluded there was no doubt that the defense had the information contained in the fingerprint report for years prior to trial and that the alleged failure to produce the actual report itself was a "sophism." *Id.* at p. 8. Judge Porter also concluded the fingerprint report was not "material" under *Brady*. He observed that at trial, Hobley "could have argued the State failed to produce any fingerprint evidence tying him to that [gas] can . . . [and that Hobley], . . . could make this argument regardless of either the existence or the possession of (the report itself)" (Ex. D, pp. 6-7). This argument was available at trial because Hobley's attorneys were aware that there were no fingerprints found on the gasoline can recovered from the scene. Therefore, Judge Porter ruled that *Brady* was not violated by the purported failure to produce the actual fingerprint report itself. *Id.*

### D. THE PLANTED GAS CAN

Plaintiff claims that defendant officers "assisted in planting" a gas can at the scene of the fire which they concealed from Hobley and the court (Ex. A, ¶¶48, 59). This issue was also raised at the plaintiff's criminal trial, although plaintiff's theory as to how this allegedly occurred has "morphed" over time. The court in *Hobley I* recalled that in plaintiff's confession to Detective Dwyer (which plaintiff claims he never made), Hobley stated that he had thrown a gasoline can down the second-floor hallway after starting the fire. Dwyer sent Detective Paladino looking for the gas can who found it under a sink in Apartment 206. The

-8-

resident of that apartment denied ever having seen the gas can before. *Hobley I*, 159 Ill.2d at 287. At trial, Hobley's expert witness, John Campbell, testified that if the gasoline can had been directly subjected to the fire, only part of the can would remain. The jurors were given the opportunity to observe photographs of the second-floor hallway and the gasoline can itself. *Id.* at 313.

By the time of his post-conviction appeal, Hobley was claiming that there had been a second gasoline can found at the scene and that he was never told that more than one gas can had been recovered from the fire scene. *Hobley II*, 182 Ill.2d at 441-442. In remanding the case for an evidentiary hearing, the Illinois Supreme Court observed, "we stress that we are deeply troubled by the nature of the allegations made in this case. [Hobley] has provided evidence which suggests that items favorable to the defense were suppressed by the State, and this suppression was accomplished, in part, by cataloging evidence under an RD number that was not made available to the defense." *Hobley II*, 184 Ill.2d at 442. At the conclusion of the evidentiary hearing on plaintiff's post-conviction petition, Judge Porter noted that Hobley had been allowed unfettered discovery, including depositions prior to the commencement of the hearing, and "now conceded that there was no second gas can inventoried under a second RD number" (Ex. D, pp. 10-11). Judge Porter noted that the existence of the two RD numbers was disclosed by the police detectives in their original offense case report and that:

> [a]n individual would discover this state of affairs if he or she glanced at the very first line of the General Offense Case Report (the very first report generated by the police). This line reads as follows: "this report should be read/considered in conjunction with reports filed under RD #J007699." It is inconceivable that the existence of this second RD number could be more plainly disclosed. The testimony at the hearing has shown that the defense issued a number of pretrial subpoenas listing both RD #J008183 and RD #J007699. The allegation that evidence was inventoried under a secret RD number and hidden from the defense is not only not supported by a preponderance of the evidence, it is not supported by any evidence. This Court has been unable to disclose one iota of evidence in this record consisting of thousands of pages of testimony, hundreds of pages of pleadings, and numerous exhibits to provide any additional support whatsoever for Petitioner's allegation."

(Ex. D, pp. 11-12). In other words, the allegation which caused the Supreme Court to order an evidentiary hearing in *Hobley II* was proven to be a sham.

While plaintiff's post-conviction petition was pending before Judge Porter, Hobley amended his petition and next claimed that a gas can inventoried in an unrelated case was taken out of ERPS and planted at the scene of the fire (Ex. D, p. 25). Supported by an affidavit of Lee Smith, plaintiff claimed that the gas can had been originally inventoried under number 341644 involving the arrest of Donell McKinley by Detective Mikus for an aggravated arson on December 16, 1986 (Ex. D, pp. 26-27). The inventory numbers relating to Hobley's arrest were 341666, 341667 and 341668 (Ex. D, p. 27). The original inventory slip for the gas can inventoried under number 341644, relating to the McKinley arson, was introduced at the evidentiary hearing. That inventory slip indicated that the "McKinley gas can" was never removed from ERPS until it was destroyed on October 6, 1995 at the request of a Sgt. Elmer. Judge Porter noted that Detective Mikus had retired in 1992 (Ex. D, pp. 27-28). At the evidentiary hearing, Lee Smith could not recall who specifically gave him the information about inventory number 341644 involving the McKinnley arson, and Judge Porter noted that Lee Smith admitted on cross-examination "that there appeared to be no connection between this case [McKinley] and Petitioner's case" (Ex. D, p. 27).

Hobley also called Donell McKinley to testify at the hearing. McKinley testified that the gas can used at Hobley's trial was the same gas can he used in his arson. McKinley "claimed to be able to identify the can by the 'the scratches and the squeeze and the nicks and knacks on it ...'" (Ex. D, p. 28). However, during his videotaped deposition, McKinley testified that he recognized a photo of the gas can as the one he had used in his arson because of a yellow vial attached to the spout of the can (Ex. D, p. 28). Judge Porter observed that the State had proven that this vial was taped to the spout of the gas can at the crime lab and he concluded that there was "no possibility that McKinley could have ever seen that vial at the time of his crime (or for that matter, anytime before he looked at the photograph of the can)" (Ex. D, pp. 28-29). Judge Porter found McKinley's testimony to be "worthless" and it was his opinion that McKinley had "committed perjury in his testimony before this Court." He also concluded that McKinley "would say anything to help petitioner's case" (Ex. D, pp. 29-

30). He concluded there was no credible evidence to link the McKinley gas can to Hobley's case (Ex. D, p. 30).

### E. THE CONCEALED POLYGRAPH RESULT

Part of plaintiff's §1983 conspiracy claim is that defendants conspired to conceal the fact that he had not failed the polygraph examination administered by defendant Garrity (Ex. A, ¶59). Plaintiff does not allege that the State introduced the results of his polygraph exam at his criminal trial. Indeed, neither the existence nor the results of a polygraph exam are admissible. 725 ILCS 5/115-19; *People v. Barnes*, 88 Ill.2d 225, 244 (1981).

