Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Magistrate Judge Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3678 | **DATE** | 4/20/2004 |
| **CASE TITLE** | Madison Hobley vs. Chicago Police Commander Jon Burge, | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, Plaintiff's Fourth Motion to Compel (#112) is granted and the City's Cross-Motion for Protective Order (#110) is denied, except as to document SP 143687. As to that document, the City's Cross-Motion is granted. The City's Cross-Motion is denied without prejudice as to documents in group SP 150003-150138; as to those documents the City shall serve a privilege log by 4/30/04, specifically breaking out the documents comprising that group, including listing all persons to whom copies of the documents have been provided by the City or its counsel. All other documents listed in the City's privilege log (City's reply, Ex. E) must be produced to Plaintiff's counsel by 4/27/04.

Geraldine Soat Brown

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | APR 21 2004 | |
| | Notified counsel by telephone. | date docketed | 158 |
| ✓ | Docketing to mail notices. | CJM | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | date mailed notice | |
| AC | courtroom deputy's initials | CLERK, U.S. DISTRICT COURT | |
| | | 2004 APR 20 PM 6: 26 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**

APR 2 1 2004

| | |
|---|---|
| **MADISON HOBLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 03 C 3678 |
| | ) |
| **CHICAGO POLICE COMMANDER** | ) |
| **JON BURGE, et al.,** | ) **Judge Marvin Aspen** |
| | ) **Magistrate Judge Geraldine Soat Brown** |
| **Defendants.** | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge,

Before the court are Plaintiff's Fourth Motion to Compel [dkt 112] and Defendant City of Chicago's Cross-Motion for Protective Order. [Dkt 110.] Plaintiff Madison Hobley seeks to compel the production of certain documents. The City seeks a protective order to avoid the production of those documents, arguing that the documents are protected by attorney-client privilege and work product protection, and that some of the documents are subject to a protection involving grand jury proceedings. Plaintiff argues that any privilege or protection associated with the documents has been waived, and that there is no applicable grand jury secrecy that the City can invoke. For the reasons set out herein, Plaintiff's Motion is GRANTED and the City's Cross-Motion is DENIED, except as to document SP 143687, as to which Plaintiff's Motion is DENIED and the City's Cross-Motion is GRANTED.

1

158

## Factual Background

1.    *The January 2004 production to Plaintiff's counsel.*

Unraveling the convoluted history of the disputed documents has taken two motions and four briefs totaling almost three inches. A few facts are relatively undisputed. During the week of January 19, 2004, Plaintiff's counsel reviewed certain documents at the offices of the City's counsel. The disputed documents were among them. The documents were all Bates-numbered at the time Plaintiff's counsel saw them. The parties dispute whether the Bates numbers were sequential. The documents were in 61 sequentially-numbered boxes. By letter dated January 23, 2004, Plaintiff's counsel listed the Bates numbers of the documents to be copied. (Pl.'s Mot., Ex. D.) The list included the disputed documents. The City states that it copied the listed documents on January 30, 2004, but suggests that the City withheld the documents subject to tender to the individual defendants' counsel for redaction of confidential material. (City's Cross-Mot. at 6.) However, Plaintiff's counsel states that three boxes containing the listed documents, including the disputed documents, were delivered to Plaintiff's counsel's office on January 30, 2004. (Pl.'s Mot. ¶ 15.) According to Plaintiff's counsel, the City's counsel then called and stated that the City had neglected to stamp certain of the documents "confidential." The City had the three boxes picked up again on that same day, January 30, 2004. (Pl.'s Mot. ¶¶ 16-17.) Sometime between January 30 and February 4, the City's attorneys reviewed the documents that had been copied for Plaintiff and realized that they included documents that the City did not intend to produce. The City refused to produce the disputed documents and apparently withheld production of any of the documents that Plaintiff's counsel had listed until this court entered an order on February 24, 2004, that the undisputed documents be produced by March 3, 2004. (Order, Feb. 24, 2004.) [Dkt 126.] The present motions

ensued. The City listed the disputed documents on a privilege log attached as Exhibit I to its Cross-Motion, and a revised privilege log as Exhibit E to its Reply in Support of its Cross-Motion. [Dkt 136.]

