# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3678 | **DATE** | 6/2/2004 |
| **CASE TITLE** | | Madison Hobley vs. Burge, et al | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing re-set for 7/15/2004 at 10:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion to dismiss (37-1) is granted in part and denied in part. In light of the fact that this decision has narrowed the issues, the parties may seek to refine or revise their discovery plan. If need be, the parties should work with the Magistrate Judge to do so. Defendants shall answer Hobley's complaint on or before 6/30/04. The status hearing set for 6/10/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | JUN 03 2004 | | |
| | Notified counsel by telephone. | date docketed | | |
| | Docketing to mail notices. | | docketing deputy initials | 199 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 6/2/2004 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MADISON HOBLEY,                            )
                                           )
              Plaintiff,                    )
                                           )
       v.                                  )      Case No. 03 C 3678
                                           )
CHICAGO POLICE COMMANDER                   )
JON BURGE, DET. ROBERT DWYER,              )
DET. JAMES LOTITO, DET. VIRGIL             )
MIKUS, DET. DANIEL McWEENEY,               )
DET. JOHN PALADINO, SGT. PATRICK           )
GARRITY and THE CITY OF CHICAGO,           )
                                           )
              Defendants.                   )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Madison Hobley ("Hobley") filed this twelve-count complaint alleging various federal

and state law claims against the City of Chicago and seven current and former members of the Chicago

Police Department (collectively, "Defendants").[1] Presently before us is Defendants' motion to dismiss.

For the reasons stated below, Defendants' motion is granted in part, and denied in part.

## I.    BACKGROUND[2]

On January 6, 1987, a fire broke out in an apartment building on the south side of Chicago where

Hobley lived with his wife and son. Early that morning, Hobley awoke to the sound of a fire alarm and

entered the hallway to investigate. While he was walking down the hallway, a glass partition exploded

and prevented him from returning to his apartment to rescue his family. As the fire raged in the hallway,

---

[1] This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

[2] For the purposes of a motion to dismiss, we accept all well-pleaded factual allegations as true. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

Hobley was able to crawl out the back stairway to escape the building. (Compl. ¶ 13). Ultimately, the fire claimed the lives of seven people, including Hobley's wife and son. Hobley states that upon discovering that he survived the fire and his family did not, Defendant Officers[3] from the Chicago Police Department ("CPD") immediately concluded Hobley was responsible for setting the fire. (Compl. ¶ 15). According to his complaint, Hobley was taken "from his mother's home less than five hours after he escaped from the deadly fire." *Id.* For the entire next day, Hobley was interrogated by detectives of the CPD's Area 2 Violent Crimes Detective Bureau ("Area 2"). (Compl. ¶ 16). Defendants Lotito and Dwyer, both detectives in the bureau, attempted to coerce Hobley into confessing that he started the fire. (Compl. ¶ 17). Specifically, Lotito and Dwyer beat Hobley, placed a plastic bag over his head until he lost consciousness, used racially offensive language, and threatened Hobley. *Id.* Hobley refused to confess. (Compl. ¶ 18).

According to the complaint, because the officers were unable to coerce Hobley into confessing, they fabricated an oral confession that they reported Hobley gave on the day of the fire. (Compl. ¶ 19). Dwyer subsequently claimed that he threw away Hobley's "confession" because it was supposedly rendered illegible after coffee spilled on it. (Compl. ¶ 21). All written documents created contemporaneously to the interrogation reflect Hobley's denials of involvement in the crime. *Id.* ¶ 20.

Hobley alleges one or more of the Defendant Officers conspired to plant physical evidence at the scene of the crime. According to Hobley, a gasoline can, which had been logged in as evidence in another, unrelated crime that had occurred three weeks prior to the fire in Hobley's building, was apparently confiscated from the CPD's Evidence and Recovered Property Section. (Compl. ¶ 23). The

---

[3] Hobley uses the term "Defendant Officers" throughout his complaint and memoranda. We adopt the term and use it as Hobley uses it in his allegations. The title appears to refer to Defendants Dwyer, Lotito, Mikus, McWeeney, Paladino, and Garrity collectively, but at times it seems as if Hobley uses the phrase when addressing the actions of one or more of these defendants. When specific actors are identified by Hobley, we will use the defendants' proper names.

officers pretended to find this gasoline can at the scene of the fire in Hobley's building fourteen hours after the fire. The planted can did not indicate any signs that it had survived a fire. *Id.* At Hobley's trial, the gasoline can was introduced as the can that was used to start the fire in Hobley's apartment building. The Defendant Officers concealed information that the gas can was seized from a different and unrelated fire and subsequently planted in Hobley's apartment building. *Id.* ¶ 24. The Defendant Officers also deliberately withheld a fingerprint report issued by the CPD crimes laboratory following testing conducted on the gasoline can. *Id.* ¶ 25.

In furtherance of the conspiracy to frame Hobley, Defendant Officers produced two individuals who claimed to have seen Hobley purchase gasoline on the night of the fire. One witness was initially uncertain of his identification. Only after persistent and improper pressure from the Defendant Officers did the witness state that perhaps Hobley, who he had seen in a lineup, "favored" the man he saw purchase the gasoline. (Compl. ¶ 26). In exchange for testimony implicating Hobley, Defendant Officers and Defendant Commander Jon Burge apparently provided "assistance" to a second witness, who faced criminal problems of his own. (Compl. ¶ 27). Defendant Officers and Burge then withheld this information. Defendant Garrity and other Defendant Officers also falsely reported that Hobley had failed a polygraph examination. *Id.* ¶ 28. Thereafter, Hobley was convicted of arson and seven counts of murder. (Compl. ¶ 29). He was sentenced to death.

According to Hobley, the City of Chicago ignored the police corruption and torture occurring at Area 2 which resulted in the wrongful convictions of him and others. (Compl. ¶ 32). The complaint states that findings reveal that there was a pattern and practice of torture of suspects by Area 2 Violent Crimes detectives during the time period relevant to this case. The CPD's Office of Professional Standards concluded in November 1990 that the physical abuse at Area 2 included psychological coercion and physical torture. Command members, including defendant Burge, were aware of the

3

systematic abuse and either participated in it themselves or failed to take action to stop it. (Compl. ¶ 33). Hobley alleges that as a result of the beatings and physical abuse administered by Defendant Officers, he suffered physical pain and discomfort. He also suffered mental anguish and emotional distress. (Compl. ¶ 31).

