Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3678 | **DATE** | 7/30/2004 |
| **CASE TITLE** | Hobley vs. Burge, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, Defendant City of Chicago's Motion for Entry of Protective Order Concerning the Disputed Documents [247-1] is granted in part, and denied in part. The City's motion is denied, except as to documents SP 143682 and 143683. As to those two documents, a protective order is granted as set out in the Memorandum Opinion and Order. A protective order is further entered as set out in the Memorandum Opinion and Order regarding any of the disputed documents that disclose a social security number. Enter Memorandum Opinion and Order. *Geraldine Soat Brown*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 2 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 7/30/2004 | |
| | | 2004 JUL 30 PM 4:36 | date mailed notice | |
| GR | courtroom deputy's initials | | GR | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MADISON HOBLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 3678 |
| ) | |
| CHICAGO POLICE COMMANDER ) | |
| JON BURGE, et al., ) | Judge Marvin Aspen |
| ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. ) | |

# MEMORANDUM OPINION AND ORDER



Geraldine Soat Brown, Magistrate Judge,

This cause comes to be heard on Defendant City of Chicago's Motion for Entry of Protective Order Concerning the Disputed Documents. [Dkt 247.] For the reasons set out herein, that motion is granted in part and denied in part.

The parties to this lawsuit have for some time been negotiating a proposed protective order governing the use of confidential documents produced in discovery. This order does not relate to that effort. Rather, this order relates only to the so-called "disputed documents," which are the documents listed on Exhibit E to the City's Reply in Support of Cross-Motion for Protective Order (the "Privilege Log")[1] [dkt 136], which the City was ordered to produce by the Order entered on April 20, 2004 [dkt 158]. Specifically, on April 20, 2004, this court found that the City has waived

---

[1] The City submitted a second revised privilege log as Exhibit H to its Motion for Reconsideration. [Dkt 181.]

1

attorney-client privilege and work product protection and that no grand jury secrecy applied to the disputed documents, with one exception (SP 143687), and ordered that the documents listed on the Privilege Log (with the exception of SP 143687 and SP 150003-150138) be produced. District Judge Aspen overruled objections to that Order. [Dkt 221.] The City has produced the disputed documents to Plaintiff's counsel subject to an order limiting their dissemination to counsel of record in this case, to allow the City time to be heard on this motion. [Dkt 232.]

Protective orders are authorized by Fed. R. Civ. P. 26(c) "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). Obviously, the purpose of the present motion is not to prevent the discovery, because the disputed documents are already in Plaintiff's counsel's hands. The City now asks for a protective order limiting "the further use of the disputed documents in this litigation and the scope of their disclosure." (City's Mot. at 2.) Although the precise relief sought by the City is not spelled out, it appears that the City does not want the documents subject to public exposure. Specifically, it appears that the City wants any filing of the disputed documents to be under seal. Because discovery materials are not routinely filed in this District (*see* Local Rule 26.3), the context upon which one of the disputed documents might be made part of the public record would be as an exhibit to a motion or brief, or during a hearing or trial.

Plaintiff's counsel responds that a protective order must be based on " good cause shown." Fed. R. Civ. P. 26(c). The Seventh Circuit has reiterated that there is a presumption of public access to the materials that form part of the judicial decision making process. *Citizens First Natl. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999); *Baxter Intl. Inc. v. Abbott Laboratories*, 297 F.3d 544, 548 (7th Cir. 2002). There are exceptions to that presumption, but the

2

court must determine the appropriateness of sealing documents filed with the court. *Citizens*, 178 F.3d at 944.

Before turning to the documents at issue, it is important to note that the City has not argued that disclosure of any of the documents would endanger the safety or privacy of any person. However, from this court's review of the documents, it appears that social security numbers for certain persons appear on certain of the documents. *See, e.g.*, SP 143705, 143708, 143710-143723. This court has previously expressed its concern about the dissemination of social security numbers. *See, e.g.*, December 10, 2003 Order. [Dkt 80.] **Any social security numbers must be redacted on any of the disputed documents copied, filed, or shown to any one other than counsel of record in this case; any exception to the foregoing must be pursuant to court order obtained in advance of the copying, filing, or showing.**

Documents claimed to contain attorney-client privileged communications and/or work product.

