# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3678 | **DATE** | 10/13/2004 |
| **CASE TITLE** | Madison Hobley vs. Burge, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)    ☐    Filed motion of [ use listing in "Motion" box above.]

(2)    ☐    Brief in support of motion due _____.

(3)    ☐    Answer brief to motion due_____. Reply to answer brief due_____.

(4)    ☐    Ruling/Hearing on _____ set for _____ at _____.

(5)    ☐    Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)    ☐    Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)    ☐    Trial[set for/re-set for] on _____ at _____.

(8)    ☐    [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)    ☐    This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)    ■    [Other docket entry]   Enter Memorandum Opinion and Order: Defendants' motion to dismiss (288-1) is granted in part and denied in part. However, in light of the fact that this decision has narrowed the issues upon which Hobley may base his claims, discovery should be directed at and tailored to the material issues relevant to the remaining claims. The parties should work with the supervision of the Magistrate Judge to do so.

(11)    ■    [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 13 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | rbf | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/13/2004 | |
| GL | courtroom deputy's initials | U.S. DISTRICT COURT | date mailed notice | |
| | | 2004 OCT 13 AM 10:31 | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MADISON HOBLEY,                              )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )      Case No. 03 C 3678
                                             )
CHICAGO POLICE COMMANDER                     )
JON BURGE, DET. ROBERT DWYER,                )
DET. JAMES LOTITO, DET. VIRGIL               )
MIKUS, DET. DANIEL McWEENEY,                 )
DET. JOHN PALADINO, SGT. PATRICK             )
GARRITY and THE CITY OF CHICAGO,             )
                                             )
                Defendants.                  )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Following our June 3, 2004 Memorandum Opinion and Order granting in part and denying in part the Defendants' motion to dismiss Plaintiff Madison Hobley's ("Hobley") complaint,[1] Hobley filed an amended sixteen-count complaint alleging various federal and state law claims against the City of Chicago and seven current and former members of the Chicago Police Department (collectively, "Defendants"). Presently before us is Defendants' motion to dismiss Counts III, VI, VII, VIII, IX, and X, and portions of Counts IV, V, XI, XII, and XIII of Plaintiff's amended complaint. For the reasons stated below, Defendants' motion to dismiss the amended complaint is granted in part and denied in part.

## I.     BACKGROUND

The following facts are taken from Hobley's amended complaint. For the purposes of a motion to dismiss, we accept all well-pleaded factual allegations of Hobley's Amended Complaint as true. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

---

[1]See *Hobley v. Burge*, No. 03-C-3678, 2004 WL 1243929 (N.D. Ill. June 3, 2004).

On January 6, 1987, a fire broke out in an apartment building on the south side of Chicago where Hobley lived with his wife and son. While he was walking down the hallway to investigate a sounding fire alarm, a glass partition exploded and prevented him from returning to his apartment to rescue his family. (Am. Compl. ¶¶ 12, 13.) Blocked by the fire, Hobley was able to crawl out the back stairway to escape the building. *Id.* ¶ 14. Ultimately, the fire claimed the lives of seven people, including Hobley's wife and son. Upon discovering that he survived the fire and his family did not, Defendant Officers[2] from the Chicago Police Department ("CPD") immediately concluded Hobley was responsible for setting the fire, and took Hobley "from his mother's home less than five hours after he escaped from the deadly fire." *Id.* ¶ 16. For the entire next day, Hobley was interrogated and tortured by detectives of the CPD's Area 2 Violent Crimes Detective Bureau ("Area 2"). *Id.* ¶ 17. Defendants Lotito and Dwyer beat Hobley, placed a plastic bag over his head until he lost consciousness, used racially offensive language, and threatened Hobley, in an attempt to coerce Hobley into confessing that he started the fire, but Hobley refused to confess. (Am. Compl. ¶ 18.)

Because the officers were unable to coerce Hobley into confessing, they fabricated an oral confession that they claimed Hobley gave on the day of the fire. *Id.* ¶ 20. Dwyer subsequently claimed that he threw away Hobley's written "confession" because it was supposedly rendered illegible after coffee spilled on it. *Id.* ¶ 22. All written documents created contemporaneously to the interrogation reflect Hobley's denials of involvement in the crime. *Id.* ¶ 21.

Hobley alleges one or more of the Defendant Officers conspired to plant physical evidence at the scene of the crime. A gasoline can, which had been logged in as evidence in an unrelated crime, was apparently taken from the CPD's Evidence and Recovered Property Section, and then "discovered" at

---

[2] Hobley uses the term "Defendant Officers" throughout his complaint and memoranda. We adopt the term and use it as Hobley uses it in his allegations. When specific actors are identified by Hobley, we will use the defendants' proper names.

Hobley's building fourteen hours after the fire. (Am. Compl. ¶ 24.) The planted can indicated no signs of surviving a fire, but it was nonetheless introduced as the can that was used to start the fire in Hobley's apartment building. *Id.* The Defendant Officers concealed information that the gas can was seized and then planted in Hobley's apartment building and also deliberately withheld a fingerprint report issued by the CPD crimes laboratory following testing conducted on the gasoline can. *Id.* ¶¶ 25-26.

Defendant Officers also produced two individuals who claimed to have seen Hobley purchase gasoline on the night of the fire. One witness was initially uncertain of his identification, and only after persistent and improper coercion from the Defendant Officers did the witness state that perhaps Hobley, who he had seen in a lineup, "favored" the man he saw purchase the gasoline. *Id.* ¶ 27. In exchange for testimony implicating Hobley, Defendant Officers and Defendant Commander Jon Burge apparently provided "assistance" to a second witness, who faced criminal problems of his own. (Am. Compl. ¶ 28.) Defendant Officers and Burge then withheld this information. Defendant Garrity and other Defendant Officers also falsely reported that Hobley had failed a polygraph examination. *Id.* ¶ 29. In his supervisory capacity, Defendant Burge personally knew about, facilitated, and condoned this pattern and practice of misconduct. Burge also failed to stop officers from torturing Hobley. *Id.* ¶¶ 30-32.

