# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3678 | **DATE** | 11/16/2004 |
| **CASE TITLE** | Madison Hobley vs. Jon Burge, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, the Plaintiff's Fifth Motion to Compel [249-1] is granted in part and denied in part. The City shall produce the following documents to Hobley's counsel within 7 days of this order: SP 124301; SP 124309; SP 124311-124323; SP 123784-123796; SP 123761; SP 129532-129537; SP 132981-132989; SP 133043-133044. The City's counsel may designate documents in good faith "confidential," and such "confidential" documents will be held "attorneys' eyes only" for review by counsel of record in this case only, pending the entry of the final protective order. The City and its present counsel are hereby ordered to produce to Hobley's counsel any documents that the City has withheld on the basis of privilege or work product protection that are subsequently produced to the Special Prosecutor, whether by agreement or pursuant an order of the Circuit Court. This is a continuing duty.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 17 2004 | |
| | Notified counsel by telephone. | | date docketed | 357 |
| | Docketing to mail notices. | U.S. DISTRICT COURT | rbf | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 2004 NOV 17 AM 7:51 | 11/16/2004 | |
| | | | date mailed notice | |
| GR | courtroom deputy's initials | | GR | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MADISON HOBLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 3678 |
| | ) | |
| CHICAGO POLICE COMMANDER | ) | |
| JON BURGE, et al., | ) | Judge Marvin Aspen |
| | ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) | |
| | ) | |
| | ) | |

DOCKETED
NOV 17 2004

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the Court is the Plaintiff's Fifth Motion to Compel [dkt 249]. For the reasons set out below, that motion is granted in part and denied in part, as set out herein.

## BACKGROUND

A. <u>This motion in the context of prior rulings.</u>

The present motion is one of a series by plaintiff Madison Hobley ("Hobley") relating to responses by defendant the City of Chicago ("City") to Hobley's First Set of Requests for Production to the City. That Set of Requests was served in July 2003. (Pl.'s Second Mot. Compel, Ex. A, First Set Requests for Production.) [Dkt 39.] This opinion will assume familiarity with the opinions and orders issued on the previous motions. *See, e.g.*, Orders of Oct. 14, 2003 [dkt 50], Nov. 10, 2003 [dkt 63], April 20, 2004 [dkt 158].

1



The present motion contests the City's assertion of attorney-client privilege or work product protection as to certain documents listed on a privilege log served on May 17, 2004. (Pl.'s Fifth Mot. Compel, Ex. I, Privilege Log.) After an initial court hearing on the motion and an additional conference between counsel for the parties, the parties resolved some of the issues. The City's counsel subsequently produced some of the documents that had initially been withheld and served a revised privilege log. (Def.'s Resp., Ex. 1, Privilege Log.) At that initial hearing, the court summarized the results of the previous rulings into a number of principles governing the City's responses to Hobley's First Set of Requests for Production, concluding that:

> to assert successfully privilege or work product protection as to any document in the City's possession, custody or control, the City must establish all three of the following:
>
> > A. That the document was covered by the stay on *Monell* discovery; and
> > B. That the document was never produced by the City or anyone on its behalf to the Special Prosecutor (or to anyone else whose access would destroy the confidentiality required for privilege or protection); and
> > C. That the document is deserving of attorney-client privilege or work product protection under the usual standards.

(Order, June 30, 2004.) [Dkt 250.]


B. <u>James Navarre's affidavit and testimony at the evidentiary hearing on August 30, 2004.</u>

The second criteria comes into play because each of the documents on the privilege log is Bates numbered beginning with the prefix "SP." In ruling on Plaintiff's Fourth Motion to Compel, this court found that the documents at issue there, also prefaced "SP," had been produced to the Special Prosecutor appointed by the Circuit Court of Cook County to investigate allegations of

torture by certain police officers, and, therefore, any attorney-client privilege or work product protection had been waived. (Opinion, April 20, 2004 at 11-12, 14-15.)

