# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MADISON HOBLEY,

        Plaintiff,

        v.

CHICAGO POLICE COMMANDER JON
BURGE, et al.,

        Defendants.

No. 03 C 3678

Judge Aspen

Magistrate Judge Brown

**FILED**

NOV 1 7 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED

NOV 2 2 2004

## DEFENDANT ROBERT DWYER'S ANSWER
## TO PLAINTIFF'S AMENDED COMPLAINT

Defendant, Robert Dwyer, answers Plaintiff's Amended Complaint as follows:

1.     **This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.**

    **ANSWER:**     Defendant admits only that Plaintiff has brought this action pursuant to 42

U.S.C. Section 1983 but denies that Plaintiff is entitled to any relief in this matter.

2.     **Specifically, as a result of egregious police misconduct and abuse more fully described below, Plaintiff Madison Hobley was wrongfully convicted for a heinous set of crimes which he did not commit. In all, Mr. Hobley spent more than sixteen years in prison, thirteen of which were on Death Row, after the Defendants conspired to secure his conviction unlawfully by means of violation of his constitutional rights.**

    **ANSWER:**     Defendant admits only that Plaintiff was imprisoned for sixteen years.

Answering further, with respect to the remaining averments in paragraph 2 of Plaintiff's

Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential

criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to

the United States Constitution, and therefore declines to answer at this time.

3.      After asserting his innocence for more than a decade, the Illinois Supreme Court eventually granted Mr. Hobley leave to conduct extensive discovery into the circumstances of his conviction and the now-notorious pattern of systematic and institutional Area 2 police abuses that produced it. Through the efforts of his counsel, Andrea D. Lyon of the Center for Justice in Capital Cases of the DePaul College of Law, as well as Kurt Feuer, working *pro bono* for the firm of Ross & Hardies, Mr. Hobley was able to prove facts establishing both his innocence and the reprehensible pattern of police abuse that gave rise to his wrongful conviction.

**ANSWER:**    Defendant denies that the Illinois Supreme Court granted Plaintiff leave to conduct discovery into "the circumstances of his conviction and the now-notorious pattern of systematic and institutional Area 2 police abuses." Answering further, with respect to the remaining averments in paragraph 3 of Plaintiff's Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

4.      After reviewing the extensive evidence of Mr. Hobley's innocence and the deceitful and unlawful actions of the Defendant Officers, on January 10, 2003, then-Governor George Ryan granted Mr. Hobley a full pardon on grounds of innocence. Mr. Hobley was subsequently released from Death Row after spending sixteen years and four days wrongfully incarcerated.

**ANSWER:**    Defendant admits only that Governor George Ryan granted Plaintiff a full pardon on grounds of innocence and that Plaintiff was released after spending sixteen years incarcerated. Answering further, with respect to the remaining averments in paragraph 4 of Plaintiff's Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

5.      This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

**ANSWER:**   Defendant admits only that Plaintiff seeks to invoke the jurisdiction of the Court in the manner stated but denies that Plaintiff is entitled to any relief in this matter.

6.   **Venue is proper under 28 U.S.C. § 1391 (b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within district.**

**ANSWER:**   Defendant admits that venue is proper and that he resides in this judicial district.  Answering further, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments of paragraph 6 of Plaintiff's Amended Complaint.

7.   **Plaintiff, Madison Hobley, was at all relevant times a citizen of the United States and a resident of Cook County, Illinois.**

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments of paragraph 7 of Plaintiff's Amended Complaint.

8.   **Defendant City of Chicago is an Illinois municipal corporation, and is and/or was the employer of each of the Defendants.  The City of Chicago is responsible for the acts of the Defendants while employed by the City of Chicago and while acting within the scope of their employment.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 8 of Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

9.   **All of the individual Defendants are present or former Chicago Police Officers.  At the time of Mr. Hobley's arrest and interrogation, Defendant Jon Burge was a duly appointed commander of the City of Chicago Police Department's (hereafter, the "Department") Area 2 Violent Crimes Division and/or Bomb and Arson Division; Defendant Virgil Mikus is or was a detective of the Department's Bomb and Arson Division; Defendant Patrick Garrity is or was a Sergeant in the Department's Crime**

**Laboratory; and Defendants Robert Dwyer, James Lotito, Virgil Mikus, Daniel McWeeney, John Paladino are or were detectives in the Department's Area 2 Violent Crimes Division of which Jon Burge was the Commander.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 9 of Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the extent those averments are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**10.    All of the foregoing individuals are sued in their individual capacities, and all acted under color of law and in the scope of their employment in engaging in their interactions with Mr. Hobley.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 10 of Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the extent those averments are directed at him, Defendant admits only that Plaintiff's Amended Complaint purports to sue Defendant in his individual capacity. Answering further, with respect to the remaining averments in paragraph 10 of Plaintiff's Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**11.    In January 1987, Plaintiff Madison Hobley lived with his wife, Anitta, and infant son, Phillip, in an apartment building on Chicago's South Side, where he worked for a medical supply company. Prior to the wrongful conviction described in this complaint, Mr. Hobley had no previous criminal convictions.**

**ANSWER:**   Defendant admits that in January 1987 Madison Hobley had a wife, Anita and infant son, Phillip who lived in an apartment building on Chicago's South Side. Defendant further admits that prior to Plaintiff's arrest in January 1987, Defendant worked for a medical

4

supply and did not have any criminal convictions. Answering further, to the extent the

remaining averments in paragraph 11 are directed at him, Defendant, on the advice of counsel

due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to

him by the Fifth Amendment to the United States Constitution, and therefore declines to answer

at this time.

**12.      Early in the morning hours of January 6, 1987, Mr. Hobley awoke to the
sound of a fire alarm. Dressed only in shorts and a T-shirt, Mr. Hobley went from his
family's apartment at the top of the inner stairwell on the third floor, into the hallway to
investigate the source of the alarm.**

**ANSWER:**      To the extent the averments of paragraph 12 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**13.      Believing that he saw smoke coming from under the door of an apartment
across from his, Mr. Hobley walked past the stairway door towards the unit down the hall.
Mr. Hobley then heard a loud sound as the fire door failed, releasing a raging fire. The
glass partition exploded, and a wall of fire and smoke erupted from the stairwell,
preventing Mr. Hobley from returning to his wife and baby son.**

**ANSWER:**      To the extent the averments of paragraph 13 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**14.      Blocked by the fire, Mr. Hobley attempted to shout to his family, urging
them to head for a window to escape. He then crawled down the hall and out of the
building via the back stairs. Mr. Hobley never again saw either his wife or his son.**

5

**ANSWER:**   To the extent the averments of paragraph 14 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

15.     Despite the confusion of the inferno around him, and the fear he felt for the safety of his family, Mr. Hobley's immediate reaction was to help others in their time of need.  He helped save the life of a neighbor's baby when he helped catch the child as it was dropped out of a second-floor window.

**ANSWER:**   To the extent the averments of paragraph 15 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

16.     Upon discovering that Mr. Hobley survived the fire and his family did not, the Defendant Officers immediately concluded that Mr. Hobley was responsible, deliberately ignoring information about a disgruntled former tenant who had been recently evicted from the building for selling drugs, and failing to pursue any other evidence or investigate any leads to find the real perpetrator of the crime.  Instead, the Defendant Officers closed their case before it even began, taking Mr. Hobley from his mother's home less than five hours after he escaped from the deadly fire that killed his wife, Anitta, and young son, Phillip.

**ANSWER:**   Defendant makes no answer to the averments of paragraph 16 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

17.     The now-infamous Area 2 Violent Crimes detective bureau, of which most of the Defendant Officers were members, spent the day interrogating and torturing Mr. Hobley, who was at the time highly distraught over the tragic loss of his family.

