# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3678 | **DATE** | 1/12/2005 |
| **CASE TITLE** | Madison Hobley vs. Jon Burge, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set out in the Memorandum Opinion and Order, Jones Day's Motion for Reconsideration of Court's Order Mandating Production of Jones Day's Privileged Documents is denied.  Enter Memorandum Opinion and Order. *Geraldine Soat Brown*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | JAN 13 2005 | |
| | Notified counsel by telephone. | | | date docketed | 399 |
| | Docketing to mail notices. | | | rbf | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | 1/12/2005 | |
| | | | | date mailed notice | |
| | GR | courtroom deputy's initials | | GR | |
| | | | | mailing deputy initials | |
| | | | Date/time received in central Clerk's Office | | |



DOCKETED

JAN 1 3 2005

| | | |
|---|---|---|
| MADISON HOBLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 3678 |
| | ) | |
| CHICAGO POLICE COMMANDER | ) | Judge Marvin Aspen |
| JON BURGE, et al., | ) | |
| Defendants. | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

Before the court is a motion filed by non-party Jones Day for reconsideration of this court's

April 20, 2004 Opinion and Order requiring that certain documents be produced to counsel for

plaintiff Madison Hobley.[1] After careful consideration of the issues, including an evidentiary hearing,

Jones Day's motion for reconsideration is DENIED.


## PROCEDURAL BACKGROUND

### A. Jones Day's motion

From 1991 through 1994, attorneys from the law firm Jones Day represented the City of

Chicago ("City") in proceedings entitled *City of Chicago v. Burge, et al,* brought by the police

---

[1] This motion and supporting memorandum do not appear on the court's docket and do
not have a docket number.

1



board to terminate former Police Commander Jon Burge. (Jones Day's Mem. Supp. Mot. for Recons. ("JD Mem.") at 2; *id.*, Ex. 1, Affidavit of June K. Ghezzi ¶ 1.) Jones Day continues to represent the City in other matters. (*Id.*) Both the City and Jon Burge are defendants in this case. In the April 20, 2004 Opinion and Order, the City was ordered to produce to Hobley's counsel all of the "Jones Day Police Board documents." (Op. & Order, April 20, 2004 at 16.) [Dkt 158.] On May 12, 2004, lawyers from the Jones Day firm appeared in court, seeking reconsideration of the April 20, 2004 Opinion and Order to the extent that it requires production of "police board documents" that are still in Jones Day's possession. Jones Day is not a party to this action, but was permitted to bring the present motion in which it asserts that the documents are protected by attorney-client privilege and work product protection.

On June 16, 2004, this court denied Jones Day's motion for reconsideration insofar as it attempted to assert the attorney-client privilege, and ordered an evidentiary hearing on the work product protection claim. (Order, June 16, 2004.) [Dkt 216.] Jones Day objected to the June 16, 2004 order. (Jones Day's Objections.) [Dkt 255.] District Judge Aspen upheld the order requiring a witness from Jones Day to appear for an evidentiary hearing on the work product protection claim, but reversed the finding that the City had waived its attorney-client privilege as to the Jones Day police board documents and directed that the City be given an opportunity to present evidence on the attorney-client privilege issue at the evidentiary hearing. (Op. & Order, July 23, 2004 at 3, 4-5.) [Dkt 279.]

B. The evidentiary hearing

The evidentiary hearing was held on August 23, 2004. At the hearing, the City did not

produce a witness to testify or other evidence in response to the opportunity presented in Judge Aspen's order. Instead, the City's counsel informed the court that an agreement had been reached with Hobley's attorneys regarding the attorney-client privilege aspect of the documents at issue and that those documents had been produced pursuant to that agreement. (Tr. at 4, 108-09.)[2] This court understands that to mean that the City is not contesting the court's previous finding that the City's former counsel from the law firm of Hinshaw & Culbertson (the "Hinshaw firm") was authorized to waive the attorney-client privilege and the City's work product protection with respect to the Jones Day police board documents. "[T]he attorney-client privilege belongs to the client alone." *In re Special September 1978 Grand Jury II*, 640 F.2d 49, 62 (7th Cir. 1980). Because the City has waived the attorney-client privilege, any "police board documents" being withheld by Jones Day solely on the basis of attorney-client privilege must be produced.

Because Jones Day's motion was brought by an entity (Jones Day), this court's order establishing the evidentiary hearing directed Jones Day and the Hinshaw firm each to produce at the hearing a witness pursuant to Fed. R. Civ. P. 30(b)(6) to testify as to certain matters. (Order, June 16, 2004.) Notably, the witness presented by Jones Day, attorney June K. Ghezzi, admitted that the inquiry she made in order to testify as to information possessed by "Jones Day" was limited. She testified that she spoke with a legal assistant, Julianne Foran, several secretaries and the manager of the records department. (Tr. 113-14.) She apparently did not make any inquiry as to the knowledge of any other Jones Day partner. (Tr. 157.)[3] Apparently, she did not inquire of the other Jones Day

---

[2] Except as otherwise stated, transcript references are to the evidentiary hearing held on August 23, 2004, and exhibit numbers refer to exhibits admitted at that hearing.

