UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MADISON HOBLEY, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 3678 |
| ) | |
| CHICAGO POLICE COMMANDER ) | Judge Marvin Aspen |
| JON BURGE, et al., ) | |
|     Defendants. ) | Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

Before the court is the second part of a motion filed by non-party deponents Peter Dignan, Michael Hoke, Tony Maslanka, George Basile, William Wagner, Fred Hill, George Corless, Patricia Harrison, Thomas Ferry, and Dan Gaffney for entry of a protective order. ("Mot. Protective Order") [Dkt 328.] Non-party deponents Michael McDermott and Steven Brownfield were granted leave to join the motion for protective order. [Dkt 337, 338.]¹ Also before the court are two motions by defendant Patrick Garrity: a motion for sanctions ("Mot. Sanctions") [dkt 320], and a supplemental motion for sanctions in which he is joined by defendants James Lotito and Robert Dwyer ("Suppl. Mot. Sanctions") [dkt 321]. For the following reasons, the motion for sanctions and supplemental motion for sanctions are DENIED. The non-party deponents' motion for entry of a protective order barring attorney comments is DENIED. However, a protective order is hereby entered governing

---

¹ William Marley was previously included as a movant in that motion. However, the movants state that his name was included in error and has been withdrawn. (Non-Party Deponents' Reply to Pls.' Resp. Mot. Protective Order ("Reply Mot. Protective Order") at 1 n. 1.) [Dkt 353.]

1

the dissemination of Complaint Registers and information contained therein, as set out below.

## BACKGROUND

A.     The present motions.

The circumstances surrounding the motion brought by the non-party deponents (collectively, the "Movants") for a protective order were discussed in this court's November 18, 2004 Opinion and Order [dkt 361], and familiarity with that Opinion and Order is assumed. That Opinion and Order granted some of the relief requested by the Movants, but reserved decision regarding the Movants' request for a protective order barring the attorneys representing plaintiff Madison Hobley in this case and the attorneys representing plaintiff Aaron Patterson in *Patterson v. Burge*, 03 C 4433, from publicly commenting about the depositions of the non-parties. (Mot. Protective Order at 7.)[2] Plaintiffs oppose the entry of such a protective order. (Pls.' Joint Resp. Non-Party Deponents' Mot. Protective Order ("Resp. Mot. Protective Order") at 1.) [Dkt. 345]

In addition, defendant Patrick Garrity seeks sanctions against one of Hobley's attorneys, Kurt Feuer, alleging that Mr. Feuer engaged in unethical advocacy. (Mot. Sanctions at 1.) Specifically, Garrity's motion for sanctions alleges that Mr. Feuer disseminated a confidential police department Complaint Register ("CR") file to the news media in violation of a confidentiality agreement among counsel, a June 30, 2004 order issued by Judge Gottschall, and Rule 3.6 of the Illinois Rules of Professional Conduct ("IRPC"). (*Id.* at 1-2.) The supplemental motion for sanctions alleges that Mr. Feuer improperly disseminated portions of the videotaped depositions of Garrity, Lotito and Dwyer

---

[2] Hobley and Patterson are represented by different lawyers, but because the Movants request an order directed to both sets of lawyers, those lawyers are referred to collectively as "Plaintiffs' counsel."

2

in violation of Local Rule 83.53.6 of the Northern District of Illinois, which deals with attorney comments regarding litigation. (Suppl. Mot. Sanctions at 2.)

B.  Factual background.

The lawyers representing the parties in the four so-called "Area 2" cases have attempted to work out an agreed protective order to govern the confidential status of discovery in all four cases; however, to date, no such over-all protective order has been entered.[3] The present controversy involving the CR file appears to be an unfortunate by-product of the uncertainty created by the parties' desire (with the court's urging) to move ahead with discovery during the protracted negotiations over terms of the over-all protective order.

