UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MADISON HOBLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 3678 |
| | ) | |
| CHICAGO POLICE COMMANDER | ) | |
| JON BURGE, et al., | ) | Judge Marvin Aspen |
| | ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Geraldine Soat Brown

Before the court is Plaintiff's Cross-Motion to Strike Confidential Designation of Documents. [Dkt 268.] Plaintiff Madison Hobley ("Hobley") seeks to make public the so-called "ERPS Audit," which the City of Chicago (the "City") previously produced in discovery. For the following reasons, the motion is granted.

## BACKGROUND

In February 1998, the Audit and Control Division of the Chicago Police Department submitted to the Superintendent of Police a report of an audit of the Department's Evidence and Recovered Property Section ("ERPS"). (JDP 6.)[1] (That report is referred to herein as the " ERPS

---

[1] Citations "JDP ____" are to the ERPS materials produced by the City to Hobley's counsel, and delivered to the court for *in camera* inspection.

Audit" or the "Audit.") The Audit describes serious problems in the processing and storage of evidence and confiscated items, such as narcotics, guns and money, at ERPS. In his state court post-conviction proceedings, Hobley subpoenaed the City to obtain the Audit in connection with his argument that a gas can introduced as evidence against him by the prosecution in his criminal trial had been obtained by the police from the ERPS room, not from the scene of the murder for which Hobley was charged. Circuit Court Judge Dennis Porter granted the City's motion to quash the subpoena. (JDP 3.) Following the filing of this lawsuit, Hobley sought the Audit in discovery. After briefing, this court denied the City's motion for a protective order precluding disclosure of the Audit, and ordered the Audit produced to Hobley's counsel. [Dkt 80.] However, the City was permitted to designate the Audit "confidential" pursuant to the then-anticipated protective order, without prejudice to Hobley's later seeking to have the designation of confidentiality removed. (*Id.*) Since that ruling, a protective order has been entered [dkt 465] and Hobley has moved to strike the confidential designation on the Audit.

The City opposes the present motion, citing the law enforcement privilege and the self-critical analysis privilege. (City's Mem. at 6-9.) [Dkt 281.] Notably, the City never invoked either privilege in opposing Hobley's discovery request. (*See* City's Mot. Prot. Order Precluding Disclosure of ERPS Audit [dkt 70]; City's Reply in Supp. Mot. Prot. Order [dkt 78]. Instead, the City argued that the Audit was irrelevant and not within the scope of discovery, arguments that this court rejected in ordering the Audit produced.

Under the terms of the Protective Order, documents designated "confidential" are to be retained by counsel and not made public, although any party may move the court to release particular information from the provisions of the Protective Order. (Prot. Order ¶¶ 8, 14.) The fact that the

City designated the Audit "confidential" pursuant to the Protective Order does not create any presumption for or against that treatment. (Prot. Order ¶ B.) The issue is whether the Audit deserves confidential status under the Protective Order.

The fact that the Audit was ordered produced to Hobley's counsel in discovery does not necessarily mean that it must be made public. Although court proceedings are presumed to be public, materials obtained in discovery are not necessarily public. The local rules of the Northern District of Illinois prohibit the filing of discovery materials as part of the public record except as evidence. L.R. 26.3. Likewise, Fed. R. Civ. P. 5(d) provides that certain discovery materials shall not be filed with the Clerk of the Court until used in the proceeding or the court orders filing. In *Baxter Intl., Inc. v. Abbott Labs.*, the Seventh Circuit drew a distinction between materials generated by pretrial discovery and materials that are in the public record because they form part of the judicial decision-making process: "Secrecy is fine at the discovery stage, before the material enters the judicial record. 297 F.3d 544, 545 (7th Cir. 2002) (citing *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)).

Hobley argues that there is an important public interest in having information about the problems at ERPS disclosed, and that there is no reason why the Audit should be maintained confidential. He points out that the Audit does not contain confidential information about individual police officers or any other individuals, as complaint registers do.

Although the City has arguably waived any privileges it might have regarding the Audit by failing to assert them as objections to Hobley's discovery, the issue before the court is whether the policies giving rise to the privileges cited by the City offset Hobley's arguments in favor of public

3

disclosure.[2]

## The law enforcement privilege.

The purpose of the law enforcement privilege is to "'prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference with an investigation.'" *Vodak v. City of Chicago*, No. 03 C 2463, 2004 WL 2032147 at *__ (N.D. Ill. Sept. 9, 2004) (Nolan, M.J.) (quoting *Ostrowski v. Holem*, No. 02 C 50281, 2002 WL 31956039 at *2 (N.D. Ill. Jan. 21, 2002) (Mahoney, M.J.)).