### F. TAINTING THE TESTIMONY OF THE WITNESSES

In both Counts III and IV, plaintiff accuses defendants of tainting the testimony of witnesses and concealing this alleged misconduct from the defense (Ex. A, ¶¶48, 59). Assuming these allegations relate to Kenneth Stewart, "one of two individuals who claimed to have seen Mr. Hobley purchase gasoline on the night of the fire," but who "could not be certain of his identification" (Ex. A, ¶26), the Supreme Court noted in *Hobley I* that Stewart's identification was clearly the subject of extensive cross-examination at Hobley's criminal trial. *Hobley I*, 159 Ill.2d at 284. Moreover, the court noted that attorney Steven Stern "who represented defendant during the lineup, testified he viewed the lineup and Stewart's identification." *Hobley II*, 182 Ill.2d at 453. Stern actually testified at plaintiff's criminal trial and informed the jury that Stewart failed to make an identification of Hobley. *Id.* Accordingly, there was no concealment of the circumstances surrounding Hobley's lineup or Stewart's identification of him.

If plaintiff's assertion in paragraphs 48 and 59 relate to the allegation made in paragraph 27, that defendant Burge provided assistance to the "primary witness" against Hobley, that issue was raised in plaintiff's third amended petition for post-conviction relief filed on October 21, 1999. Hobley claimed *Brady* was violated because he was never informed that Andre Council was given a personal recognizance bond on Burge's order and that Burge had ordered the fingerprint check of Council be waived. (Ex. D, p. 22). Judge Porter found there was no *Brady* violation because Hobley's defense team knew prior to trial that Burge had rendered assistance to Council  He observed that the defense had not been tendered a copy of Council's bond slip for his April 16, 1987 arrest – when Council

surrendered on two warrants for criminal damage to property.  *Id.*  However, Judge Porter noted that Council's April 16, 1987 arrest report was found in that portion of the public defender's trial file that was still in existence.  *Id.*  The arrest report contained a handwritten notation to the effect "results of fingerprint check waived – per {illegible signature} (as per Request – Cmdr. Jon Burge, D/A Unit)" (Ex. D, p. 23).

Judge Porter recognized that at the time of his original trial, Hobley's attorneys had evidence that Andre Council had received a benefit on his criminal damage to property case and knew that the fingerprint check in connection with that arrest had been waived by Burge (Ex. D, pp. 23-24).  He noted however, that Hobley's attorneys never attempted to use that information at his trial, despite the fact they knew Council had received this benefit from Burge (Ex. D, p. 24).  Judge Porter therefore concluded that the failure to produce the actual bond slip itself did not constitute a "material discovery violation" (Ex. D, p. 24).

## IV.  CITY HAS NO §1983 MUNICIPAL LIABILITY IN THE ABSENCE OF A CONSTITUTIONAL VIOLATION

In *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), the Supreme Court recognized that §1983 liability cannot attach to a municipality in the absence of an actionable constitutional violation.  "Municipal liability for a constitutional injury 'requires a finding that the individual officer [is] liable on the underlying substantive claim.'" *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000), quoting *Tesch v. City of Green Lake*, 157 F.3d 465, 477 (7th Cir 1998).  In the following sections, the defendants demonstrate that the individual officers are not liable on plaintiff's underlying constitutional claims which therefore warrants dismissal of all §1983 claims against them and the City.

## V.  STATUTES OF LIMITATION BAR PLAINTIFF'S VARIOUS CLAIMS

*Wilson v. Garcia*, 471 U.S. 261, 269 (1985), held that the appropriate statute of limitations for §1983 claims is the limitations period for personal injury claims of the forum state where the alleged constitutional violation occurred.  In Illinois, the statute of limitations for §1983 claims is two years. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998).  However, the one-year statute of limitations found in §10/8-101 of the Local Governmental Tort Immunity Act (745 ILCS 10/8-101) applies to plaintiff's state-law claims.  *Long v. Williams*, 155 F. Supp.2d 938, 943 (N.D. Ill. 2001).

-12-

Although state law determines the limitations period for §1983 actions, federal law determines when a §1983 action accrues. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). The Seventh Circuit has repeatedly held that §1983 allegations of excessive force or unlawful arrest under the Fourth Amendment will not invalidate a party's underlying criminal conviction. *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997); *Booker v. Ward*, 94 F.3d 1052, 1056-57 (7th Cir. 1996). Therefore, a §1983 excessive force or unlawful arrest claim accrues at the time the force was used or the arrest occurred. *Id.*; *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998). Plaintiff's excessive force and failure to intervene claims in Counts I and II accrued on January 7, 1987 (Ex. A, ¶¶10,15 and 17). He had two years in which to bring those actions. They are now time-barred.

The Seventh Circuit has also explained that a civil conspiracy claim accrues "when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Wilson*, 956 F.2d at 740, quoting, *Scherer v. Balkema*, 840 F.2d 437, 440 (7th Cir. 1998). Here, plaintiff's allegations in paragraph 59 concerning his polygraph exam, the alleged "false confession," the planted gas can, the withholding of an exculpatory fingerprint report and the "tainting" of the witnesses' testimony all occurred prior to the time of plaintiff's criminal trial and are therefore time-barred. The opinions of the Illinois Supreme Court and Judge Porter demonstrate that plaintiff was aware of these alleged acts of misconduct more than two years before he filed this pending action on May 29, 2003. The *Hobley I* opinion reveals that plaintiff and his counsel were aware of the missing fingerprint report, the officer's testimony concerning plaintiff's confession and polygraph results by the time of his criminal trial. Concerning the Stewart identification and the "planted" gas can, plaintiff had also developed those theories and presented arguments concerning them by the time of his original trial. Concerning Burge's assistance to Andre Council, plaintiff was also aware of that assistance by the time of his original trial because his attorneys had a copy of Council's arrest report, but failed to use the information disclosed in that report at trial. Therefore, it is clear that plaintiff's §1983 conspiracy claim accrued more than two years before he filed this action, and his state-law conspiracy claim accrued more than one year prior to the time he filed this action. As a result, plaintiff's §1983 conspiracy claim in Count IV and his state-law conspiracy claim in Count V are time-barred.