2.    *The December 10, 2003 hearing.*

Another piece of history is background to these motions. On November 10, 2003, the City was ordered to serve a privilege log by December 2, 2003 as to any documents that the City intended to withhold on the ground of any privilege or work product protection, including any governmental privilege. (Order, Nov. 10, 2004.) [Dkt 63.] Having not received any privilege log, Plaintiff's counsel subsequently moved for a finding of waiver. (Pl.'s Mot. Finding Waiver.) [Dkt 81.] At the hearing on that motion on December 10, 2003, the City's counsel advised the court that none of the documents that the City had been ordered to produce were being withheld on the basis of privilege. (Pl.'s Mot., Ex. A., Tr. Dec. 10, 2003 at 45, 52-53.)[1]   Plaintiff's motion for a finding of waiver was held to be moot on the basis of the City's representation. (*Id.* at 52.)   It was recognized that documents covered by District Judge Aspen's order of September 11, 2003 staying policy (or "*Monell*") discovery had not been ordered to be produced. (*Id.* at 53-54.)

The stay of *Monell* discovery has now been lifted (Order, March 22, 2004) [dkt 144], but the distinction remains significant for determining what was included in the City's December 10, 2003 express waiver of privilege.   The City argues that it did not waive its privileges regarding the

---

[1] The City advised Plaintiff's counsel on October 22, 2003 that two pages of handwritten notes by an Assistant Corporation Counsel were not being produced based on privilege and work product protection. (City's Cross-Mot., Ex. E.)  Those notes are not among the disputed documents and were not listed on any privilege log.  However, Plaintiff apparently is not seeking those documents.

disputed documents because they were covered by the stay order.

3.    *The disputed documents.*

The City's description of the history of the disputed documents has been vague and confusing, inexplicably so in light of the fact that the City's retained counsel presumably keep time records. As further discussed below, the City has failed to provide specific, factually supported information to demonstrate that it maintained the confidentiality of the disputed documents. Indeed, the record supports the opposite conclusion.

The City's Cross-Motion described the following scenario. The documents produced to Plaintiff's counsel (except, the City claims, the disputed documents) relate to a 1996 Police Board proceeding entitled *City of Chicago v. Burge, et al.*, involving defendant Jon Burge, in which the law firm Jones Day represented the City. (City's Cross-Mot. at 4.) On October 22, 2003, the City's current attorneys, Hinshaw & Culbertson, wrote to Plaintiff's counsel advising that "we are aware of between 50 and 60 boxes of records that relate to the police board hearing involving Jon Burge and allegations made by John Burge. While we do not believe those materials directly relate to Madison Hobley, we will be glad to make them available for your inspection. . . . Given the volume of materials, we did not want to simply have them copied at your expense." (City's Cross-Mot., Ex. E, Oct. 22, 2003 Puiszis Letter to Loevy at 2.) After the Hinshaw firm received the documents from the Jones Day firm, the documents were "attorney reviewed" by the City's present counsel, Bates-numbered, duplicated and stored in numbered boxes in the City's counsel's storage room. (Cross-Mot., Ex. C, Aff. Robert T. Shannon ¶ 2.) The Jones Day documents (but not the disputed documents) were reviewed by counsel for the individual defendants in both this case and another

4

pending lawsuit. (Shannon Aff. ¶ 3.) After that review, a Hinshaw paralegal erroneously affixed a "Jones Day" label to two boxes of documents from Hinshaw's files, and included those two boxes among the 61 boxes reviewed by Plaintiff's counsel. (Shannon Aff. ¶ 6.)

Plaintiff's Reply observed a flaw in that apparently straight-forward story. The boxes containing the disputed documents were boxes 56 and 57, and, according to Plaintiff's counsel, all of the documents produced to Plaintiff were sequentially numbered from box 1 through box 61. (Pl.'s Combined Reply at 4.) Thus, Plaintiff argues, under the City's scenario, the disputed documents must have been part of the production to counsel for the individual defendants, reinforcing the conclusion that any privilege or protection has been waived. (*Id.*)

The City does not deny that the disputed documents were Bates-numbered when they were produced to Plaintiff's counsel. The Bates numbers of the disputed documents are not clustered at the end of the documents produced, and are in the number range of other documents that were the subject of a motion more than a month before the January 2004 production to Plaintiff's counsel.[2] At the initial hearing on the present motions, the City was expressly asked to answer specific questions, including the following: "When were the documents that are in dispute Bates stamped? Were they Bates stamped prior to submission to the individual defendant's [sic] counsel?. . . Whether attorneys for other individuals who are defendants in another case but not in this case

---

[2] The so-called "ERPS audit material," which was discussed at the December 10, 2003 hearing, was delivered, already Bates-numbered, to this court's chambers for *in camera* review on December 5, 2003. The Bates numbers range of the ERPS audit material is SP144827 through SP145141. (Tr. Dec. 10, 2003 at 40.) The disputed documents are Bates-numbered between SP 141782 and SP 145336, with two later additions SP159745 and SP 150003-017. (City's Reply, Ex. E.)

reviewed the documents prior to production to the plaintiff's counsel, . . . ." (City's Reply, Ex. H, Tr. Feb. 24, 2004 at 6-7.)