After several appeals, the Supreme Court of Illinois granted Hobley leave to conduct discovery into the circumstances of his conviction. (Compl. ¶ 3). Hobley spent thirteen years on Death Row and over sixteen years in prison before the former Governor of Illinois, George Ryan, granted Hobley a full pardon on grounds of innocence. Hobley was released from prison on January 10, 2003. (Compl. ¶¶ 4, 30).

Hobley then brought this twelve-count complaint against the City of Chicago and the following members of the CPD in their individual capacities: Chicago Police Commander Jon Burge; Detective Robert Dwyer; Detective James Lotito; Detective Virgil Mikus; Detective Daniel McWeeney; Detective John Paladino; and Sergeant Patrick Garrity. Counts I-IV and VIII are brought pursuant to 42 U.S.C. § 1983. Count I alleges Hobley was subjected to excessive force, specifically, police torture by Defendants Dwyer and Lotito inflicted pursuant to the policy and practice of the Chicago Police Department. Hobley contends that the CPD encouraged the misconduct by failing to adequately train, supervise, and control its officers; facilitated constitutional violations by failing to punish and discipline prior instances of misconduct; and failed to timely act despite actual knowledge of the abuses. In Count II, Hobley avers that Defendants Mikus and Garrity, and possibly others, failed to intervene to prevent the torture to which Hobley was subjected by Defendants Lotito and Dwyer. Count III alleges plaintiff was deprived of his right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Specifically, Defendant Officers deliberately withheld exculpatory evidence, provided false evidence, and thereby misled and misdirected the state criminal prosecution

4

of Hobley. In Count IV, Hobley asserts that Defendant Officers and CPD's Office of Professional Standards allegedly conspired to deem citizen complaints of wrongdoing lodged against CPD officers as unfounded even when meritorious. Thus, Defendant Officers believed that they could act with impunity. This conspiracy resulted in Hobley being subjected to excessive force and other constitutional injuries. Moreover, Hobley asserts Defendant Officers entered into an agreement which sought to deprive Hobley of his rights to be free from police torture, false arrest, and malicious prosecution as guaranteed by the Fourth and Fourteenth Amendments. In furtherance of this alleged conspiracy, Defendants Burge, Lotito, Dwyer, Paladino, Garrity, and Mikus agreed to conceal the fact that Hobley never confessed and had not failed a polygraph examination. Additionally, Defendants Burge, McWeeney, Paladino and some or all of the other Defendant Officers agreed to assist in tainting the testimony of the State's witnesses or to assist in planting the gas can. All agreed to conceal these facts, as well as the fingerprint report, from Hobley and the court. Hobley asserts that the actions alleged in Counts II-IV were also undertaken pursuant to the policy and practices of the CPD. In Count VIII, Hobley alleges he was improperly seized and arrested without legitimate probable cause.

Hobley's complaint also includes state law claims of civil conspiracy in Count V, intentional infliction of emotional distress in Count VI, battery in Count VII, malicious prosecution in Count X,[4] respondeat superior in Count XI, and indemnification in Count XII. Finally, in Count IX, Hobley alleges Defendant Officers committed an assault and battery upon him by reason of his race, thereby committing a hate crime as defined by, and in violation of, the Illinois Hate Crime Act, 720 Ill. Comp. Stat. 5/12-7.1. Hobley seeks compensatory damages, costs, and attorneys' fees as well as punitive damages against each

---

[4] Hobley has labeled two different claims "Count IX." We refer to Hobley's claim under the Illinois Hate Crime Act as Count IX and Hobley's malicious prosecution claim as Count X.

of the Defendant Officers in their individual capacities. Defendants have moved to dismiss several counts of the complaint.

## II.  STANDARD OF REVIEW

For the purposes of this motion, we must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in plaintiff's favor. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). In considering a motion to dismiss, a court may also take judicial notice of matters of public record. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003). The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Therefore, a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III.  ANALYSIS

Defendants attack Hobley's complaint on a variety of grounds, namely, that Hobley is barred from re-litigating many of the issues raised in his complaint under the doctrine of collateral estoppel, several counts are barred by the applicable statutes of limitations, Defendants are entitled to absolute immunity with regard to any claims that they testified falsely, and two counts fail to state a claim on which relief may be granted. Initially, we note that the Seventh Circuit has recently made clear that because both statute of limitations and collateral estoppel are affirmative defenses, a plaintiff need not anticipate or attempt to diffuse these defenses in his complaint. *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) (explaining that statute of limitations and issue preclusion are affirmative defenses); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003); *Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) ("A motion to dismiss was improper since

release is an affirmative defense, Fed.R.Civ.P. 8(c), and the existence of a defense does not undercut the adequacy of the claim."). In terms of issue preclusion, given the Seventh Circuit's statements in *U.S. Gypsum*, 350 F.3d at 626 ("None of these is a good ground on which to dismiss [the] complaint – and the latter two are not permissible even in principle, because the statute of limitations and issue preclusion are affirmative defenses"), we decline to dismiss the complaint pursuant to 12(b)(6) based on collateral estoppel as suggested by Defendants.[5] *Cf.* Charles A. Wright, *et al.*, 10B *Federal Practice & Procedure*, § 2735 (3d ed. 1998) ("[A] Rule 56 motion often is the most appropriate vehicle for determining the validity of a defense of former adjudication.").