The City continues to contend that the only relevant history regarding the disputed documents is the asserted inadvertent production to Plaintiff's counsel in January 2004. However, that is only a small piece of the picture here. Instead of addressing the unusual circumstances of this case, the City reasserts broad principles, such as the purpose of attorney-client privilege and the value of the work product protection. However, it is important to recall that, notwithstanding the City's assertion that "the privileged and/or confidential nature of the documents is readily apparent" (City's Mot. at 2), *there has never been a determination that any of the disputed documents are, in fact, privileged or work product.* See April 20, 2004 Order at 14 ("This is not a finding that any of the documents

3

were, in fact, entitled to attorney-client privilege or work product protection."). The finding that the City had waived any such objections obviated the need to make that determination. *Id.* at 14-15. The reason why the disputed documents were ordered to be produced was the finding that they had not been maintained confidential.

The City argues that disclosure to the public would destroy the concept of trust between the City officials and their counsel. (City's Mot. at 5.) However, the City has not denied that at least some of the disputed documents are among the 173,000 documents that the City produced to the Special Prosecutor, although the City's position as to which of the disputed documents were produced to the Special Prosecutor has shifted from time to time. Indeed, the reason why the disputed documents were gathered in the offices of the City's former counsel, Bates-stamped, and copied was for production to the Special Prosecutor. The City's motion fails to discuss in any way how that concept of trust between the City officials and their lawyers would be more eroded by public scrutiny than it was by production to the Special Prosecutor.

Turning to the documents at issue, the first group is a number of documents that the City describes as relating to the representation of former Police Superintendent Leroy Martin in *Wiggins v. Burge*, 93 C 199.[2] Those documents are described by the City as substantially consisting of drafts of Mr. Martin's answer to the complaint and handwritten notes created at various times between 1995 and 1999 by one or more Assistant Corporation Counsel. (City's Mot. Reconsideration, Ex. H at 1-4.) [Dkt 181.] The City or Mr. Martin would have a difficult time carrying the burden of proving attorney-client privilege or work product protection for those documents, had that issue been

---

[2] Specifically, those documents are SP 141783-85, 141841-904, 141967-142029, 142053-142115, 142116-23, 142192-98, 142199-03, 142204-08, and 142209-11.

4

reached. Nothing has been put forth by anyone, including Mr. Martin, about the specific circumstances in which the documents were created. There is more than one person's handwriting on the documents. SP 141785 is a page of notes that begins "meeting w/ Martin," but nothing in the record describes who was at the meeting. What the record does establish is that the documents have been in the custody of the law firm Hinshaw & Culbertson, with whom Mr. Martin never had any attorney-client relationship, for at least a year, and that at least some of them have been produced to the Special Prosecutor. The City has not demonstrated a need to keep those documents from public scrutiny.

SP 143677 is a cover letter conveying two public record documents. Likewise, SP 144050 is a cover letter conveying a "Citizens Alert" and a letter from former inmate Andrew Wilson which was passed on to the City's then-attorneys by an unnamed third party.[3] Those documents convey no confidential information, nor do they reflect confidential work product. It is not at all apparent that those documents would be deemed privileged or work product if that issue had been reached. There is no reason why the public could not see those documents.

SP 144826, 145107, 145336, 145180 and 145181 are unsigned, individual sheets of handwritten notes, in a variety of handwritings, apparently having something to do with the Evidence and Recovered Property Section ("ERPS"). The City acknowledges that it does not know the authors or the dates of those documents. (City's Mot. Reconsideration, Ex. H at 6-7.) Accordingly, the City

---

[3] The City's description of SP 144050 is more than a little disingenuous. The City describes that document as "correspondence . . . re status of capital cases/post conviction cases and Andrew Wilson request in litigation." (City's Mot. Reconsideration, Ex. H at 6.) In fact, the letter contains no discussion of the "status" of any cases, except to say: "We will continue to keep you updated as to the status of the capital cases. . . ." (*Id.*) The reference to Andrew Wilson is the enclosure of a letter that Mr. Wilson apparently sent to a number of lawyers seeking legal representation.

5

could not carry its burden of demonstrating attorney-client privilege or work product protection if that issue had been reached. The City has not demonstrated any need for protection of those documents from public scrutiny.

SP 145179 is a print-out of an e-mail from Lt. Ronald P. Sodini to Chief Assistant Corporation Counsel Jeffrey Given regarding "Inventories." It discusses the number of "inventories" ERPS had over a ten year period, certainly not a confidential piece of information. There is no discussion of why that information is being conveyed. The City has not demonstrated any need for protection of that document from public scrutiny.