Thereafter, Hobley was convicted of arson and seven counts of murder, and sentenced to death. *Id.* ¶ 33. Hobley spent thirteen years on Death Row and over sixteen years in prison before the former Governor of Illinois, George Ryan, granted Hobley a full pardon on grounds of innocence. Hobley was released from prison on January 10, 2003. (Am. Compl. ¶¶ 4, 30.)

According to Hobley, the City of Chicago tolerated and even condoned the "systematic deprivation of due process" by police officers in Area 2, which resulted in the wrongful convictions of him and others. *Id.* ¶ 36. This "policy and practice" was used to "solve" crimes more expediently and to enhance officers' personal standing in the Department. Hobley's complaint alleges that the

3

methodology for depriving criminal suspects of due process was disturbingly uniform and involved concealing exculpatory information, planting evidence, manipulating witnesses, and fabricating incriminating evidence, including extracting false confessions through coercion and torture. *Id.* ¶¶ 37-46. There are up to one hundred victims of this practice, with at least thirteen ending up with Hobley on Death Row. *Id.* ¶ 39. With one exception, all of the victims were African American. (Am. Comp. ¶ 43.) All of the accused police officers are white. *Id.* ¶ 44. Due process violations by Area 2 police officers have resulted in reversed convictions, new hearings and trials, and at least a dozen civil lawsuits. *Id.* ¶¶ 45-46.

During the relevant time period, the CPD's Office of Professional Standards (OPS) failed to investigate many of the allegations of due process violations and rejected approximately 95% of the complaints of abuse that it did investigate. *Id.* ¶ 50. Hobley alleges that the failure of oversight and punishment is a pattern that continues to the present. (Am. Compl. ¶¶ 51-56.) In September of 1990, an OPS Investigator named Goldston concluded a study of allegations of constitutional violations in Area 2, finding that a preponderance of evidence indicated that systematic and methodical abuse had occurred over a ten year period and that particular command members were aware of and perpetuated the abuse. *Id.* ¶¶ 57-58. The Goldston Report constituted material exculpatory evidence for Hobley, which was suppressed until 1992, when District Judge Milton Shadur ordered that the report be unsealed. *Id.* ¶¶ 60-65. After the release of the Goldston Report, "re-investigations" were conducted on nine cases, finding the allegations to be credible and recommending discipline. However, in 1998, five years after the re-investigations, then-Police Superintendent Terry Hillard and his general counsel Thomas Needham made a secret decision to "shelve" the new OPS findings, thereby clearing all of the officers. *Id.* ¶¶ 67-72. These findings were withheld from Hobley as he litigated his post-conviction petition. (Am. Compl. ¶ 74-77.) Hobley's amended complaint notes that other than Burge, who was fired, and

4

two other officers who served suspensions, Chicago has never disciplined any police officer for any of the allegations of fabricated confessions and has indicated that it will not punish officers in the future. *Id.* ¶¶ 78-79.

In alleging damages, Hobley states that he has suffered enormously, including the loss of freedom and "almost-unimaginable indignities of prison and Death Row," all under the specter of an unjust death sentence. *Id.* ¶ 81. Hobley seeks compensatory damages, costs, and attorneys' fees, as well as punitive damages against each of the Defendant Officers in their individual capacities.

Hobley's amended complaint asserts sixteen counts, including federal claims brought under § 1983, § 1985(3), the RICO statute, and several state law claims. Defendants have moved to dismiss two counts in their entirety and portions of five counts as time-barred, and they move to dismiss four counts as insufficiently pled.

## II.     STANDARD OF REVIEW

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Therefore, a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Seventh Circuit has acknowledged, however, that "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense . . . ." *U.S. Gypsum v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (internal citation omitted). In *U.S. Gypsum*, the Seventh Circuit specifically cited to *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002) as "applying this principle to the period of limitations." *See also, e.g., Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892 (7th Cir. 2001) (affirming district court's dismissal of claims in the complaint as time-barred at the motion to dismiss stage).

# III. ANALYSIS

Defendants move to dismiss Hobley's amended claims for police torture/excessive force (Count IX) and failure to intervene (Count X), arguing that as re-pled, they are still time-barred. Defendants also move to dismiss Hobley's claims for violation of equal protection (Count III), conspiracy to violate equal protection (Count VI), § 1983 conspiracy (Counts IV and V), state civil conspiracy (Count XIII), intentional infliction of emotional distress (Count XII), and *Monell* Claim (XI) as time-barred to the extent that they are premised on excessive force and failure to intervene. Finally, the Defendants move to dismiss Hobley's claims for RICO violation (Count VII), RICO conspiracy (Count VIII), violation of equal protection (Count III), and conspiracy to violate equal protection (Count VI) as insufficiently pled. We address each of the Defendants' ground for dismissal separately.

## A. Statute of Limitations

### 1. Claims Brought under § 1983

The appropriate statute of limitations period for § 1983 claims is the limitations period for personal injury claims in the state in which the alleged violation occurred. *See Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, this is two years. *Id.* Federal law, however, determines when a § 1983 action accrues, which is generally "when a plaintiff knows or has reason to know of the injury that is the basis for the action." *See Sellers v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996).