In the briefing leading to that opinion, the City took a number of inconsistent positions regarding what had been produced to the Special Prosecutor, initially stating that the originals of the "SP" documents had been produced to the Special Prosecutor, subsequently amending that statement to claim that only a few of the documents then in dispute had been produced to the Special Prosecutor, and then, finally, on its motion for reconsideration, claiming that some of that limited list had not actually been produced to the Special Prosecutor and that some had been produced in error. (Opinion, April 20, 2004 at 6-8, 10-11; City's Mot. Recons. at ¶ 3, 7-8, 10-11 [dkt 181.]) The court subsequently held that, if the City contended that documents that had been marked "SP" for purposes of production to the Special Prosecutor had not, in fact, been produced to the Special Prosecutor, the City would have to demonstrate that fact and not rely on conclusory declarations. (Order, June 30, 2004 ¶ 7.)

In support of its motion for reconsideration of the April 20, 2004 Opinion, the City had submitted the affidavit of James Navarre, an attorney with the law firm Hinshaw & Culbertson (the "Hinshaw firm"), stating, in summary, as follows: In May 2002, the City retained the Hinshaw firm in connection with the Special Prosecutor's investigation. (City's Mot. Recons., Ex. B, James Navarre Aff. at ¶ 1-2.) The first grand jury subpoena to the City in connection with the investigation was issued in November 2002; however, the City began producing documents voluntarily to the Special Prosecutor before the subpoena was issued. (*Id.* ¶ 2.) In January and February 2003, the City's Corporation Counsel's office and the law firm Jones Day (which the City had hired to represent it in earlier Police Board hearings involving Jon Burge) provided documents to the

3

Hinshaw firm to be processed for production to the Special Prosecutor. (*Id.* ¶ 3-4.) The Hinshaw firm had Merrill Corporation number the documents with Bates numbers, copy them and return the originals and copies to the Hinshaw firm. (*Id.*)

The following portions of Mr. Navarre's affidavit became particularly controversial in connection with the present motion:

> If I determined a document was deemed privileged, I removed the document from the box, set the document aside, and placed the document in a folder labeled by box number.
> Documents potentially responsive to the Special Prosecutor were sent to Merrill Corporation for Bates-stamping with an "SP" number and copying. This practice permitted *an inventory by SP number* of exactly what documents were sent to the Special Prosecutor and which documents were withheld from the Special Prosecutor pursuant to privilege.

(Navarre Aff. ¶¶ 4-5, emphasis added.)

In light of the City's shifting positions taken in connection with the Plaintiff's Fourth Motion to Compel, the court determined that Mr. Navarre's affidavit was not sufficient to carry the City's burden of demonstrating that the documents on the privilege log had not been produced to the Special Prosecutor. Mr. Navarre was ordered to appear for an evidentiary hearing, and the City was ordered to produce for *in camera* inspection the "database constituting or reflecting the inventory" to which Mr. Navarre referred in his affidavit. (Order, Aug. 6, 2004.) [Dkt 298.] The City was also ordered to produced copies of the documents under discussion for *in camera* inspection. (*Id.*)

Mr. Navarre's testimony at the evidentiary hearing, held on August 30, 2004, shed light on why the City's positions in this case have repeatedly shifted. To start, no document constituting an "inventory" of documents produced to the Special Prosecutor has ever existed. (Tr. Aug. 30, 2004 at 60.) As Mr. Navarre testified, the multi-volume document produced for *in camera* inspection

4

entitled "City of Chicago-Fact Document Database" is a print-out of a computer database created by temporary paralegals at the Hinshaw firm in the late fall of 2003 and early 2004. (*Id.* at 67.) The "SP" numbered documents are listed, but, surprisingly, there is no field that records whether or not the document was produced to the Special Prosecutor. Although the database has a field for "privilege," that field does not record which documents have been withheld from the Special Prosecutor on the basis of privilege. (*Id.* at 69, 72.) In fact, Mr. Navarre has no idea on what basis the temporary paralegals made entries in that field. (*Id.* at 65, 67, 69-72.)