**ANSWER:**    Defendant makes no answer to the averments of paragraph 17 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

18.    **In an attempt to coerce Mr. Hobley into confessing to starting the fire, a crime for which Mr. Hobley was completely innocent, Defendants Lotito and Dwyer proceeded to torture Mr. Hobley.  Specifically, they beat Mr. Hobley, placed a plastic bag over his head until he suffocated and lost consciousness (a practice known in Area 2 and elsewhere as "bagging"), used racially offensive language, and made other threats as they repeatedly attempted to get Mr. Hobley to falsely confess to the arson and murders which he did not commit.**

**ANSWER:**    To the extent the averments of paragraph 18 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

19.    **Despite the torture and abuse, at no time did Madison Hobley confess.  Mr. Hobley refused to confess to any crimes because he did not commit any crimes.**

**ANSWER:**    To the extent the averments of paragraph 19 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

20.    **Unable to coerce Mr. Hobley into confessing, the Defendant Officers created a false oral confession that they claimed he gave on the day of the fire.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 20 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**21.**    **The claim by the Defendant Officers that Mr. Hobley had confessed was a lie. In fact, the only written documents created contemporaneously with the interrogation reflect nothing but Mr. Hobley's repeated denials.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 21 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**22.**    **Defendant Dwyer subsequently claimed that he had to throw away Mr. Hobley's "confession" because it was supposedly rendered illegible after coffee purportedly spilled on it.**

**ANSWER:**   On the advice of counsel due to the threat of a potential criminal prosecution, Defendant reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer the averments contained in paragraph 22 of Plaintiff's Amended Complaint at this time.

**23.**    **In furtherance of the conspiracy to frame Mr. Hobley and to support the phony "confession" which the Defendant Officers had supposedly secured, one or more of them conspired to plant physical evidence at the scene of the crime, to wit, they pretended to "find" a gas can at the scene of the fire.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 23 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent

8

those averments are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

24.     In reality, this gas can had been confiscated in another, unrelated case some three weeks prior to the fire for which Mr. Hobley was wrongfully convicted.  One or more of the Defendant Officers had removed the can from the Evidence and Recovered Property Section of the Chicago Police Department ("ERPS") and placed it at the scene of the crime where it was "discovered" some fourteen hours after the fire.  Indeed, the gas can used to convict Mr. Hobley was clean, showing no signs that it had "survived" the blaze that destroyed Mr. Hobley's home: soot, plaster, heat damage, i.e., traditional evidence of fire and fire suppression, were absent from the can.

**ANSWER:**     Defendant makes no answer to the averments of paragraph 24 of Plaintiff's

Amended Complaint that are not directed at this Defendant.  Answering further, to the extent

those averments are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

25.     The Defendant Officers proceeded to conceal information indicating that the gasoline can introduced into evidence during Mr. Hobley's trial was not in fact used to start the fatal fire, but, rather, had been seized earlier at another unrelated fire and planted on the scene in an attempt by Defendant Officers to implicate Mr. Hobley unjustly.

**ANSWER:**     Defendant makes no answer to the averments of paragraph 25 of Plaintiff's

Amended Complaint that are not directed at this Defendant.  Answering further, to the extent

those averments are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

26.   The Defendant Officers also deliberately withheld an exculpatory fingerprint report from testing conducted by the Chicago Police Department crime lab on the gasoline can.

ANSWER:   Defendant makes no answer to the averments of paragraph 26 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

27.   In furtherance of the conspiracy to frame Mr. Hobley for crimes he did not commit, the Defendant Officers later produced two individuals who claimed to have seen Mr. Hobley purchase gasoline the night of the fire.  One of the individuals could not be certain of his identification, and, only after persistent undue and improper coercion from the Defendant Officers, stated that perhaps Mr. Hobley (whom the Defendants showed him in a line-up) may have "favored" the man he saw purchase gasoline.

ANSWER:   Defendant makes no answer to the averments of paragraph 27 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

28.   Long after he was convicted, Mr. Hobley also discovered that the second witness was being "helped" by the Defendant Officers with the witness' own criminal problems, including an arson that had occurred approximately six weeks later, committed in the same manner and within only a few blocks of Mr. Hobley's apartment building.  The Defendant Officers, including Commander Jon Burge, thus provided assistance to the primary witness against Mr. Hobley in exchange for falsely implicating Mr. Hobley, and then proceeded to withhold this exculpatory information notwithstanding their knowledge that they had a duty to make it known to Mr. Hobley.

**ANSWER:**     Defendant makes no answer to the averments of paragraph 28 of Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**29.     The Defendant Officers, including Defendant Garrity, also proceeded to falsely report that Mr. Hobley had failed a polygraph examination, when in fact there is no evidence that Mr. Hobley had failed such an examination.**

**ANSWER:**     Defendant makes no answer to the averments of paragraph 29 of Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**30.     The constitutional injuries complained-of herein were proximately caused by a pattern and practice of misconduct which occurred with Defendants Burge's knowledge and consent in his supervisory capacity, such that Burge personally knew about, facilitated, approved, and condoned this pattern and practice of misconduct, or else affirmatively turned a blind eye thereto without taking any steps to stop it.**

**ANSWER:**     Defendant makes no answer to the averments of paragraph 30 of Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

31.   **In this way, Defendant Burge is personally responsible for the complained-of injuries because he knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or by his deliberately indifferent failure to act.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 31 of Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

32.   **Independently, Defendant Burge is a supervisor who failed to stop misfeasor officers under his direction who had summarily tortured Plaintiff despite his knowledge of the same.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 32 of Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

33.   **As a direct and proximate cause of the Defendant Officers' unlawful and deceitful actions, including making false claims of an alleged oral confession, planting of false evidence, tainting of witnesses (and withholding information about these circumstances), and withholding of exculpatory evidence, Plaintiff Madison Hobley was wrongfully convicted of arson and seven counts of murder, crimes he did not commit.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 33 of Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the extent those averments are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

12

Amendment to the United States Constitution, and therefore declines to answer at this time.

34.    **Thereafter, Mr. Hobley was sentenced to death. He then spent more than sixteen years in prison, over thirteen of which were on Death Row, before Governor Ryan granted him the above-described pardon based on his innocence in January 2003. In Governor Ryans' words: "The category of horrors was hard to believe. If I hadn't reviewed the case [] myself, I wouldn't believe it ... . [This is a] perfect example [] of what is so terribly broken about our system."**

   **ANSWER:**    Defendant admits only that plaintiff was sentenced to death and was

incarcerated for sixteen years before Governor Ryan granted plaintiff a pardon in January 2003.

Defendant further admits that Governor Ryan made the statements attributed to him in paragraph

34. Answering further, to the extent the remaining averments of paragraph 34 of Plaintiff's

Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of

a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

35.    **This travesty of justice ran its course because the City of Chicago turned a blind eye to the wave of police corruption in Area 2 which gave rise to this and other wrongful convictions. In fact, Mr. Hobley was the victim of, and all of his injuries were proximately caused by, a policy and practice on the part of the City of Chicago which tolerated and even condoned the systematic deprivation of due process by members of Burge's now-infamous Area 2 team.**

   **ANSWER:**    Defendant makes no answer to the averments of paragraph 35 that are not

directed at this Defendant. Answering further, to the extent the averments of paragraph 35 of

Plaintiff's Amended Complaint are deemed to be directed at him, Defendant, on the advice of

counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights

guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore

declines to answer at this time.

36.    **Specifically, throughout the 1980s, a group of Chicago Police Officers in Area 2 under the command of Defendant Burge engaged in systematic deprivation of due process in order to "solve" crimes more expediently and to enhance their personal**

standing in the Department.  **This reality was known to the command personnel, who themselves participated in the fabrication of confessions and other evidence.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 36 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

37.   **The widespread policy and practice of deprivation of due process involved: concealing exculpatory information; "planting" evidence; witness manipulation; and, most importantly, fabrication of incriminating evidence, including, but not limited to, the extraction of false confessions via coercion and torture.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 37 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

38.   **The methodology in Area 2 for depriving criminal suspects of due process of law by the means described in the preceding paragraph was disturbingly uniform:**

a.   **First, for any given crime, the Area 2 detectives would review the available evidence and select a particular suspect whom they felt might be guilty of that crime.**

**ANSWER:**   To the extent the averments of paragraph 38a of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

14

Amendment to the United States Constitution, and therefore declines to answer at this time.