[3] Jones Day is a general partnership of attorneys. (Tr. at 153.)

attorneys who, Jones Day states, had represented the City in the police board proceedings. (JD Mem at 2 n. 1.)

## RELEVANT FACTS

Certain facts relating to this motion are undisputed. Other matters initially asserted as fact turned out, at the evidentiary hearing, to have very little support and a surprising lack of contemporaneous documentation, especially considering that all of the participants are lawyers or paralegals working under attorney supervision.


A. The grand jury subpoena covering the police board documents

Jones Day states that, in representing the City in the police board proceedings, its attorneys created documents in anticipation of and during those proceedings reflecting the attorneys' legal opinions, mental impressions, and litigation strategy. (Jones Day's Resp. to Magistrate Judge Brown's Aug. 24, 2004 Order ("JD Suppl. Resp.") at 2.) [Dkt 308.] Jones Day further states that following the conclusion of that matter, it maintained those documents in Jones Day's secure office and later at a secure off-site storage facility used by the firm. (JD Mem. at 2; Ghezzi Aff. ¶ 2.) In May 2002, the City retained the Hinshaw firm in connection with the investigation by the Special Prosecutor into charges of police brutality by Jon Burge and others. (Objection by Def. City of Chicago to Magistrate Judge Geraldine Soat Brown's 5/12/04 Order, Ex. B, Affidavit of James Navarre ¶ 2.) [Dkt 196.]

On December 16, 2002, Jeffrey Given, Chief Assistant Corporation Counsel for the City, informed Ms. Ghezzi that a grand jury subpoena had been served on the City pertaining to the Special Prosecutor's investigation, and that the documents in Jones Day's possession relating to the

police board proceedings were likely covered by the subpoena. (Ghezzi Aff.¶ 3; Ex. JD 3.) Ms. Ghezzi's affidavit also states that on the following day she communicated with Jack Goggin, an attorney with the Hinshaw firm, regarding the production of those documents, and that during that conversation, Ms. Ghezzi informed Mr. Goggin that Jones Day would segregate the privileged documents and produce the non-privileged police board documents. (Ghezzi Aff. ¶ 4.) During her testimony at the evidentiary hearing, Ms. Ghezzi had a general recollection that she told "anybody who asked," "[W]e'll give you the non-privileged documents.... We'll pull them, I'll give you the non-privileged documents." (Tr. at 122.)

In late 2002 and January 2003, Jones Day retrieved 57 boxes of documents relating to the police board proceedings from its off-site storage facility. (*Id.* at 123; Ghezzi Aff. ¶ 5.) In January 2003, Jones Day legal assistants reviewed the documents and culled out five boxes that allegedly contained privileged materials. (*Id.* at 123-24,127.)[4] All of the review and selection of privileged documents was done by non-attorneys; no attorney at Jones Day reviewed the documents in the five withheld boxes. (*Id.* at 146-47.) Ms. Ghezzi testified that she would not have reviewed the selection of the documents until it came time to prepare the privilege log. (*Id.* at 147.)

Ms. Ghezzi testified that her normal procedure for dealing with privileged documents involves creating a privilege log. (*Id.* at 130.) She testified that she did not create a privilege log between late 2002 and March 2003 because she thought the Hinshaw firm would inform her when a privilege log was necessary. (*Id.* at 130-31.)

The Hinshaw firm's witness at the evidentiary hearing testified that his firm became aware

---

[4] Ms. Ghezzi referred to these documents as "privileged" documents, but the court understands that to include documents that Jones Day asserts are protected as work product.

that Jones Day was pulling privileged documents from the documents being produced in late 2002. (*Id.* at 36.) Ms. Ghezzi also testified that her client contact at the City, Jeffrey Given, knew that Jones Day was reviewing the police board documents for privilege and that those privileged documents would not be produced to the Hinshaw firm. (*Id.* at 129-30.) However, her basis for that belief was that it was "what [she] would do in any case." (*Id.* at 130.) Jones Day did not produce any writing confirming to the City or the Hinshaw firm that it was withholding documents.

After the allegedly privileged documents were removed, the remaining documents (52 boxes) were produced to the Hinshaw firm around January 9, 2003. (Ghezzi Aff. ¶¶ 6-7.) Again, surprisingly, Jones Day produced no receipts, cover letters or other documents reflecting the transfer of 52 boxes of documents to the custody of another law firm.

Ms. Ghezzi claims that on January 23, 2003, attorney Robert Shannon from the Hinshaw firm contacted her about the production of the police board documents and informed her that a privilege log would eventually be needed, but there had been "some sort of postponement and such a log would not be needed at that time." (*Id.* ¶ 8.) However, the Hinshaw firm's witness at the evidentiary hearing testified that the Hinshaw firm's records reflect no such conversation between Ms. Ghezzi and Mr. Shannon, and Mr. Shannon has no recollection of that conversation. (Tr. at 45-48.)