The motion for sanctions begins with the fact that on September 4, 2003, in an effort to expedite the discovery process before a protective order could be finalized, Mr. Feuer sent a letter to Steven M. Puiszis of Hinshaw & Culbertson, who was then representing defendant City of Chicago, agreeing to retain any information or documents about which defendants had privacy concerns on an "attorneys' eyes only" basis until a protective order could be entered. (Mot. Sanctions at 2, Ex. A.) That agreement between the parties to maintain documents confidential and for "attorneys' eyes only" is also memorialized in other letters. (*See id.*, Exs. B-F.) In October 2003, counsel for the individual defendants, including Garrity, produced CR files then in their possession to Hobley's counsel under the cover of a letter expressly stating that "all documents are being

---

[3] The four cases are *Patterson v. Burge, et al.*, 03 C 4433, *Orange v. Burge, et al.*, 04 C 168 and *Howard v. City of Chicago, et al.*, 03 C 8481, as well as this case.

3

produced pursuant to an 'attorneys eyes only agreement.'" (*Id.*, Ex. F.)[4]

Mr. Feuer contends that over the ensuing months the parties changed the way in which documents were produced and how they were to be designated as confidential, superceding the initial letter agreement. (Resp. Mot. Sanctions at 13.) [Dkt 339, 340.] Essentially, Mr. Feuer states that it was his understanding that any documents desired to be held confidential by any of the defendants would be stamped "confidential." (*Id.* at 19.) That understanding was confirmed (in the minds of Plaintiffs' counsel) by the fact that the City had stamped "confidential" on each page of the Evidence and Recovered Property Section ("ERPS") Report that the City was ordered to produce in December 2003. (*Id.* at 14.) That understanding was further confirmed when, in early 2004, the City's counsel apparently told Mr. Feuer that the copies being made for Hobley's counsel of certain documents produced by the City were going to be stamped "confidential." (*See id.*, Ex. J.) Hobley's counsel eventually received certain of those documents from James Sotos, one of Individual Defendants' counsel, on March 1, 2004. (*Id.* at 14-15.) Mr. Feuer states that he believed that the City's counsel had given the documents to Mr. Sotos before delivery to Hobley's counsel in order to allow Individual Defendants' counsel to mark any documents that they wanted to remain confidential. (*Id.* at 15.) Mr. Feuer further states that none of the documents produced as a result of the January 2004 review were stamped confidential, including numerous CR files. (*Id.*)

The CR file at issue, CR # 159408, was part of a document production by the City in May 2004. (*Id.* at 1, 15.) On May 17 and 18, 2004, Mr. Feuer reviewed 21 boxes of documents produced by the City, and on May 26, 2004, Mr. Feuer requested copies of certain of those documents. (*Id.* at

---

[4] The attorneys representing Garrity and the defendants other than the City are referred to herein as "Individual Defendants' counsel."

15.) Mr. Feuer assumed that those documents had been reviewed by Individual Defendants' counsel before production to Plaintiff. (*Id.*) However, Individual Defendants' counsel was apparently advised of the City's additional documents at the same time, May 18, 2004, and reviewed the documents on May 24, 26 and 27, 2004. (Mot. Sanctions at 3; *id.*, Ex. G, Elizabeth Ekl Aff. ¶¶ 2-3.) During that review, attorney Elizabeth Ekl, one of Individual Defendants' counsel, saw a previously undisclosed CR file from 1988 involving Garrity. (Ekl Aff. ¶ 4.) Individual Defendants' counsel requested a copy of all the documents requested by Plaintiffs' counsel. (Mot. Sanctions, Ex. H.)

On June 3, 2004, the parties appeared before this court and reported on the status of the negotiations concerning the proposed over-all protective order. (Resp. Mot. Sanctions, Ex. N, Tr. June 3, 2004 at 1, 63-65.) The court cautioned the parties, consistent with this court's standing order regarding protective orders, that the protective order should provide that each page of a document that a party wants kept confidential be stamped with a "confidential" designation. (*Id.* at 63-64.) The purpose of that requirement is to avoid arguments about what has been designated confidential. (*Id.* at 63.) The court reiterated, "[E]very page that you think is confidential has to have a stamp confidential on it." (*Id.* at 64.)