None of those concerns are implicated by the Audit. The Audit does not relate to or reveal any information about any ongoing investigation, the identity of witnesses or confidential sources. The Audit reports significant deficiencies found in the inventorying and handling of evidence, but there is no risk of disclosure of confidential law enforcement techniques.

In order to invoke the law enforcement privilege, "the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *U.S. v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981). The City did not submit any such formal claim of privilege. The policies giving rise to the law enforcement privilege do not prevent public disclosure of the Audit.

_____

[2] At a hearing on April 28, 2006, the City's counsel suggested that the issue involving the ERPS Audit was moot because Hobley has withdrawn his claim about the gas can. However, there is nothing before the Court from Hobley to that effect, and Hobley has not withdrawn the present motion.

4

The self-critical analysis privilege.

The City also invokes a self-critical analysis privilege. "[C]ourts have been somewhat hesitant to embrace the self-critical analysis privilege .... [ ] The majority of courts that ultimately concede or assume the privilege exists have narrowed the privilege's scope . . . ." *Ludwig v. Pilkington N. Am., Inc.*, No. 03 C 1086, 2004 WL 1898238 at *1-2 (N.D. Ill. Aug. 13, 2004) (Zagel, J.) (reviewing cases). Courts in this district have required a party seeking to assert the privilege to show that:

> (1) the information sought resulted from a self-critical analysis undertaken by the party seeking protection, (2) the public has a strong interest in protecting the free flow of the information sought, (3) the information is of the type whose flow would be curtailed if discovery were allowed, and (4) the document was prepared with the expectation that it would be kept confidential and has in fact been kept confidential.

*Id.* at *2. In addition, many courts limit the privilege's protection to subjective information. *Id.*

Assuming, as other courts have, that there is a self-critical analysis privilege, the City here has not demonstrated that the policies giving rise to that privilege require that the Audit be kept confidential. As a threshold matter, the City has not cited any authority demonstrating that the self-critical analysis privilege has ever been successfully invoked by a governmental entity. The privilege was initially developed to promote public safety by encouraging businesses to evaluate their safety procedures voluntarily. *Morgan v. Union P. R.R. Co.*, 182 F.R.D. 261, 265 (N.D. Ill. 1998). It was subsequently extended to protect business entities that are legally mandated to undertake critical evaluation of their hiring and personnel policies. *Id.* However, a governmental entity undertaking at taxpayer expense an audit of its performance of its public duties is arguably very different.

Assuming, *arguendo*, that there is a self-critical analysis privilege that can be invoked by a governmental entity, the City could presumably satisfy the first two elements of the four-part test.

5

The Audit resulted from a self-critical analysis undertaken by the party seeking protection, the City, and the public has a strong interest in protecting the free flow of such information. However, the City has not demonstrated that the flow of the information would be curtailed if the Audit is made public. The City has not presented any factual material in the form of affidavit or declaration to support its argument. As another court commented in rejecting the assertion of a self-critical analysis privilege to prevent discovery of police department internal evaluations of effectiveness:

> [C]ourts have declined to apply the privilege of self critical analysis when the proponent of the privilege fails to show that the process would be curtailed if discovery is allowed. The police department needs to continue to monitor itself to ensure that department procedures are effective and that officers are complying with these procedures. It is unlikely that production of the manual and evaluations would halt this self analysis process.

*Skibo v. City of New York*, 109 F.R.D. 58, 64 (E.D.N.Y. 1985) (citation omitted).

With respect to the fourth element, it is not apparent that the City has kept the Audit confidential since its creation in 1998. The City successfully moved to quash the subpoena served in Hobley's post-conviction proceeding, and designated the Audit as confidential in this case. However, Hobley points out that apparently a copy of the Audit was obtained by a reporter and summarized on television news in 1999. (Pl.'s Cross-Motion, Ex. B.) The City does not respond to that argument, nor does the City submit any affidavit or declaration demonstrating that the Audit has been held confidential.

Finally, the court's review of the Audit shows that most of the Audit consists of objective information rather than subjective evaluations. The facts revealed by the Audit speak for themselves.

The policies behind the self-critical analysis do not require that the Audit be maintained confidential.

## CONCLUSION

For the foregoing reasons, Hobley's Cross-Motion to Strike Confidential Designation is granted, and the ERPS Audit is not required to be held confidential under the terms of the Protective Order. However, this order is stayed until June 8, 2006 to allow the City an opportunity to appeal this ruling to the District Judge. If such an appeal is taken, the order is stayed until the decision by the District Judge. If no appeal is taken by June 8, 2006, the confidential designation on the ERPS Audit will be stricken on that date.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

May 24, 2006