Defendants submit that plaintiff's due process claim is also untimely and should be dismissed. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Court held that a §1983 action cannot be used to collaterally attack a conviction and where a §1983 claim would render a criminal conviction invalid, then the claim does not accrue until the conviction is revered or set aside. However, not all §1983 claims relating to criminal prosecutions will undermine or invalidate a criminal conviction. Where a §1983 claim does not render a criminal conviction invalid, then the action is not tolled by *Heck*. The Seventh Circuit has repeatedly allowed §1983 claims to proceed forward notwithstanding the existence of a criminal conviction. *See, e.g., Gonzalez*, 133 F.3d at 553 (7th Cir. 1998); *Washington*, 127 F.3d at 556-57; *Simpon v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1996).

The rationale of those decisions applies with equal force here. For example, in response to plaintiff's argument that his due process rights under *Brady* were violated by the State's alleged failure to produce the exculpatory fingerprint report, the court in *Hobley I* wrote that "[t]here is overwhelming evidence of defendant's guilt separate from the gas can." 159 Ill.2d at 308. Consequently, a §1983 due process claim and a corresponding §1983 conspiracy action raising one or more of these theories would not have necessarily undermined the validity of his conviction and, as a result, his claims in Counts III and IV were not timely filed.

In *Leavelle v. Kieffer*, 189 F.3d 492, 495-96 (7th Cir. 1999), the Seventh Circuit held that the statute of limitations for a claim that a party falsely testified at a trial and intimidated witnesses prior to trial, accrued when the testimony was given, not when the court arrived at its decision. *Leavelle* explained that later events "may have added an element of damages," but a limitation period "runs from the first injury, not the last." Thus, to the extent that plaintiff's claims involve either tainting the testimony of other witnesses by the defendants, or an officer's testimony concerning Hobley's "false" oral confession, those claims are also time-barred under *Leavelle*.

The court in *Hobley I* noted plaintiff was arrested on January 7, 1987. That was also the date when the defendants allegedly used excessive force in an attempt to coerce a confession. Because there is a one-year statute of limitations applicable to the plaintiff's state law claims, plaintiff's battery, false arrest and "hate crime" causes of action asserted in Counts

VII, VIII and IX are time-barred and should be dismissed. *See, e.g., Valentino v. Hilquist*, 337 Ill.App.3d 461, 471, 785 N.E.2d 891 (1st Dist. 2003) ("the only alleged batteries which were actionable in this case must have occurred within one year of February 4, 1998, the date the complaint was filed"); *Wolf v. Black Hawk College*, 268 Ill.App.3d 808, 809, 646 N.E.2d 1 (3d Dist. 1995) ("the injury was received and the cause of action accrued on the date the battery took place"); *Khatchik v County of Cook*, No. 00 C 6039, 2001 WL 118897 (N.D. Ill. Oct. 4, 2001) (dismissing an action under the Illinois Hate Crime Statute as time barred under the one-year limitations period in 10/8-101); *Luciano v. Waubonsee Community College*, 245 Ill.App.3d 1077, 1086, 614 N.E.2d 904 (2d Dist. 1993) (affirming dismissal of false arrest claim filed approximately two years after plaintiff was originally taken into custody); *Long*, 155 F. Supp. at 943 ("under the Illinois Local Governmental and Governmental Employees Tort Immunity Act" "the applicable statute of limitations for the state law claims of false arrest and false imprisonment against a local entity or its employee is one year").

Because all of the alleged acts of misconduct occurred well over a decade ago, defendants submit that the plaintiff's claim for intentional infliction of emotional distress is also untimely.[2] *See, e.g., Washington v. Summerville*, No. 94 C 203, 1996 WL 166910 *7 (N.D. Ill., April 4, 1996), *affd. on other grds.* 127 F.3d 552 (7th Cir. 1997). Defendant acknowledges that there are decisions from the Northern District to the contrary such as, *Treece v. Village of Naperville*, 903 F. Supp. 1251, 1259 (N.D. Ill. 1995). Defendant believes those decisions should be reexamined in light of the Seventh Circuit's decision in *Leavelle v. Kieffer* noted above. Unlike a state-law claim of malicious prosecution which does not accrue until the prior criminal proceeding has been terminated, a claim of intentional infliction of emotional distress need not wait until a prior criminal proceeding ends. When a defendant's conduct rises to the level of outrageousness needed to state a claim, the cause of action accrues. Later events, including a possible guilty or not guilty finding, should not change the result. While subsequent events may add to a party's damages, they do not delay the accrual of this tort. Thus, to the extent that plaintiff's intentional infliction of emotional distress claim

---

[2] In *Nolan v. Johns-Mansville Asbestos*, 85 Ill.2d 161, 169 (1981), the Illinois Supreme Court held that a tort claim accrues "when the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful acts of another."

is based on assertions involving a phony confession, a planted gas can, the withholding of an exculpatory fingerprint report, or a claim that plaintiff failed a polygraph exam, his cause of action is also untimely and barred by the one-year limitation period found in §10/8-101 of the Tort Immunity Act.[3]

## VI. PLAINTIFF FAILS TO PLEAD AN ACTIONABLE §1983 CONSPIRACY CLAIM

Plaintiff appears to be bringing two separate conspiracy claims in the context of Count IV. One conspiracy is referenced in paragraph 54 of his Complaint and the second in paragraph 59. In paragraph 54, plaintiff alleges that the police officer defendants and individuals who comprise the Office of Professional Standards agreed "that if any members of the Chicago Police Department were subsequently accused by citizens of wrongdoing, then the OPS employees, including the aforementioned investigators, would actively endeavor to deem those citizens' complaints unfounded or unsustained" (Ex. A, ¶54). As to that particular conspiracy claim, defendant submits it should be dismissed for any number of reasons.