Notably, the City has never provided specific answers to those questions.[3] Similarly, the City has not specified the date on which the City's current counsel received the documents from Jones Day or when they conducted the "attorney review" that is discussed repeatedly in the City's briefs. (City's Cross-Mot. at 1, 4-5; City's Reply at 2.) At the first hearing, the City was also told that its privilege log did not conform to the well-established requirements set out in *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84 (N.D. Ill. 1992). (Tr. Feb. 24, 2004 at 15.) The revised privilege log submitted by the City did not provide the specific information required.[4] Instead, in its Reply, the City added a new twist. The City stated:

> When the Jones Day documents *and other boxes of records* were originally received by Hinshaw *for production to the Special Prosecutor*, they were all sent to Merrill Duplication to be copied. *The Special Prosecutor requested, and received, the originals of these documents.* To ensure an accurate record, the documents were also Bates-stamped during the duplication process–*well before the current lawsuit was filed.* When the copy service performed those functions, they did not sequentially Bates-stamp the Jones Day boxes in one entire grouping; rather, there were other boxes of records delivered for duplication with the Jones Day boxes in the process of copying and Bates stamping the records.

---

[3] The Hinshaw paralegal who was in charge of the document production states that the Jones Day documents were produced to the individual defendants' counsel "on two separate occasions. . . .[m]ost recently, in early to mid-December, 2003." (City's Cross-Mot., Ex. D, Aff. Sarah Acker ¶ 3.)

[4] For example, at least eight of the documents on the revised privilege log are described as "Attorney notes from Corporation Counsel's Office" pertaining to various subjects. There is no indication of the author's name, how the documents were maintained, whether copies were made, and, if so, to whom copies were given. No dates are given for a number of the documents. (City's Reply, Ex. E.)

(City's Reply at 17) (footnotes omitted) (emphasis added).[5] This was asserted by the City in support of its argument that the 61 boxes were not in consecutive Bates number order. (*Id.* at 17 n.8.)

That twist created more problems than it solved for the City. Plaintiff's counsel then argued that any privilege had been waived by the repeated production of the disputed documents: to Plaintiff's counsel; to the individual defendants' counsel; and, at some unspecified earlier date, to the Special Prosecutor appointed by the Chief Judge of the Criminal Court.[6] (Pl.'s Sur-Reply at 25.) [Dkt 145.] In addition, Plaintiff submitted an affidavit stating that one of the individual defendants' counsel had advised Plaintiffs' counsel that he did not know "one way or the other" whether the disputed documents had been reviewed by the individual defendants' counsel. (Pl.'s Sur-Reply, Ex. H.)

The City was granted leave to file a Response to Plaintiff's Sur-Reply. [Dkt 147.] That Response did not include any verification for any of its factual assertions. In its Response, the City argued that "the vast majority" of the disputed documents were not produced to the Special Prosecutor. (City's Resp. at 1.) Notwithstanding the fact that *all* of the disputed documents are Bates-numbered "SP____" and were admittedly among the documents processed by Merrill

---

[5] None of that new information was supported with any verification. The City also added that it initially thought that only two boxes containing privileged materials were inadvertently produced, but now it appears that eight of the boxes produced for Plaintiff's counsel had the "labeling error" (were not intended to be produced). (City's Reply at 18.) That assertion is supported by corrected affidavits from Mr. Shannon and Ms. Acker. (City's Reply, Exs. F and G.)

[6] A Special Prosecutor was appointed in April 2002 to investigate allegations of torture, obstruction of justice and other offenses by Chicago police officers under the command of defendant Burge at Area 2 and Area 3 headquarters in Chicago. The Order appointing the Special Prosecutor was attached as Exhibit B to the individual defendants' Motion to Stay the Taking of Defendants' Depositions. [Dkt 96.]

Duplication for production to the Special Prosecutor, the City asserted that only *some* of the disputed documents were actually produced to the Special Prosecutor. The City did not include any evidentiary support for that assertion. Regarding the production to the individual defendants' counsel, the City responded only that the quoted counsel had not participated in the document review. (*Id.* at 12.) Again, no affidavit or other evidentiary material was submitted to support that assertion.

The City hinted, but did not assert directly, that the documents were produced in response to a grand jury subpoena. (City's Resp. at 3.) Again, no factual support for that hint has been supplied. The City also stated that, after being Bates numbered, the documents were "indexed." (Resp. at 10.) That fact makes all the more mystifying the absence of any specific information about what was produced to whom and when.