The Seventh Circuit has acknowledged, however, that "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense. . . ." *U.S. Gypsum*, 350 F.3d at 626 (internal citation omitted). In *U.S. Gypsum*, the Seventh Circuit specifically cited to *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002) as "applying this principle to the period of limitations." *Id.; see also, e.g., Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892 (7th Cir. 2001) (affirming district court's dismissal of claims in the complaint as time-barred at the motion to

---

[5] Under Rule 12(b), if matters outside the pleadings are presented to the court for consideration, we convert the motion into one for summary judgment. Fed. R. Civ. P. 12(b). Although the Seventh Circuit has observed that we may take judicial notice of matters of public record without converting the motion into a motion for summary judgment, *see Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994), by declining to consider at this juncture the material outside of the complaint and declining to rule on this issue at this stage, we will ensure that "all parties [will] be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See* Fed. R. Civ. P. 12(b); *cf., e.g., Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469, 496-97 (7th Cir. 2002) (explaining that district court's dismissal of the complaint based on materials outside of pleadings was error, but conversion into a summary judgment motion based on issue preclusion grounds without notice to the parties was not prejudicial because the district court gave the parties an opportunity for a hearing at which they could bring forth additional arguments that would call into question the prior judgment and no new evidence was produced at that time that would call into question the factual basis for the determination).

dismiss stage). As discussed more fully below, the allegations in Hobley's complaint do supply the ingredients for a statute of limitations defense.[6]

Having declined to dismiss the complaint at this stage based on collateral estoppel, we will address each of the Defendants' remaining grounds for dismissal separately.

## A. Statute of Limitations

Defendants contend that several of Hobley's claims are barred by the applicable statutes of limitations.

### 1. Claims Brought Pursuant to § 1983

The appropriate statute of limitations for § 1983 claims is the limitations period for personal injury claims in the state in which the alleged constitutional violation occurred. *See Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). The alleged violations in this case all occurred in Illinois, which has a two-year statute of limitations for personal injury claims. *Id.* Federal law, however, determines when a § 1983 action accrues. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). The parties agree that unless the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), postpones the accrual of Hobley's claims predicated on conduct that occurred in 1987, his claims are time-barred.

Under *Heck v. Humphrey*, if a judgment for plaintiff on his § 1983 claims "would necessarily imply the invalidity of his conviction or sentence" the statute of limitations does not begin to run until the plaintiff's conviction or sentence has been favorably terminated. *Id.* at 486-87. As such, to toll the running of the statute of limitations, a § 1983 plaintiff first "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

---

[6] Notably, in his complaint, Hobley states that he was arrested in 1987, convicted, incarcerated for over sixteen years, and pardoned by the former Governor of Illinois on January 10, 2003.

authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* In this case, Defendants do not contest that Hobley's pardon on grounds of innocence invalidated Hobley's conviction in *Heck* terms. *See, e.g., Newsome v. McCabe*, 256 F.3d 747, 749 (7th Cir. 2001) ("[A] claim based on wrongful conviction and imprisonment did not accrue until the pardon"); *Wilson v. Lawrence County*, 154 F.3d 757, 761 (8th Cir. 1998) (holding that by receiving a full pardon, plaintiff's conviction was invalidated or expunged by executive order within the meaning of *Heck*). Rather than focusing on the issue of whether Hobley's conviction was favorably terminated, Defendants argue that success on Hobley's § 1983 claims would not "imply the invalidity" of his conviction. Thus, they argue, the accrual of the statute of limitations was not postponed by *Heck*. We address this argument with respect to each of Hobley's § 1983 claims.

a.      Fourth Amendment: Excessive Force, Failure to Intervene, and False Arrest

Defendants argue that Hobley's Fourth Amendment claims are untimely as they should have been filed within two years of his arrest in 1987. The Seventh Circuit recently addressed the issue of the accrual of Fourth Amendment claims in *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003). *Gauger* made clear that a categorical exclusion of all Fourth Amendment claims from *Heck* is not warranted. *See id.* at 361 ("What we have rejected is a rule that false-arrest and other Fourth Amendment claims are *always* premature while the plaintiff still faces criminal punishment.") (emphasis in original). While, in general, claims for wrongful arrest and excessive force should be brought immediately because the injury is compensable even if the defendant is subsequently convicted, *see Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997); *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996), the "accrual of the civil rights claims . . . is ultimately governed by the Supreme Court's decision in *Heck*." *Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004). Thus, we must evaluate whether success on

9

Hobley's claims brought under the Fourth Amendment would necessarily imply the invalidity of Hobley's conviction.

Defendants argue that success on neither Hobley's torture nor failure to intervene claims would necessarily imply the invalidity of his conviction. Courts presented with allegations such as torture ordinarily conclude that such claims would have been actionable immediately because success on the claim generally is not incompatible with a subsequent conviction. *See, e.g., Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997) (holding that plaintiff's success on either his unlawful arrest or excessive force claim would not have necessarily implied the invalidity of his conviction because one can wage a successful claim yet still have a valid conviction); *cf. Robinson v. Doe*, 272 F.3d 921, 923 (7th Cir. 2001) ("Police might well use excessive force in effecting a perfectly lawful arrest. And so a claim of excessive force in making an arrest does not require overturning the plaintiff's conviction even though the conviction was based in part on a determination that the arrest itself was lawful."). Indeed, Hobley's excessive force and failure to intervene claims could have been successful despite a subsequent valid conviction and were thus immediately actionable. In this case, Hobley's claims of torture and failure to intervene, while incredibly disturbing, would not necessarily imply the invalidity of Hobley's conviction or sentence because, even according to Hobley, those tactics did not yield a confession. (*See* Compl. ¶ 18) ("Despite the torture and abuse, at no time did Madison Hobley confess."); *see also, e.g., Gonzalez v. Entress*, 133 F.3d 551, 555 (7th Cir. 1998) ("Application of excessive force at a police station violates the Constitution and is immediately actionable, even if the prosecutor never tries to use the confession at trial... ."). Instead, Hobley could, and did, contend that the confession was fabricated

by police.[7] The allegation of fabrication of evidence is addressed in Hobley's claims challenging Defendants' conduct brought under the Due Process Clause.