SP 143682 and 143683, print-outs of e-mail correspondence between Corporation Counsel Mara Georges and Chief Assistant Corporation Counsel Jeffrey Given, present a more complex situation. Those documents bear specific authors, recipients and dates. They contain a candid exchange of views on a number of topics. Plaintiff argues that some of the content of at least one of those e-mails made its way into the public record when notes taken by another plaintiff's counsel (to whom the disputed documents were shown) were included as an exhibit to a filing in another case. The information in the notes then became the subject of a newspaper article. (Pl.'s Resp. at 6; Pl.'s Resp., Ex. A.) Notwithstanding that limited public disclosure, at this time it appears that the balance favors entry of a protective order regarding those two documents. SP 143682 and 143683 shall be retained "confidential" by Plaintiff's counsel and, if used as part of a filing submitted to the court, shall be filed in a separate envelope to be maintained under seal. At this time they shall be retained by counsel of record in this case, except to the extent that the parties have agreed to a sharing of discovery with counsel of record in the other cases brought against the City and Defendant Burge. If no agreement is reached, the issue of sharing those documents with that other

counsel may be revisited. They may be used for discovery purposes. Any limitation on their use at a hearing or trial must be ordered by the judge presiding at the trial or hearing.

### Cover letters to the Special Prosecutor.

The City's argument with respect to those documents is simply a repetition of its previously rejected assertion that all of the cover letters from its lawyers to the Special Prosecutor constitute matters subject to the grand jury secrecy protection. (City Mot. at 3, 6.) In fact, the City's use of the term "grand jury" in connection with those cover letters is a misnomer. The April 20, 2004 Order specifically exempted from production the single document among the disputed documents that in fact refers to a grand jury subpoena. April 20, 2004 Order at 20-21. None of the other cover letters refer to a "grand jury." As that Order pointed out, the City has failed to cite any authority extending grand jury secrecy retroactively to communications to the Special Prosecutor predating the impaneling of the grand jury. *Id.* at 20. In the absence of any such authority, this Court decided that the remainder of the cover letters were not subject to grand jury secrecy; the City's objections to that decision were overruled by the District Judge.

In the present motion, the City simply reargues its position that the cover letters to the Special Prosecutor are covered by grand jury secrecy, and once again has failed to provide any authority to support that position.[4] *See* City's Mot. at 6. The City has failed to show any authority or reason for protecting the cover letters from public scrutiny.

---

[4] *In Re Doe*, 537 F. Supp. 1038 (D.R.I. 1982), cited by the City (Reply at 4), is completely inapposite. In that case, the court denied a petition by a United States Attorney to disclose documents being held by the grand jury to the Attorney General of Rhode Island. Here, no one is seeking documents from the grand jury.

7

Enclosures with cover letters to the Special Prosecutor.

As described in the April 20, 2004 Order, attorney-client privilege or work product protection cannot be asserted as to documents that have been produced to the Special Prosecutor. Thus, for example, there is no work product protection remaining (if there ever was any) for the database printouts SP 143705-143723 and SP 143728-143767. The City raises no argument about those documents other than its previously rejected arguments regarding work product protection and grand jury secrecy. However, even if a document has been produced in response to a grand jury subpoena, that fact alone does not cast a veil of secrecy over that document. *See* April 20, 2004 Order at 19 (citing *Bd. of Educ., Community Unit School Dist. No. 200 v. Verisario*, 493 N.E.2d 355, 359 (Ill. App. 2d Dist. 1986) (citing *In re Grand Jury Investigation*, 630 F. 2d 996, 1000 (3d Cir. 1980)), *U.S. v. Stanford*, 589 F.2d 285, 290-91 (7th Cir. 1978)). The City's suggestion that the public should be denied access to documents that would otherwise be part of the public record simply because those same documents have been provided to the Special Prosecutor (or even the grand jury) finds no support in the law.

## Conclusion

For the foregoing reasons, the City's motion for a protective order is denied, except as to documents SP 143682 and 143683. As to those two documents, a protective order is granted as set out herein. A protective order is further entered as set out herein regarding any of the disputed documents that disclose a social security number.

IT IS SO ORDERED.

*Geraldine Soat Brown*
Geraldine Soat Brown
United States Magistrate Judge

July 30, 2004

8