#### a. Excessive Force

Count IX, brought under 42 U.S.C. § 1983, alleges that Hobley was subjected to excessive force, and specifically, police torture by Defendants Dwyer and Lotito, which was undertaken pursuant to the policy and practice of the Chicago Police Department. Defendants move to dismiss this count as time-barred. We grant the motion.

6

In our June 3 Order, we dismissed Hobley's excessive force claim as untimely. *Hobley v. Burge*, 2004 WL 1243929, *6 (N.D. Ill. June 3, 2004) ("*Hobley I*"). Our ruling was based upon the rule in *Heck v. Humphrey*, which states that if a judgment for a plaintiff on a § 1983 claim "would necessarily imply the invalidity of his conviction or sentence," the statute of limitations does not begin to run until the plaintiff's conviction or sentence has been favorably terminated; but if the plaintiff's action, even if successful, would not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the statute of limitations begins to run when the plaintiff knows or should have known that his constitutional rights had been violated. 512 U.S. 477, 486-87 (1992). We held that Hobley's claims of torture would not necessarily imply the invalidity of his conviction under *Heck* because, according to his own allegations, Hobley did not confess as a result of the torture; rather, the police fabricated a confession after they were unable to coerce one from him. *Hobley I*, 2004 WL 1243929, at *6. Success on a § 1983 claim of police torture before Hobley's pardon, therefore, would not have impugned the validity of his conviction because the police torture was independent of the confession, i.e., the confession would not have been nullified by success on the § 1983 action and could still have been admitted at trial to convict Hobley. *Id.*

Following our ruling, Hobley amended his complaint, re-pleading his excessive force claim. Defendants have moved to dismiss this amended claim on the grounds that it is still time-barred. Hobley's amended complaint and response to Defendants' motion to dismiss argues that he now has a timely claim for excessive force based on a new theory: although Hobley avers that he was tortured but did not confess (Am. Compl. ¶ 19), a jury in this case might ultimately find that there was a confession coerced through police torture, crediting testimony by the Defendants that Hobley did confess, but also crediting Hobley's testimony that he was tortured. (Pl.'s Resp., at 2-3.) This possible finding is

supported by the key fact, says Hobley, that the Defendants claimed all the way through Hobley's criminal trial that he had confessed. *Id.* at 2. Under such a scenario, Hobley argues, his excessive force claim would be timely because the allegation of police torture would invalidate the confession and therefore the conviction, per *Heck*.

To find the excessive force claim timely under Hobley's theory, the court must accept Hobley's pleaded fact that he was tortured as true, while finding that his pleaded fact that he did not confess is false. That is not the law. When we accept, as we must under *Jang v. Miller*, all of Hobley's well-pleaded facts as true and draw inferences in Hobley's favor, we accept, as Hobley pleads, that he was tortured and that he did not confess to the torture. 122 F.3d at 483. A plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in the complaint. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998). Under the facts pled in the amended complaint, Hobley has admitted the ingredients for a statute of limitations defense with regard to his excessive force claim, and therefore, his claim must be dismissed as untimely.

It is true, as Hobley asserts, that a motion to dismiss should not be granted unless "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the court need "not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint." *Coates v. Illinois State Bd. Of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977). Hobley's complaint does not assert the set of facts that he argues would entitle him to relief. Indeed, his allegations directly contradict the fact—that the torture coerced the confession—that may entitle him to relief.[3]

---

[3]We consider the possibility that Hobley intends to assert contradictory statements of facts in his complaint regarding whether his confession was coerced. Although a pleader may assert contradictory statements of fact, and thereby survive a motion to dismiss, he may do so only when legitimately in doubt about the fact in question. *American Int'l Adjustment Co. v. Galvin*, 85 F.3d 1455, 1461 (7th Cir. 1996); *Great Lakes Higher Ed. Corp. v. Austin Bank of Chicago*, 837 F. Supp.

Even if we were to accept Hobley's theory of pleading and treat a coerced confession as a possible "fact" that would be found by a jury, we would still hold that the statute of limitations bars Hobley's claim for excessive force. In our June 3 Order, we noted that even assuming that the confession was coerced by police torture, a successful § 1983 action on excessive force would not have necessarily implied the invalidity of Hobley's conviction because there was evidence presented at trial that did not stem from the police torture, including eyewitness testimony and physical evidence. *Hobley I*, 2004 WL 1243929, at *6. This was an additional reason for holding that *Heck*'s tolling provision did not apply to Hobley's excessive force claim and that the statute of limitations had run. Hobley asks us to reconsider this holding because the decision was based on "the mistaken factual premise" that there was other evidence implicating Hobley. Hobley argues that there was no evidence of Plaintiff's guilt, other than the confession, because all of the other evidence was a product of Defendants' "complained-of malfeasance." In the absence of "any other evidence," therefore, Hobley's torture allegation would have nullified his confession, and therefore, implied the invalidity of his conviction. However, the "other evidence" that was used to convict Hobley, although it may have been a result of truly detestable police conduct, was not a result of the use of excessive force under Hobley's allegations. This other evidence, such as the allegedly improperly induced false testimony of witnesses and planted gas can, would not have been nullified by a successful § 1983 action challenging the use of excessive force under *Heck*. In light of this other evidence, we cannot conclude that, even assuming an nullified confession, that his excessive force claim would have necessarily invalidated his conviction.

Hobley cites two cases, which he argues support his contention that other fabricated evidence should not prevent an excessive force claim from being tolled under *Heck*: *Patterson v. Burge*, No. 03-C-

---

892, 894 (N.D. Ill. 1993). Hobley has personal knowledge as to whether he coerced into confessing and has asserted he was not. Therefore, he is not legitimately in doubt about the fact in question and may not rest the survival of his claim upon a contradicting statement of fact.