In fairness, the City's present counsel never actually stated that a physical "inventory" existed. Rather, the phrasing of Mr. Navarre's affidavit, combined with the obvious common sense value of preparing and maintaining some control system in a situation where many documents from different sources are repeatedly being produced in different pieces of litigation pending in different courts, led the court as well as Hobley's counsel to conclude that an inventory must have been prepared. But Mr. Navarre testified that no such control system was ever established.

Mr. Navarre testified, in summary, as follows. The Hinshaw firm began producing documents to the Special Prosecutor voluntarily in the late summer of 2002. (Tr. Aug. 30, 2004 at 7.) No records were prepared to keep track of what was produced at that time except transmittal letters to the Special Prosecutor. (*Id* at 7.) To the best of Mr. Navarre's knowledge, the only documents produced at that time were police "CR" [complaint register] files and personnel files that the Hinshaw firm had in its possession from other cases in which it represented the City. (*Id.* at 9-10, 16-17.) Those documents, consisting of several boxes, were not Bates stamped and no privilege log was created because no privilege was asserted as to those documents. (*Id* at 7-8, 18, 24.) In January 2003, the Hinshaw firm received documents from the Jones Day law firm for production to

the Special Prosecutor, and soon after began the process of Bates stamping. (*Id.* at 17.) At the same time, documents delivered to the Hinshaw firm from the City's litigation files were also Bates stamped. (*Id.* at 27.) The production of "SP" documents to the Special Prosecutor, totaling around 170,000 pages, continued into April and possibly May 2003, with a continuing production duty. (*Id.* at 20-21.)

Mr. Navarre testified that the "SP" documents were handled as follows. Each of the "original" documents[1] was Bates stamped by affixing a sticker with an "SP" number, and then a copy was made. (*Id.* at 46-48.) Thus, there were two complete sets, the original, and the Hinshaw copy. (*Id.* at 46-47.) Mr. Navarre and his colleague Matt Walsh then reviewed the documents for privilege by physically removing any privileged items from the box of originals. (*Id.* at 23, 46-47.) Mr. Navarre put the privileged document into a folder and marked the folder to show the box from which the document had been pulled and the basis for privilege. (*Id.* at 24-25.) The remaining original documents were produced to the Special Prosecutor. (*Id.* at 49.) The Hinshaw set had all of the approximately 170,000 pages, including privileged and non-privileged documents. (*Id.* at 47, 50.)

In June 2003, Mr. Navarre had conversations with the Special Prosecutor about the fact that documents had been withheld on the basis of privilege. (*Id.* at 35.) The Special Prosecutor requested a privilege log in the fall of 2003. (*Id.* at 35-36.) The Hinshaw firm first began working on the privilege log requested by the Special Prosecutor in February 2004, and concluded it in either February or March 2004. (*Id.* at 42, 52, 93-94.) Mr. Navarre prepared that privilege log using his

---

[1] As Mr. Navarre used it, the term "original" means the document that the Hinshaw firm received, which itself might have been a copy. (*Id.* at 44-45.)

folders. (*Id.* at 94, 126-27.) Until February 2004, the Hinshaw firm had created nothing in writing to document what had or had not been withheld from the Special Prosecutor other than Mr. Navarre's and Mr. Walsh's folders. (*Id.* at 43.)

As noted in the earlier opinion, the Hinshaw firm produced documents in this case for Hobley's counsel review in January 2004. (Opinion, April 20, 2004 at 2.) Mr. Navarre testified that if the Hinshaw firm had wanted to remove from its set the documents that had been withheld from the Special Prosecutor, the best way would have been to look at the folders. (Tr. Aug. 30, 2004 at 50.) No one asked him for a list of the privileged documents prior to Hobley's counsel review of the documents. (*Id.* at 51.) In fact, the Hinshaw lawyers working on this case did not approach Mr. Navarre about what had been produced to the Special Prosecutor until after the privilege log was created in February and March 2004. (*Id.* at 52, 56-57.) Mr. Navarre never received any notice of the order entered in this case that a privilege log was to be produced by December 2003. (*Id* at 37.) It is his understanding that the lists subsequently submitted in this case of what had been produced to the Special Prosecutor were based on his privilege log. (*Id.* at 132.) Mr. Navarre testified that, if the documents were not produced to the Special Prosecutor, they would be listed on the privilege log prepared for the Special Prosecutor, a redacted version of which was admitted as Exhibit 2 and 3 at the evidentiary hearing.[2] (*Id.* at 133.) With respect to document SP 141966-142029, for example, that document was identified by the City's attorneys in this case as having been produced to the Special Prosecutor because Mr. Navarre mistakenly omitted it from his privilege log. (*Id.* at 132-33.)