   **b.** **Next, the Area 2 detectives would isolate that unfortunate suspect in an interrogation room in Area 2 headquarters and torture him during interrogation in an attempt to fabricate evidence, to wit, a coerced confession. This torture included electric shocks administered to the testicles and other parts of the body from a small black box, electric shocks with what is now believed to be a cattle prod, suffocation to the point of unconsciousness with plastic bags and a typewriter cover, Russian roulette, burnings, severe beatings, and threats of death.**

   **ANSWER:** To the extent the averments of paragraph 38b of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

   **c.** **If the Area 2 detectives were successful in extracting a confession via torture during interrogation, the case was closed on the basis of this fabricated evidence, and the suspect was prosecuted.  If the Area 2 detectives were unable to extract a confession via torture during interrogation, the detectives would nonetheless fabricate the existence of a false confession, the case was closed on the basis of this fabricated evidence, and the suspect was prosecuted.**

   **ANSWER:** To the extent the averments of paragraph 38c of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

   **d.** **In all such cases, the detectives would seek to bolster the false confession (or the false non-confession) with other fabricated evidence which purportedly corroborated that confession.  This included, for example, "planting" physical evidence or deliberate manipulation of material witnesses.  These detectives furthered the objective of undermining due process by withholding exculpatory information, including the details associated with the practices described above.**

   **ANSWER:** To the extent the averments of paragraph 38d of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**39.     All told, there are up to one hundred known victims of this practice of depriving due process of law, though there may well be others.  At least thirteen of these individuals ended up on Death Row with Mr. Hobley.**

**ANSWER:**     To the extent the averments of paragraph 39 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**40.     The following individuals were denied due process under Commander Burge's watch in Area 2, all of whom have testified under oath to the deprivations:**

|     |                     |
|-----|---------------------|
| a.  | Andrew Wilson       |
| b.  | Alonzo Smith        |
| c.  | Jerry Mahaffey      |
| d.  | Reginald Mahaffey   |
| e.  | David Bates         |
| f.  | Gregory Banks       |
| g.  | Darrell Cannon      |
| h.  | Leonard Hinton      |
| i.  | Steven Bell         |
| j.  | Michael Tillman     |
| k.  | Stanley Howard      |
| l.  | Lavert Jones        |
| m.  | Derrick King        |
| n.  | Philip Adkins       |
| o.  | Walter Johnson      |
| p.  | Roy Wade Brown      |
| q.  | Donald White        |
| r.  | Melvin Jones        |
| s.  | Sylvester Green     |
| t.  | Shadeed Mu'min      |
| u.  | Aaron Patterson     |
| v.  | Andrew Maxwell      |
| w.  | Michael Coleman     |
| x.  | Michael Johnson     |
| y.  | Eric Caine          |
| z.  | Gregory Howard      |

**ANSWER:**    To the extent the averments of paragraph 40 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**41.    In addition to the above-listed victims, the following individuals were also
deprived of due process in the above-described manner by Area 2 police officers:**

|     |                    |
|-----|--------------------|
| a.  | Dwight Anthony     |
| b.  | Madison Brown      |
| c.  | Ronnie Bullock     |
| d.  | Hobley Collins     |
| e.  | Andre Coulter      |
| f.  | James Daniel       |
| g.  | Raymond Golden     |
| h.  | Anthony Hall       |
| i.  | Mozy Harris        |
| j.  | Roger Harris       |
| k.  | Terry Harris       |
| l.  | Anthony Holmes     |
| m.  | Lee Holmes         |
| n.  | Ronald Jackson     |
| o.  | Nora Jordan        |
| p.  | Leonard Kidd       |
| q.  | James Lewis        |
| r.  | Thomas Liss        |
| s.  | Derrick Martin     |
| t.  | Paul Mike          |
| u.  | Larry Milan        |
| v.  | Doris Miller       |
| w.  | Solomon Morgan     |
| x.  | Ronald Nash        |
| y.  | Lawrence Orange    |
| z.  | William Phillips   |
| aa. | Alfonso Pinex      |
| ab. | Willie Porch       |
| ac. | Lawrence Poree     |
| ad. | George Powell      |
| ae. | Alvin Smith        |
| af. | Willie Stokes      |
| ag. | Perlie Sutckey     |
| ah. | Timothy Thompson   |

17

| ai. | Tony Thompson |
|-----|---------------|
| aj. | Donnell Traylor |
| ak. | Leontine Wilbon |
| al. | Jackie Wilson |
| am. | Jesse Winston |
| an. | Cortez Brown |
| ao. | James Cody |
| ap. | James Andrews |

**ANSWER:**   To the extent the averments of paragraph 41 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**42.   Each of Defendants Burge, Dwyer, Lotito, Mikus, McWeeney, Paladino, and Garrity in this case were involved in many of these other cases. According to Chicago's own statistics, for example, Burge was named as an accused in 51% of the cases where the accused officers could be identified.**

**ANSWER:**   To the extent the averments of paragraph 42 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel, due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer paragraph 42 to

Plaintiff's Amended Complaint at this time.

**43.   With only one exception, all of the foregoing victims (98%) were African American.**

**ANSWER:**   To the extent the averments of paragraph 43 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

18

**44.   All of the accused police officers were white.**

**ANSWER:**   To the extent the averments of paragraph 44 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**45.   The Illinois Supreme and Appellate Courts and the United States District Court have reversed convictions and/or ordered new hearings and trials on the basis of evidence of due process violations in, for instance, the following cases: People v. Wilson, 116 Ill. 2d 29 (1987); People v. Banks, 192 Ill. App. 3d 986 (1989); People v. Cannon, 293 Ill. App. 3d 694 (1997); People v. Patterson, 192 Ill. 2d 93 (2000); People v. Bates, 267 Ill. App. 3d 503 (1994); People v. King, 192 Ill. 2d 189 (2000); United states ex. rel. Maxwell v. Gilmore, 1999 WL 130331 (N.D.Il1. 1999).**

**ANSWER:**   To the extent the averments of paragraph 45 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel, due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer paragraph 42 to

Plaintiff's Amended Complaint at this time.

**46.   At least a dozen of these instances resulted in civil lawsuits.  In 1989, for example, in the case of Andrew Wilson v. City of Chicago, a federal jury concluded that "the City of Chicago had a de facto policy, practice or custom whereby Chicago police officers were allowed to physically abuse persons suspected of injuring or killing another Chicago police officer."  On appeal of the Wilson case, Chicago itself characterized Burge's actions as "sadistic torture."**

**ANSWER:**   To the extent the averments of paragraph 46 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel, due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer paragraph 42 to

Plaintiff's Amended Complaint at this time.

19

47.    As a Northern District of Illinois Judge observed in a written opinion ten years after <u>Wilson:</u> "It is now [by 1999] common knowledge that in the early to mid-1980s Chicago Police Commander Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions.  Both internal police accounts and numerous lawsuits and appeals brought by suspects alleging such abuse substantiate that those beatings and other means of torture occurred as an established practice, not just on an isolated basis."

<u>ANSWER:</u>    Defendant admits only that a Northern District of Illinois Judge made the

statements attributed to him in paragraph 47 of Plaintiff's Amended Complaint.  Answering

further, to the extent that paragraph 47 states an opinion as to the truth or falsity of said

statements, Defendant, on the advice of counsel due to the threat of a potential criminal

prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the

United States Constitution, and therefore declines to answer at this time.

48.    Former Police Superintendent Richard Brzeczek, who was Superintendent when many of the torture allegations arose, recently told the *Chicago Tribune* that there is now "no doubt in [his] mind that Burge and his men tortured some suspects."

<u>ANSWER:</u>    Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of whether Richard Brzeczek made the statements attributed to him in

paragraph 48 of Plaintiff's Amended Complaint.  Answering further, with respect to the

remaining averments in paragraph 48, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

49.    The due process violations described in the preceding paragraphs were allowed to take place because the City declined to implement any mechanism for oversight or punishment.

<u>ANSWER:</u>    Defendant makes no answer to the averments of paragraph 49 of

Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.  Answering

further, to the extent those averments are deemed to be directed at him, Defendant, on the advice

20

of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights

guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore

declines to answer at this time.

**50.     In particular, the Department's system for disciplining police officers for violating due process in this manner is basically nonexistent.  During the time period at issue, the agency charged with investigating these allegations (O.P.S.) failed to investigate many of them.  For those which the O.P.S. was forced to investigate, it rejected approximately 95% of all complaints of abuse, and the very few which were "sustained" were usually overturned on review such that no discipline was ever imposed.  The pattern described in this Paragraph continues unchanged to this day.**

    **ANSWER:**     Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of the averments in paragraph 50 of Plaintiff's Amended Complaint.