Jones Day's billing records, Ex. JD 18, contain an entry for February 3, 2003, that Ms. Ghezzi interpreted as reflecting time spent leaving a voice mail message for the Special Prosecutor, Edward Egan, in response to a communication from Mr. Egan to another Jones Day lawyer. (*Id.* at 133-34.) She testified that in that voice mail message she told Mr. Egan that Jones Day was producing non-privileged documents to the Hinshaw firm. (*Id.* at 134.) She believes that she "would have also said that we have the privileged documents here, and call me if you have any questions."

6

(*Id.*) Apparently, Jones Day did not confirm that communication in writing.

The Hinshaw firm produced the police board documents to the Special Prosecutor in January and February 2003. (Navarre Aff. ¶ 3.) Notwithstanding her conversation with Mr. Given in December 2002, and the communication from the Special Prosecutor in February 2003, Ms. Ghezzi testified that she was not aware until "almost a year later" that the documents that Jones Day had transferred to the Hinshaw firm had been produced to anyone. (Tr. at 131.)

B. Discovery in this lawsuit; Hobley's Second Motion to Compel

Madison Hobley filed this lawsuit in May 2003. From June 2003 until May 2004, the City was represented in this case by attorneys from the Hinshaw firm, including Steven Puiszis, who was the Rule 30(b)(6) witness presented by the Hinshaw firm at the evidentiary hearing. (*Id.* at 10; Atty. Appearance [dkt 10]). In August 2003, Judge Aspen ordered that the City "expedite" its responses to Hobley's discovery. (Order, Aug. 19, 2003.) [Dkt 30.] In September 2003, Hobley's counsel filed Hobley's Second Motion to Compel, asking that the City be ordered to respond to Hobley's document requests including documents concerning the police board proceedings to terminate Jon Burge. (Pl.'s Second Mot. Compel, Ex. A, Pl.'s First Set of Requests for Production.) [Dkt 39.] Although the Hinshaw firm attorneys knew that Jones Day had retained five boxes of police board documents, the City's counsel did not make any effort to obtain or review the five boxes of documents. (Tr. at 50.) Nor did the City's counsel request a privilege log from Jones Day at that time. (*Id.*)

The outcome of Hobley's Second Motion to Compel was recited in the April 20, 2004 Opinion and Order, at 4-8. Relevant to the present motion are orders granting the Second Motion

to Compel (Order, Oct. 8, 2003) [dkt 47]; Op. & Order, Oct. 14, 2003 [dkt 50]), including an Opinion and Order entered on November 10, 2003, sanctioning the City's then-counsel Mr. Shannon and requiring the City to produce a privilege log by December 2, 2003, to preserve any privileges the City intended to assert (Op. & Order, Nov. 10, 2003 at 10-11) [dkt 63]). The privilege log was to cover any documents the City intended to withhold on the ground of any privilege. (*Id.*) The order excepted only documents covered by the then-existing stay on *Monell* discovery. (*Id.* at 10.) Notably, both the October 14, 2003 Opinion and Order and the November 10, 2003 Opinion and Order were prominently featured in the *Chicago Daily Law Bulletin.*[5]

The City did not submit a privilege log or assert any privilege by December 2, 2003, and Hobley's counsel moved for a finding of waiver of privilege. (Pl.'s Mot. Finding of Waiver.) [Dkt 81.] That motion was heard on December 10, 2003. At that hearing, the City's counsel informed the court and Hobley's counsel that the City was not claiming any privilege as to any of the discovery requests and that it was producing all responsive documents except those covered by the stay on *Monell* discovery. (Ex. Pl. 12, Tr. Dec. 10, 2003 at 41-53.) The City's counsel attempted to argue that the City should be able to claim privileges for responsive documents it located in the future. (*Id.* at 46-47, 53.) This court responded that each party is required to make a reasonable search of documents in its possession, custody and control, and produce them by the date they are required to be produced, adding:

> And, you know, my point is, don't come back later with a document that was in your

---

[5] The articles included: Patricia Manson, *City Violated Rules of Procedure By Not Fully Responding: Judge*, Chi. Daily L. Bull. 3 (October 17, 2003); Patricia Manson, *Judge Eases Up As Attorneys for City, Ex-Inmate Wrangle Over Torture Claim*, Chi. Daily L. Bull. 3 (October 20, 2003); and Patricia Manson, *U.S. Judge Penalizes City for Discovery Rule Violations*, Chi. Daily L. Bull. 1 (November 11, 2003).

> possession, custody or control today and say we're not producing this on the basis of
> privilege or governmental immunity or something else. . . . [W]e're not having a cache
> of documents held back because of some privilege that has not been asserted.