At a further status hearing on June 30, 2004, the parties again discussed the proposed protective order. (Mot. Sanctions, Ex. K, Tr. June 30, 2004 at 1, 5.) The City's counsel informed the court of a hearing set by Judge Gottschall later that same day regarding a protective order in the *Patterson* case. (*Id.* at 5.) Further consideration of the protective order in the *Hobley* case was deferred until Judge Gottschall's ruling in the *Patterson* case. (*Id.*) That afternoon, Judge Gottschall issued the following order:

With respect to the named defendants in the four related pending Area 2 cases, CR's

5

involving analogous allegations are not subject to protective order. Plaintiff to advise defendants in writing no later than July 7, 2004 of the information they believe is unprotected subject to this ruling. Defendants shall make any objections to plaintiff's letter no later than July 19, 2004. Any disagreements must be brought to the court's attention promptly.

(*Id.*, Ex. L, Order, June 30, 2004, *Patterson v. Burge et al.*, 03 C 4433.) [*Patterson* dkt 106.]

The City's counsel sent the documents from the May production for copying on June 28, 2004. (Resp. Mot. Sanctions, Ex. M.) Hobley's counsel received copies of the documents requested from the May 2004 review, including the subject CR file, at the end of June 2004. (*Id.* at 17.) The subject CR file was Bates-stamped "SP 122146-230," and a copy of a portion of that CR was Bates-stamped "SP 129310-314." (*Id.*) Apparently, none of the documents were stamped confidential. (*Id.*) On July 12, 2004, local news reporter Dave Savini contacted Mr. Feuer and requested an interview with Hobley. (*Id.* at 3.) On July 13, 2004, Mr. Savini met Mr. Feuer at the offices of Hobley's counsel, at which time Mr. Feuer gave Mr. Savini a copy (or at least copies of the first few pages) of the subject CR file. (*Id.* at 3, 17.)

Individual Defendants' counsel received their copy of the subject CR file on approximately July 13, 2004. (Mot. Sanctions, Ex. I.) On July 16, 2004, Individual Defendants' counsel supplemented their responses to Hobley's discovery requests by identifying the subject CR file as responsive to an interrogatory, and stating that the supplement was "[w]ithout waiving any previously stated objections and subject to the entry of a protective order." (*Id.*, Ex. J.) Also on July 16, 2004, the City's counsel wrote a letter to Hobley's counsel "designat[ing] . . . as confidential" certain of the documents from the recent production, including the subject CR. (Resp. Mot. Sanctions, Ex. R.) The City's counsel enclosed confidential stamps for Hobley's counsel to affix to the documents. (*Id.*) On July 21, 2004, Mr. Feuer responded that the documents had not been

6

treated as confidential because they were not stamped confidential at the time of production. (*Id.*, Ex. S.) Individual Defendants' counsel was not copied on that letter. (*Id.*) On August 5, 2004, Mr. Feuer took Garrity's deposition and questioned him about the CR file. (*Id.* at 18.) According to Mr. Feuer, Individual Defendants' counsel did not request that the deposition be sealed. (*Id.*)

On August 12, 2004, Mr. Savini interviewed both Hobley and Mr. Feuer on camera. (*Id.* at 3.) About a week later, Mr. Savini requested copies of the videotapes of the depositions of certain defendants, and Mr. Feuer left copies of the videotape depositions of defendants Dwyer, Paladino, Garrity, Lotito and McWeeny at the reception desk of Hobley's counsel. (*Id.*) On September 1 or 2, 2004, Chicago television station CBS Channel 2 ran a news story that focused on Hobley's allegation that defendant Garrity kicked him in the shin while conducting his polygraph examination on January 6, 1987. (Mot. Sanctions at 1, 5.)[5] The news report showed the cover sheet of the subject CR file. (*Id.*) Mr. Feuer appeared on camera and said that polygraph examinations were used in Hobley's case and in other cases to intimidate witnesses. (*Id.*, Ex. M, Videotape of news report.) The news report also contained videotape footage of Garrity, Lotito and Dwyer asserting their Fifth Amendment rights in response to deposition questions. (*Id.*)