### A. INTRA-CORPORATE CONSPIRACY DOCTRINE

The individual defendants and the members of OPS who entered into this alleged conspiracy are all employees of the City. The Seventh Circuit has recognized however, that a civil-rights conspiracy action cannot be fashioned where the alleged conspirators are all employed by the same entity. *See, e.g., Travis v. Gary Comm. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990); *Wright v. Illinois Dept. of Children and Family Services*, 40 F.3d 1492, 1508 (7th Cir. 1994). This principle, known as the intra-corporate conspiracy doctrine, bars plaintiff's conspiracy claim in paragraph 54. *See, e.g., Tabor v. City of Chicago*, 10 F.Supp. 2d 988, 994 (N.D.Ill.1998) (collecting cases and noting that "the overwhelming majority of judges in this district" have applied the intra-corporate conspiracy doctrine to bar §1983 conspiracy claims); *Farrar v. City of Chicago*, No. 00 C 1675, 2001 WL 1849797 *2 (N.D. Ill., Feb. 22, 2001) (dismissing a claim against City's police superintendent and another City employee on the grounds that a §1983 conspiracy cannot exist, "solely

---

[3]     To the extent that plaintiff seeks the recovery of punitive damages in connection with his claim for intentional infliction of emotional distress, that prayer for relief should be denied. In *Kinerman v. Izzo*, 22 Ill.2d 73 (1961), the Illinois Supreme Court held that punitive damages cannot be recovered under that liability theory. *Id.* at 88. Consequently, the recovery of punitive damages should not be available in connection with plaintiff's claim under Count VI.

between members of the same entities"); *Simonsen v. Bd. of Education of the City of Chicago*, No. 01 C 3081, 2002 WL 230777 *7 (N.D. Ill., Feb. 14, 2002) (applying the doctrine to §1983 conspiracy action). Consequently, plaintiff's purported conspiracy claim in paragraph 54 should be dismissed on this basis alone.

### B. FAILURE TO PROPERLY PLEAD CONSPIRACY

Additionally, to plead a §1983 conspiracy claim, plaintiff must not only allege an agreement or meeting of the minds between two or more of the defendants to violate the plaintiff's civil rights, but also an overt act in furtherance of the conspiracy. Moreover, the objective of the conspiracy must in fact violate the plaintiff's constitutional rights in order to be actionable under §1983. In the paragraph 54 conspiracy claim, plaintiff alleges no overt act in further of that conspiracy which allegedly violated his constitutional rights. *Spiegel v. Cortese*, 196 F.3d 717, 727 (7th Cir. 1999) explained that a claim will not survive a motion to dismiss where the allegations are "vague, conclusory and include no overt acts reasonably related to the promotion of the alleged conspiracy." Indeed, the Seventh Circuit has indicated that a party may not cry conspiracy and "throw himself on the jury's mercy. *Kelley v. Myler*, 149 F.3d 641, 649 (7th Cir. 1999). *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 859-60 (7th Cir. 1999) explained that mere allegations of a conspiracy of the type alleged in paragraph 54 of plaintiff's Complaint cannot survive a motion to dismiss. *Ryan* teaches that a plaintiff needs to describe the "form and scope" of the conspiracy and include the terms of the agreement, when the agreement was formed and what the participants' roles were. Plaintiff does not allege what any of the defendant officers roles were in this alleged conspiracy, nor does he allege when this conspiracy was entered into other than to allege that it was "prior to the date of the constitutional injuries suffered by the plaintiff in this case" (Ex. A, ¶54). That being the case, not only has he failed to plead an actionable §1983 conspiracy claim in paragraph 54, his claim is also time-barred because the constitutional injuries that plaintiff allegedly suffered occurred before or at the time of his trial.

### C. *CHRISTOPHER V. HARBURY* MANDATES DISMISSAL

Concerning the conspiracies alleged in paragraphs 54 and 59, plaintiff has failed to plead a necessary element of this type of cause of action in light of *Christopher v. Harbury*, 536 U.S. 403 (2002). In *Harbury*, the widow of a murdered Guatemalan citizen brought an

action contending that certain federal officials concealed and covered up her husband's fate and his ultimate death. Plaintiff brings similar cover-up and concealment allegations in the context of this case. In *Harbury*, the Court characterized the type of claim plaintiff is now asserting as a "backward looking" right of access claim. The Court explained that:

> These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or it could not have commenced, or it could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable and no other suit in the future.

*Harbury*, 536 U.S. at 414. Significantly, *Harbury* concluded that to properly plead a claim of this nature, plaintiff must demonstrate that the remedy sought could not be obtained through some other existing or available cause of action. *Id.* at 418-21. *Harbury* affirmed the dismissal of plaintiff's concealment claim because the same relief sought in that claim was obtainable through an action for intentional infliction of emotional distress. Plaintiff has not alleged that the relief sought in Count IV could not be obtained through some other existing or available cause of action and, absent such an allegation, Count IV fails to state a claim upon which relief can be granted following *Harbury*.[4]

### D. CONSPIRACY NOT ACTIONABLE WHERE ITS OBJECT DOES NOT VIOLATE THE CONSTITUTION

Section §1983 only authorizes recovery for conspiracy to violate a clearly established constitutional right, not for the conspiracy itself. *Hostrop v. Bd. of Jr. College Dist. No. 515*, 523 F.2d 569, 576 (7th Cir. 1975). So for example, the Seventh Circuit reiterated that "there is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000); accord, *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

As noted above, under Illinois law, neither the existence nor the results of a polygraph exam are admissible. Therefore, allegedly concealing the true results of the polygraph did not

---

[4]    The Supreme Court's decision in *Harbury* was foreshadowed by the Seventh Circuit's decision in *Niehus v. Liberio*, 973 F.2d 526, 532 (7th Cir. 1992) where the Seventh Circuit observed that "an interrupted conspiracy will usually not be actionable, while a completed one will inflict no injury over and above the tort that the conspirators had conspired to commit. All of this makes civil conspiracy ... a rather exotic plant in the legal greenhouse."

-18-

violate plaintiff's right to a fair trial and plaintiff has no actionable §1983 conspiracy claim he can bring involving the polygraph. Consequently, plaintiff's assertions that various individuals reached an agreement to conceal that Hobley did not fail his polygraph, fail to state a claim upon which relief can be granted. This is especially true since plaintiff does not allege that either the existence or the results of the polygraph were introduced at his criminal trial, nor does he allege that he could have introduced the favorable result.