The City's Response includes a list of the disputed documents that the City admits were produced to the Special Prosecutor.[7] (City's Resp., Ex. B.) Remarkably, that list includes documents suggesting attorney-client privilege and work product protection. *See, e.g.*, SP 141841-94 described as "Draft answer for Leroy Martin in *Wiggins v. Burge,* 93 C 199, with handwritten notes of Assistant Corporation Counsel, containing mental impressions, strategy, and legal advice for litigation include therein." *See also* SP 159745 described as "Document which sets forth the initial defense strategy for newly filed lawsuit, including investigation and aspects of advising the clients." (*Id.*)

That is the factual record before the court after multiple submissions by the parties. The

---

[7] For some unexplained reason, the City submitted that list *in camera*. Plaintiff filed a motion to compel disclosure of that list, which was granted. (Order, April 9, 2004.) [Dkt 153.]

legal standard is applied to those facts.

## Analysis

I. **THE CITY'S CLAIM OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION.**

Because Plaintiff's claim arises under federal law, the assertion of attorney-client privilege also depends on federal law. Fed. R. Evid. 501. The elements of attorney-client privilege are well established:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (citation omitted). The privilege also applies to communications made by an attorney to a client that constitute legal advice or tend to reveal a client confidence. *United States v. DeFazio*, 899 F.2d 626, 635 (7th Cir. 1990). The party asserting privilege has the burden of proving all of the essential elements. *White*, 950 F.2d at 430. Accordingly, "[t]he party seeking to assert the privilege bears the burden of showing that the privilege was not waived." *Mattenson v. Baxter Healthcare Corp.*, No. 02 C 3283, 2003 WL 22839808 at *2 (N.D. Ill. Nov. 26, 2003) (Darrah, J.).

The work product doctrine, codified in Fed. R. Civ. P. 26(b)(3), has been discussed in a number of opinions by the District Judges and Magistrate Judges of this District. *See, e.g., Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610 (N.D. Ill. 2000) (Denlow, M.J.); *Allendale Mutual*, 145 F.R.D. at 84. Work product protection is a qualified privilege distinct from and broader than the attorney-client privilege. *Caremark*, 195 F.R.D at 613. In order to come

under the protection provided by Rule 26(b)(3), the party claiming protection must demonstrate that the documents or material things sought to be protected were prepared: (a) in anticipation of litigation or for trial; and (b) by or for a party or by or for a party's representative. *Id.* at 613-14 (citing 8 Charles A. Wright, et al., *Federal Practice and Procedure* §2024 (2d. ed. 1994)). The work product privilege exists because "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

Thus, the confidential status of the material for which protection is sought is critical to both attorney-client privilege and work product protection. Disclosure to third parties can result in waiver of both types of protection, although, as discussed below, the analysis of waiver may differ.

In the present case, Plaintiff asserts that any protection or privilege has been waived by the repeated production of the disputed documents to Plaintiff's counsel, to the individual defendants' counsel and to the Special Prosecutor. The City argues that the production to Plaintiff's counsel in January 2004 was inadvertent and should not constitute a waiver. However, that argument is moot if the protected or privileged status of the documents was previously waived.

The City has stated that the disputed documents were not produced to the individual defendants' counsel, and that some but not all of the disputed documents were produced to the Special Prosecutor. After affording the City multiple opportunities to submit materials on the pending motions, the record before the court requires the conclusion that the disputed documents were produced to the Special Prosecutor and to the individual defendants' counsel. It is apparent that the disputed documents were among those Bates numbered by Merrill Duplication as part of the City's process of producing documents to the Special Prosecutor. The City admits that some of the

disputed documents were, in fact, produced to the Special Prosecutor but asserts, without any verification or other factual support, that others were not. It is striking that the City has failed to submit any records or other documentation to support that distinction. The City has failed to explain why the disputed documents were copied and Bates numbered "SP___" if they were not produced to the Special Prosecutor. If, in fact, some but not all of the documents that were Bates numbered "SP ___" had not been produced to the Special Prosecutor, presumably the City's counsel would have created a log or record of the documents produced and those not produced, especially because of the large number of documents involved. The City has failed to submit such a log or record, or even to submit an affidavit with facts supporting its assertion.

The same conclusion must be made with respect to the question of whether the disputed documents were produced to the individual defendants' counsel. Again, all the City has submitted to this court is a conclusory statement that the "Jones Day documents" were produced (twice) to the individual defendants' counsel, but the disputed documents (which were produced to Plaintiff's counsel as part of the "Jones Day documents") were not. Again, no answers were supplied to this court's specific questions seeking to find whether there was a factual basis for that statement. The failure of the City to submit any facts to support that assertion must lead to the conclusion that there are no facts to support it.