The few cases that have concluded similar Fourth Amendment claims would imply the invalidity of a conviction are those where the violation yielded a confession or other evidence which, alone, directly led to a conviction. For instance, Hobley cites to *Johnson v. Village of Riverdale*, a case in which the plaintiff alleged that as "the result of threats and other unconstitutional interrogation tactics, [plaintiff] – even though innocent – confessed falsely to the murder." 192 F. Supp.2d 874, 875 (N.D. Ill. 2002). In that case, there was no evidence other than the coerced confession to implicate plaintiff. Thus, plaintiff's § 1983 action contending that his confession was a nullity, if successful, would necessarily have implied the invalidity of his conviction based solely on that confession. *Id.* at 876. Here, the allegedly coerced confession was not the only evidence used to implicate Hobley and thus, this is not a *Johnson*-type situation in which all evidence that indicates guilt would be wiped out by success on his excessive force or failure to intervene claims. *See Wiley v. City of Chicago*, 361 F.3d 994, 997-98 (7th Cir. 2004) (stating in false arrest action, "if Wiley's attack on his arrest would challenge the only evidence supporting a potential conviction, then his claim did not begin to accrue until the charges were dismissed"). Hobley also points to *Santiago v. Marquez*, a case in which the plaintiff claimed that defendants manufactured probable cause for drug possession and for battery against one of the defendants in order to cover up the excessive force allegedly used against plaintiff. No. 97-2775, 1998

---

[7] Hobley explains, "[t]o see why Plaintiff has the better of this argument, one only need consider how quickly the torture allegations would have been dismissed if this lawsuit bringing coerced confession torture allegations had been filed back in 1989 while Mr. Hobley was on his way to Death Row." (Response, at 10 n.4). We agree that Hobley likely would have endured a difficult battle in state court on such allegations, especially given the fact that it took years for the torture and abuse doled out at Area 2 to be exposed and for inmates' ordeals to be acknowledged. However, we are bound by the statute of limitations and, as discussed above, *Heck* delays accrual only in limited circumstances.

WL 160878, at * 2 (N.D. Ill. Mar. 31, 1998). The court explained that if Santiago was successful in his § 1983 claims, he should be found not guilty of battery and drug possession. The court reasoned, "liability for the Police Defendants for false arrest and for excessive force is incompatible with a conviction of Santiago for drug possession and for battery." *Id.* The court therefore found the claims did not accrue until plaintiff was found not guilty of all charges. *Id.* at * 3. In contrast, Hobley's excessive force and failure to intervene claims are not necessarily incompatible with his conviction for arson or murder. In sum, although there are exceptions to the general rule that Fourth Amendment claims do not imply the invalidity of a conviction, in this case, Hobley's claims of excessive force and failure to intervene would not impugn the validity of his conviction. As such, we find both these claims accrued at the time of his interrogation in 1987 and are thus untimely. We accordingly dismiss Counts I and II as time-barred.

As for Hobley's false arrest claim,[8] the Seventh Circuit's general approach has been to hold that "civil rights claims of false or wrongful arrest arising out of the Fourth Amendment begin to accrue at the time of arrest regardless of subsequent proceedings." *Wiley v. City of Chicago*, 361 F.3d 994, 996 (7th Cir. 2004) (citing *Copus v. City of Edgerton*, 151 F.3d 646, 648-49 (7th Cir. 1998), *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996), and *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995)); *see also Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 897 (7th Cir. 2001) ("In applying *Heck* in general . . . we have ruled that any § 1983 claim for damages resulting from a false arrest is not barred by *Heck* and accrues immediately after the arrest"). However, two recent Seventh Circuit opinions have demonstrated that "*Heck* may in fact occasionally bar a civil rights claim premised on a false arrest or wrongful arrest." *See Wiley*, 361 F.3d at 997; *see also Gauger v. Hendle*, 349 F.3d 354,

---

[8] Defendants argue that Hobley did not allege a false arrest claim under § 1983. (Reply, at 21). However, Count VIII is clearly labeled as a false arrest claim brought under § 1983 and will be discussed in this section.

362 (7th Cir. 2003). In *Gauger*, the court concluded that plaintiff's false arrest claim under § 1983 was not untimely because it did not accrue until his conviction was reversed. *Gauger*, 349 F.3d at 362. The court determined that the claim was barred by *Heck* because Gauger "successfully impugned the validity of his conviction... ." *Id.* at 361. The court reasoned that statements Gauger made to the police following his arrest were crucial to his conviction. By showing that the statements were the product of a false arrest, and thus inadmissible at his trial, he challenged the validity of his conviction because, without a statement in evidence, he could not have been found guilty beyond a reasonable doubt. *Id.* The other evidence, the court explained, "was probative merely as corroboration of his statements construed as a confession or at least as damaging admissions." *Id.* Similarly, in *Wiley*, the court explained that if Wiley was arrested and prosecuted solely on the basis of evidence planted by the arresting officers, as Wiley alleged in his complaint, then "any attack on the arrest would necessarily challenge the legality of a prosecution premised on the planted [evidence]." *Wiley*, 361 F.3d at 997.

Although Defendants argue that *Gauger* is inapplicable to this case because here, unlike in *Gauger*, there is ample evidence establishing Hobley's guilt, we believe success on Hobley's false arrest claim would imply the invalidity of his conviction. Defendants have suggested other probative evidence exists, but every piece of evidence to which they point has been alleged to be tainted or fabricated by Defendant Officers and allegedly stems from the initial illegal arrest. Because, at this stage in the proceedings, we accept Hobley's allegations as true, *see Wiley*, 361 F.3d at 997, and Hobley alleges there was no other evidence that would implicate him, Hobley's attack on the arrest would necessarily imply the invalidity of his conviction. As such, Hobley could not have filed his false arrest claim until his pardon in 2003. We thus find Count VIII to be timely.

b. Due Process

Defendants assert that Hobley's due process claim is also time-barred. We disagree. The Seventh Circuit's opinion in *Newsome v. McCabe* supports delaying accrual of Hobley's due process claim. 256 F.3d 747 (7th Cir. 2001). In that case, the Seventh Circuit explained that the plaintiff had a viable due process claim because "he did not receive a fair trial if the prosecutors withheld material exculpatory details." *Id.* at 752 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). For example, the defendants in *Newsome* allegedly failed to notify prosecutors that plaintiff's fingerprints did not match those obtained at the scene of the crime, withheld information about the fact that they encouraged witnesses to pick plaintiff out of a lineup, and otherwise tainted the witness identification procedures. *Id.* at 749. The court determined that because Newsome had a right to this information pursuant to *Brady*, the failure to turn over the information necessarily raised questions about the validity of his conviction. Thus the accrual of plaintiff's claim under due process was postponed by *Heck* until Newsome was pardoned.[9] *Id.* at 752. Just as in *Newsome*, Hobley claims that his right to a fair trial was violated because Defendants fabricated inculpatory evidence and withheld exculpatory evidence. Specifically, Hobley alleges, *inter alia*, that Defendants tainted witness testimony, planted a gasoline can at the scene of the fire, and withheld a fingerprint report. Indeed, the *Heck* case itself supports