4433, 2004 WL 1764520 (N.D. Ill. 2004) and *Johnson v. Riverdale*, 192 F. Supp. 2d. 874, 876-77 (N.D. Ill. 2002). Hobley contends that these cases support the notion that in cases involving coerced confessions and other evidence, tolling under *Heck* may apply if the other evidence is tainted. However, in *Johnson*, in allowing tolling under *Heck*, the court specifically noted that "there was no evidence other than the coerced confession that could arguably connect Johnson to his mother's murder." 192 F. Supp. 2d at 876. In *Patterson*, the court found that "Patterson's conviction rested almost entirely on his involuntary confession, and at most on his involuntary confession plus the coerced testimony of a 16 year-old girl." 2004 WL 1764520 at *15. The court noted that the 16 year-old girl's testimony was "procured by defendants' intimidation and that she recanted that testimony more than once." *Id.* As we read the *Patterson* decision, it does not, as Hobley suggests, disregard other incriminating evidence in applying *Heck* if it has been alleged to be manipulated; it simply finds on its own facts that the evidence outside of an invalidated confession would not have been enough to support a conviction. In Hobley's case, there was enough evidence outside of the confession, which would have supported a conviction, and, thus, it is distinguishable.

### b.     Failure to Intervene

Count X avers that Defendants failed to intervene to prevent violations of Hobley's constitutional rights. Defendants move to dismiss this count as time-barred. Because Hobley's original complaint alleged Defendants' failure to intervene to prevent the use of excessive force and police torture, we held that the statute of limitations began to run on this claim at the same time as the excessive force claim, and, thus, it was similarly time-barred under *Heck. Hobley 1*, 2004 WL 1243929, at *6. Defendants have moved to dismiss Hobley's re-pled failure to intervene claim, arguing that it is still time-barred because it is premised on the untimely excessive force claim. Hobley's amended complaint alleges and his response to the motion to dismiss clarifies, however, that his re-pled claim relates to the failure to

10

prevent any of the alleged constitutional violations, including those occurring post-arrest and through his trial and appeals.[4] (Am. Compl. ¶ 162-63, Pl.'s Resp. at 6.) As re-pled, the failure to intervene claim does not "admit the ingredients," for a statute of limitations defense because it now encompasses timely actions, and it therefore, survives a motion to dismiss. *See U.S. Gypsum*, 350 F.3d at 626.

However, to the extent that this claim is premised on the time-barred excessive force claim, it remains time-barred under *Hobley I*. The function of the statutes of limitations is "to pull the blanket of peace over acts and events which have themselves already slept for the statutory period, thus barring proof of wrongs imbedded in time-passed events." *Scherer v. Balkema*, 840 F.2d 437, 440 (7th Cir. 1988) (citing *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 72 (9th Cir. 1979) (quoting *Poster Exch., Inc. v. National Screen Serv. Corp.*, 517 F.2d 117, 127 (5th Cir. 1975). Having found that Hobley's claim for excessive force is barred under the statute of limitations, and that the *Heck* exception does not apply, it is logical that the failure to intervene claim to the extent it is premised on the same actions must be barred, or else the purposes of the statute of limitations would be nullified.

      c.      § 1983 Conspiracy

Count IV alleges a § 1983 conspiracy to deprive Hobley of his constitutional rights, which is alleged to have involved an agreement to violate the due process rights of criminal suspects. Count IV further avers that Defendants and others contributed to the conspiracy to deprive constitutional rights by intentionally concealing exculpatory information, which would have enabled Hobley to challenge his conviction. Count V alleges a § 1983 conspiracy between Defendants and OPS to suppress evidence

---

[4] We note that Defendants' reply brief does not reassert their contention that the failure to intervene claim is time-barred, nor did it respond to Hobley's argument that the claim has been expanded to encompass timely allegations.

11

of due process violations. Defendants move to dismiss these two conspiracy counts to the extent that they are premised on time-barred excessive force and failure to intervene claims. We grant the motion.[5]

In our June 3 Order, we held that Hobley's § 1983 conspiracy claims based on his timely false arrest and due process claims are timely, while his conspiracy claims deriving from the time-barred excessive force and failure to intervene claims are likewise time-barred. *Hobley I*, 2004 WL 1243929 at *12. This is because the accrual of a civil conspiracy claim begins when "plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action," and thus the timeliness analysis for accrual of conspiracy actions is the same as that for the underlying acts. *See id.* at *8 (citing *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)).

In Hobley's amended complaint, he has re-pled his § 1983 conspiracy claims as conspiracies to "deprive plaintiff's constitutional rights." His claim alleges an agreement to violate the due process rights of criminal suspects through concealing exculpatory information, planting evidence, manipulating witnesses, and fabricating incriminating evidence, "including but not limited to the extraction of false confessions through torture." We agree with the Defendants that Hobley's conspiracy claims rely in part on his claim of police torture, and we agree that Hobley may not revive his time-barred excessive force claim and failure to intervene claim, to the extent that it is still time-barred, in this manner.

The Seventh Circuit has adopted the rule that "plaintiffs in civil conspiracy actions [may] recover only for overt acts alleged to have occurred within the applications limitations period." *See Scherer v. Balkema*, 840 F.2d 437, 440 (7th Cir. 1988). In adopting this rule, the Seventh Circuit quoted the Second Circuit's reasoning in *Singleton v. City of New York*:

---

[5] We clarify that to the extent that we now hold that Hobley's amended failure to intervene count is now timely, we hold that any conspiracy claim that is premised on that claim should be considered timely.

12

> [T]he crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time bar, which is to preclude the resuscitation of stale claims. The existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether that act is labeled as a tort or a violation of § 1983.