---

[2]The Exhibits were redacted to show only the Bates numbers of the documents because of the City's concern that grand jury secrecy might be compromised by describing the documents sought by the grand jury impaneled as part of the Special Prosecutor's investigation.

The issues on the present motion are considered in light of this factual background.

## DISCUSSION

A. <u>Whether the documents on the present privilege log were produced to the Special Prosecutor.</u>

It is apparent from Mr. Navarre's testimony that much of the controversy that has dogged the City's response to Hobley's First Set of Requests is attributable to the City's former counsel's failure to create and maintain careful records and document control in their task of producing a large number of documents from various sources to the Special Prosecutor and to opposing counsel in this and other lawsuits. For example, the shifting positions taken by the City in response to Hobley's Fourth Motion to Compel probably resulted from the fact that the City's counsel did not keep a comprehensive record of what had and what had not been produced to the Special Prosecutor.

However, the court finds the testimony of Mr. Navarre to be credible concerning the creation of his privilege log of documents withheld from the Special Prosecutor on the basis of privilege, (Exhibits 2 and 3), and finds that the City has carried its burden of proving that the documents listed on Exhibits 2 and 3 were not produced to the Special Prosecutor.

Most of the documents listed on the present privilege log are also listed on Exhibits 2 or 3, but some are not. The City's counsel explained at the evidentiary hearing that the following documents do not appear on Exhibits 2 or 3 and were in fact produced to the Special Prosecutor: SP 129006; SP 129012-129034; SP 168286; accordingly, they have been produced to Hobley's counsel. (Tr. Aug. 30, 2004 at 135-36.) Additionally, the City's counsel advised that Hobley's counsel stated that they were not interested in documents SP 131426-131450 and SP 158249, which are also not included in Exhibits 2 or 3. (*Id.* at 135.) There also appears to be a typographical error in the listing

for SP 171123-172229; apparently the numbers should have been listed as SP 171123-171129.

However, Mr. Navarre testified that the Special Prosecutor has disputed the assertion of privilege with respect to some of the documents, and that a motion to compel is currently pending before Judge Biebel of the Circuit Court. (*Id.* at 39-42.) The City and its present counsel are hereby ordered to produce to Hobley's counsel any documents that the City has withheld on the basis of privilege or work product protection that are subsequently produced to the Special Prosecutor, whether by agreement or pursuant an order of the Circuit Court. This is a continuing duty.

B. Whether the documents were covered by the stay on *Monell* discovery.

This criteria exists because the City voluntarily waived any assertion of work product or attorney-client privilege as to all documents sought in Hobley's First Set of Requests except those covered by the then-ordered stay on *Monell* discovery. *See* Opinion, April 20, 2004 at 11-12, 14-15. The parties dispute what fell within the scope of that stay, and hence, what falls within the scope of the waiver.

The documents at issue in this motion appear to be from the files of attorneys in the City's Corporation Counsel's office relating to their representation of the City and City employees in lawsuits other than this one, arising from claims of police brutality. Would these documents have been subject to production if the stay on *Monell* discovery had not been lifted? The simplest definition of *Monell* discovery is that discovery which would not be within the scope of Fed. R. Civ. 26(b)(1) if there were not a claim in the case against the City pursuant to *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). The difficulty of identifying exactly what that means in this particular lawsuit, in which defendant Jon Burge is sued individually for actions in his

supervisory role, led to lifting the stay on *Monell* discovery. (Order, March 22, 2004.) [Dkt 144.]