**51.     In 1987, then-Chief Administrator of O.P.S. David Fogel wrote a memo admitting that O.P.S. was a farce.**

    **ANSWER:**     Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of the averments in paragraph 51 of Plaintiff's Amended Complaint.

**52.     Specifically, the Fogel Memo admits that "the troops love O.P.S. ... [It] actually operates to immunize police from internal discipline ... and has institutionalized lying."  Fogel's Memo explained that a substantial proportion of O.P.S.' investigators were thoroughly incompetent, part of a "politically corrupt heritage of pre-[Mayor Harold] Washington days."**

    **ANSWER:**     Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of the averments in paragraph 52 of Plaintiff's Amended Complaint.

**53.     Fogel's Memo concludes in part that: "O.P.S. gives the appearance of formal justice, but actually helps to institutionalize subterfuge and injustice."**

    **ANSWER:**     Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of the averments in paragraph 53 of Plaintiff's Amended Complaint.

**54.     With respect to the allegations of due process violations in Area 2, the O.P.S. initially found that each and every one of the allegations was groundless.  Thus, at the time**

the allegations were first made, no Chicago police officer was deemed culpable, much less disciplined, for any of these allegations.

ANSWER:   Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of the averments in paragraph 52 of Plaintiff's Amended Complaint.

55.   In addition to failing to discipline the offending officers internally, the Department also referred none of these allegations to the State's Attorney's Office for possible prosecution of the officers.  This institutional unwillingness to refer police officers for prosecution was true throughout the relevant time period, and it continues through to the present.

ANSWER:   Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of the averments in paragraph 55 of Plaintiff's Amended Complaint

56.   In this way, Chicago police officers who violated the due process rights of criminal suspects by, *inter alia,* fabricating evidence regarding confessions, had every reason to know that they enjoyed de *facto* immunity from criminal prosecution and/or Departmental discipline, thereby encouraging the very type of abuse at issue in this case.

ANSWER:   Defendant makes no answer to the averments of paragraph 49 of

Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the

extent those averments are deemed to be directed at him, Defendant, on the advice of counsel

due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to

him by the Fifth Amendment to the United States Constitution, and therefore declines to answer

at this time.

57.   In September 1990, an O.P.S. investigator named Goldston concluded a study of more than fifty allegations of constitutional violations in Area 2 through the mid-1980s; this investigation was based on review of cases one by one, and the data was compiled into a lengthy statistical analysis.

ANSWER:   Defendant makes no answer to the averments of paragraph 57 of

Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the

extent those averments are deemed to be directed at him, Defendant, on the advice of counsel

22

due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to

him by the Fifth Amendment to the United States Constitution, and therefore declines to answer

at this time.

58.    **The resulting *Goldston Report* dated September 28, 1990 (which was after Mr. Hobley was convicted but before his appeal was resolved) concluded that a "preponderance" of evidence dictated the conclusion that "systematic" and "methodical" abuse occurred over a ten year period, abuse which was "not limited to the usual beating, but went into such esoteric areas as psychological techniques and planned torture."**

**ANSWER:**    Defendant makes no answer to the averments of paragraph 58 of

Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the

extent those averments are deemed to be directed at him, Defendant, on the advice of counsel

due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to

him by the Fifth Amendment to the United States Constitution, and therefore declines to answer

at this time.

59.    **The Report also concluded that certain unnamed "[p]articular command members were aware of the systematic abuse and perpetuated it either by actively participating in same or failing to take any action to bring it to an end."**

**ANSWER:**    Defendant makes no answer to the averments of paragraph 59 of

Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the

extent those averments are deemed to be directed at him, Defendant, on the advice of counsel

due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to

him by the Fifth Amendment to the United States Constitution, and therefore declines to answer

at this time.

60.    **With respect to Mr. Hobley's case, the *Goldston Report* constituted material exculpatory evidence which could have helped to exonerate him.  Because it documents dozens of similar examples of very similar abuses, Mr. Hobley could have used the evidence contained in the Report as part of his defense in his direct and post-conviction appeals.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 60 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

61.   **This exculpatory evidence is particularly compelling because although the allegations come from disparate individuals with no connection to one another and no knowledge of each other's complaints, the allegations nonetheless exhibit uncanny similarity in terms of details such as, for instance, the seemingly improbable practice of suffocation by "bagging" experienced by Mr. Hobley.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 61 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

62.   **Instead of disclosing the new exculpatory evidence to Mr. Hobley's defense, Former Police Superintendent Leroy Martin and O.P.S. Chief Administrator Gayle Shines suppressed the Goldston Report.  In fact, for fifteen months, Martin and Shines kept the Report a secret and showed it to no one.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 62 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

63.     Then-Superintendent Martin was motivated to suppress the Goldston Report at least in part because he himself had headed Area 2 during some of the relevant time period, in which capacity he was Burge's direct supervisor.

**ANSWER:**     Defendant makes no answer to the averments of paragraph 63 of

Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the

extent those averments are deemed to be directed at him, Defendant, on the advice of counsel

due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to

him by the Fifth Amendment to the United States Constitution, and therefore declines to answer

at this time.

64.     During the fifteen months that Martin and Shines were suppressing the Goldston report, they also took no action at all regarding any of the allegations. Despite the evidence and conclusion that abuses during interrogations had been "methodical" and "systematic," no move was made to discipline any police officer, and the Report's contents were instead completely swept under the rug.

**ANSWER:**     Defendant makes no answer to the averments of paragraph 64 of

Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the

extent those averments are deemed to be directed at him, Defendant, on the advice of counsel

due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to

him by the Fifth Amendment to the United States Constitution, and therefore declines to answer

at this time.

65.     In 1992, district court Judge Milton I. Shadur unsealed (over Chicago's objections) the secret Goldston Report by court order, precipitating public disgrace for the Department.

**ANSWER:**     Defendant makes no answer to the averments of paragraph 65 of

Plaintiff's Amended Complaint that are not directed at this Defendant. Answering further, to the

extent those averments are deemed to be directed at him, Defendant, on the advice of counsel

due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to

him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

66.     **Less than half of the fifty examples of abuses cited in the Goldston Report had even been investigated contemporaneously by O.P.S.  Overall, only one of the fifty cases had resulted in a finding adverse to an accused police officer.  Thus, with only one exception, the Department either conducted no investigation or cleared the accused in everyone of these fifty due process violations.**

ANSWER:     Defendant makes no answer to the averments of paragraph 66 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

67.     **In 1992, with public attention focused on suppressed accusations of police abuses after the Goldston Report came to light (as well as the initiation of proceedings to terminate Burge that same year), then-Superintendent Brzeczek publicly promised an investigation into allegations of police torture in Area 2.**

ANSWER:     Defendant makes no answer to the averments of paragraph 67 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

68.     **To that end, nine of the allegations of (sic) were re-opened by O.P.S.**

ANSWER:     Defendant makes no answer to the averments of paragraph 68 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the

26

extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

69. **In most of these re-opened cases, the subsequent re-investigation reversed the original exonerations and instead "sustained" findings of wrongdoing on the part of the accused officers.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 69 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

70. **In spite of these new conclusions that certain police officers were guilty of fabricating false evidence via coercion during interrogations, the Department took no disciplinary action against any officer (many of whom were still on the force) except Burge.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 70 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

71. **Instead, approximately five years after the re-investigations found these allegations credible and recommended discipline, then–police Superintendent Terry Hillard and his general counsel, Thomas Needham, made a secret decision to "shelve" all of these new O.P.S. findings.**

27

**ANSWER:**   Defendant makes no answer to the averments of paragraph 71 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

72.   **Specifically, in August 1998, Needham wrote a confidential Memo instructing O.P.S. to close all of the cases and to re-classify all of these newly "sustained" findings as "non-sustained," thereby clearing all of the officers.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 72 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

73.   **Although Needham subsequently claimed he had never really read the files and Hillard claimed he never even saw them, the authority to summarily reverse the sustained findings and close these cases without further investigation was vested exclusively in Mr. Hillard.  Under Chicago's policy, said action could only have been undertaken at Hillard's direction.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 73 of Plaintiff's Amended Complaint that are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

74.     From 1992 through 1999 the Department and the Defendants with authority over these matters kept a secret of the new "sustained" findings and the related evidence supporting the victims such as Mr. Hobley.  This secret might have remained buried forever had it not been exposed involuntarily per court order in the course of a civil case against Chicago in mid-1999.