(*Id.* at 46, 48.) Hobley's motion for finding of waiver of privilege was deemed moot because "the

defendant[s] have represented to the Court and to counsel that the defendants are not asserting any

privileges with respect to the documents that the defendants have been ordered to produce." (Order,

Dec. 10, 2003.) [Dkt 82.]

Mr. Puiszis testified at the evidentiary hearing on the present motion that he and Jeffrey

Given were aware at the time of the December 10, 2003 hearing that Jones Day had withheld

documents based on attorney-client and work product privilege. (Tr. at 57-58, 61.)[6] Mr. Puiszis

testified that he believed that his statements to the court and Hobley's counsel that the City was not

withholding any documents on the basis of privilege were not misrepresentations because he

believed that the five boxes of documents held by Jones Day were covered by the stay of *Monell*

discovery. (*Id.* at 51-53, 84.) However, the actions of the City and its counsel belie that belief.

Although Mr. Puiszis testified that the City produced those documents "without waiving [the City's]

*Monell* objection" (*id.* at 51), the City has never presented any document or other evidence that such

a reservation was expressed at the time. Significantly, prior to the December 10, 2003 hearing, in

October 2003, Mr. Shannon wrote to Hobley's counsel, "We have offered to make available the Jon

Burge police board file, obviously subject to our existing attorney eyes only agreement." (City's

Reply Supp. Cross-Mot. Protective Order, Ex. A, Oct 27, 2003 letter, Shannon to Loevy at 5.) [Dkt

136.] A few days later, Mr. Shannon wrote again to Hobley's counsel confirming that the "Jon

Burge police board records" would be available after review by other defendants' counsel. (*Id.*, Ex.

---

[6] The transcript erroneously states Mr. Given's name as "Gibbon."

C, Oct. 31, 2003 letter, Shannon to Loevy at 1.) Neither letter contains any expression suggesting that the City viewed the Jones Day police board documents as *Monell* discovery (or any suggestion that some of the police board documents were being withheld). The City produced the police board documents in January 2004 when the stay on *Monell* discovery was still in effect, demonstrating the City's belief that they were *not* covered by the stay.

Significantly, no one on behalf of the City gave Hobley's counsel or the court any reason to suspect that there was a subset of the "Jones Day police board documents" that had not been produced because of a claim of privilege, until the March 2004 briefing on Hobley's Fourth Motion to Compel.

## C. Hobley's Fourth Motion to Compel, and the April 20, 2004 Opinion and Order

In January 2004, the City's attorneys made available for review by Hobley's counsel what was represented to be "the Jones Day Police Board documents." That production generated Hobley's Fourth Motion to Compel, which was granted in the April 20, 2004 Opinion and Order. The City submitted a motion and two briefs in connection with Hobley's motion.[7] In its cross-motion for protective order filed on February 10, 2004, the City stated, "A decision was made not to assert any claim of privilege or work production [sic] in connection with the Jones Day records." (City's Cross-Mot. Protective Order at 5.) [Dkt 110.] The first hint that not all of the "Jones Day Police Board documents" had been produced appeared in a footnote in the City's March 16, 2004 reply brief. *See* April 20, 2004 Opinion and Order at 15. Accordingly, the City was ordered to produce

---

[7] Specifically, the City filed a cross-motion for protective order on February 10, 2004; a reply in support of its cross-motion on March 16, 2004; and a response to Hobley's sur-reply on March 31, 2004. Those documents were filed under seal, without permission.

any "Jones Day Police Board documents" that had not yet been produced. (*Id.* at 15-16.) The fact that unproduced documents were still in Jones Day's possession was not revealed to the court or Hobley's counsel until after the April 20, 2004 Opinion and Order had been entered.

At the evidentiary hearing, the Hinshaw firm's witness presented no credible testimony about the basis for the statement that "A decision was made not to assert any claim of privilege or work production [sic] in connection with the Jones Day records." (City's Cross-Mot. Protective Order at 5.) The only explanation proffered was that the statement was "inartfully drafted." *See* Tr. at 99. The City's counsel knew, even as the motion containing that statement was signed and filed, that Jones Day was holding documents on the basis of a claim of privilege. In fact, when a paralegal at the Hinshaw firm found a Jones Day's attorney notebook from the police board proceedings among the 52 boxes of documents, the Hinshaw lawyers returned the notebook to Jones Day. (*Id.* at 100, 101-03.)


D. Jones Day's knowledge and actions

As discussed above, Jones Day took no action to advise Hobley's counsel that it was holding documents responsive to Hobley's document requests, or to assert any privilege or claim of protection for those documents, until its lawyers appeared in court in May 2004, seeking reconsideration of the April 20, 2004 Opinion and Order. Jones Day states that until April 21, 2004, when an attorney from Hinshaw faxed a copy of the April 20, 2004 Opinion and Order, Jones Day knew nothing about the proceedings in this case. (JD Suppl. Resp. at 3, 4, 7-8.) Ms. Ghezzi testified that she was not aware of this lawsuit until April 2004. (Tr. at 150.)