Garrity then moved for sanctions against Mr. Feuer, complaining that Mr. Feuer's conduct caused Garrity, who is currently a Commander in the Chicago Police Department, substantial harm because it presented the public with a one-sided view suggesting that Garrity was guilty of Hobley's accusations. Garrity and Individual Defendants' counsel claim that the September broadcast is part of an "unrelenting stream of adverse publicity" on prejudicial matters that they believe will be

---

[5] This news report ran on either September 1 or 2, 2004. The parties have used these dates interchangeably throughout their briefs and it is not readily apparent from the record which date is correct.

7

inadmissible at trial. (Defs.' Reply Br. Supp. Sanctions ("Reply Mot. Sanctions") at 1.) [Dkt 354.] Garrity and his counsel particularly complain that they were "blindsided" because they were not alerted to the fact that Mr. Feuer was going to release the CR file publicly, and, therefore, were unable to contest the release or even to alert Garrity's family, friends and other colleagues about what was to come. (Mot. Sanctions at 8.) Garrity, Lotito and Dwyer claim that the dissemination of their videotaped depositions violated Local Rule 83.53.6. (Suppl. Mot. Sanctions at 2.)

## DISCUSSION

### I. The release of the CR file to the media.

Garrity argues that Mr. Feuer's conduct in releasing the CR file to the media is sanctionable on a number of grounds. First, Garrity argues that Mr. Feuer violated a clear agreement among counsel to preserve the confidentiality of CR files pending the entry of the over-all protective order. (Mot. Sanctions at 6-7.) Individual Defendants' counsel state that, regardless of what procedure the City has followed, they have never stamped any documents "confidential" because they have been relying on the letter agreement, which they understand is to govern the parties' actions until the over-all protective order is entered. (Reply Mot. Sanctions at 4.)

Garrity disputes Mr. Feuer's reliance on events in court as superceding that agreement. The court ordered that social security numbers be redacted from CR files and other documents before they are produced to Hobley's counsel because that information is so private that not even a restriction to "attorneys' eyes only" would adequately protect it. (*See* Order, Dec. 10, 2003). [Dkt 80.] However, Garrity correctly observes that the December 10, 2003 order was in addition to, and not in lieu of, the "attorneys' eyes only" agreement. Likewise, Garrity is correct that the court's

discussion of stamping every protected page "confidential" was in the context of the anticipated over-all protective order; that short discussion was not intended to replace any existing agreement among counsel under which discovery was then proceeding.[6] On the other hand, from Mr. Feuer's point of view, the City (which was the party actually producing the documents) apparently was not operating on the assumption of the letter agreement. In addition, the documents from the May production were not delivered to Hobley's counsel until after the in-court discussion of stamping every page. By the time the City had specifically advised Hobley's counsel that the subject CR file was among the "confidential" documents, Mr. Feuer had already given it to Mr. Savini.

Second, Garrity argues that by disseminating the CR file and failing to give Individual Defendants' counsel advance notice that the CR would not be held confidential, Mr. Feuer violated Judge Gottschall's June 30, 2004 order. Garrity observes that Judge Gottschall's order specifically refers to "the named defendants in the four related pending Area 2 cases." (Order, June 30, 2004.) In response, Mr. Feuer argues that Judge Gottschall's order was entered in the *Patterson* case and applies only to that case, in which Mr. Feuer does not represent any party. He states that Hobley's counsel did not participate in the hearing before Judge Gottschall, and that he was not aware of her ruling until the Individual Defendants' counsel sent a copy of the order. (Resp. Mot. Sanctions at 23.) Mr. Feuer further argues that, even if Judge Gottschall's order were found to apply to the *Hobley* case, the subject CR file would not be entitled to confidential status because, in his view, the abuse alleged in the subject CR is analogous to that alleged by Hobley. (*Id.* at 24.)