### E. CONSPIRACY AND CONCEALMENT OF FALSE TESTIMONY ABSOLUTELY IMMUNE

*Briscoe v. LaHue*, 460 U.S. 325, 326 (1983) held that law enforcement officials are absolutely immune against claims of false or perjured testimony even if that testimony allegedly deprived a party of his right to a fair trial. *House v. Belford*, 956 F.2d 711 (7th Cir. 1992) extended that immunity to claims involving a conspiracy to commit perjury. The court reasoned that an effort to procure an immunized act is itself immunized:

> [T]o differentiate between a conspiracy to present perjured testimony and the act of presenting perjured testimony is a distinction without a difference. A person may not be prosecuted for conspiring to commit an act that he may perform with impunity. Thus, we fail to understand how a witness can be held liable under §1983 for conspiring to commit an act for which he is protected from §1983 liability by absolute immunity.

*Id.* at 720; accord, *Jones v. Cannon*, 174 F.3d 1271, 1288-89 (11th Cir. 1999).

*Imbler v. Pachtman*, 424 U.S. 409 (1976), similarly rejected the argument that while prosecutorial immunity would extend to the knowing use of perjured testimony, it did not apply to a prosecutor's pre-trial failure to disclose exculpatory information about that testimony to the defense. *Imbler* reasoned that:

> The distinction is not susceptible of practical application. A claim using perjured testimony may simply be reframed and asserted as a claim of suppression of evidence upon which the knowledge of perjury rested . . . Denying absolute immunity from suppression claims would thus eviscerate in many situations, the absolute immunity from claims of using perjured testimony.

*Id.* at 431 n.34. And for just this reason, another circuit has held that testimonial immunity extends not only to conspiracies to commit perjury, but also to claims that a police officer failed to disclose the alleged false or perjurious testimony. *Watterson v. Page*, 987 F.2d 1, 9

(1st Cir. 1993) (applying absolute immunity to the allegation that defendants conspired to present false testimony and withhold material evidence from the court). Thus, the defendant officers have absolute immunity against any claims that they falsely testified that Hobley confessed or that they conspired to conceal that fact from the court. That plaintiff alleges the defendants "reached an agreement to conceal [this] fact" does not vitiate *Briscoe's* grant of immunity unless the Seventh Circuit's decision in House and the Supreme Court's decision in Imbler are abandoned.[5]

## VII. PLAINTIFF FAILS TO STATE AN ACTIONABLE DUE PROCESS CLAIM

*Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir. 1995) held that there can be "no *Brady* violation, if either the defendant or his attorney knows before trial of the allegedly exculpatory information." In *United States v. Morris*, 80 F.3d 1151, 1170 (7th Cir. 1996), the Seventh Circuit similarly concluded that a *Brady* violation could not be established where the exculpatory information was available to the defendant through the exercise of reasonable diligence or where the criminal defendant knew as much about the exculpatory evidence as the prosecutors. Indeed, in a decision now almost three decades old, the Seventh Circuit recognized that "[t]he mission of the [Due Process] clause [is] avoidance of an unfair trial to the accused, and no violation . . . result[s] unless the misconduct [had] some prejudicial impact on the defense." *Christman v. Hanrahan*, 500 F.2d 65, 67 (7th Cir. 1974). In light of that backdrop of precedent, Judge Phillip Reinhard recently concluded that *Brady* was not violated and that a criminal defendant turned civil rights plaintiff was not deprived of his right to a fair trial where he already had the "non-disclosed evidence" in his possession. *Gauger v. Hendle*, 2002 WL 31130087, *7 (N.D. Ill. September 24, 2002).

In the case at bar, Judge Porter's opinion demonstrates that Hobley's public defenders were aware of the fact that the gas can introduced at his criminal trial had been submitted to the Chicago Police Department crime lab for a fingerprint analysis and that no prints suitable

---

[5]     Defendants acknowledge that following *Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003) and *Ienco v. City of Chicago*, 286 F.3d 994 (7th Cir. 2002) they do not enjoy absolute immunity against plaintiff's allegations that they planted a gas can at the fire scene, withheld a fingerprint report and/or that they assisted in tainting the testimony of other witnesses who testified against Hobley. That being said, however, they clearly enjoy immunity against all claims in Counts III and IV involving plaintiff's conspiracy and concealment allegations concerning his alleged false confession.

for comparison were found on that gas can. Since Hobley's attorneys had that information prior to trial, he cannot establish a *Brady* violation under *Felker* and *Morris*.

The same can be said of plaintiff's allegations involving the false oral confession. Assume for the moment that plaintiff did not confess as he is now claiming. Plaintiff would certainly be aware of that fact and have that information available to him prior to trial. In this regard, plaintiff's claim is remarkably similar to the one addressed by Judge Reinhard in *Gauger*. Plaintiff in *Gauger* was undoubtedly privy to the evidence he complains was withheld from him because he was present during the interrogation and was in a position to personally refute the officers' testimony. Because plaintiff here had moved to suppress his confessions prior to trial (*Hobley I*, 159 Ill.2d at 293-95), he cannot deny knowing well in advance of trial what both he and the defendant officers would testify to concerning his confessions. No court has ever held that a material difference between the arrestee and an officer's accounts of an interrogation constitutes *Brady* material. Indeed, if plaintiff's theory is adopted, any criminal conviction could be overturned by the simple expedient of a criminal defendant claiming that a police officer lied about the content of an oral confession, or as in this case, by claiming he never made a confession. *Brady* is premised upon the notion that a criminal defendant should have the benefit of exculpatory or impeaching evidence for use at trial. In the case at bar, the alleged exculpatory evidence, being plaintiff's own account of the interview, was known to plaintiff and his attorneys prior to trial and thus, *Brady* was not violated.

Concerning the allegation that the defendants assisted in tainting the testimony of witnesses, as demonstrated above, attorney Steven Stern was present for the lineup and testified that Stewart failed to identify Hobley. Accordingly, it cannot be gainfully said that Hobley's right to a fair trial was abridged under those circumstances. The circumstances surrounding the lineup identification were not hidden from Hobley or his defense counsel.