The issue of whether a joint defense privilege might avoid waiver in the event of production to the individual defendants' counsel was never developed by the City beyond one sentence in its Cross-Motion and one-sentence in its Response because the City took the unsupported position that the disputed documents had never been produced to the individual defendants' counsel. (City's Cross-Mot. at 12-13; City's Resp. at 12-13.) Furthermore, that hypothetical issue is moot because

11

any privilege or protection was waived by the production to the Special Prosecutor.

In response to Plaintiff's argument that production to the Special Prosecutor was disclosure to "the ultimate adverse third party" (Pl.'s Sur-Reply at 2), the City argues that production pursuant to a grand jury subpoena does not result in waiver (City's Resp. at 7). In support of that argument the City cites the Seventh Circuit's opinion in *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir.1997). However, *Dellwood Farms* does not support the City's argument. In that case, private plaintiffs suing Archer Daniels Midland ("ADM") sought audiotapes of conversations that the FBI had made during its criminal investigation of ADM. 128 F. 3d at 1124. The Seventh Circuit held that the government had not forfeited the law enforcement investigatory privilege when, in an effort to elicit a guilty plea from ADM, the government had played certain of the audiotapes for the law firm representing ADM's outside directors. *Id.* at 1126-27. The court first expressed a strong presumption against waiver or forfeiture of the law enforcement investigatory privilege. *Id.* at 1125. The court then concluded that the policy reasons for waiver or forfeiture were inapplicable in that specific case for a number of reasons, including the fact that the government was not the adversary of the plaintiff and the fact that the government only needed to keep the tapes confidential until after the criminal trial. *Id.* at 126-27. The *Dellwood Farms* case might be applicable here if Plaintiff were seeking material *created by* the Special Prosecutor, but it does not apply to previously existing documents *produced to* the Special Prosecutor.

More applicable to the present motions is the Seventh Circuit's decision in *Burden-Meeks v. Welch*, 319 F. 3d 897 (7th Cir. 2003). In *Burden-Meeks*, the court affirmed an order compelling production of a report written by the lawyers for the Intergovernmental Risk Management Agency to their client, which the Agency had shown to defendant Welch. 319 F.3d at 901-02. The court held

that the District Judge did not need to decide whether or not the document was an attorney-client privileged communication because the Agency had waived any privilege. *Id.* at 899. The court stated: "Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option." *Id.* at 899.

However, "[w]aiver of the attorney-client privilege does not automatically waive work product protection for the same document, as the two are independent and grounded on different policies." *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479 (N.D. Ill. 2002). The voluntary disclosure of attorney work product to an adversary waives work product protection. *Id.* (citing Edna Selan Epstein, *The Attorney-Client Privilege and the Work- Product Doctrine* 610-12 (American Bar Association 4th ed. 2001)).

Disclosure to an investigating governmental agency has been held to waive work product protection. In *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993), the court held that work product protection had been waived with respect to a document which the defendant had produced to the SEC in the hope of preventing a formal investigation. A similar conclusion was reached in *In re Bank One Securities Litigation*, 209 F.R.D. 418 (N.D. Ill. 2002), in which the court held that submissions made by Bank One to the Office of the Comptroller of the Currency during the Office's investigation of Bank One had to be produced to plaintiffs suing Bank One in civil litigation. Any work product protection had been waived because the documents had been produced to an entity (the Office) in an adversary position to the Bank. *Id.* at 424.

There is no doubt that the Special Prosecutor is in an adversarial position to the City. The City never denied Plaintiff's claim that the Special Prosecutor is the "ultimate adversary." The Special Prosecutor is investigating allegations of widespread violations of rights by City employees,

past and present, extending over a substantial period of time.[8] As the Sixth Circuit stated in holding

that the work product privilege had been waived by disclosure to the Department of Justice: "The

ability to prepare one's case in confidence, which is the chief reason articulated in *Hickman, supra,*

for the work product protections, has little to do with talking to the Government." *In re

Columbia/HCA Healthcare Corp., Billing Practices Litigation*, 293 F.3d 289, 306 (6th Cir. 2002).