_____

[9] Defendants point to the Seventh Circuit's decision in *Leavell v. Kieffer*, 189 F.3d 492 (7th Cir. 1999) to support their position that to the extent Hobley's claims involve tainting the testimony of witnesses or officers' testimony about Hobley's confession, they are time-barred. In *Leavell*, following a tax court's decision to fix the Leavell's liability for failure to file taxes at over $1 million, the Leavells filed a *Bivens* action against the IRS agent who conducted the audit and presented his conclusions as a witness at the trial. *Id.* at 494. The court determined that the two wrongs alleged by the Leavells, that the agent testified falsely at trial and intimidated the Leavells' accountant prior to trial, accrued when the Leavells knew that they had suffered an injury. The court acknowledged that because the judgment was now unassailable, it was doubtful that the Leavells would be able to obtain relief for wrongs committed during the proceedings. *Id.* at 495-96. We are not persuaded that *Leavell* has any direct bearing on this case as the court did not address, or otherwise call into question, the use of the *Heck* analysis for § 1983 claims arising from a wrongful conviction.

14

Hobley's allegations that the tainted witness identifications and withheld evidence would undermine the validity of his conviction. In *Heck*, plaintiff similarly alleged that prosecutors and police officers knowingly destroyed exculpatory evidence and utilized an unlawful voice identification procedure at Heck's trial. *See Heck v. Humphrey*, 512 U.S. 477, 479 (1994). The Supreme Court dismissed the § 1983 action because Heck's conviction had not yet been invalidated and these claims, if successful, would necessarily have implied the invalidity of his conviction. *Id.* at 489-90. Given the similar allegations of misconduct here, *Heck* would support a conclusion that Hobley's claim would necessarily imply the invalidity of his conviction. We therefore conclude that Hobley's due process claim did not accrue until his pardon in 2003. Accordingly, Hobley's due process claim is timely.

   c.  Conspiracy Claims

   Instead of using the *Heck* analysis, Defendants contend that the § 1983 conspiracy claim (Count IV) is time-barred because a civil conspiracy claim accrues when "plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." (Motion, at 13) (citing *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)). They argue that Hobley was aware of all of the alleged misconduct making up his conspiracy claim by the time of his first criminal trial. However, Hobley's conspiracy claim under § 1983 is based upon Defendants' alleged conspiracy to conceal and withhold exculpatory evidence, fabricate inculpatory evidence, and subject him to excessive force. The timeliness analysis used to address the accrual of each of the constitutional violations that make up the conspiracy therefore also applies to the conspiracy based on those acts. *See Castillo v. Zuniga*, No. 01-616, 2002 WL 398519, at *10 (N.D. Ill. Mar. 14, 2002); *see also Newsome v. James*, 968 F. Supp. 1318, 1325 (N.D. Ill. 1997) (concluding that § 1983 conspiracy based on malicious prosecution did not accrue until malicious prosecution claim accrued which was when the charges against Newsome were dropped). Therefore, because we found that both Hobley's false arrest claim and his due process claim for the

deprivation of his right to a fair trial were timely, the conspiracy to deprive him of those rights is also timely. Additionally, Defendants have not provided any justification for abandoning the *Heck* analysis altogether. Here, Hobley's conspiracy claim under § 1983 is based upon Defendants' alleged conspiracy to violate Hobley's constitutional rights by, among other things, withholding exculpatory evidence, fabricating inculpatory evidence, and punishing him for exercising his First Amendment right to speak out about the police abuses at Area 2. Such a claim, if successful, clearly implies the invalidity of his conviction and would not accrue until Hobley's pardon.

### 2.    State Law Claims

Defendants posit that because there is a one-year statute of limitations on Hobley's state law claims, his battery, false arrest,[10] and hate crime causes of action (Counts VII, VIII, and IX) are time-barred.[11] Hobley did not respond to this argument. The Illinois Local Government and Governmental Employees Tort Immunity Act provides that "no civil action ... may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/8-101; *see also Long v. Williams*, 155 F. Supp.2d 938, 943 (N.D. Ill. 2001). Likewise, an action under the Illinois Hate Crime Act, 720 Ill. Comp. Stat. 5/12-7.1 is governed by a one-year statute of limitations. *See, e.g., Khatchik v. County of Cook*, No. 00-6039, 2001 WL 1188897, at *1 (N.D. Ill. Oct. 4, 2001) (holding that suits against a governmental entity and its employees, including those brought under the Illinois Hate Crime Act, are governed by the Illinois Tort Immunity Act and therefore subject to a one-year statute

---

[10] As mentioned above, Defendants mistakenly characterize Hobley's false arrest claim (Count VIII) as a state law claim. Hobley labeled and asserted his false arrest claim as a § 1983 claim and we have addressed the timeliness of that claim in Part III.A.1.a.

[11] Defendants concede that a state law claim of malicious prosecution does not accrue until the prior criminal proceedings have been terminated and thus have not asserted that this state law claim (Count X) is untimely. (Motion, at 15).

of limitations). As such, Hobley's state law battery claim which accrued on the date the injury was received in 1987 is untimely, as is the claim brought under the Illinois Hate Crime Act. *See, e.g., Randle v. City of Chicago*, No. 00-299, 2000 WL 1536070, at *3 (N.D. Ill. Oct. 17, 2000) (explaining state law assault and battery claim accrued on the date the injury was allegedly received). Accordingly, Counts VII and IX are dismissed. We also agree with Defendants that to the extent the state law conspiracy claim (Count V) and respondeat superior and indemnification claims (Count XI and XII) are premised on the time-barred state law claims, they should be dismissed as well. *See, e.g., Randle*, 2000 WL 1536070, at *3.