632 F.2d 185, 192 (2d Cir. 1980).

This is directly applicable to the present case.[6] Hobley's § 1983 conspiracy claims are based on an alleged conspiracy to "'railroad' criminal suspects," and are supported by overt acts including: concealing exculpatory information, planting evidence, manipulating witnesses, and fabricating incriminating evidence, including extracting false confessions through torture. Based upon the rule announced in *Sherer*, Hobley may not recover for the untimely overt acts of excessive force by asserting that they are part of series of separate wrongs in forming a conspiracy.[7]

Defendants also argue that to the extent that Hobley attempts to base his conspiracy claims on the experiences of others, including their coercive interrogations, he has no standing to do so. Hobley

---

[6]*Sherer* involved a civil conspiracy action brought under *Bivens*, rather than § 1983. However, its analysis of the accrual of civil conspiracy claims applies equally to § 1983 actions against state actors. *See, e.g., Wilson v. Giesen*, 956 F.2d at 740; *Day v. Conwell*, 244 F. Supp. 2d 961, 963 (N.D. Ill. 2003).

[7]Hobley argues that the "it is well-established that all of the overt acts need not be timely so long as at least some of the actionable part of the conspiracy is timely." He cites three cases in support of this proposition. The two cases that Hobley cites from the Seventh Circuit are not on point because those cases involve criminal conspiracy actions, not civil. The rule for accrual of criminal conspiracy prosecutions is not the same as that for civil conspiracy actions. *See generally* When Does the Statute of Limitations Begin to Run Against Civil Action or Criminal Prosecution for Conspiracy, 62 A.L.R. 2d 1369, § 11 (2004). Hobley also cites a Tenth Circuit case, *Robinson v. Maruffi*, 895 F.2d 649. That case does support Hobley's argument with regard to civil conspiracy actions, but we believe that on the basis of *Scherer*, our Circuit would disagree with the holding in that case. *See* 62 A.L.R. 2d 1369, § 11. (recognizing the disagreement among courts on the accrual of civil conspiracy actions).

13

did not respond to this argument. In his response, Hobley agreed with the Defendants' characterization of his claim as a "massive conspiracy to frame criminal suspects." (*See* Pl.'s Resp. at 8.) His allegations suggest that he does wish to substantiate his conspiracy claim with the experiences of other criminal suspects. (*See* Am. Compl. ¶ 106.) However, it is a basic principle of standing that a Plaintiff cannot recover for alleged wrongs suffered by others. *See, e.g., Daniels v. Southfort*, 6 F.3d 482, 484 (7th Cir. 1993) (holding that a plaintiff does not have standing to complain about the Fourth Amendment injuries to others) (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)). This applies equally in the context of § 1983 conspiracy claims. *See, e.g., Russ v. Watts*, 190 F. Supp. 2d 1094, 1104 (N.D. Ill. 2002). Therefore, we agree with Defendants that to the extent that Hobley's conspiracy claim is based on the experiences of other criminal suspects, he has no standing to bring such a claim.

### d.    *Monell*

Count XI[8] of Hobley's amended complaint alleges a *Monell* claim in that the CPD had a policy and practice which acquiesced in, encouraged, and facilitated constitutional violations and withholding exculpatory information. A *Monell* claim is an action for municipal liability when alleged violations occur as a result of city policy or practice. *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). A *Monell* claim is brought under § 1983 and is therefore governed by the accrual rule governing all § 1983 actions that we have previously discussed. *See, e.g., Forsythe v. State*, No. 96-C-1151, 1996 WL 111933 (N.D. Ill. Mar. 16, 1996). The plaintiff has two years from the time that the plaintiff "knows or should know that his or her constitutional rights have been violated." *Wilson*, 956 F.2d at 740. The Second Circuit has held, however, that with respect to a *Monell* claim, "a cause of action against a municipality does not necessarily accrue upon the occurrence of a harmful act,

---

[8]Hobley's amended complaint labels this claim Count IX, but this appears to be a typographical error, so we refer to his Monell claim as Count XI.

but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'" *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995).

As applied to Hobley's case, to the extent that he asserts a *Monell* claim based on his coercive interrogation, his action will be deemed to have run from the time of the incident. The rule announced by the Second Circuit in *Pinaud* may delay the accrual of his *Monell* claim, but it does not avail him. Hobley's allegations indicate that the Police Department's use of "systematic abuse" was brought to light in 1992, when the Goldston Report was unsealed (Am. Compl. ¶ 65), and at the latest, in 1999, when the findings of investigations into allegations into police torture were exposed. *Id.* ¶ 75. In either case, the statute of limitations of two years has run. Based on the foregoing analysis, we conclude that to the extent Hobley's *Monell* claim is based on excessive force or failure to intervene to prevent excessive force, it is thus time-barred.[9]

### e.      Equal Protection and Conspiracy to Violate Equal Protection

Defendants have moved to dismiss Hobley's equal protection (Count III) and conspiracy to violate equal protection (Count VI) claims as untimely to the extent that they are premised on time-barred allegations of excessive force.[10] It is unclear from Hobley's amended complaint if he intends to premise his equal protection claim on allegations of excessive force, and Hobley did not respond to this portion of the motion. Like the § 1983 failure to intervene and conspiracy claims discussed above, an equal protection claim is subject to the same timeliness analysis that all § 1983 actions are, as well as to the *Heck* analysis. *See, e.g., Lucien v. Jockish,* 133 F.3d 464, 467 (applying the Illinois two year

---

[9]We note that to the extent Hobley's *Monell* claim is based on his timely allegations, it remains timely.