The City's counsel has acknowledged that, in granting the City's motion to stay *Monell* discovery, District Judge Aspen stated that if there was any doubt whether certain documents were *Monell* discovery, they were to be produced. *(See* Pl.'s Combined Reply in Supp. Mot. Compel, Ex. A, Tr. Nov. 3, 2003 at 22.) On the other hand, at the December 10, 2003 hearing when the City's then-counsel represented that the City would not assert privilege or work product protection for the documents not covered by the stay, the City's then-counsel stated his position that prior litigation filed against the City involving the individual defendants was *Monell* discovery. (Pl.'s Fourth Mot. Compel, Ex. A, Tr. Dec. 10, 2003 at 51.) [Dkt 112.] The court did not resolve that question, but directed the parties to concentrate on files relating to plaintiff Hobley. ( *Id.* at 51-52.)

Hobley correctly observes that the documents on the present privilege log are of the same type that the City produced for review by Hobley's counsel in January 2004, and as to which the court granted Hobley's Fourth Motion to Compel. However, the City has always maintained that it did not intend to produce the documents that were disputed in Hobley's Fourth Motion to Compel and that its January 2004 production of those documents was inadvertent.[3]

Although a genuine argument can be made that the documents on the present privilege log were not covered by the stay on *Monell* discovery, in light of the colloquy on December 10, 2003, the City's counsel might reasonably have understood the court as endorsing its view that production

---

[3]This is in contrast to its production of documents from the Jones Day firm. The City made a decision to produce those documents, but in fact produced only some of those documents. It cannot now argue that it viewed the Jones Day documents as covered by the stay. *See* Opinion, April 20, 2004 at 15-16.

10

of these documents was not required at that time. Because the fundamental issue is the scope of the City's waiver, the court finds that the City did not waive its objections regarding privilege and work product protection as to the documents on the City's present privilege log.

C. Whether the documents are deserving of attorney-client privilege or work product protection.

The final issue is whether the documents are covered by attorney-client privilege or work product protection. The standards for such privilege or protection were discussed in the April 20, 2004 Opinion, and will not be repeated here.

The court has reviewed the documents *in camera* and concludes that the following documents are not protected under the applicable standards (in each case the "SP" prefix is omitted):

124301: This is a delivery request. It contains no confidential information.

124309, 124311-124323; 123784-123796: These documents are blank forms; there is no confidential information deserving of protection on them.

123761: This is a single sheet bearing only the name and address of an unidentified individual.

129532-129537: This set of documents bears a stamp indicating that it had been previously "produced pursuant to protective order in 90 C 6722," presumably referring to *Fallon v. Dillon*, another lawsuit in this District. That fact was not reflected in the privilege log, and the City has not demonstrated why a previously-produced document is still worthy of protection.

132981-132989: These documents are not accurately described in the privilege log. These documents are not "attorney notes." By failing to describe accurately any basis for privilege or work product protection, the City has waived any protection as to these documents.

133043-133044: This is an order entered by the Circuit Court of Cook County.

11

Those documents must be produced to Hobley's counsel within seven days of this order. The City's counsel may designate documents in good faith "confidential," and such "confidential" documents will be held "attorneys' eyes only" for review by counsel of record in this case only, pending the entry of the final protective order.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Fifth Motion to Compel is granted in part and denied in part. The City shall produce the following documents within 7 days of this order: SP 124301; SP 124309; SP 124311-124323; SP 123784-123796; SP 123761; SP 129532-129537; SP 132981-132989; SP 133043-133044. The City's counsel may designate documents in good faith "confidential," and such "confidential" documents will be held "attorneys' eyes only" for review by counsel of record in this case only, pending the entry of the final protective order. The City and its present counsel are hereby ordered to produce to Hobley's counsel any documents that the City has withheld on the basis of privilege or work product protection that are subsequently produced to the Special Prosecutor, whether by agreement or pursuant an order of the Circuit Court. This is a continuing duty.

It is so ordered.

*Geraldine Soat Brown*
Geraldine Soat Brown
United States Magistrate Judge

November 16, 2004