ANSWER:     Defendant makes no answer to the averments of paragraph 74 of Plaintiff's

Amended Complaint that are not directed at this Defendant.  Answering further, to the extent

those averments are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

75.     In this way, for more than six years, Martin, Shines, Hillard, and Needham, acting in concert with the Defendants and others, all suppressed exculpatory evidence from Mr. Hobley and other victims who had been convicted based on fabricated confessions. Instead of using this evidence to remedy the miscarriages of justice, these individuals first buried the evidence, then summarily nullified it, and then tried to conceal that decision as well.

ANSWER:     Defendant makes no answer to the averments of paragraph 75 of Plaintiff's

Amended Complaint that are not directed at this Defendant.  Answering further, to the extent

those averments are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

76.     As a result of these actions, Mr. Hobley and the other victims faced execution without the benefit of the knowledge/evidence that Chicago's investigators had subsequently corroborated their contentions that there were systematic due process violations and widespread fabrication of evidence taking place in Area 2.  The reason the victims never learned this was because the Defendants improperly hid it from them.

ANSWER:     To the extent the averments in paragraph 76 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

29

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**77.     In Mr. Hobley's case, this new evidence was all withheld from Mr. Hobley's criminal defense team for almost a decade as he continued to reside on Death Row litigating his post-conviction position in the courts.  Had the information been provided to Mr. Hobley rather than suppressed, his post-conviction proceedings would have been resolved favorably to Mr. Hobley, and at a much earlier date than his pardon.**

**ANSWER:**     To the extent the averments in paragraph 77 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**78.     Other than Burge, who was fired, and two other officers who merely served suspensions, Chicago has never disciplined any police officer for any of the allegations of fabricated confessions, including those officers who were subsequently adjudicated culpable after the re-investigations.  Nor were any of the involved officers ever referred to the State's Attorneys' Office for prosecution, and some remain on the force to this day unpunished in any manner.**

**ANSWER:**     Defendant makes no answer to the averments of paragraph 78 of

Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.  Answering

further, to the extent those averments are deemed to be directed at him, Defendant, on the advice

of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights

guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore

declines to answer at this time.

**79.     Even after Needham's secret Memo (reversing all of the sustained findings and closing the cases summarily) surfaced in 1999, the City, through Hillard and his spokeswoman, made clear that the Department was now finished with these allegations, and that no officer would ever be punished in the future.  In a deposition in 1999, Hillard stated under oath in his capacity as Chicago Police Superintendent that he "didn't know nothing" about the Goldston Report.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 79 of Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.

**80.   Burge is now retired in Florida; despite his termination for torturing people, is presently supported by approximately $30,000/year in pension by the City of Chicago.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 80 of Plaintiff's Amended Complaint insofar as they are not directed at this Defendant.

**81.   Before he received his pardon on the basis of innocence last year, Mr. Hobley suffered enormously.   After losing his family under the most tragic of circumstances, Mr. Hobley then had to bear the loss of his freedom and the almost unimaginable indignities of prison and Death Row, all under the specter of an unjust death sentence.**

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averments of purported injuries or damages.   Answering further, to the extent the remaining averments in paragraph 81 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**82.   If not for Governor Ryan's efforts to correct this injustice, Mr. Hobley might well have been electrocuted or poisoned by the State of Illinois by lethal injection for a crime he had nothing to do with, all as a result of Defendants' malfeasance in the manner described herein.**

**ANSWER:**   To the extent the averments in paragraph 82 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

## Count I — 42 U.S.C.§ 1983
## Due Process

83.     **Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

**ANSWER:**   Defendant incorporates his responses to each of the paragraphs of this

Complaint as if fully stated herein.

84.     **As described more fully above, each of the Defendants, while acting under color of law and within the scope of their employment as police officers, deprived Plaintiff of his constitutional right to a fair trial.**

**ANSWER:**   To the extent the averments in paragraph 84 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

85.     **Each of the Defendant Officers deliberately withheld exculpatory evidence, as well as provided false evidence, thereby misleading and misdirecting the state criminal prosecution of the Plaintiff.  To wit, the Defendant officers provided false allegations that were the basis of the criminal complaint, withheld exculpatory evidence throughout the proceedings, and fabricated evidence that was the bases of the criminal prosecution. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.**

**ANSWER:**   To the extent the averments in paragraph 85 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

86.     **Specifically, the Defendants concealed the fact that Plaintiff had never confessed as alleged by the prosecution at trial, assisted in tainting the testimony of the witnesses who testified against Plaintiff, assisted in planting the gas can, the physical evidence at the scene of the fire which was then used to convict Plaintiff, assisted in withholding evidence of witness manipulation, and/or assisted in withholding the exculpatory fingerprint report relating to said gas can.  All of these Defendants then proceeded to conceal these facts from Plaintiff and the criminal court.**

32

**ANSWER:**   To the extent the averments in paragraph 86 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

87.   **The Defendants used violence and torture against Plaintiff (or, alternatively, knew that violence and torture had been used against Plaintiff) to try to coerce him to confess falsely because those Defendants knew that Plaintiff was in fact innocent of the crime for which they were trying to frame him.**

**ANSWER:**   To the extent the averments in paragraph 87 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

88.   **Additionally, these Defendants also conspired to conceal the fact that each of them had actual knowledge that torture had been used against Plaintiff during the interrogation session which supposedly produced what was subsequently claimed at his criminal trial to be a confession. The identities of these particular officers who had actual knowledge that Plaintiff had been tortured therefore constituted exculpatory information withheld from the defense. Moreover, Plaintiff did not know the identity of any of the Defendants who had knowledge of this torture other than those Defendants who were physically present in the room at the time.**

**ANSWER:**   To the extent the averments in paragraph 88 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

89.   **The misconduct of the Defendant Officers also resulted in the criminal conviction of Plaintiff, thereby denying him his Constitutional right to a fair trial as it is secured to Plaintiff in the Due Process Clause of the Fourteenth Amendment of the United States Constitution.**

**ANSWER:**   To the extent the averments in paragraph 89 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**90.   As a result of the violation of his constitutional right to fair trial, Plaintiff suffered injuries, including but not limited to emotional distress.**

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averments of purported injuries.  Answering further, to the extent the averments in paragraph 90 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**91.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.**

**ANSWER:**   To the extent the averments in paragraph 91 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**92.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.**

**ANSWER:**   To the extent the averments in paragraph 92 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

34

## COUNT II -- Section 1983
## False Arrest

93.      **Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

**ANSWER:**      Defendant incorporates his responses to each of the paragraphs of this Complaint as if fully stated herein.

94.      **Plaintiff was improperly seized and arrested without legitimate probable cause, to wit, Plaintiff was denied liberty without justification in violation of the Constitution.**

**ANSWER:**      To the extent the averments in paragraph 94 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

95.      **As a result of the above-described wrongful infringement of Plaintiff's rights, Plaintiff has suffered damages, including but not limited to substantial mental distress and anguish.**

**ANSWER:**      Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averments of purported damages.  Answering further, to the extent the averments in paragraph 95 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

96.      **The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.**

**ANSWER:**      To the extent the averments in paragraph 96 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

35

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**Count III -- 42 U.S.C. § 1983**
**Equal Protection**

On October 13, 2004, the Court dismissed Count III to the extent that it is premised on excessive

force. Accordingly, to the extent that the averments in paragraphs 97-102 of Plaintiff's

Amended Complaint are premised on excessive force, no response is required.

**97.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

**ANSWER:**   Defendant incorporates his responses to each of the paragraphs of this

Complaint as if fully stated herein.

**98.    As described more fully above, the Defendant Officers, all while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Plaintiff equal protection of the law in violation of his Constitutional rights.**

**ANSWER:**   To the extent the averments in paragraph 98 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**99.    Specifically, these Defendants actively participated in or personally caused misconduct in terms of "framing" minority criminal suspects in a manner designed to secure improper convictions.  Said misconduct was motivated by racial animus and constituted purposeful discrimination; it also affected minorities in a grossly disproportionate manner vis-a-vis similarly-situated Caucasian individuals.**

**ANSWER:**   To the extent the averments in paragraph 99 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

36

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**100.    As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of Plaintiff's averments of purported injuries.  Answering further, to the

extent the averments in paragraph 100 of Plaintiff's Amended Complaint are directed at him,

Defendant, on the advice of counsel due to the threat of a potential criminal prosecution,

reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States

Constitution, and therefore declines to answer at this time.