This court finds simply not credible Ms. Ghezzi's testimony as Jones Day's Rule 30(b)(6)

11

witness that the partnership "Jones Day," including Ms. Ghezzi, was not aware of this lawsuit and not aware of the need for Jones Day to act to assert any privilege or protection over the documents it was holding.

First, to believe that until April 21, 2004, Ms. Ghezzi and the other partners of Jones Day, for whom Ms. Ghezzi testified as a Rule 30(b)(6) witness, were unaware of this lawsuit and the other civil lawsuits filed against the City (Jones Day's client) relating to allegations of torture by Jon Burge and other police officers (a matter on which Jones Day had represented the City and was holding relevant documents) would require this court to believe that those lawyers are completely isolated from an important and intensively reported legal controversy in the community in which they live and practice law. This lawsuit, filed in May 2003, and other lawsuits subsequently filed by former Death Row inmates who claim they were tortured while in Chicago police custody, have been the subject of reports in print, radio and television. Indeed, Ms. Ghezzi admitted that she knew there were civil proceedings pending against Jon Burge. (*Id.* at 150-51.) As noted above, orders entered in this case were the subject of prominent and repeated coverage in October and November 2003 in the *Chicago Daily Law Bulletin*. Ms. Ghezzi admitted that the Jones Day law firm subscribes to the *Chicago Tribune* and the *Chicago Daily Law Bulletin*, although she personally does not read the *Law Bulletin*. (*Id.* at 129.)

Even if this court were to credit that the Jones Day partners, including Ms. Ghezzi, were oblivious to those events, the evidence demonstrates that Jones Day was put on notice of this lawsuit, including the production of the police board documents, months before Jones Day came forward to acknowledge that it was holding documents and claim protection against producing them. Ms. Ghezzi stated in her affidavit that on February 23, 2004, Mr. Puiszis called her and informed her that

12

the police board documents had been produced and that a privilege log was required for the documents that Jones Day had withheld on privilege grounds. (Ghezzi Aff. ¶ 9.) Jones Day's billing records confirm that conversation. (Ex. JD 21.) Mr. Puiszis testified that he called Ms. Ghezzi on February 23, 2004 and requested that Jones Day prepare a privilege log because he believed that the stay on *Monell* discovery in this case would soon be lifted. (Tr. at 53, 66.) In that conversation, they discussed this lawsuit and the pending motion to compel (apparently Hobley's Fourth Motion to Compel). (*Id.* at 68-69.) Mr. Puiszis testified that he believes Ms. Ghezzi was "aware of the fact that there had been a lawsuit filed" at the time of that February 23, 2004 conversation and does not think it came to her as a surprise. (*Id.* at 74-75.) Although the discussion of the then-pending motion may have focused on City documents that the Hinshaw firm claimed were inadvertently produced, there is no doubt that, at least by February 23, 2004, Jones Day was on notice that there was a pending civil suit in which the 52 boxes of police board documents it had turned over to the Hinshaw firm had been produced to opposing counsel, and that Jones Day needed to prepare a privilege log for the documents it was holding. (*Id.* at 69-75, 99.)

In addition, there were a number of other conversations in February and March 2004 between representatives of the Hinshaw firm and representatives from Jones Day about the need for Jones Day to produce a privilege log. *See id.* at 68-69, 73-75, 89-90. On February 27, 2004, Julie Foran, a paralegal at Jones Day, called Mr. Puiszis about reviewing the 52 boxes at Hinshaw. (*Id.* at 105.) Mr. Puiszis believes that by that date, Jones Day knew that the 52 boxes of police board documents had been produced to Hobley's counsel. (*Id.* at 106.)

On March 4, 2004, Mr. Puiszis and Ms. Ghezzi had a telephone conversation lasting a half hour by Jones Day's records. (Ex. JD 24.) Ms. Ghezzi's own notes of that conversation state that

"boxes" had been "already turned over . . . per Brown's" order. (Ex. JD 9; Tr. 161-62.) Ms. Ghezzi testified that she knew that "Brown" referred to this judge. (Tr. at 162.) Thus, it is clear that by March 4, 2004, at the very latest, Jones Day was aware that the police board documents had been produced in a case pending in this federal court. Ms. Ghezzi testified that she could not "differentiate" whether the documents had been produced to the Special Prosecutor or to Hobley's counsel. (*Id.* at 183-84.) The court finds it not credible that Ms. Ghezzi did not know and did not ask.

Also in March 2004, a Jones Day paralegal called Mr. Puiszis asking when the privilege log was due. (Ex. HC 6; Tr. at 84-85.) On March 22, 2004, a paralegal at the Hinshaw firm advised a Jones Day's paralegal that she needed the privilege log "as soon as possible." (Ex. HC 2; Tr. 86-87.) On March 31, 2004, Ms. Ghezzi had another telephone conference with a lawyer from the Hinshaw firm regarding the privilege log, as well as a telephone call with Jeffrey Given on the same topic. (Ex. JD 24.)