Judge Gottschall's order was entered before the four "Area 2" case were consolidated for

---

[6] It must be observed, however, that the present motion reinforces the wisdom of that requirement.

9

*Monell* discovery. *See* Order, Sept. 24, 2004. [Dkt 316.] The parties have been discussing an overall protective order to govern discovery in all of the cases, and Individual Defendants' counsel understandably expected matters would be handled similarly in all four of the Area 2 cases. However, technically, Judge Gottschall's order governs only the *Patterson* case. The order refers to "the named defendants in the four related pending Area 2 cases," but from the transcript it appears that Judge Gottschall was using that as a way of defining those persons who would have reason to know that complaints of conduct analogous to that alleged by Patterson might be publically revealed. (Mot. Sanctions, Ex. P, Tr. June 30, 2004 at 26.) Relevant to the issue of sanctions, neither Hobley's lawyers nor the lawyers representing the Individual Defendants in this case were present at that hearing, because they were not representing any parties in the *Patterson* case. The evidence does not show that Mr. Feuer knowingly violated an order binding upon him.

In light of those circumstances, the court does not believe that Mr. Feuer's release of the CR file, as distressing as it was to Garrity, is deserving of sanctions. However, it is apparent that the parties need explicit direction as to how CR files will be handled until the entry of the over-all protective order. Accordingly, a protective order will be entered as set out in a later section of this opinion.

## II. Plaintiffs' counsel's public discussion of the CR file and of the Defendants' and Movants' assertion of Fifth Amendment rights.

The third basis for Garrity's motion for sanctions and the supplemental motion for sanctions overlap with the Movants' motion for a protective order. The conduct at issue in all three motions is comment by Plaintiffs' counsel about the fact that the Movants as well as the Individual

Defendants have invoked their Fifth Amendment privilege in declining to respond to questions at their depositions. Additionally, Garrity complains that in the September 2004 interview, Mr. Feuer expressed his opinions about the allegations against Garrity in this case and in the CR file.

The November 18, 2004 Opinion and Order, which granted the Movants' request for an order limiting dissemination of the videotapes and transcripts of their depositions, discussed the Movants' standing to bring the present motion, as well as the general standards for entering a protective order. (Op. & Order, Nov. 18, 2004 at 3-7.) The present motions invoke specific rules governing attorney conduct and raise additional issues.

In particular, the motions rely on IRPC 3.6 and Local Rule 83.53.6. Those rules both govern attorneys' public statements about litigation, and, though similar, are slightly different. IRPC 3.6 provides, in relevant part:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it would pose a serious and imminent threat to the fairness of an adjudicative proceeding.
> (b) There are certain subjects which would pose a serious and imminent threat to the fairness of a proceeding, particularly when they refer to a civil matter triable to a jury, or a criminal matter. These subjects relate to:
>> (1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;
>> (2) in a criminal case, . . . that person's failure to make a statement;
>> . . .
>> (5) information that the lawyer knows or reasonably should know is likely to be inadmissable as evidence in a trial; . . . .

Local Rule 83.53.6 provides, in relevant part:

> (a) A lawyer shall not make an extrajudicial statement the lawyer knows or reasonably should know is likely to be disseminated by public media and, if so disseminated, would pose a serious and imminent threat to the fairness of an

11

adjudicative proceeding.
(b) A statement referred to in section (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:
> (1) the prior criminal record . . . , the character or reputation of the accused, or any opinion as to the accused's guilt or innocence, as to the merits of the case, or as to the evidence in the case;
> (2) the existence or contents of a statement given by the accused, or the refusal or failure of the accused to make a statement; . . .
> (4) the identity, testimony, or credibility of prospective witnesses; . . .
> (6) information that the lawyer knows or reasonably should know would be inadmissible as evidence in a trial. . . .

Both rules permit a lawyer to state information that is in the public record. IRPC 3.6(c)(2); L.R. 83.53.6(c)(2).