As to the assertion that Burge assisted Andre Council, at the time of trial, Hobley's attorneys had in their possession a copy of the arrest report indicating that Burge assisted Council by waiving the requirement of a fingerprint check. As noted above, because Hobley's attorneys failed to explore the purported benefit Council received from Burge on cross-examination at trial, he cannot now claim a *Brady* violation. The Seventh Circuit addressed an analogous situation in *Collier v. Davis*, 301 F.3d 843 (7th Cir. 2002). The court in *Collier*

concluded that where the criminal defendant's trial counsel was aware that a witness had something to gain by implicating the defendant in order to deflect blame from himself, *Brady* was not violated where the defense counsel failed to explore the issue on cross-examination. No *Brady* violation could be established under the circumstances because the defendant could not demonstrate that the evidence was not available to him through the exercise of reasonable diligence. *Collier*, 301 F.3d at 850-51. The same is true here. Hobley's trial attorneys had information that they could have used on cross-examination at trial and failed to use it. Plaintiff cannot now claim the defendants allegedly violated his right to a fair trial under the circumstances and plaintiff can establish no *Brady* violation as a result.

Concerning the allegations of a gas can having been planted at the scene, plaintiff originally raised this theory through the testimony of an expert witness at the time of trial. While an evidentiary hearing under *Brady* was ordered by the Illinois Supreme Court based on the assertion that evidence was cataloged under a secret RD number that had never been disclosed, Hobley later abandoned that theory. The existence of a second RD number was clearly disclosed in the Chicago police reports and his attorneys actually had issued subpoenas under both RD numbers. Simply put, Hobley had no basis for making his assertion in the first place to the Illinois Supreme Court. While during the course of the post-conviction evidentiary hearing, plaintiff amended his petition alleging yet another theory – that a gas can recovered from another arson was removed from ERPS and planted at the scene – that theory was also thoroughly debunked at the hearing before Judge Porter. According to Judge Porter, Lee Smith who submitted an affidavit in support of that assertion, admitted on cross-examination that there appeared to be no connection between the inventory slips for the McKinley and the Hobley arsons. Judge Porter concluded that McKinley perjured himself by claiming the gas can introduced at Hobley's criminal trial was used by him in committing another arson. While plaintiff's theory has evolved, plaintiff was given ample latitude in attempting to develop evidence in support of it to no avail. Plaintiff has been provided all the process to which he was constitutionally entitled to under the circumstances and cannot establish a due process violation.

Finally, because plaintiff's polygraph results were not admissible in evidence, plaintiff's theory that his due process right to a fair trial was abridged by the purported failure

to disclose the "true" polygraph results fails to state a claim upon which relief can be granted. Simply put, *Brady* is not violated by the alleged failure to disclose information or evidence that is inadmissible. That type of information would not be "material" under *Brady*. *See*, e.g., *Pruitt v. McAdory*, 337 F.3d 921, 925-26 (7th Cir. 2003) (non-disclosure of appearance bond issued to complaining witness held not to violate *Brady* because that information was not "material").

## VIII. AVAILABILITY OF STATE REMEDIES WARRANTS DISMISSAL OF PLAINTIFF'S DUE PROCESS CLAIM

Plaintiff's §1983 due process claim can also be dismissed under an entirely different basis – that there were state-court remedies available to the plaintiff which he could have brought and which provide the plaintiff all the process that he is due. In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court concluded that the availability of a state-tort action satisfied the requirements of the due process clause. *Parratt's* holding has been extended to intentional deprivations of property in *Hudson v. Palmer*, 468 U.S. 517 (1984) as well as to deprivations of liberty interests in *Ingraham v. Wright*, 430 U.S. 651 (1977). Indeed, the Seventh Circuit in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) relied upon *Parratt* in concluding that a §1983 malicious prosecution remedy is not available where state law remedies exist.

*Doherty v. City of Chicago*, 75 F.3d. 318, 323-25 (7th Cir. 1996) held that where a party fails to plead that his state-law remedies are inadequate, dismissal of a due process claim is appropriate. Plaintiff does not allege in his complaint that his state-law remedies are inadequate and following *Doherty*, his claim in Count IV should be dismissed. The fact that under Illinois law, actions for false arrest, false imprisonment or malicious prosecution were available to the plaintiff, precludes his due process claim.

## IX. COLLATERAL ESTOPPEL BARS RELITIGATION OF THOSE ISSUES RESOLVED TO PLAINTIFF'S DETRIMENT

Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision precludes relitigation of the issue in a different action involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). *Allen* reiterated that the doctrines of "*res judicata* and collateral estoppel relieve parties of the cost and vexation of

multiple lawsuits, conserve judicial resources and by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* citing *Montana v. United States*, 440 U.S. 147, 153-54. *Allen* specifically rejected the notion that a party has an automatic right to litigate his or her claim in federal court:

> The actual basis of the Court of Appeals' holding appears to be a generally framed principle that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the federal claim arises. But the authority for this principle is difficult to discern. It cannot lie in the Constitution, which makes no such guarantee, but leaves the scope of jurisdiction of the federal courts to the wisdom of Congress . . . There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.

*Allen*, 449 U.S. at 103-104. Put another way, "[i]ssue preclusion prevents a party from relitigating an issue that it has previously litigated and lost." *Jensen v. Foley*, 295 F.3d 745, 749 (7th Cir. 2002) (affirming a Rule 12(b)6 dismissal of §1983 action on grounds of issue preclusion based upon state-trial court's probable cause determination made at a temporary custody hearing held under the Illinois Juvenile Court Act).[6] *Allen* held that the determinations made by a state court should be given preclusive effect in a subsequently filed §1983 action.

In evaluating whether a prior state-court judgment bars a §1983 claim, a federal court must apply the state court's rules on issue and claim preclusion. *Haring v. Prosise*, 462 U.S. 306 (1983); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In other words, a federal court in a §1983 action must give the same preclusive effect to a prior state-

---

[6]     Collateral estoppel or issue preclusion can be raised on a 12(b)(6) motion to dismiss. See, e.g., *Lowe v. First Union National Bank*, No. 02 C 6591, 2002 WL 31870573 (N.D. Ill) (dismissing action on a 12(b)(6) motion on the basis of collateral estoppel); *Parents Against Controlled Choice v. Board of Educ.*, No. 97 C 50326, 1999 WL 7905 (N.D. Ill.) (applying collateral estoppel on a 12(b)6 motion); *Jennings v. Emry*, 910 F.2d 1434, (7th Cir. 1990) (where the court noted that one of the grounds upon which the district dismissed plaintiff's complaint was collateral estoppel.)  In *Jennings*, the court affirmed the dismissal but on other grounds and wrote:  "We have no objection to the district court's method of analysis. We simply find it unnecessary to examine that method in light of the evident failure of Appellant's complaint to adequately state a claim for relief under RICO."  910 F.2d at 1435.

court ruling as would another state court from that same jurisdiction. *Jensen*, 295 F.3d at 748, citing *Donald v. Polk County*, 836 F.2d 376, 381 (7th Cir. 1988).[7]

Under Illinois law, collateral estoppel applies where an issue decided in a prior judicial proceeding is identical to the one presented in the pending suit; there was a final judgment on the merits in the prior judicial proceeding; and, the party against whom estoppel is asserted was a party in the prior judicial proceeding. *Illinois State Chamber of Commerce v. Pollution Control Board*, 78 Ill.2d 1, 7 (1979); *Jensen*, 295 F.3d at 749 (holding threshold requirements of issue preclusion "include identify of issue, identity of party against whom estoppel is asserted, and a final judgment on the merits").