In the present case, the City hints that the disputed documents were produced to the Special

Prosecutor pursuant to a subpoena. However, "the heart of the waiver issue is the provision of

information to an adversary as opposed to the voluntary nature of such disclosure." *In re Bank One

Securities Litigation*, 209 F.R.D. at 424 (citing prior authority). The City has not claimed that, upon

receiving a subpoena, the City objected to producing the disputed documents on the basis of work

product or attorney-client privilege but that its objections were overruled. Rather, the record before

this court does not disclose any objection by the City to producing the disputed documents to the

Special Prosecutor.[9]

This is not a finding that any of the documents were, in fact, entitled to attorney-client

privilege or work product protection. Indeed, there are major gaps in the City's proof of the essential

foundation for establishing such protection or privilege.[10] However, it is unnecessary to undertake

---

[8] Indeed, the City states that document SP 143682 discusses "the City's defense and representation in both the special prosecutor matter and in potential civil lawsuits." (City's Reply at 14.)

[9] As further discussed below, only one of the cover letters from the City to the Special Prosecutor refers to a grand jury subpoena. The other cover letters refer only to an investigation and the Special Prosecutor's "request" for documents or information.

[10] *See* footnote 4, *supra*, discussing the inadequacies of the City's revised privilege log. In addition, even a cursory examination of the disputed documents suggests that no protection is warranted for many of them. For example, document SP 143677 is nothing but a cover letter

the document-by-document analysis necessary to establish privilege or protection when any such status has been waived. *See Burden-Meeks*, 319 F. 3d at 899.

The distressing aspect of these proceedings is how much of the court's and the parties' time and resources were expended before the City disclosed the critical fact of prior production to the Special Prosecutor. The lengthy discussion in the briefs about whether the documents were or were not governed by the stay on *Monell* discovery turned out to be a red herring. Even if the documents were deemed to have been governed by the stay, the City cannot demonstrate the initial predicate for protection from production, the confidentiality of the documents. Because the stay on *Monell* discovery has been lifted, there is no longer a basis for not producing the documents. The arguments in the briefs did, however, demonstrate how untenable a distinction between *Monell* and *non-Monell* discovery would be in this case.

Two other matters must be addressed. In its Reply, the City states: "Because the Jones Day boxes received by Hinshaw were produced without waiving the *Monell* policy discovery stay, any privileged documents that may have been withheld by the Jones Day law firm did not have to be included on a privilege log by December 2, 2003." (City's Reply at 12 n. 3.) That statement suggests that, contrary to the City's representation that "the City offered to make the Jones Day Police Board documents available to plaintiff's counsel" (City's Cross-Mot. at 4) and the City's statement that "[a] decision was made not to assert any claim of privilege or work product in connection with the Jones Day records" (*Id.* at 5), the City made available only a subset of the "Jones Day Police Board documents." That is not acceptable. The documents in the possession of the

---

transmitting two public record documents; there is no legal advice sought. Many of documents for which work product protection is sought relate to litigation from the early 1990s. None of the documents specifically refers to or appears to have been created as a result of this case.

City's prior counsel are certainly documents in the City's "possession, custody or control." Fed. R. Civ. P. 34(a). Having agreed to provide the "Jones Day Police Board documents," the City cannot decide to provide only *some* of the Jones Day Police Board documents. Having affirmatively stated that no claim of privilege or work product would be asserted in connection with the "Jones Day Police Board documents," the City cannot withhold documents on that basis.

Furthermore, the City cannot now represent that it viewed the "Jones Day Police Board documents" as covered by the stay. The City produced the "Jones Day documents" because, as the City acknowledges, Judge Aspen had instructed that if the issue is close, the City was to err on the side of production. (City's Reply at 9.) The City cannot decide, *sub silentio*, that some the "Jones Day documents" are covered by the stay and others are not. All of the Jones Day Police Board documents are to be produced to Plaintiff's counsel immediately.

Second, the City's Cross-Motion and briefs have criticized Plaintiff's counsel for reviewing and taking notes on the disputed documents, which the City claims Plaintiff's counsel should have known were privileged and not intended to be produced. The City claims that Plaintiff's review of those documents violated ABA Formal Ethics Opinion 92-368.[11] That criticism is unwarranted, and the opinion is not applicable here. Although some of the disputed documents appear to contain

---

[11] That opinion states:

> A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer, and abide the instructions of the lawyer who sent them.

ABA Formal Opinion 92-368, *ABA/BNA Lawyers' Manual on Professional Conduct* 1001:155 (1992)

attorney comment and work product, it could not be said that it is clear that the documents were not

intended for Plaintiff's counsel. This is a highly unusual situation in which the party producing the

documents had stated on the record at a previous court hearing that it was not asserting any attorney-

client privilege or work product protection for documents that it had been ordered to produce. In

light of that express waiver, Plaintiff's counsel cannot be criticized for assuming that any documents

produced-- especially documents previously Bates stamped and boxed for production-- were

intentionally produced and subject to that waiver.