Defendants similarly argue that Hobley's state law claim for intentional infliction of emotional distress ("IIED") in Count VI is untimely. We disagree. The courts in our district have consistently held that the cause of action for IIED does not accrue until the state criminal proceedings are terminated. *See Bergstrom v. McSweeney*, 294 F. Supp.2d 961, 969 (N.D. Ill. 2003); *Castillo v. Zuniga*, No. 01-616, 2002 WL 398519, at *12 (N.D. Ill. Mar. 14, 2002); *Evans v. City of Chicago*, No. 00-7222, 2001 WL 1028401, at *14 (N.D. Ill. Sep. 6, 2001); *Treece v. Village of Naperville*, 903 F. Supp. 1251, 1259 (N.D. Ill. 1995).[12] Because the statute of limitations did not commence until the criminal case was terminated, and this federal action was filed within one year of Hobley's pardon, his claim is not barred under the one-year limitations period set forth in the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/8-101. Accordingly, dismissal of Hobley's IIED claim on statute of limitations grounds is unwarranted.

---

[12] Defendants acknowledge that *Treece* holds otherwise, but believe the decision in that case should be reexamined in light of the Seventh Circuit's decision in *Leavell v. Kieffer*, 189 F.3d 492 (7th Cir. 1999), which addressed the accrual of a *Bivens* action. According to Defendants, an IIED cause of action accrues once Defendants' conduct rises to the level of outrageousness needed to state a claim. We are not persuaded that *Leavell*, which did not involve a claim for IIED, calls into question the consistent and well-reasoned holdings of courts in our district addressing the accrual of IIED claims.

Given the above determinations, Counts I (torture), II (failure to intervene), VII (battery), and IX (hate crime) are dismissed as untimely. We deny Defendants' motion to dismiss with respect to Hobley's due process (Count III), IIED (Count VI), and false arrest (Count VIII) claims.[13]

## B.   Due Process

### 1.   Failure to State a Claim

Defendants contend that Hobley has failed to state a claim on which relief may be granted in his due process claim in Count III. The Seventh Circuit recently clarified that claims may be brought directly under the Due Process Clause if they allege "various kinds of trial-based government misconduct, such as the exculpatory evidence rule set forth in *Brady v. Maryland*." *McCullah v. Gadert*, 344 F.3d 655, 661 (7th Cir. 2003) (citing *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001)) (internal citations omitted). To bring such a due process claim, a plaintiff must allege that the officers "withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution." *Ienco v. City of Chicago*, 286 F.3d 994, 999 (7th Cir. 2002).

Consistent with *Newsome*, in his complaint, Hobley has alleged facts sufficient to support a claim that he was denied a fair trial because Defendants fabricated evidence and withheld exculpatory evidence. In fact, several of Hobley's allegations are similar to the allegations posited in *Newsome* and determined by the Seventh Circuit to provide Newsome with a "due process claim in the original sense of the phrase." *Newsome*, 256 F.3d at 752. Specifically, Newsome alleged that defendants withheld the fact that they had coached the witnesses and failed to alert prosecutors that Newsome's fingerprints did not match those obtained at the scene of the crime. *Id.* at 749. In his complaint, Hobley has alleged that

---

[13] Defendant City of Chicago also argues that because the individual officers are not liable for Hobley's constitutional claims, all § 1983 claims against the City should be dismissed because § 1983 liability cannot attach to a municipality in the absence of an actionable constitutional violation. However, several of Hobley's constitutional claims against the individual officers survive this motion to dismiss; therefore we will not dismiss claims brought against the City at this juncture.

18

Defendant Officers deliberately concealed the fact that Hobley never confessed, created a false written confession, assisted in tainting the testimony of witnesses who testified against Hobley at trial, planted a gas can at the scene of the fire, concealed the fact that the gas can was seized from an unrelated fire, and withheld a fingerprint report relating to the gas can. We find these factual allegations are sufficient at this stage to state a valid claim. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (explaining a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").[14] We therefore deny Defendants' motion to dismiss as it pertains to Hobley's due process claim.

### 2. State Remedies

Defendants also contend that dismissal of Hobley's due process claim is mandated by *Parratt v. Taylor* because Hobley failed to plead that state-law remedies available to him are inadequate. (Motion, at 23) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)). Specifically, according to Defendants, the availability of the state law claims of false arrest, false imprisonment, and malicious prosecution provides all the process that Hobley is due. This exact argument was rejected by the court in *Carroccia v. Anderson*, 249 F. Supp.2d 1016, 1025-26 (N.D. Ill. 2003). There, the court determined that the available Illinois tort law claims for false arrest, false imprisonment, and malicious prosecution "offer no remedy for the *Brady* violations that form the basis of [plaintiff's] § 1983 due process claims." *Id.* at 1026. The court pointed to the differences between the state and federal claims, explaining that to

---

[14] Defendants' argument for dismissing Hobley's due process claim boils down to their disagreement with Hobley's version of events as outlined in his complaint. Indeed, in their motion and reply, Defendants have essentially proffered their own version of events to bolster their arguments that a *Brady* violation cannot be *proven*. At this juncture, our task is simply to test the adequacy of the complaint, not resolve factual disputes or decide the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see also Wiley v. City of Chicago*, 361 F.3d 994 (7th Cir. 2004) (remanding case to district court with instructions to reinstate false arrest claim and acknowledging that at the 12(b)(6) stage the court must accept as true plaintiff's allegation that he was arrested solely based on planted evidence).

19

state a claim for the state law causes of action, plaintiff had to allege, for example, that he was "restrained without reasonable grounds to believe that he committed an offense" and that defendants initiated criminal proceedings without probable cause. *Id.* The court found that those types of allegations do not overlap with federal due process claims that arise from the concealment of exculpatory evidence. *Id.* We are persuaded by the court's reasoning in *Carroccia,* and agree that Hobley's due process claim is not premised on allegations of misconduct that would be remedied by the availability of these state law claims. Just as in *Carroccia,* Defendants have failed to identify a state law remedy available to Hobley that would address his due process claim brought under *Newsome.* As such, we do not find that Hobley's due process claim premised on *Brady* violations is precluded.

## C.   Conspiracy

Defendants argue that Hobley's § 1983 conspiracy claim should be dismissed because it is barred by the intra-corporate conspiracy doctrine, one of the conspiracies alleged in the complaint fails to state a claim on which relief may be granted, and Defendants are absolutely immune for allegations that they testified falsely.[15] We will discuss each argument in turn.