[10]Defendants have also moved to dismiss these claims in their entirety for failure to state a claim. We address that motion in Section III.B.2.

statute of limitations for personal injury suits to plaintiff's § 1983 equal protection claim); *Rogers v. Illinois Dep't of Corrections*, 160 F. Supp. 2d 972, 977 (applying *Heck* to a § 1983 equal protection claim). Where there is a series of acts, some of which are time-barred and some of which are not, a plaintiff may not assert a § 1983 equal protection claim for the time-barred allegations. *See, e.g., Garrison v. Burke*, 165 F.3d 565, 571 (7th. Cir. 1999) (evaluating only those alleged actions that were within the limitations period in assessing a § 1983 equal protection claim). Based upon our foregoing analysis, to the extent that his equal protection claim is premised on excessive force, it is time-barred. To the extent that Hobley's equal protection claim is premised on timely allegations, it is still viable.

### 2. State Law Claims

#### a. Intentional Infliction of Emotional Distress

Count XII of Hobley's amended complaint alleges a state law claim for intentional infliction of emotional distress (IIED). Defendants move to dismiss this count to the extent that it is now premised on excessive force and failure to intervene. Defendants argue that an IIED claim cannot be utilized "as a vehicle for litigation of his excessive force and failure to intervene claims," which are untimely. (Def.'s Mot. at 9.) To the extent that we have held that Hobley's amended failure to intervene count is now timely, an IIED claim that is premised on that claim for failure to intervene is similarly timely. To the extent that Hobley's IIED claim is premised on his time-barred excessive force and failure to intervene, we agree that it is similarly time-barred and grant the motion.

In our June 3 Order, we held that Hobley's IIED claim was timely. *Hobley I*, 2004 WL 1243929, at *9. This was based on the fact that courts in our district have consistently held that the statute of limitations on an IIED claim does not begin to run until the state criminal proceedings are terminated. *See id.* at *9 (citing cases). In each of the cases we cited, the IIED was found to be timely because it was

16

based on conduct that was the same as that contained in the plaintiff's timely malicious prosecution claim. *See, e.g., Bergstrom v. McSweeney*, 294 F. Supp. 2d 961, 969 (N.D. Ill. 2003) ("As Bergstrom's intentional infliction of emotional distress claim incorporates the conduct underlying his malicious prosecution claim, the cause of action did not accrue until the state criminal proceedings against him were terminated); *Evans v. City of Chicago*, No. 00-7222, 2001 WL 1028401, at *14 (N.D. Ill. Sept. 6, 2001) (Plaintiff's IIED claim incorporates the same conduct of the Officers that supports his remaining malicious prosecution claim and thus accrues at the same time.); *Treece v. Village of Naperville*, 903 F. Supp. 1251, 1259 (N.D. Ill. 1995) ("As with malicious prosecution claims, the clock did not start running on plaintiff's IIED claim until the state criminal proceedings were terminated."). Like the plaintiffs in these cases, Hobley has stated a timely claim for malicious prosecution.

In cases analogous to ours, where a plaintiff has alleged IIED not only for malicious prosecution but also for events at the time of arrest, the IIED claim has been held to be timely. *Santiago v. Marquez*, No. 97-2775, 1998 WL 160878, at *3 (N.D. Ill. Mar. 31, 1998) ("The intentional infliction of emotional distress claim, which re-alleges not only the wrongful arrest and beating but all of the events by which the Police Defendants sought to cover up the beating up to and including the false charges and the malicious prosecution, did not accrue...until the state criminal proceedings were terminated in Santiago's favor."); (N.D. Ill. Sep. 6, 2001); *Pierce v. Pawelski*, No. 98-3337, 2000 WL 1847778, at *3 (N.D. Ill. Dec. 14, 2000) ("Pierce's IIED claim is based not just on the events occurring on the day of his arrest, but on defendants' participation in his wrongful prosecution and their allegedly false testimony at trial. Accordingly, the IIED claim did not accrue until Pierce's trial concluded and he was acquitted."). These cases did not address the particular issue in our case of whether the IIED claim is timely as to all underlying events or only as to the timely underlying events. Under the logic of these cases, however,

the IIED claim is timely based on conduct underlying the timely malicious prosecution action.[11]  We believe that based on the principles announced in these cases and the purposes of statute of limitations rules, a plaintiff may not assert untimely excessive force claims as part of an IIED claim.  We agree with the Defendants that an IIED claim may not be used to resuscitate time-barred claims, as this would sidestep the purposes of a statue of limitations rule, which is "to pull the blanket of peace over acts and events which have themselves already slept for the statutory period."  *Scherer v. Balkema*, 840 F.2d at 440.

   b.      **State Law Conspiracy**

   Defendants have moved to dismiss Count XIII, Hobley's state law claim for civil conspiracy to the extent that it is premised on untimely excessive force and failure to intervene.  We grant the motion.  Hobley's claim for civil conspiracy under state law alleges "a conspiracy to maliciously prosecute and a conspiracy to inflict emotional distress via police torture."  (Am. Compl. ¶ 179.)  The timeliness analysis that we described above with respect to § 1983 conspiracy claims applies with equally to the state civil conspiracy action.  Thus, the timeliness of the state conspiracy claim depends on the timeliness of the underlying claim.  Because Hobley's IIED claim is time-barred to the extent that it is premised on his time-barred excessive force claim, the state conspiracy claim premised on IIED is similarly time-barred to the extent that it is premised on time-barred excessive force and failure to intervene.

_____

   [11]Hobley has cited *Castillo v. Zuniga* as support for the proposition that Illinois law permits an IIED claim to be based partly on allegations of excessive force even though the excessive force claim is itself time-barred.  This is not correct.  *Castillo* states specifically that the plaintiff's IIED claim incorporates the same conduct as the malicious prosecution claim and, for that reason, is timely.  2002 WL 398519, at *12.