**101.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.**

**ANSWER:**    To the extent the averments in paragraph 101 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**102.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.**

**ANSWER:**    To the extent the averments in paragraph 102 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**COUNT IV -- Section 1983**
**Conspiracy to Deprive Plaintiff's Constitutional Rights**

37

On October 13, 2004, the Court dismissed Count IV to the extent that it is premised on excessive

force, failure to intervene (premised on excessive force), or the experiences of others, including

their alleged coercive interrogations.  Accordingly, to the extent that the averments in paragraphs

103-117 of Plaintiff's Amended Complaint are premised on excessive force, failure to intervene

(premised on excessive force), or the experiences of others, including their alleged coercive

interrogations, no response is required.

**103.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

**ANSWER:**   Defendant incorporates his responses to each of the paragraphs of this

Complaint as if fully stated herein.

**104.   Prior to the arrest of Plaintiff, the police personnel in Area 2 reached an agreement among themselves to violate the due process rights of criminal suspects in order to "close" as many cases as possible as fast as possible. This conspiracy involved an agreement to conceal exculpatory information, "plant" evidence, manipulate witnesses, and, most importantly, fabricate incriminating evidence, including but not limited to the extraction of false confessions via torture.**

**ANSWER:**   To the extent the averments in paragraph 104 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**105.   In furtherance of this illicit conspiracy to deprive criminal suspects of due process of law, personnel in Area 2 agreed to implement, and did in fact implement, the following agreed methodology on a widespread scale:**

**a.   First, it was agreed that for any given crime, the Area 2 detectives would select a particular suspect whom they felt might be guilty of that crime based on the evidence then available.**

**ANSWER:**   To the extent the averments in paragraph 105a of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**b.     Next, it was agreed that the Area 2 detectives would isolate that unfortunate suspect in an interrogation room in Area 2 headquarters and torture him during interrogation in an attempt to extract a confession.**

**ANSWER:**     To the extent the averments in paragraph 105b of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**c.     It was further agreed in advance that if the Area 2 detectives were able to extract a confession via torture during interrogation, the case would be closed on the basis of this fabricated evidence, and the suspect would be prosecuted.  On the other hand, if the detectives were unable to extract a confession via torture during interrogation, it was agreed in advance that the detectives would simply fabricate that piece of evidence (i.e., the existence of a confession), and the case was closed and the suspect prosecuted on the basis of this fabricated evidence.**

**ANSWER:**     To the extent the averments in paragraph 105c of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**d.     In all such cases, it was agreed that the detectives would seek to bolster the false confession (or the false non-confession) with other fabricated evidence which purportedly corroborated that confession. This included, for example, "planting" physical evidence or deliberate manipulation of material witnesses.  These detectives further agreed to advance the objective of undermining due process by withholding exculpatory information, including the details associated with the practices described above.**

**ANSWER:**     To the extent the averments in paragraph 105d of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**106.** **Based on the evidence now available, the agreed methodology described above played out at least one hundred times in Area 2. In addition to the individuals described above, one such victim of this reoccurring and ongoing conspiracy to violate due process was Mr. Hobley.**

**ANSWER:** To the extent the averments in paragraph 106 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time. the

Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**107.** **In particular, after the fire at issue in Plaintiff's case, Defendants Burge, Lotito, Dwyer, Paladino, Garrity, and Mikus all implemented the illicit agreed-plan described above. In this way, the Defendant Officers conspired, and continue to conspire, to deprive Plaintiff of his constitutional rights to be free of violations of due process, false arrest and malicious prosecution as guaranteed by the Fourth and Fourteenth Amendments to the United states Constitution.**

**ANSWER:** To the extent the averments in paragraph 107 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**108.** **Specifically, Defendants Burge, Lotito, Dwyer, Paladino, Garrity, Mikus and Paladino, as well as some of the other Officers in Area 2, reached an agreement to attempt to extract a false confession via torture, then, having failed, to conceal the fact that Plaintiff had never confessed to the murders as alleged by the prosecution at the criminal trial, as well as the additional fact that Plaintiff had not failed a polygraph as reported by Defendant Garrity.**

**ANSWER:** To the extent the averments in paragraph 108 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**109.** Defendants Burge, Lotito, Dwyer, Paladino, Garrity, Mikus and Paladino, as well as some of the other Officers in Area 2, also reached an agreement either to assist in tainting the testimony of the witnesses who testified against Plaintiff or else to assist in planting the gas can,  the physical evidence at the scene of the fire which was then used to convict Plaintiff; all of these Defendants then proceeded to agree to conceal all of these facts, as well as the exculpatory fingerprint report, from Plaintiff and the criminal court.

**ANSWER:**   To the extent the averments in paragraph 109 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**110.** Additionally, these Defendants also conspired to conceal the fact that each of them had actual knowledge that torture had been used against Plaintiff during the interrogation session which supposedly produced what was subsequently claimed at his criminal trial to be a confession. The identities of these particular officers who had actual knowledge that Plaintiff had been tortured therefore constituted exculpatory information withheld from the defense, and Plaintiff did not then know the identity of any of these Defendants who had knowledge of this torture other than those Defendants who were physically present in the room at the time.

**ANSWER:**   To the extent the averments in paragraph 110 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**111.** Police Superintendents Leroy Martin and Terry Hillard, Chief Administrator of Chicago's Office of Professional Standards Gayle Shines and attorney Thomas Needham, as well as the other Defendants and other unnamed co-conspirators, also contributed to this conspiracy to deprive Plaintiff's constitutional rights. They did so by intentionally concealing exculpatory information which would have enabled Plaintiff to successfully challenge his conviction and obtain a new trial had that information not been suppressed, to wit, these individuals concealed the existence of the Goldston report and other exculpatory materials which would have helped to exonerate Plaintiff had they not been suppressed.

**ANSWER:**   Defendant makes no answer to the averments of paragraph 111 of Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**112.    In the manner described in the preceding paragraphs, the Defendant Officers, acting in concert with other unknown co-conspirators, including persons who are not members of the Chicago Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.**

**ANSWER:**   To the extent the averments in paragraph 112 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**113.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.  One such overt act was the physical torture of Plaintiff; in fact, a conspiracy to commit violence continues to this day because overt acts in support of this conspiracy have continued unabated to the present.**

**ANSWER:**   To the extent the averments in paragraph 113 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**114.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.**

**ANSWER:**   To the extent the averments in paragraph 114 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**115.   As a proximate result of the conspiracy, Plaintiff suffered financial damage, as well as severe emotional distress.**

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of Plaintiff's averments of purported damages or injuries.  Answering

further, to the extent the averments in paragraph 115 of Plaintiff's Amended Complaint are

directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal

prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the

United States Constitution, and therefore declines to answer at this time.

**116.   This conspiracy was undertaken for the additional purpose of punishing Plaintiff for exercising his First Amendment right to speak out about matters of public concern, namely, the police abuses described above.**

**ANSWER:**   To the extent the averments in paragraph 116 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**117.   The misconduct described in this Count was undertaken pursuant to Chicago's policy and practice in the manner described more fully in preceding paragraphs.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 117 of

Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.  Answering

further, to the extent those averments are deemed to be directed at him, Defendant, on the advice

of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights

guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore

declines to answer at this time.

43

## COUNT V – Section 1983
### Conspiracy With O.P.S. to Deprive Constitutional Rights

On October 13, 2004, the Court dismissed Count V to the extent that it is premised on excessive force or the experiences of others, including their alleged coercive interrogations. Accordingly, to the extent that the averments in paragraph 118-131 of Plaintiff's Amended Complaint are premised on excessive force or the experiences of others, including their alleged coercive interrogations, no response is required.

118.   **Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

**ANSWER:**   Defendant incorporates his responses to each of the paragraphs of this Complaint as if fully stated herein.