Ms. Ghezzi's affidavit states that Jones Day began to prepare a privilege log the week after her February 23, 2004 conversation with Mr. Puiszis, and that the privilege log was prepared "in the ordinary course" because Jones Day was not given any date by which the log had to be submitted. (Ghezzi Aff. ¶ 10.) However, she testified that Mr. Puiszis told her that the privilege log was due "as soon as you can" and "as soon as possible." (Tr. at 169, 184.) The Jones Day paralegal did not start organizing boxes to begin the privilege log until March 15, 2004, and did not begin "in earnest" to work on the privilege log until April. (*Id.* at 171.) Ms. Ghezzi received a complete draft from the paralegal on April 15, 2004. (*Id.* at 172.) However, no privilege log was served by Jones Day on anyone, including the Hinshaw firm, until after the presentation of Jones Day's present motion in

14

May 2004. When Jones Day appeared in court on its motion, its memorandum stated that the privilege log "will" be tendered to the Special Prosecutor. (JD Mem at 4 n. 2.) Apparently, Jones Day had no intention of serving the privilege log on Hobley's counsel even at that date.

## DISCUSSION

Jones Day initially attempted to assert attorney-client privilege and work product protection over the five boxes of documents, both for itself and on behalf of its former client, the City. However, as discussed above, the City has abandoned any interest in asserting attorney-client privilege or work product protection over those documents on its own behalf. Thus, the motion is refined to Jones Day's assertion of work product protection on its own behalf. Jones Day's motion raises this question: When does an attorney waive the attorney's right to assert work product protection?

A. Under the Federal Rules, work product protection must be expressly claimed.

The legal basis for work product protection is well established, as is the factual showing necessary to claim that protection. *See* April 20, 2004 Op. & Order at 9-10. It has been held that work product protection may be claimed by the lawyer as well as by the client. *In re Special September 1978 Grand Jury II*, 640 F.2d at 62. Some courts have allowed an attorney to assert work product protection, even if the client cannot. *See, e.g., In re Sealed Case*, 676 F.2d 793, 809 n. 56 (D.C. Cir. 1982); *In re Special September 1978 Grand Jury II*, 640 F.2d at 52, 63 (attorney may protect his mental impressions, conclusions, opinions and legal theories, even if the client and attorney are foreclosed from asserting work product protection); *but see Securities & Exch. Commn.*

15

*v. National Student Mktg. Corp.*, No. 225-72, 1974 WL 415 at *3-4 (D.D.C. June 25, 1974) (Parker, J.) (lawyers who were co-defendants with their clients were precluded from invoking work product protection after their clients waived the privilege in a settlement); *Eagle Compressors, Inc.*, 206 F.R.D. at 480 (where client chooses to reveal information as part of a settlement strategy, work product protection is waived).

Work product protection, like attorney-client privilege, is not self-executing; a party objecting to a discovery request on privilege grounds must present that objection in a timely and proper manner. *Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001); *Anderson v. Hale*, 202 F.R.D. 548, 552 (N.D. Ill. 2001). The Federal Rules require that a claim of work product protection be specifically expressed:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party *shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced* or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed. R. Civ. P. 26(b)(5) (emphasis added). The description of withheld information required by Rule 26(b)(5) is colloquially called a "privilege log." *See, e.g., Allendale Mutual Ins. Co. v. Bull Data Sys. Inc*, 145 F.R.D. 84, 87 (N.D. Ill. 1992). However, the Committee Notes to Rule 26 make clear that the privilege log is not an after-thought to claiming privilege or protection, it *is* the claim of privilege or protection. "To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Advisory Committee Notes, 1993 Amendments to Rule 26(b)(5).

Pursuant to Fed. R. Civ. P. 34(b), a party served with a document request must respond

within thirty days, and if the party objects to the request, the reason for such objection shall be given. A failure to follow discovery rules may result in a waiver of the privilege. *Ritacca*, 203 F.R.D. at 335; *Applied Sys., Inc. v. Northern Ins. Co. of New York*, No. 97 C 1565, 1997 WL 639235 at *2 (N.D. Ill. Oct. 7, 1997) (Conlon, J.); *Anderson*, 202 F.R.D. at 552-53.