At the heart of the present motions is the same situation discussed in the November 18, 2004 Opinion and Order: The Movants and Individual Defendants state that, because of the Special Prosecutor's investigation, they must assert their Fifth Amendment privilege in the depositions in the civil cases, and they complain that Plaintiffs' counsel are unfairly exploiting their dilemma to create prejudicial pretrial publicity to which they cannot effectively respond.

In asking for sanctions, Garrity claims that Mr. Feuer's comments in the broadcast interview violate the rules, including the prohibition on statements that the lawyer reasonably should know will not be admissible at trial. Garrity points out that the complaint in the subject CR file was dismissed, a fact that was stated in the news report. After reviewing the videotape, the court concludes that Mr. Feuer did not, in fact, discuss the content of the CR file. He did not refer to Garrity or any other person by name (except his client Hobley). Mr. Feuer's comment in the interview was limited to one sentence, stating that in Hobley's case "and in other cases" the police used polygraph tests not to search for truth but to intimidate witnesses. That statement does not appear to constitute "a

serious and imminent threat to the fairness of an adjudicative proceeding" so as to justify sanctions.[7]

A closer question is presented by the release of the videotapes of Garrity, Lotito and Dwyer invoking the Fifth Amendment privilege, and the issue of whether Plaintiffs' counsel may comment on the Movants' and Individual Defendants' assertion of that privilege at their depositions.[8] The Movants and Individual Defendants claim that the release of the videotapes and such comments constitute statements on the "failure of the accused to make a statement," in violation of Local Rule 83.53.6(b)(2). (Suppl. Mot. at 2.) At the oral argument on the motions, Plaintiffs' counsel argued that the reference to "the accused" indicates that subsection (b)(2) is applicable only to criminal cases. However, that subsection is part of a section discussing statements that refer to, *inter alia*, "a civil matter triable to a jury." L.R. 83.53.6(b). The parties have not presented, nor has this court's research located, any case law directly on point. Furthermore, it is not clear that the dissemination of the videotapes of the depositions is, of itself, an attorney's statement prohibited by Local Rule 83.53.6(b). At the time that Mr. Feuer made the videotapes available to Mr. Savini, there was no order prohibiting the release of deposition videotapes or transcripts. The Movants' motion for a protective order has since been granted to prohibit any further release of videotapes or transcripts of depositions. (*See* Op. & Order, Nov. 18, 2004). Because there was no specific order in place at the time the Garrity, Lotito and Dwyer depositions were given to the media, the court will not enter sanctions based on that release.

---

[7] Garrity also complains about the suggestions and impressions created by Mr. Savini (Reply Mot. Sanctions at 8-9), but only Plaintiffs' counsel's conduct is before the court.

[8] The supplemental motion for sanctions states that Plaintiffs' counsel made "strongly worded public statements" about Burge's assertion of the Fifth Amendment. (Suppl. Mot. Sanctions at 2.) However, the motion does not seek sanctions on the basis of those statements.

13

There remains the Movants' request for a protective order to preclude Plaintiffs' counsel from making any future statements regarding the Movants' assertion of the Fifth Amendment privilege at their depositions. Whether or not Local Rule 83.53.6(b)(2) is applicable, those statements are comments on the character, testimony and credibility of witnesses, governed by Local Rule 83.53.6(b)(4) and IRPC 3.6(b)(1). Plaintiffs' counsel argue that the Movants have failed to show an imminent harm that would justify a prior restraint on speech. The Movants point out that IRPC 3.6(b) and Local Rule 83.53.6 contain a presumption that statements about the character, testimony and credibility of witnesses create a "serious and imminent threat." (Reply Mot. Sanctions at 11.)