Defendants submit that plaintiff is collaterally estopped from relitigating the issue of whether excessive force was used against him in an attempt to coerce a confession. "In order for a confession to be admissible in evidence, the trial court must determine that the defendant made it freely, voluntarily and without compulsion or inducement." *People v. Woods*, 184 Ill.2d 130, 145 (1998) (citations omitted). A confession that is found to be involuntary, would have to have been suppressed and could not have been introduced at plaintiff's trial. *Id.* at 150. The absence of physical coercion was necessary to allow Hobley's confession to be admitted into evidence. Had excessive force in fact been used against the plaintiff to procure a confession, his confession would not have been admitted into evidence. Since plaintiff's confession was admitted at his criminal trial and since the trial court's finding was affirmed on appeal, plaintiff cannot dodge the defense of issue preclusion.

The Illinois Supreme Court specifically noted that the only alleged injuries that Hobley claimed to have suffered were scrapes on his wrists and a small bruise in the middle of his chest. *Hobley I*, 159 Ill.2d at 294. The Court concluded that the injuries to plaintiff's wrists were explained by an assistant state's attorney who observed Hobley tugging at his handcuffs while waiting to speak to her. *Id.* at 294. The Court also noted that there was no evidence

---

[7]    In *Jensen*, plaintiffs claimed that investigators of the Illinois Department of Children and Family Services (DCFS) unlawfully seized their newborn daughter from their home. Plaintiffs claimed that DCFS violated their rights under the Fourth and Fourteenth Amendments because neither probable cause nor exigent circumstances existed which warranted the seizure. Their claim was originally dismissed under the *Rooker-Feldman* doctrine. On appeal, the Seventh Circuit affirmed the dismissal on an entirely separate ground, issue preclusion based on a state-trial court's temporary custody order following a hearing held several days after the child's seizure from the family home. The Seventh Circuit held the trial court's conclusion that probable cause existed, prevented it from addressing the "difficult and sensitive" question of whether the child's seizure was lawful. *Jensen*, 295 F.3d at 747.

presented demonstrating that Hobley did not have a bruise on his chest prior to his arrest. In light of those findings, plaintiff should not be allowed to relitigate the issue of whether excessive force was used against him. Clearly, the plaintiff had an incentive to litigate this issue in his underlying criminal proceedings. He was charged with seven counts of murder and was facing the death penalty. The alleged use of force against him was one of the central issues raised in his motion to suppress the confessions. Plaintiff's current action involves the same incident and the same "operative facts" addressed in *Hobley I* on his motion to suppress his confession. In *Hobley II*, the Supreme Court concluded that res judicata precluded the plaintiff from relitigating the issue in light of newly discovered evidence of police brutality at Area 2. Defendants submit that in light of the findings entered against him on this issue in his underlying criminal proceedings, plaintiff should be collaterally estopped from raising them anew.

The same is true concerning plaintiff's allegation involving the alleged false oral confession. He presented that theory at his underlying criminal trial and the jury rejected it. The Supreme Court was aware of plaintiff's claim when it affirmed his conviction in *Hobley I* and in *Hobley II*, observed that "in order for the jury to have concluded that [Hobley's] confessions were coerced, the jury would have had to believe [Hobley's] testimony that he was physically abused, but disbelieve his testimony that he did not confess." *Hobley II*, 184 Ill.2d at 335. In rejecting that notion, the Court in *Hobley II* found plaintiff's argument "was not a particularly persuasive one for the defense." *Id*. The Illinois Supreme Court has twice rejected Hobley's claim of a false oral confession and he should not be permitted to raise it a third time.

Concerning plaintiff's allegations in Counts III and IV that the defendants assisted in tainting witnesses, planted a gas can at the scene and in withheld an exculpatory fingerprint report, those issues were all resolved against the plaintiff by Judge Porter's ruling. That ruling constitutes a final determination on the merits. (See Exs. F & G); see also *Jensen*, 295 F.3d at 749. Since the Seventh Circuit in *Jensen* held that a trial court's probable cause determination made at a temporary custody hearing was a "final" judgment, clearly Judge Porter's ruling following a lengthy and heavily litigated post-conviction petition constitutes a final determination on the merits. Since all of the necessary elements of collateral have been

-26-

demonstrated by the defendants, plaintiff should not be allowed to relitigate the issues that were resolved against him on his direct appeal to the Illinois Supreme Court and in his post-conviction proceedings.

While there was no appellate review of Judge Porter's decision, that was due to plaintiff's withdrawal of his appeal while it was pending before the Illinois Supreme Court. Plaintiff did not ask the Court to take any action other than to withdraw his appeal. As a result, all the Court did was dismiss the appeal leaving Judge Porter's rulings in place. Once plaintiff withdrew his appeal, the Supreme Court simply issued its mandate to the circuit court and Judge Porter's rulings became final for purposes of applying the doctrine of collateral estoppel to the case at bar. *See e.g., United States v. Munsingwear*, 340 U.S. 360 (1950) (holding preclusive effect should be given to a prior determination despite dismissal of prior appeal for mootness since the appellees had not requested the appellate court to reverse or vacate the judgment below with directions to dismiss).