## II.    CLAIM OF GRAND JURY SECRECY.

The City claims that twelve of the documents on its privilege log are protected by "grand jury

secrecy."[12]   The documents fall into the following categories: (a) cover letters that list materials

being forwarded to the Special Prosecutor, specifically, personnel files and complaint registers

("CRs") regarding various police officers, court transcripts, pages from an FBI investigation, and

various reports; (b) two printouts from databases[13]; and (c) a letter discussing research into

complaints to the Chicago Police Department's Office of Professional Standards. The City claims

that the principle of grand jury secrecy precludes it from producing those documents to Plaintiff's

counsel.

---

[12] A thirteenth document, SP 143769, is a cover letter from a Corporation Counsel to outside counsel conveying (unproduced) documents for transmittal to the Special Prosecutor. The City suggests only that the letter somehow "implicates the grand jury concerns for secrecy." (City's Reply at 15.) That vague suggestion is not sufficient to constitute a genuine argument.

[13] Oddly, the two database printouts (SP 143728-767 and SP 143705-723) do not appear on the City's list of documents that had been produced to the Special Prosecutor (City's Resp. to Sur-Reply, Ex. B), although apparently they were so produced.

The parties have not discussed whether Illinois or federal law governs this issue. The City cites Illinois law, presumably because the City is referring to events involving the Special Prosecutor who was appointed by the Circuit Court of Cook County pursuant to Illinois law. However, the Federal Rules of Evidence direct that, in a claim arising under federal law, privileges are governed by principles of federal common law unless otherwise required by the United States Constitution, federal law or the federal rules. Fed. R. Evid. 501. "Rule 501 in terms makes federal common law the source of any privileges in federal-question suits unless an Act of Congress provides otherwise." *Northwestern Memorial Hospital v. Ashcroft*, ____F.3d ____, No. 04-1379, 2004 WL 601652 at *2 (7th Cir. March 26, 2004) (Posner, J.). However, as to the present issue, there does not appear to be a significant difference between state and federal law, and "comity 'impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Id.* at *9 (quoting *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061 (7th Cir. 1981)).

Federal Rule of Criminal Procedure 6(e)(2) expressly prohibits particular persons (for example, a grand juror) from disclosing a matter occurring before a grand jury, and it also provides that "[n]o obligation of secrecy may be imposed on any person except in accordance with" that rule. Fed. R. Crim. P. 6(e)(2)(A). Thus, "[t]he rule does not impose any obligation of secrecy on witnesses." Advisory Committee Notes, 1944 Adoption. On the other hand, the current version of Rule 6 also provides that "[r]ecords, orders and subpoenas relating to grand jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(6). The comments to the 1983 amendments adopting that subsection quote a report stating that "[s]ubpoenas can identify witnesses,

potential targets, and the nature of an investigation." Committee Comments, 1983 Amendment (quoting Comptroller General, More Guidance and Supervision Needed over Federal Grand Jury Proceedings 10, 14 (Oct. 16, 1980)).

In Illinois, the common law principle of grand jury secrecy has been codified in a statute, which provides that "[m]atters other than the deliberations and vote of any grand juror shall not be disclosed by the State's Attorney, except as otherwise provided for in subsection (c)." 725 Ill. Comp. Stat. § 5/112-6(b). Subsection (c), in turn, permits disclosure to a State's Attorney and necessary government personnel, and, in a catch-all clause, states: "Disclosure otherwise prohibited by this Section of matters occurring before the Grand Jury may also be made when the court, preliminary to or in connection with a judicial proceeding, directs such in the interest of justice or when a law so directs." 725 Ill. Comp. Stat. § 5/112-6(c). The Illinois Supreme Court has stated that Fed. R. Crim. P. 6(e) was the model for the Illinois statute. *People ex rel. Sears v. Romiti*, 277 N.E.2d 705, 708 (Ill. 1971). The Illinois courts have looked to federal court decisions regarding Fed. R. Crim. P. 6 for guidance in interpreting the state law. *See, e.g., In re Extended March 1975 Grand Jury No. 655*, 405 N.E.2d 1176, 1179-80 (Ill. App. 1st Dist. 1980).

It is well-established under either federal or Illinois law that documents prepared by a party are not insulated from discovery simply because they are sought by a grand jury. "The mere fact that a particular document is reviewed by a grand jury does not convert it into a matter occurring before the grand jury within the meaning of section 112-6(b)." *Bd. of Educ., Community Unit School Dist. No. 200 v. Verisario*, 493 N.E.2d 355, 359 (Ill. App. 2d Dist. 1986) (citing *In re Grand Jury Investigation*, 630 F. 2d 996, 1000 (3d Cir. 1980)); *see also U.S. v. Stanford*, 589 F.2d 285, 290-91 (7th Cir. 1978). The City does not argue to the contrary. Rather, the issue is whether the City's

19

attorney's letters to the Special Prosecutor are "matters occurring before the grand jury."