### 1.   Intra-Corporate Conspiracy Doctrine

Defendants argue that Hobley's conspiracy claim is barred by the intra-corporate conspiracy doctrine. Under the doctrine, employees or managers of a corporation "jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Wright v. Illinois Dept. of Children and Family Servs.,* 40 F.3d 1492,

---

[15] Defendants maintain that the Supreme Court's recent decision in *Christopher v. Harbury,* 536 U.S. 403 (2002) mandates dismissal of this conspiracy claim. In *Harbury,* plaintiff sued the U.S. Department of State and several other federal defendants claiming that she was denied access to the courts because defendants concealed information about her husband's fate in Guatemala. *Id.* at 405-08. The Court's opinion rested solely on the adequacy of plaintiff's denial of access to courts claim. *Id.* at 418-22. As Hobley has not brought a denial of access to the courts claim, we are not persuaded that *Harbury* mandates dismissal of Hobley's conspiracy claim.

1508 (7th Cir. 1994) (citation omitted). In *Wright*, the Seventh Circuit applied the doctrine to claims brought under 42 U.S.C. § 1985 against governmental entities. *Id.* at 1507-08. The Seventh Circuit has not determined whether the doctrine extends to § 1983 claims.[16] However, several judges in this district, including this one, have applied the doctrine in employment cases involving § 1983 claims brought against government employees or administrators. *See, e.g., Simonsen v. Bd. of Educ. of the City of Chicago*, No. 01-3081, 2002 WL 230777 (N.D. Ill. Feb. 14, 2002) (alleging race discrimination); *see also Tabor v. City of Chicago*, 10 F. Supp.2d 988, 994 (N.D. Ill. 1998) (same).

While Defendants have pointed to two district court decisions wherein the intra-corporate conspiracy doctrine was applied to alleged conspiracies involving police officers, *see, e.g., David v. Village of Oak Lawn*, No. 95-7368, 1996 WL 210072 (N.D. Ill. Apr. 29, 2002) (Gettleman, J.); *Chavez v. Illinois State Police*, No. 94-5307, 1996 WL 66136 (N.D. Ill. Feb. 13, 1996) (Manning, J.), several other judges in this district recently have refused to apply it to cases involving allegations of police misconduct. *See, e.g., Williams v. Brown*, 269 F. Supp.2d 987, 994 (N.D. Ill. 2003) (Bucklo, J.), *vacated in part by Williams v. Brown*, No. 01-3228, 2003 WL 22454083 (N.D. Ill. Oct. 3, 2003) (Bucklo, J.); *Moreno v. Town of Cicero*, No. 01-1726, 2002 WL 31017932 (N.D. Ill. Sep. 5, 2002) (Leinenweber, J.); *Newsome v. James*, No. 96-7680, 2000 WL 528475 (N.D. Ill. Apr. 26, 2000) (Plunkett, J.); *Northen v. City of Chicago*, No. 93-7013, 1999 WL 342441 (N.D. Ill. May 17, 1999) (Holderman, J.); *Cooper v.*

---

[16] In *Jones v. City of Chicago*, the Seventh Circuit did uphold a jury verdict finding that police officers had conspired to violate the rights of a plaintiff who was framed for murder. 856 F.2d 985, 992-93 (7th Cir. 1998). The plaintiff had sued the City and police officers under § 1983 for false arrest, false imprisonment, IIED, malicious prosecution, and conspiracy to commit these wrongs. *Id.* at 988. In rendering its decision, the Seventh Circuit did not discuss the intra-corporate conspiracy doctrine.

*Harris*, No. 99-1623, 1999 WL 261742 (N.D. Ill. Apr. 13, 1999) (Grady, J.); *Salto v. Mercado*, No. 96-7168, 1997 WL 222874 (N.D. Ill. Apr. 24, 1997) (Zagel, J.).[17]

In *Newsome v. James*, plaintiff, a former state prisoner who spent more than fifteen years on death row, was pardoned by the Governor of Illinois. No. 96-7680, 2000 WL 528475, at *9 (N.D. Ill. Apr. 26, 2000). Plaintiff then brought a § 1983 action against several police officers contending that they framed him for murder. His complaint included allegations that the police conducted a suggestive witness lineup and withheld potentially exculpatory fingerprints. *Id.* at *16. At the summary judgment stage, defendants argued that the intra-corporate conspiracy doctrine barred plaintiff's § 1983 civil conspiracy claim. The district court declined to extend the doctrine to plaintiff's allegations. The court explained that the doctrine was established "to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions . . . The decision to frame plaintiff for . . . murder, as plaintiff alleges it, is not the product of routine police department decision-making." *Id.* at *15. We agree that the doctrine should not be extended to shield defendants from § 1983 conspiracy claims based on egregious police conduct such as that alleged here. Hobley's allegations involve conduct that is far from routine and the policy behind the doctrine would not be served were we to apply it in this case. Accordingly, we decline to dismiss Hobley's conspiracy claims based on the intra-corporate conspiracy doctrine.

---

[17] *See also Emery v. Northeast Illinois Reg'l Commuter R.R. Corp.*, No. 02-9303, 2003 WL 22176077 (N.D. Ill. Sep. 18, 2003) (internal citation omitted) (Gottschall, J.) (stating in a case against a railroad corporation that "it makes sense that the doctrine will rarely, if ever, apply in police misconduct cases. A claim that several police officers conspired to frame a person for murder would not be barred by the intracorporate conspiracy doctrine, the rationale being that the officers were neither acting in the interests of the police department, nor in the scope of their official duties.").

2. Failure to State a Claim

In general, to state a claim under § 1983, Hobley must allege that he was "deprived of a right secured by the Constitution or laws of the United States and that deprivation was caused by a person acting under color of state law." *Kelley v. Myler*, 149 F.3d 641, 648 (7th Cir. 1998). To plead conspiracy under § 1983, Hobley must simply "indicate the parties, general purpose, and approximate date, so that defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Defendants characterize Count IV of Hobley's complaint as alleging two separate conspiracies. The first conspiracy alleges an agreement between individuals in the Office of Professional Standards of the CPD and police officer Defendants to deem citizen complaints unfounded ("OPS conspiracy"). The second conspiracy involves an agreement between Defendants Burge, Lotito, Dwyer, Paladino, Garrity, and Mikus to conceal information from the prosecution and to fabricate or to taint evidence used in the prosecution of Hobley. Defendants do not contest the sufficiency of the allegations concerning the second conspiracy, so we do not address the validity of that conspiracy claim.[18] Rather, they argue that Hobley has failed to allege an overt act in furtherance of the OPS conspiracy as well as failed to indicate what constitutional right was violated by the OPS conspiracy. It is unclear whether Hobley intended to plead two separate conspiracies; Hobley does not address Defendants' bifurcation of Count IV in his response or surreply.