## B.  Failure to State a Claim

### 1.  RICO and RICO Conspiracy

Counts VII and VIII allege violations of RICO and RICO conspiracy, respectively, averring that Defendants agreed to and conducted a pattern of racketeering activity, including obstructing state and local criminal investigations, committing perjury, tampering with witnesses and otherwise covering up their misconduct in working to obstruct justice and procure false convictions, through the CPD as an enterprise. Defendants move to dismiss these counts for failure to state a claim. We grant the motion.

The Racketeer Influenced and Corrupt Organizations Act (RICO) makes it unlawful for any person employed by or associated with any enterprise to conduct the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). A "pattern of racketeering activity" is defined as the commission of at least two of the predicate acts identified in 18 U.S.C. § 1961(1), which includes (A) specified state crimes and (B) indictable federal offenses under specified federal provisions. 18 U.S.C. 1961(1)(A), (B). Defendants argue that the only predicate acts that the Plaintiff's allegations can be read to implicate are those that fall under the federal obstruction of justice offenses listed in 18 U.S.C. § 1961(1)(B).[12] In order to be actionable, these offenses must be committed in connection with federal proceedings. *See, e.g., Pettiford v. Sheahan*, No. 02-C-1777, 2004 WL 626151, *12 (N.D. Ill. 2004). Because the alleged activity implicates only a state internal investigation, the Defendants contend, Hobley fails to sufficiently allege at least two predicate acts to support a pattern of racketeering activity.

---

[12]Defendant's motion to dismiss lists four possible predicate acts implicated by Hobley's complaint from 18 U.S.C. § 1961(1)(B): 18 U.S.C. § 1503 (influencing an officer or juror), § 1510 (obstruction of criminal investigations, § 1512 (tampering with a witness, victim, or informant), § 1513 (retaliating against a witness, victim, or informant).

Hobley's complaint specifies that the predicate acts which form the basis of his RICO and RICO conspiracy claims "include but are not limited to using their official positions to obstruct state and local criminal investigations, commit perjury, tamper with witnesses (including the inducement of witnesses to give false statements), and otherwise cover up their misconduct in working to obstruct justice and procure false convictions." (Am. Compl. ¶ 143.) His response to Defendant's motion to dismiss clarifies his position that five predicate acts alleged in the complaint support his RICO claim: (1) conspiring to plant a gas can at the scene of the fire to produce false evidence of Plaintiff's guilt; (2) withholding an exculpatory fingerprint report; (3) coercing a witness to falsely identify Hobley; (4) physically torturing Hobley and then fabricating a false confession; and (5) physically torturing other individuals in an attempt to coerce false confessions (Pl.'s Resp., p. 14). Hobley claims that these acts fall under the obstruction of justice offenses prohibited by 18 U.S.C. § 1512(b)(1), (b)(2), and (c), which relate to tampering with witnesses or evidence with intent to obstruct "an official proceeding." He agrees that "official proceeding" means federal proceeding under these provisions but contends that he meets the federal proceeding requirement. In support, he states that Defendants' actions "concealed evidence from people litigating any number of federal civil lawsuits and federal habeas petitions brought by Defendants' victims." (Pl.'s Resp., p. 14.) In a footnote, Hobley adds that Defendants thwarted an FBI investigation of allegations of torture of another arrestee in custody and prevented federal prosecutors from instituting federal criminal charges through their cover-up of Hobley's and other victims' cases (Pl.'s Resp. p. 14, n.6.) These allegations, however, are not sufficient to satisfy the official proceeding requirement of 18 U.S.C. § 1512(b)(1), (b)(2), and (c), and therefore we grant the Defendants' motion to dismiss Hobley's RICO claim as a matter of law.

"Official proceeding" for the purposes of 18 U.S.C. § 1512 is defined as a proceeding before (a) a judge or court of the United States, a U.S. Magistrate Judge, a Bankruptcy judge, a judge of the U.S.

Tax Court, a special trial judge of the U.S. Tax Court, a judge of the United States Court of Federal Claims, or a federal grand jury; (b) a proceeding before Congress; or (c) a proceeding before a federal government agency which is authorized by law. 18 U.S.C. § 1515. The potential federal civil lawsuits, federal habeas petitions, or federal criminal case[13] that Hobley mentions would fit this definition, but that does not end our inquiry. Although Hobley correctly points out that 18 U.S.C. § 1512 does not require that a federal proceeding be pending or about to be instituted, it does require that the defendant *feared* that a federal proceeding had been or might be instituted and had a *corrupt purpose and intent* to undermine, subvert, or impede the federal proceeding by his actions. *See United States v. Arthur Andersen, LLP*, 374 F.3d 281, 298 (5th Cir. 2004); *United States v. Morrison*, 98 F.3d 619, 630 (D.D.C. 1996). While the specific allegations that Hobley directs us to in his complaint–conspiring to plant evidence, withholding a fingerprint report, coercing a witness to falsely testify, and fabricating a confession–may support an obstruction of justice claim, they do so only with respect to Hobley's state criminal proceedings, and not to any federal proceeding.