119.   **Prior to date of the constitutional injuries suffered by Plaintiff in this case, it was agreed among the police officer Defendants, on the one hand, and the individuals who comprise the Office of Professional Standards on the other hand, that if any members of the Chicago Police Department were subsequently accused by citizens of due process violations, then the O.P.S. employees, including the aforementioned investigators, would either take no action to investigate or, if investigation was unavoidable, actively endeavor to deem those citizen complaints unfounded or unsustained, even where they knew that the police officers in fact violated citizens' rights (hereafter, the "Agreement").**

**ANSWER:**   To the extent the averments in paragraph 119 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

120.   **In furtherance of this illicit Agreement, it was further agreed among the Defendant police officer on the one hand, and the individuals who comprise the O.P.S. on the other hand, that if a due process complaint were to arise, then the O.P.S. would deliberately avoid interviewing the accused police officers (contrary to the written policy on the books which should have required such an interview) until after the victim was prosecuted and convicted. This Agreement, which facilitated the abuse at issue by insulating rogue police officers from scrutiny, was carried out in numerous cases over the years, including Plaintiff's case, in which the O.P.S. repeatedly and deliberately kept**

deferring an interview of the Defendant Officers about Plaintiff's allegations month after month for the entire period of years it took to obtain his conviction.

**ANSWER:**   To the extent the averments in paragraph 120 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

121.   **It was further agreed by the above-named conspirators that when the Goldston report and other similar evidence subsequently arose, it would be (and was) suppressed.**

**ANSWER:**   To the extent the averments in paragraph 121 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

122.   **At all relevant times, the Agreement referenced in the preceding four paragraphs was the policy and practice of the Chicago Police Department, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 122 of Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.

123.   **As a direct and proximate result of the illicit prior Agreement described above, Plaintiff's rights were violated.**

**ANSWER:**   To the extent the averments in paragraph 123 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

124.   **Specifically, Plaintiff was subjected to violation of his due process rights and other constitutional injuries as a direct result of the Agreement with O.P.S. employees to decline to sustain citizen complaints even where meritorious.  Because of this Agreement,**

the Defendants were encouraged to believe they could act with impunity and without fear of any repercussions, even where they purposefully violated the rights of criminal suspects. In this manner, the alleged Agreement proximately caused all of the injuries suffered by Plaintiff in this case.

**ANSWER:**   To the extent the averments in paragraph 124 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

125.   In this manner, the Defendant officers, acting in concert with other unknown co-conspirators, including persons who are not members of the Chicago Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

**ANSWER:**   To the extent the averments in paragraph 125 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

126.   Independently, before and after Plaintiff's conviction, each of the Defendants further conspired, and continue to conspire, to deprive Plaintiff of exculpatory led to his exonerated of the false charges as described in the various Paragraphs of this Complaint.

**ANSWER:**   To the extent the averments in paragraph 126 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

127.   In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.  One such overt act was the suppression of the Goldston report.  Another overt act is the continued suppression of material documents in the current litigation, a problem which continues to this day.

**ANSWER:**   To the extent the averments in paragraph 127 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**128.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.**

**ANSWER:**   To the extent the averments in paragraph 128 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**129.    As a proximate result of the conspiracy, Plaintiff suffered financial damage, as well as severe emotional distress.**

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averments of purported damages or injuries.  Answering further, to the extent the averments in paragraph 129 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**130.    This conspiracy was undertaken for the additional purpose of punishing Plaintiff for exercising his First Amendment right to speak out about matters of public concern, namely, about the police abuses described above.**

**ANSWER:**   To the extent the averments in paragraph 130 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**131.   The misconduct described in this Count was undertaken pursuant to Chicago's policy and practice in the manner described more fully in preceding paragraphs.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 131 of Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

### COUNT VI -- Section 1985(3) Conspiracy
### Conspiracy to Deprive Constitutional Rights

On October 13, 2004, the Court dismissed Count VI to the extent that it is premised on excessive force.  Accordingly, to the extent that the averments in paragraph 132-136 of Plaintiff's Amended Complaint are premised on excessive force, no response is required.

**132.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

**ANSWER:**   Defendant incorporates his responses to each of the paragraphs of this Complaint as if fully stated herein.

**133.   As described more fully above, each of the Defendants conspired, directly or indirectly, for the purpose of depriving Plaintiff of Equal Protection of the law.**

**ANSWER:**   To the extent the averments in paragraph 133 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**134.   In so doing, Defendants took actions in furtherance of this conspiracy, causing injury to Plaintiff.**

48

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averments of purported injuries.  Answering further, to the extent the averments in paragraph 134 Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

135.   **The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.**

**ANSWER:**   To the extent the averments in paragraph 135 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

136.   **The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs.**

**ANSWER:**   Defendant makes no answer to the averments of paragraph 136 of Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

### Count VII -- R.I.C.O.

On October 13, 2004, the Court dismissed Count VII.  Accordingly, no response is required to paragraphs 137-149.

### Count VIII - RICO Conspiracy

On October 13, 2004, the Court dismissed Count VIII.  Accordingly, no response is required to paragraphs 150-154.

### Count IX -- 42 U.S.C. § 1983
### Police Torture

On October 13, 2004, the Court dismissed Count IX.  Accordingly, no response is required to paragraphs 155-160.

### Count X -- 42 U.S.C. § 1983
### Failure to Intervene to Prevent Constitutional Violations

On October 13, 2004, the Court dismissed Count X to the extent that it is premised on excessive force.  Accordingly, to the extent that the averments in paragraphs 161-165 of Plaintiff's Amended Complaint are premised on excessive force, no response is required.

**161.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

**ANSWER:**   Defendant incorporates his responses to each of the paragraphs of this Complaint as if fully stated herein.

**162.   During the violations of Plaintiff's rights described more fully above, each of the Defendants stood by without intervening to prevent those violations of Plaintiff's rights.**

**ANSWER:**   To the extent the averments in paragraph 162 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**163.   As a result of the Defendants' failure to intervene to prevent these violations of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress.  These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.**

**ANSWER:**    To the extent the averments in paragraph 163 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**164.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.**

**ANSWER:**    To the extent the averments in paragraph 164 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**165.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described in preceding paragraphs.**

**ANSWER:**    Defendant makes no answer to the averments of paragraph 165 of Plaintiff's Amended Complaint inasmuch as they are not directed at this Defendant.  Answering further, to the extent those averments are deemed to be directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

### Count XI[1] -- Section 1983
### Monell Claim

Defendant makes no response to County XI of Plaintiff's Amended Complaint inasmuch as it is not directed at this defendant.

----

[1]Hobley's amended complaint labels this claim Count IX, but this appears to be a typographical error, so Defendant refers to Plaintiff's Monell Claim as Count XI.

51

### COUNT XII – State Law Claim
### Intentional Infliction of Emotional Distress

On October 13, 2004, the Court dismissed Count XII to the extent that it is premised on

Plaintiff's excessive force or failure to intervene (premised on excessive force).  Accordingly, to

the extent that the averments in paragraphs 172-176 of Plaintiff's Amended Complaint are

premised on excessive force or failure to intervene (premised on excessive force), no response is

required.

**172.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

**ANSWER:**   Defendant incorporates his responses to each of the paragraphs of this

Complaint as if fully stated herein.

**173.   The acts and conduct of the Defendant Officers as set forth above were extreme and outrageous. The Defendants Officers intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff.**

**ANSWER:**   To the extent the averments in paragraph 173 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

**174.   Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff and thereby constituted intentional infliction of emotional distress.**

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of Plaintiff's averments of purported damages or injuries.  Answering

further, to the extent the averments in paragraph 174 of Plaintiff's Amended Complaint are

directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal

prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**175.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.**

**ANSWER:**  To the extent the averments in paragraph 175 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**176.  As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish.**

**ANSWER:**  Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averments of purported damages or injuries.  Answering further, to the extent the averments in paragraph 176 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

### COUNT XIII -- State Law Claim
### Civil Conspiracy

On October 13, 2004, the Court dismissed Count XIII to the extent that it is premised on excessive force or failure to intervene (premised on excessive force).  Accordingly, to the extent that the averments in paragraphs 177-182 of Plaintiff's Amended Complaint are premised on excessive force or failure to intervene (premised on excessive force), no response is required.