B. <u>The documents being held by Jones Day are subject to the document request issued to the City.</u>

In its final brief to the court, Jones Day argues that "Jones Day's work product was not subject to this Court's jurisdiction" because the documents have always been in its possession, custody and control, not the City's. (JD Suppl. Resp. at 4.) Jones Day waived that argument by failing to raise it in its motion for reconsideration, in its reply to Hobley's response, or in its objections to the District Judge from the order requiring an evidentiary hearing. However, even if the argument is considered, it is easily disposed of. A proper document request was served on the City, a defendant in this case. In response to that document request, the City agreed to produce the "Jones Day police board documents," of which the documents being held by Jones Day are admittedly a subset. The City has the obligation to produce responsive documents in its "possession, custody *or* control." Fed. R. Civ. P. 34(a) (emphasis added). Documents in the possession of a party's former attorneys are documents in that party's control for purposes of Rule 34(a).[8] Upon the termination of representation, a lawyer has an obligation to deliver to the former client original

---

[8] A genuine issue of "control" might possibly exist if a former lawyer refused to comply with a client's direction to produce documents in the lawyer's possession or to prepare a privilege log for them. In such a case, the client would advise opposing counsel of its efforts to get the documents in order to avoid sanctions and to preserve its own right to claim privileges. However, nothing in the record here suggest that this is such a case, and, indeed the record is to the contrary.

documents and copies of documents relating to the representation that the client reasonably needs, and to allow the client to copy any documents requested by the client, unless substantial grounds exist to refuse. *Restatement (Third) of the Law Governing Lawyers* §46(2) and (3) (2000).[9] As a factual matter, the City's control over the Jones Day police board documents is confirmed by the fact that Jones Day, without objection, had previously transferred the bulk of those documents to the Hinshaw firm for delivery to the Special Prosecutor in response to a subpoena served on the City, not on Jones Day. Furthermore, the evidence at the evidentiary hearing demonstrates that, when lawyers from the Hinshaw firm called Ms. Ghezzi and told her that Jones Day needed to prepare a privilege log, Ms. Ghezzi did not object to doing so or otherwise suggest that the documents Jones Day was holding were not documents subject to a Rule 34 request served on the City.

In addition, Jones Day's argument is contrary to the discovery policies of the Federal Rules. Hobley's lawyers served the City with a document request that unquestionably covered the

---

[9] Jones Day's citation of ISBA Advisory Opinion No. 94-13 for a contrary conclusion is inapposite. (JD Suppl. Resp. at 6.) That opinion considered an inquiry by a lawyer who was concerned that if he released his investigative file to his client, as the client requested, the client (who was then incarcerated on a charge of maiming his former wife) or the client's family might use information in that file (such as the former wife's work place) to locate the former wife and inflict further serious injury on her. The Advisory Committee found that the lawyer was not, under the Rules of Professional Conduct, required to release the materials to the client. The Committee expressly prefaced its opinion as follows:

> At the outset, the Committee notes that this opinion does not deal with the issue of whether all or any part of a lawyer's file is or may be discoverable in civil litigation or criminal proceedings pursuant to the applicable law or rules of court.

The Advisory Committee thus did not consider the question at issue here. Furthermore, to the extent that the Advisory Committee relied in part on the 1992 Tentative Draft of the Restatement of the Law Governing Lawyers, that authority has been superceded by the Restatement cited above.

documents Jones Day was holding. Jones Day argues that the documents are not within the scope of a request under Rule 34(a) because, as work product created by Jones Day for its representation of the City, they are not in the City's possession, custody or control. Under Jones Day's theory, the City would not have been required to produce those documents or even required to express a claim of work product protection in the manner required by Rule 26(b)(2), because, *in the opinion of its former lawyers*, the documents are work product.[10] Under Jones Day's theory, however, that claim of work product protection would be untestable because the existence of the documents would not be disclosed (which is what almost happened in this case). Under Jones Day's theory, a claim of work product protection would, in fact, be self-executing, contrary to the holdings of the cases cited above. However, both the letter and the policy of the Federal Rules require an express assertion of any claim of work product protection, so that such a claim can be tested. Jones Day's belated argument that the documents are not within the court's jurisdiction is rejected.

C. Jones Day failed to assert its claim of work product protection in a timely manner.

Jones Day argues that it acted with "[a]ppropriate [d]iligence" when it learned of the April 20, 2004 Opinion and Order. (JD Suppl. Resp. at 7.) However, that is not the relevant time to start the clock. From the facts set out above it is apparent that no later than February 23, 2004, Jones Day had notice that there was a pending federal case in which the police board documents had been produced and a privilege log was needed to make any claim of privilege. No later than March 4, 2004, Jones Day had actual knowledge that the federal case discussed was this very case.

---

[10] In this case, it would have been the opinion of the former lawyers' non-attorney staff, because no Jones Day attorney participated in selecting the documents that were withheld.

Had Jones Day reviewed the court docket in this case, it would have seen the order entered on November 10, 2003 requiring the City to provide a privilege log by December 2, 2003, as well as the December 10, 2003 order stating that the defendants had disclaimed any privileges with respect to any documents that they were ordered to produce. Like the similar order entered in *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 11 (1ˢᵗ Cir. 1991), those orders were "an obvious red flag" relative to Jones Day's "future right to withhold documents on grounds of privilege." Had Jones Day asked the Hinshaw firm for copies of documents filed that discussed the police board records, it would have seen that the City's lawyers were telling the court that a decision had been made not to assert any privilege or work product protection for the Jones Day police board documents. However, Jones Day apparently took no action to learn of any deadlines or orders in this case, nor to learn the status of any motions relating to the police board documents.