The Seventh Circuit's decision in *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir. 1975), guides the discussion of this issue. In that case, the court held that then-existing rules governing attorney comments on civil and criminal litigation, Disciplinary Rule 7-107 of the American Bar Association's Code of Professional Responsibility and the Northern District of Illinois' Local Criminal Rule 1.07, were unconstitutional. The current Local Rule 83.53.6 reflects the revisions made to meet the standards set out in *Chicago Council*. As a threshold matter, the Seventh Circuit held that "[o]nly those comments that pose a 'serious and imminent threat' of interference with the fair administration of justice can be constitutionally proscribed." *Id.* at 249. Notably, that standard has been incorporated into both Local Rule 83.53.6 and IRPC 3.6. The court further stated that the rules should declare that comments on certain matters will be presumptively deemed a serious and imminent threat, so that one charged with violating a rule would have the opportunity to prove that his statements were not such a threat, but "the burden would be upon him." *Id.* at 251. Both Local Rule 83.53.6 and IRPC 3.6 carry out that directive.

Two aspects of the *Chicago Council* decision are particularly relevant here. First, the Seventh Circuit noted the distinction between disciplinary rules and a "prior restraint," the latter being "a predetermined judicial prohibition restraining specified expression." *Id.* at 248. A prior restraint comes with a heavy presumption against its constitutional validity, which the rules do not. *Id.* Plaintiffs' counsel argues that the protective order sought by the Movants would be just such a prior restraint.

Second, the Seventh Circuit's opinion distinguished between rules governing comments in civil and criminal cases, noting particularly the length and social impact of some civil litigation. *Id.* at 258. The court stated that although usually there is little need or ethical justification for attorney comments on the character or credibility of a witness, there might be occasions when comments of that type might be appropriate in a civil case. *Id.* at 259. Plaintiffs' counsel argue that this is just such a case.

As reflected in the November 18, 2004 Opinion and Order, this court is seriously concerned about burdening the Movants' and Individual Defendants' assertion of their constitutional rights under the Fifth Amendment. Also, as discovery in this case and the other "Area 2" cases draws to a close and trial approaches, the concern about a fair trial and selecting an impartial jury increases. However, on balance, the court concludes that there is no need to impose an additional order on top of the disciplinary rules in Local Rule 83.53.6 and IRPC 3.6 at this time. All counsel are on notice of those rules, and of the court's concern. Any violation of Local Rule 83.53.6 can be brought to the attention of the court for sanctions and discipline. A violation of IRPC 3.6 can be brought to the attention of the Illinois Attorney Registration and Discipline Commission. If the comment is one that is presumptively "a serious and imminent threat" under the rules, the burden, pursuant to

15

*Chicago Council*, will be on the attorney.

III. **Protective Order governing dissemination of CR files and information contained therein.**

In light of the confusion reflected by the present motion concerning the handling of CR files, as well as the potentially confidential nature of materials contained in those files, the court finds good cause to enter a protective order adopting the principles set out in Judge Gottschall's June 30, 2004 order. Accordingly, it is hereby ordered as follows: All Complaint Registers produced in discovery in this case and the information contained therein shall be held confidential "attorneys' eyes only" and access shall be limited to attorneys of record in this case and in *Patterson v. Burge*, and an investigator under the supervision of those attorneys, who shall sign an affidavit that shall become part of the protective order entered in this case; provided, however, that with respect to Complaint Registers (a) that contain complaints against any of the individuals who are named defendants in *Hobley v. Burge, et al.*, *Patterson v. Burge, et al.*, *Orange v. Burge, et al.*, or *Howard v. City of Chicago, et al.*; and (b) that allege conduct analogous to the conduct alleged against that defendant in any of those cases, the counsel for any party intending to disseminate information in such a Complaint Register file shall provide no less than 3 business days' written notice to an attorney of record representing that defendant, expressing counsel's intention, and if no written objection is made by the defendant's attorney, counsel may disseminate that information following the expiration of the 3 business days' notice.

16

## CONCLUSION

For the foregoing reasons, the Non-Party Deponents' Motion for Entry of Protective Order, [dkt 328], defendant Patrick Garrity's Motion for Sanctions [dkt 320], and Defendants' Supplemental Motion for Sanctions [dkt 321] are denied. A protective order governing complaint registers and information contained therein is hereby entered as set out herein.

IT IS SO ORDERED.

/s/ Geraldine Soat Brown
GERALDINE SOAT BROWN
United States Magistrate Judge

January 21, 2005