Defendants submit that plaintiff is also collaterally estopped from arguing the absence of probable cause for either his arrest or for the initiation of the criminal proceedings which is a necessary element of a malicious prosecution action under state law. See, e.g., *Joiner v. Benton Community Bank*, 82 Ill.2d 40, 45 (1985). In *Hobley I*, the Supreme Court affirmed plaintiff's conviction and rejected his argument that he had not been proven guilty beyond a reasonable doubt. *Hobley I*, 159 Ill.2d at 313-15. Moreover, the Supreme Court in *Hobley I* rejected plaintiff's argument that the police did not have probable cause to arrest him. *Hobley I*, 159 Ill.2d at 290-93. The probable cause standard simply requires a reasonable basis for making an arrest or initiating a prosecution. The probable-cause standard clearly does not require evidence sufficient to support a conviction. It does not even require a showing that an officer's belief that an arrestee committed an offense is "more likely true than false." *Edwards v. Cabera*, 58 F.3d 290, 294 (7th Cir. 1995). All probable cause requires is a reasonable "suspicion." *Id.* In light of the foregoing, defendant submits that plaintiff's false arrest (Count VIII) and malicious prosecution actions (Count X) should be dismissed.

Defendants recognize that plaintiff was pardoned by former Governor Ryan and that the pardon was based on innocence. While the grounds on which plaintiff was pardoned may be

-27-

relevant to an action against the State of Illinois in the Court of Claims,[8] as explained in the following section of this Memorandum, a pardon based on innocence does not undermine the collateral estoppel impact of the state-court decisions noted above.

## A. PARDON DOES NOT NEGATE COLLATERAL ESTOPPEL

The Illinois Supreme Court in *Talarico v. Dunlap*, 177 Ill.2d 185 (1997), addressed the impact of a gubernatorial pardon on the defensive use of collateral estoppel in a civil action to bar relitigation of an issue which had been decided adversely to the plaintiff in a prior criminal proceeding. *Id.* at 187. Addressing the effect of the governor's pardon, the court in *Talarico* held:

> Some courts have held that a pardon not only relieves the punishment for the offense, but blots out the existence of the guilt of the offender. 67(a) C.J.S. *Pardon & Parole* §18 (1978). This court, however, has held that a pardon merely releases an inmate from custody and supervision. *People ex rel Abner and Kinney*, 30 Ill.2d 201, 205, 195 N.E.2d 651 (1964). Since the very essence of a pardon is forgiveness or remission of a penalty, assessed on the basis of the conviction of the offender, a pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction thereof. 67(a) C.J.S. *Pardon & Parole* §18 (1978). In other words, a pardon "involves forgiveness but not forgetfulness." *Chiappa*, 53 Ill.App.3d 639, 640, 11 Ill. Dec. 317, 368 N.E.2d 925 (1977). The law in Illinois, though slight, supports a conclusion that *Talarico's* pardon did not negate the fact of his criminal conviction for purposes of collateral estoppel.

177 Ill.2d at 190. Consequently, the plaintiff's pardon does not impact the collateral estoppel effect of the state judicial opinions discussed in the preceding sections of this brief.

The Court's holding in *Talarico* finds support in the differing roles and perspectives of a reviewing court and a governor when a request is made to set aside a conviction. A court of review generally verifies that sufficient evidence was presented to support the trier of fact's verdict, determines whether trial errors in the original proceeding warrant a retrial, and will assess whether a person's constitutional rights were violated such that certain evidence should

---

[8]     A pardon "based on innocence" is a condition precedent to a statutory recovery under the Illinois Court of Claims Act. See 705 ILCS 505/8(c).

-28-

have been excluded at trial and/or to determine if an evidentiary hearing needs to be held to further address the constitutional issue.

A governor on the other hand can grant pardons for any reason and is not constrained by rules of evidence or procedure. The governor, when granting a pardon, does not function as a "super court of appeals." He is a member of the executive branch of government, not its judicial branch. Indeed, article VI, section 1 of the Illinois Constitution declares that "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." Ill. Const. 1970, art. VI, §1. Under the Illinois Constitution, all judicial power is granted exclusively to the courts. Accordingly, in granting a pardon, the governor is exercising an executive power rather than judicial power.

Just as the legislature cannot change the holding or order entered in a specific case through a legislative enactment, neither can a member of the executive branch such as the governor when exercising his executive power in granting a pardon. As the Illinois Supreme Court correctly recognized, a governor's pardon may free a convicted felon, but it does not negate the judicial findings that were made during the course of the proceedings which resulted in that conviction.

## X. UNITS OF LOCAL GOVERNMENT ARE IMMUNE WHEN THEIR EMPLOYEES ARE NOT LIABLE IN TORT

Section 10/2-109 of the Local Governmental Tort Immunity Act provides that "[a] local public entity is not liable for any injury resulting from an act or omission of its employee where the employee is not liable." (745 ILCS 10/2-109). This provision of the Act recognizes that a municipal corporation can only act through its employees and therefore, any potential tort liability or duty to indemnify for a local unit of government is co-extensive with the liability of its employees. By providing that a municipality's liability can only be triggered by the fault of its employees, §10/2-109 precludes the imposition of tort liability against a local unit of government under a theory of "independent negligence." Where a municipal employee is immune from liability by virtue of a common law defense or a statutory immunity, the local unit of government for which that employee works enjoys similar protection by virtue of §10/2-109 of the Act. *See, e.g., Thiele v. Kennedy*, 18 Ill.App.3d 465 (3d Dist. 1974); *Sank v. Poole*, 231 Ill.App.3d 780 (4th Dist. 1992). Because the individual defendants cannot be

held liable on plaintiff's state-law claims in Counts V through X for the reasons discussed in the preceding sections of this brief, the City enjoys a corresponding immunity against any liability under §10/2-109 in connection with plaintiff's respondeat superior and indemnification claims in Counts XI and XII.

WHEREFORE, the Defendants pray that this Honorable Court enter an order dismissing plaintiff's Complaint.

Respectfully submitted,

By: _____    By: _____

One of the Attorneys for the City          One of the Attorneys for the Individual
of Chicago                                 Defendants

Steven M. Puiszis                          James G. Sotos
HINSHAW & CULBERTSON                        HERVAS, SOTOS CONDON & BERSANI
222 North LaSalle Street                    333 Pierce Road
Suite 300                                   Suite 195
Chicago, Illinois 60601-1081                Itasca, Illinois 60143
(312) 704-3000                              (630) 773-4774

# See Case File For Exhibits