Plaintiff stated that he was not aware that a grand jury had been impaneled. (Pl.'s Combined Reply at 10.) In response, the City pointed only to the one cover letter, SP 143687, dated December 9, 2002, that refers to a Grand Jury Subpoena dated November 20, 2002. (City's Reply at 20.) None of the other letters to the Special Prosecutor at issue here refer to a grand jury subpoena or proceeding. They refer only to "requests" by the Special Prosecutor and all of the letters, except one dated December 10, 2002, pre-date December 9, 2002. (One letter, SP 143690, dated November 21, 2002, refers to the Special Prosecutor's "previous request.") There is authority denying a motion to compel production of subpoenas issued by the grand jury and rejecting a demand requiring that materials be produced "compiled in the manner that they were presented to the grand jury," because that would effectively become a disclosure of grand jury proceedings. *Bd. of Educ. of Evanston Township Highschool Dist. No. 202 v. Admiral Heating and Ventilation, Inc.*, 513 F. Supp. 600, 603-04 (N.D. Ill. 1981) (construing an earlier version of Fed. R. Crim. P. 6). However, if there is authority extending the principle of grand jury secrecy retroactively to communications with the government preceding the impaneling of the grand jury, the City has not cited it.[14]

Thus, there is no basis cited by the City for refusing to produce the cover letters and the database printouts provided to the Special Prosecutor, with the possible exception of SL 143687, which expressly refers to and responds to a grand jury subpoena. Although that document does not quote the subpoena, it might be deemed to reveal something about what took place before the grand

---

[14] The City's Cross-Motion cites *People v. Toolen,* 451 N.E.2d 1364 (Ill. App. 5th Dist. 1983), which involved the presence of witnesses during testimony of other witnesses before a grand jury, and *In re Extended March 1975 Grand Jury No. 655*, 405 N.E.2d 1176 (Ill. App. 1st Dist. 1980), which denied a discovery request for transcripts of testimony before a grand jury. (City's Cross-Motion at 13.)

jury. In light of the fact that Plaintiff has not shown a particularized need for that document, the City's motion for protective order will be granted as to that document only.


## III.    ADDITIONAL DOCUMENTS PRODUCED BY THE CITY.

By way of a letter to this court dated March 3, 2004, the City added two items to its privilege log: SP 159745, an undated, unsigned memorandum apparently relating to a 1993 lawsuit brought by a pro se plaintiff involving "another Area 2" allegation; and a group of documents SP 150003-150138 that the City claims is subject to an order entered by District Judge Brian Duff in *Wilson v. City of Chicago*, 86 C 2360.

Document SP 159745 is included on the City's list of documents produced to the Special Prosecutor. (City's Resp., Ex. B.) If any work-product protection were still applicable to that eleven year old document, it has been waived by production to the Special Prosecutor. Document SP 159745 must be produced to Plaintiff's counsel.

The numerous documents comprising SP 150003-150138 have not been the subject of discussion or briefing by the parties because the City dumped those documents *en masse* upon this court. There is no indication that the group was properly broken out on a document-by-document basis on any privilege log. If those documents had been broken out, it would have been obvious that, for example, there is no basis for a protective order with respect to document SP 150018-19, the order entered by Judge Duff.   To the extent that the City's Cross-Motion is intended to seek a protective order for those documents, the motion is denied without prejudice. The City is directed to serve a privilege log by April 30, 2004, specifically breaking out the documents comprising that group, including listing all persons to whom copies of the documents have been provided by the City

or its counsel.  The parties are then to comply with Local Rule 37.2 before bringing any further motion with respect to those documents.

## CONCLUSION

For the forgoing reasons, Plaintiff's Fourth Motion to Compel is granted, and the City's Cross- Motion is denied, except as to document SP 143687.  As to that document, the City's Cross-Motion is granted.  The City's Cross-Motion is denied without prejudice as to documents in group SP 150003-150138; as to those documents the City shall serve a privilege log by April 30, 2004, specifically breaking out the documents comprising that group, including listing all persons to whom copies of the documents have been provided by the City or its counsel.  All other documents listed on the City's privilege log (City's Reply, Ex. E) must be produced to Plaintiff's counsel by April 27, 2004.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

April 20, 2004