---

[18] Despite the fact that Defendants explicitly report that they do not contest the sufficiency of the second conspiracy, *see* Motion, at 16; Reply, at 26, Defendants nonetheless contend that Hobley has failed to state a claim on which relief can be granted because the alleged conspiracy to conceal the true results of the polygraph examination is not actionable. This, they argue, is because polygraph results are inadmissible at trial; thus the concealment did not violate Hobley's right to a fair trial. Even if Defendants' *Brady* argument does have merit, an issue we need not decide at this stage, the argument is off-base because Hobley does not allege a conspiracy to conceal the results of a polygraph examination. Instead, Hobley has alleged that Defendants conspired to deprive him of his constitutional right to a fair trial under the Due Process Clause. The concealment of the polygraph report is but one of many acts alleged to have led to the due process violation; it was not pled as the single objective of the conspiracy itself.

Although all allegations concerning conspiratorial acts are contained under the heading of Count IV, it does appear that the allegations in paragraph 54 supporting the alleged OPS conspiracy are distinct from those included in the rest of the count.[19]   Paragraph 54 of Hobley's complaint describes the OPS conspiracy: "prior to the constitutional injuries suffered by Plaintiff in this case, it was agreed among the police officer Defendants . . . and the individuals who comprise the Office of Professional Standards" that the OPS would deem any citizen complaints of wrongdoing alleged against members of the CPD as unfounded.   This agreement, Hobley alleges, subjected him to excessive force "and other constitutional injuries." (Compl. ¶ 57). As we decided above, Hobley's torture and failure to intervene claims are barred by the applicable statute of limitations. As such, a conspiracy claim premised on those very same actions is similarly barred.  With that misconduct no longer actionable, it is unclear what remains to support the claim of a conspiracy between the OPS and various Defendant Officers. To the extent that the allegations in paragraph 54 were meant to support a second conspiracy, that conspiracy claim is dismissed for failure to state a claim.  Because the remainder of the allegations supporting a conspiracy in Count IV clearly put Defendants on notice of Hobley's claims and comport with the basic pleading standards for a conspiracy as enunciated in *Walker*, 288 F.3d at 1007, the remainder of the § 1983 conspiracy claim will stand.

   3.     Absolute Immunity

In terms of immunity, Defendants limit their argument to one point: they argue that they are absolutely immune against any claims that they falsely testified that Hobley confessed or that they

---

   [19] Specifically, in the rest of the count, Hobley alleges that Defendants Burge, Lotito, Dwyer, Paladino, Garrity and Mikus reached an agreement to conceal the fact that Hobley had never confessed and had not failed the polygraph examination.  Defendants Burge, McWeeney, Paladino and other officers reached an agreement to, among other things, taint witness testimony, plant physical evidence at the scene of the crime, and conceal a fingerprint report.  These allegations clearly put Defendants on notice of Hobley's claims against them.

conspired to conceal that fact from the court.[20] Hobley agrees that he is not pursuing a claim against Defendants for any testimony they gave in court, properly acknowledging the Supreme Court's decision in *Briscoe v. LaHue*, 460 U.S. 325, 331-32 (1983) (holding that a witness who commits perjury is absolutely immune from civil liability). The parties' disagreement centers on Hobley's allegation that Defendants lied to the prosecutor about the non-existent confession. Defendants suggest that Hobley cannot avoid the immunity defense by including lying to a prosecutor in his claim that Defendants concealed information from the court. Hobley responds that Defendants cannot immunize their misconduct by later testifying about the false confession.

In *Ienco v. City of Chicago*, 286 F.3d 994 (7th Cir. 2002), the Seventh Circuit was faced with an argument similar to that posited by Defendants here. In that case, defendants claimed that their alleged perjury, both before and after the criminal trial proceedings, was protected as a matter of law. *Id.* at 1000. Although the Seventh Circuit agreed that police officers would be immune for claims for damages based on perjured testimony, it observed that the plaintiff in *Ienco* was not basing his claims on perjured testimony. Rather, just as in this case, Ienco alleged that the officers withheld exculpatory information and lied to the federal prosecutors who successfully indicted him. The Seventh Circuit explained that neither action is protected by absolute immunity. *Id.* It therefore held that "no absolute testimonial immunity attaches to the actions of officers outside of trial." *Id.* Defendants in this case similarly do not enjoy absolute immunity for fabricating evidence or for lying to the prosecutor so that constitutionally infirm proceedings would be initiated. As such, dismissal of Hobley's conspiracy claim based on absolute immunity is not warranted.

---

[20] Defendants admit that following the Seventh Circuit's decision in *Newsome v. McCabe*, they do not enjoy absolute immunity against Hobley's allegations that Defendants planted the gas can, withheld the fingerprint report, and assisted in tainting the testimony of witnesses. (Motion, at 20 n.5).

25

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Counts I (excessive force), II (failure to intervene), VII (battery), and IX (hate crime) are dismissed in their entirety as time-barred.

The remaining viable claims are as follows: Count III (§ 1983 due process); Count IV (§ 1983 conspiracy); Count V (conspiracy under Illinois law); Count VI (intentional infliction of emotional distress); Count VIII (false arrest); Count X (malicious prosecution); Count XI (respondeat superior); and Count XII (indemnification). Discovery should be directed at and tailored to the material issues relevant to these remaining claims. In light of the fact that this decision has narrowed the issues, the parties may seek to refine or revise their discovery plan. If need be, the parties should work with the Magistrate Judge to do so.

Finally, Defendants shall answer Hobley's complaint on or before June 30, 2004. The court status date of June 10, 2004 is vacated and re-set for July 15, 2004 at 10:30 a.m.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated     6/2/04

26