That these actions may have had the later effect of concealing evidence from use in other victims' federal civil lawsuits or federal habeas petitions does not save Hobley's RICO claim. There is no allegation that Defendants' purpose and intent in tampering with the evidence and witness in Hobley's case was to obstruct these potential later federal proceedings, nor could it be logically inferred from the allegations in the complaint that it was. Hobley admits that "[Defendant's] primary objective may have been to obtain Plaintiff's wrongful conviction [in state court]." He argues, however, that "to

---

[13]The FBI investigation that Hobley mentions, however, would not satisfy 18 U.S.C. § 1512's requirement. Even assuming that the Defendants' actions in Hobley's case were related to a prior FBI investigation into another arrestee's complaint four years before his arrest, FBI investigations are not included within the definition of official proceedings provided by § 1515(a)(1). *See U.S. v. Gabriel*, 125 F.3d 89, 105 n.13 (2d Cir. 1997).

be successful, [Defendants'] scheme had to evade both the scrutiny of federal prosecutors and the eyes of federal habeas judges." (Pl.'s Resp. at p. 14.) This merely alleges that some potential future federal proceedings may have been adversely effected by Defendants' scheme; it does not allege that Defendants' scheme was in contemplation of such federal proceedings and for the purpose of undermining a federal proceeding.

In order to sufficiently allege a RICO conspiracy, a plaintiff must sufficiently allege RICO predicate acts. *Goren v. New Vision Int'l Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). Because we are dismissing Hobley's RICO claim for failure to sufficiently allege predicate acts, his RICO conspiracy claim is dismissed for the same reasons.

### 2. Equal Protection and § 1985(3) Conspiracy to Violate Equal Protection

Hobley seeks relief for violation of equal protection under 42 U.S.C. § 1983 (Count III) and conspiracy to deprive equal protection under 42 U.S.C. § 1985(3) (Count VI). He alleges that Defendants "actively participated in or personally caused misconduct in terms of 'framing' minority criminal suspects in a manner designed to secure improper convictions." (Am. Compl. ¶ 99.) He further alleges that, "Said misconduct was motivated by racial animus and constituted purposeful discrimination; it also affected minorities in a grossly disproportionate manner vis-a-vis similarly-situated Caucasian individuals." *Id.* More specifically, Hobley provides a list of 69 individuals, including himself, who were alleged victims of serious police misconduct. *Id.* ¶¶ 40-41. He contends that all but one of the alleged victims are African-American, while all the accused police officers are white. *Id.* ¶¶ 43, 44.

In their motion to dismiss, Defendants contend that the Hobley's equal protection claims are deficient. The defendants argue that, aside from the aforementioned statistics, the Hobley's pleading

22

makes no "contention that [the] alleged misconduct was motivated by any animus against [him] because he is African-American." (Mot. to Dismiss, at 13.) They add that "[i]t is not sufficient that a defendant's actions are disproportionately carried out against African-Americans unless the specific misconduct at issue was motivated by racial animus." The issue before us is therefore whether Counts III and VI are sufficiently well-pled to survive dismissal. We hold that they are and, therefore, deny the motion to dismiss.

"A plaintiff raising a claim under § 1983 alleging racial discrimination must allege purposeful discrimination." *Majerske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). A plaintiff raising a claim for conspiracy to violate equal protection must allege (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of [the] equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to [a] person or property or a deprivation of a right or privilege granted to U.S. citizens. *Id.* With respect to a conspiracy to violate equal protection, the Supreme Court has noted that "in order to prove a private conspiracy in violation of the first clause of §§ 1985(3), a plaintiff must show, *inter alia* ... that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (citing *Griffin v. Breckenridge*, 403 U.S. 88 (1971)). The point of contention is whether Hobley has duly alleged purposeful discrimination by alleging that Defendants were motivated by racial animus.

In his pleadings, the Hobley duly claims that the Defendants' actions were motivated by racial animus. It is true that his complaint relies primarily on statistics, which are disfavored as *per se* evidence of discriminatory intent. *Chavez v. Illinois State Police*, 251 F.3d 612, 647-48 (7th Cir. 2001). Ordinarily, a plaintiff cannot prevail by simply alleging that a defendant's actions

23

disproportionately affected a protected class, as "[d]isparate impact alone does not satisfy the pleading requirements for either § 1983 or § 1985(3)." *Majerske,* 94 F.3d at 311.

Nevertheless, the Supreme Court has recognized that "rare cases [have arisen where] a statistical pattern of discriminatory impact demonstrated a constitutional violation" because it led to the "irresistible" conclusion "that the State acted with a discriminatory purpose." *McCleskey v. Kemp,* 481 U.S. 279, 294 (1987). Assessed merely on the pleadings, the instant case meets this standard, as the plaintiff contends that "[o]f all the 100+ examples of Area 2 police torture cases known to date, all of this torture was reserved (with only one exception) exclusively for black suspects, and all of the torturers were white." (Pl's Resp. at 12.) Accordingly, we find that Hobley has satisfactorily alleged the element of discriminatory intent.

Insofar as the Hobley's statistics alone do not suffice as "proof of a constitutional violation," we find that he would still prevail because he "presents sufficient non-statistical evidence to demonstrate discriminatory intent." *Chavez,* at 648. The plaintiff alleges that he was tortured by white police officers, who "used racially offensive language" and threatened him. (Am. Comp. ¶ 18.) "[R]acially derogatory language . . . is strong evidence of racial animus." *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000). Hence, we also find that the complaint has advanced sufficient non-statistical evidence to satisfactorily allege purposeful discrimination.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Count IX (excessive force) is dismissed as time-barred. Count VII (RICO) and Count VIII (RICO conspiracy) are dismissed as insufficiently pled. We deny the motion to dismiss Counts X (failure to intervene), IV and V (§ 1983 conspiracy), XI (*Monell*), III (equal protection), VI (conspiracy

24

to deprive equal protection), XII (IIED), and XIII (state civil conspiracy). These counts remain viable claims to the extent provided in this opinion. However, in light of the fact that this decision has narrowed the issues upon which Hobley may base his claims, discovery should be directed at and tailored to the material issues relevant to the remaining claims. The parties should work with the supervision of the Magistrate Judge to do so.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 10/13/04