**177.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

53

**ANSWER:** Defendant incorporates his responses to each of the paragraphs of this Complaint as if fully stated herein.

**178. As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by an unlawful means.**

**ANSWER:** To the extent the averments in paragraph 178 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**179. As described more fully in the preceding paragraphs, the complained-of conspiracy included among its objectives a conspiracy to maliciously prosecute and a conspiracy to inflict emotional distress via police torture, said conspiracies having been carried out on innumerable occasions before the torture experienced by Plaintiff in this case.**

**ANSWER:** To the extent the averments in paragraph 179 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**180. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity. Among these overt acts were the torture of Plaintiff, as well as the torture of all of the other victims of this practice.**

**ANSWER:** To the extent the averments in paragraph 180 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**181. The misconduct described in this Count was undertaken with malice, willfulness; and reckless indifference to the rights of others.**

**ANSWER:**   To the extent the averments in paragraph 181 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**182.**   **As a proximate result of Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish.**

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averments of purported damages or injuries.  Answering further, to the extent the averments in paragraph 182 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

**COUNT XIV -- State Law Claim**
**Malicious Prosecution**

**183.**   **Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.**

**ANSWER:**   Defendant incorporates his responses to each of the paragraphs of this Complaint as if fully stated herein.

**184.**   **Plaintiff was improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.**

**ANSWER:**   To the extent the averments in paragraph 184 of Plaintiff's Amended Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the United States Constitution, and therefore declines to answer at this time.

185.   The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

ANSWER:   To the extent the averments in paragraph 185 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

186.   Statements of the Defendant Officers regarding Plaintiff's alleged culpability were made with knowledge that the statements were false and perjured.  In so doing, Defendant Officers fabricated evidence and withheld exculpatory information.

ANSWER:   To the extent the averments in paragraph 186 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

187.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

ANSWER:   To the extent the averments in paragraph 187 of Plaintiff's Amended

Complaint are directed at him, Defendant, on the advice of counsel due to the threat of a

potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment to the United States Constitution, and therefore declines to answer at this time.

188.   As a result of this misconduct, Plaintiff has suffered and continues to suffer injuries including pain and suffering.

ANSWER:   Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of Plaintiff's averments of purported damages or injuries.  Answering

further, to the extent the averments in paragraph 188 of Plaintiff's Amended Complaint are

directed at him, Defendant, on the advice of counsel due to the threat of a potential criminal

prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment to the

United States Constitution, and therefore declines to answer at this time.

### COUNT XV - State Law Claim
### Respondeat Superior

Defendant makes no response to County XV of Plaintiff's Amended Complaint inasmuch

as it is not directed at this defendant.

### COUNT XVI - State Law Claim
### Indemnification

Defendant makes no response to County XVI of Plaintiff's Amended Complaint

inasmuch as it is not directed at this defendant.

ACCORDINGLY, Defendant Robert Dwyer requests judgment as follows:

1.   That Plaintiff's Amended Complaint be dismissed in its entirety with prejudice;

2.   That judgment be entered in favor of Defendant Robert Dwyer and against

Plaintiff;

3.   That Defendant Robert Dwyer be awarded all costs incurred in defending this

lawsuit; and

4.   That this Court award further relief to Defendant Robert Dwyer as it deems just

and proper.

ELIZABETH A. EKL, One of the Attorneys for
Defendant ROBERT DWYER

57

## FIRST AFFIRMATIVE DEFENSE

NOW COMES the Defendant, ROBERT DWYER, by and through his attorneys, JAMES G. SOTOS, MICHAEL W. CONDON and ELIZABETH A. EKL of HERVAS, SOTOS, CONDON & BERSANI, P.C., and for his First Affirmative Defense to Plaintiff's Amended Complaint states the following unto this Honorable Court:

Plaintiff's claims against Defendant are barred in whole or in part by the doctrine of qualified immunity.

WHEREFORE, the Defendant, ROBERT DWYER, denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court allow for the costs of defending this lawsuit.

_____

ELIZABETH A. EKL, One of the Attorneys for Defendant ROBERT DWYER

## SECOND AFFIRMATIVE DEFENSE

NOW COMES the Defendant, ROBERT DWYER, by and through his attorneys, JAMES G. SOTOS, MICHAEL W. CONDON and ELIZABETH A. EKL of HERVAS, SOTOS, CONDON & BERSANI, P.C., and for his Second Affirmative Defense to Plaintiff's Amended Complaint states the following unto this Honorable Court:

Plaintiff's claims against Defendant are barred in whole or in part by the doctrine of collateral estoppel.

58

WHEREFORE, the Defendant, ROBERT DWYER, denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court allow for the costs of defending this lawsuit.

_____
ELIZABETH A. EKL, One of the Attorneys for
Defendant ROBERT DWYER

## THIRD AFFIRMATIVE DEFENSE

NOW COMES the Defendant, ROBERT DWYER, by and through his attorneys, JAMES G. SOTOS, MICHAEL W. CONDON and ELIZABETH A. EKL of HERVAS, SOTOS, CONDON & BERSANI, P.C., and for his Third Affirmative Defense to Plaintiff's Amended Complaint states the following unto this Honorable Court:

Plaintiff failed to mitigate his damages, if any.

WHEREFORE, the Defendant, ROBERT DWYER, denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court allow for the costs of defending this lawsuit.

_____
ELIZABETH A. EKL, One of the Attorneys for
Defendant ROBERT DWYER

## FOURTH AFFIRMATIVE DEFENSE

NOW COMES the Defendant, ROBERT DWYER, by and through his attorneys, JAMES G. SOTOS, MICHAEL W. CONDON and ELIZABETH A. EKL of HERVAS, SOTOS, CONDON & BERSANI, P.C., and for his Fourth Affirmative Defense to Plaintiff's Amended Complaint states the following unto this Honorable Court:

59

Plaintiff's claims against Defendant are barred in whole or in part by the applicable statute of limitations.

WHEREFORE, the Defendant, ROBERT DWYER, denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court allow for the costs of defending this lawsuit.

_____
ELIZABETH A. EKL, One of the Attorneys for
Defendant ROBERT DWYER

## FIFTH AFFIRMATIVE DEFENSE

NOW COMES the Defendant, ROBERT DWYER, by and through his attorneys, JAMES G. SOTOS, MICHAEL W. CONDON and ELIZABETH A. EKL of HERVAS, SOTOS, CONDON & BERSANI, P.C., and for his Fifth Affirmative Defense to Plaintiff's Amended Complaint states the following unto this Honorable Court:

Plaintiff's claims against Defendant are barred in whole or in part by the doctrine of judicial estoppel.

WHEREFORE, the Defendant, ROBERT DWYER, denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court allow for the costs of defending this lawsuit.

_____
ELIZABETH A. EKL, One of the Attorneys for
Defendant ROBERT DWYER

## SIXTH AFFIRMATIVE DEFENSE

NOW COMES the Defendant, ROBERT DWYER, by and through his attorneys, JAMES

G. SOTOS, MICHAEL W. CONDON and ELIZABETH A. EKL of HERVAS, SOTOS,

CONDON & BERSANI, P.C., and for his Sixth Affirmative Defense to Plaintiff's Amended

Complaint states the following unto this Honorable Court:

Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.

WHEREFORE, the Defendant, ROBERT DWYER, denies that the Plaintiff is entitled to

any judgment whatsoever against him and prays this Honorable Court allow for the costs of

defending this lawsuit.

ELIZABETH A. EKL, One of the Attorneys for
Defendant ROBERT DWYER

## SEVENTH AFFIRMATIVE DEFENSE

NOW COMES the Defendant, ROBERT DWYER, by and through his attorneys, JAMES

G. SOTOS, MICHAEL W. CONDON and ELIZABETH A. EKL of HERVAS, SOTOS,

CONDON & BERSANI, P.C., and for his Seventh Affirmative Defense to Plaintiff's Amended

Complaint states the following unto this Honorable Court:

Plaintiff cannot maintain a cause of action for wrongful conviction or malicious

prosecution if it is shown that Plaintiff, in fact, murdered Anita Hobley, Phillip Hobley, Sherlon

Holton, Schalise Lindsey, Robert Stephens, Johnny Mae Dobbs and Anthony Bradford.

WHEREFORE, the Defendant, ROBERT DWYER, denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court allow for the costs of defending this lawsuit.

ELIZABETH A. EKL, One of the Attorneys for
Defendant ROBERT DWYER

## DEFENDANT ROBERT DWYER'S JURY DEMAND

Defendant, Robert Dwyer, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

ELIZABETH A. EKL, One of the Attorneys for
Defendant ROBERT DWYER

JAMES G. SOTOS
MICHAEL W. CONDON
ELIZABETH A. EKL
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
(630) 773-4774

Dated: November 17, 2004

62