Likewise, Jones Day did *nothing* to bring to the attention of Hobley's counsel that it was holding responsive documents, or to assert any claim of work product for those documents until May 2004, at least two months (and possibly longer) after it had actual knowledge of the case and the need to assert any claim of privilege or protection. Indeed, the only thing that brought Jones Day's possession of the documents to light was the April 20, 2004 Opinion and Order compelling production. Withholding documents without notice of a claim of privilege is contrary to the Federal Rules. *See* Advisory Committee Notes, 1993 Amendments to Rule 26(b)(5), quoted above.

In this case, Jones Day and Hobley's counsel were asked to submit legal memoranda on the issue of the responsibility of a lawyer who seeks to assert a work product objection on the lawyer's own behalf to ensure that the objection is made in a timely manner. (Order, Aug. 24, 2004.) [Dkt 302.] Neither party was able to cite a case directly on point. However, the policies behind Rules 26

and 34 and the cases construing those Rules lead to this conclusion: When Jones Day had actual knowledge from the City's counsel that the police board documents had been produced by the City (Jones Day's former client) in a federal civil case, along with a request for a privilege log covering the subset of those documents that Jones Day was withholding solely on the basis of a claim of privilege and work product protection, Jones Day had an obligation to comply with those Rules by expressly asserting any such claim. Furthermore, because Jones Day seeks to claim work product protection on its own behalf, Jones Day had its own individual obligation to do what was necessary to make its claim in a proper and timely manner. Jones Day could not properly rely on its former client, the City, to protect Jones Day's work product claim. After all, a client can choose, for its own reasons, to waive any privilege or protection, as the City did here. Also, only Jones Day could have set out the information required by Rule 26(b)(5) in order to make a claim of privilege or work product, because Jones Day was holding the documents.

Interestingly, at the hearing, Ms. Ghezzi testified that Jones Day did nothing to investigate whether a privilege log was necessary before the call from Mr. Puiszis in February 2004, because Jones Day was waiting to hear from the Hinshaw firm "or somebody else." (Tr. 203-04.) However, in its final brief on its motion, Jones Day states that there was no duty on the part of the City or the Hinshaw firm to notify Jones Day that it should assert its work product claim. (JD Suppl. Resp. at 9.) If that is Jones Day's understanding of the law, its reliance on the Hinshaw firm or "somebody else" as an excuse for its failure to take any action to protect its work product was plainly unjustified.

Based on the foregoing facts, the court finds that Jones Day unjustifiably failed to claim work product protection in a timely and proper manner. Under the order of this court, a privilege log making any claim of privilege or work product protection was due no later than December 2, 2003.

21

Even assuming, *arguendo*, that Jones Day did not have actual notice of this lawsuit until March 4, 2004, by that date at the very latest Jones Day had an obligation to act promptly to assert and protect its work product claim, including investigating whether any court orders had been entered impacting its claim. Jones Day failed to take even that simple and basic action. *See Marx*, 929 F.2d at 12 n. 5 (stating that party should have challenged directly an order finding waiver of privilege rather than simply ignoring and violating it).

The next issue is the consequence of Jones Day's failure. Jones Day argues that its position should be analyzed under the cases considering inadvertent disclosure of privileged documents. (JD Suppl. Resp. at 8.) However, those situations are not analogous. In the case of an inadvertent disclosure, the party seeking discovery knows of the documents and has an opportunity to contest the claim of privilege. In this case, however, Jones Day simply withheld the documents without notice to Hobley's counsel that it was doing so, which is a violation of Rule 26(a)(5), as observed by the Advisory Committee Notes quoted above.

Although waiver is a severe sanction, it is appropriate in a case like this where there has been unjustified delay in asserting the claim. See *Ritacca*, 203 F.R.D. at 335-36; *Applied Sys.*, 1997 WL 639235 at *3. Courts have hesitated to find waiver in cases of minor procedural violations where there was a good faith attempt to comply and some notice to the opposing party of the privilege objection; accidental failure to list a privileged document in a case involving voluminous documents; or non-flagrant violations involving documents that are plainly protected. *Applied Sys.*, 1997 WL 639235 at *2. However, none of those extenuating circumstances apply here. Here, Jones Day knew about the lawsuit, knew about the need to assert expressly its claim for work product protection, and simply did nothing to advise Hobley's counsel that it was holding documents under a claim of

22

protection until after the court ordered production of the documents. Thus, the court finds that Jones Day has waived any claim of work product for the police board documents.

Because the City has abandoned any claims of privilege or work product protection on its own behalf, there is no reason for any of the police board documents to be withheld from production. Those documents must be produced to Hobley's counsel no later than January 24, 2004.

## CONCLUSION

For the foregoing reasons, Jones Day's Motion for Reconsideration of Court's Order Mandating Production of Jones Day's Privileged Documents is denied.

IT IS SO ORDERED.

GERALDINE SOAT BROWN
United States Magistrate Judge

January 12, 2005

23