UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MADISON HOBLEY, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 3678 |
| ) | |
| CHICAGO POLICE COMMANDER ) | Judge Marvin Aspen |
| JON BURGE, et al., ) | |
| Defendants. ) | Magistrate Judge Geraldine Soat Brown |
| ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Certain defendants (collectively, "Movants") in each of the four cases previously consolidated for discovery filed virtually identical motions for the entry of a protective order regarding grand jury materials that were part of the investigation by the Special Prosecutor appointed by the Circuit Court of Cook County. (*See* Defs.' Emergency Mot. for Protective Order Regarding Grand Jury Materials ("Mot.") in *Hobley v. Burge*, No. 03 C 3678 [dkt 733]; *Patterson v Burge,* No. 03 C 4433 [dkt 522], *Howard v City of Chicago*, No. 03 C 8481 [dkt 256], and *Orange v. Burge*, No. 04 C 0168 [dkt 313].[1] In January 2007, by agreement of the parties in *Hobley*, *Howard* and *Orange*, all proceedings in three of those cases were stayed. *See Hobley* [dkt 761], *Howard* [dkt 283]*,* and *Orange* [dkt 389, 390]. The parties agreed to hold the grand jury materials "attorneys' eyes only" pending the resolution of the motion. ([Hobley] Mot. at 1, n.1 [dkt 733].) The *Patterson* case was

---

[1]Those cases were assigned to separate calendars, but have been consolidated before this court for purposes of discovery. (*See* September 24, 2004 Order of the Executive Committee.) [Dkt 316.]

1

not stayed, and this court granted the motion filed in that case. (*Patterson,* Mem. Op. and Order, Feb. 6, 2007.) [Dkt 609]. The stay has been lifted in the other three cases, and accordingly, the motions in those cases are ripe for determination. For the following reasons, the motion for entry of a protective order is GRANTED in all three cases.[2]

## BACKGROUND

The plaintiffs in the three lawsuits (collectively, "Plaintiffs") allege that they are victims of police brutality and other misconduct perpetrated by defendants Jon Burge, *et al*, who are present or former Chicago Police Department officers who worked at Police Department Areas 2 and 3. (*See Hobley,* First Amended Compl. ¶¶ 11-77 [dkt 234]; *Orange*, ¶¶ 16-53 [dkt 9]; *Howard*, ¶¶ 16-54 [dkt 65].

On April 24, 2002, Presiding Judge Paul Biebel of the Cook County Criminal Court granted a petition for appointment of a special prosecutor to "investigate allegations of torture, perjury, obstruction of justice, conspiracy to obstruct justice, and other offenses by police officers under the command of Jon Burge at Area 2 and Area 3 Headquarters in the city of Chicago during the period from 1973 to the present." (Mot., Ex. A, [Excerpt from] Report of the Special States Attorney at 3(quoting the Petition for Appointment).) The Office of the Special Prosecutor ("OSP") impaneled a grand jury to gather evidence and to require the appearance of witnesses who refused to cooperate in the investigation. (Mot, Ex. A at 7, 12.) Upon completion of the OSP's investigation in August 2006, the OSP published its findings and conclusions in a written report ("OSP Report"). (Mot., Ex.

---

[2]Because the motions and responses are virtually identical in all three cases, this opinion is issued in all three cases. Except as noted, docket references in this opinion are to the docket in *Hobley v. Burge*, 03 C 3678.

A at 16-17.) The OSP concluded that while there was evidence to suggest that police officers abused prisoners, the evidence in only three of the cases would support a conclusion of proof beyond a reasonable doubt. (Mot., Ex. A at 16.)³ The OSP concluded that the statute of limitations barred the prosecution of any officers involved in the allegations of police misconduct. (Mot., Ex. A at 13.)

Additionally, the OSP Report revealed that the OSP had subpoenaed 40 Chicago police officers, all but 11 of whom refused to be interviewed. (Mot., Ex. A at 11, 14.) Four officers testified over their objection after being granted immunity. (Mot. Ex. A at 11.) The OSP Report does not state which officers appeared before the grand jury but asserted their Fifth Amendment privilege not to testify. Apparently, ten of the officers subpoenaed never appeared before the grand jury. (Reply to Pl.'s Resp., Ex. A, Tr. Sept. 26, 2006 at 4.) [Dkt 738.]

After the OSP issued its report, counsel for Plaintiffs served subpoenas on the OPS for documents relating to the investigation, including grand jury transcripts. (Pl.'s Resp. at 2.) [Dkt 736.] According to Plaintiffs, counsel for certain defendants also subpoenaed the grand jury materials. (Pl.'s Resp., Ex. C at 1-2.) The OSP responded by producing some documents, but stating that it would not produce the grand jury transcripts without a court order. (Pl.'s Resp., Ex. B.) Plaintiffs then filed a motion in the Circuit Court of Cook County requesting that Judge Biebel authorize the release of grand jury materials, including transcripts of testimony. (Mot. at 2, 4; *see also* Pl.'s Resp., Ex. C, [Hobley's] Br. In Support of Mot. for Release of Grand Jury Materials.)⁴ In requesting the release, Plaintiffs acknowledged that they were required to show that they needed the material to

---

³The complainants in those three cases are not the plaintiffs in these cases. (Mot., Ex. A at 16.)

⁴The request was also on behalf of Darrell Cannon, a plaintiff in another federal case not consolidated with these, *Cannon v. Burge*, 05 C 2192.

3

avoid injustice in another proceeding. (Pl.'s Resp. Ex. C at 5.) Plaintiffs argued that these three lawsuits were the proceedings for which they needed the grand jury transcripts. (*Id*.) They also argued that these lawsuits are "coextensive" with the Special Prosecutor's investigation, and thus, there was no risk that Plaintiffs were on a fishing expedition or seeking to obtain material not directly relevant to their lawsuits. (*Id*. at 9.) As a final point, they argued that the interests of the public would be served by release of the grand jury materials, just as it was served by the release of the OPS report. (*Id.*)

Judge Biebel held a hearing on the motion on September 26, 2006. (*See* Reply to Pl.'s Resp., Ex. A, Tr. Sept. 26, 2006.) Counsel for the defendants in these cases requested that the grand jury materials be released subject to the protective order previously entered in these cases. (Reply to Pl.'s Resp. at 7.) Counsel for Hobley and Howard stated that the federal court should address whether a protective order was required, while counsel for Orange objected in general to a protective order, and, in particular, to one that would be entered by Judge Biebel. (*Id*.) Judge Biebel ordered the release of the grand jury materials, but stated, "Is it released pursuant to protective order? That's going to be determined by the various federal courts in these four cases." (*Id*. at 13.)

The Movants then filed the present motions, seeking a protective order that would bar the parties from disseminating the grand jury transcripts of Chicago police officers who appeared before the grand jury pursuant to the OSP's investigation. (Mot. at 8.) Although the Movants do not object to the use of the grand jury transcripts for the litigation of these cases, they contend that public disclosure of the grand jury proceedings would conflict with the principles of grand jury secrecy, will harm their reputations, and will allow Plaintiffs to exploit several officers' assertion of their Fifth Amendment privilege. (Mot. at 4-5.)

4

## ANALYSIS

Pursuant to Federal Rule of Civil Procedure 26©, a court may issue a protective order.

> Upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

The issue before this court is a narrow one. The parties already have the grand jury materials, including the transcripts of testimony, and are able to use them in pretrial preparation. The only question is whether those materials are to be kept as "Confidential Matter" under the terms of the Protective Order previously entered in each of these cases. (*See Hobley* [dkt 465]; *Howard* [dkt 109], and *Orange* [dkt 73]**.**) Plaintiffs argue that the strong public interest in the subject matter of these Area 2 cases and in the Special Prosecutor's investigation supports allowing Plaintiffs to disclose the grand jury materials to the public, including the media. (Pl.'s Resp. at 11-12.)

Central to the analysis is the fact that the subject matter of the proposed protective order involves grand jury materials. Under federal common law, grand jury proceedings have traditionally been kept secret. *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 218-19, n. 9 (1979).[5] As the Supreme Court observed in *Douglas Oil*, "We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Id.* at 218. The confidentiality of grand jury proceedings serves a number of interests, including the voluntary participation of prospective witnesses, the full and frank testimony of witnesses appearing

---

[5] In cases like these, where Plaintiffs' claims arise under federal law and a federal court considers the extent of the disclosure of state grand jury materials, federal common law, rather than state law, is the source of any privileges afforded to grand jury proceedings. *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir. 1980).

5

before the grand jury, reducing the risk that those about to be indicted would flee or try to influence individual grand jurors to vote against indictment, and protecting from public ridicule persons accused but exonerated by the grand jury. *Id.* at 218-19; *U.S. v. Sells Engineering, Inc.*, 463 U.S. 418, 424 (1983).

Although *Douglas Oil* focused on federal grand jury proceedings, the reasons for secrecy are the same in the context of state grand jury proceedings. *See In re Extended March 1975 Grand Jury No. 655*, 405 N.E.2d 1176, 1179 (Ill. App. 1st Dist. 1980) (stating that "[i]n Illinois, the purpose of secrecy surrounding grand jury proceedings is to prevent the escape of those under indictment, to insure the grand jury freedom in its deliberations, to prevent subornation of perjury, to encourage disclosure by witnesses, and to protect the innocent from unwarranted exposure"). Additionally, Illinois courts have considered the federal standard in determining whether to lift the secrecy of Illinois grand jury proceedings. *See id.* at 1181, 1182 (holding that appellants did not meet the standard set forth by the in *Douglas Oil* because they "failed to meet their burden of demonstrating the existence of a particularized and compelling need which outweighs the policy of secrecy to merit such broad disclosure").

Given the strong public policy reasons favoring the preservation of secrecy afforded grand jury proceedings, courts have "consistently held that a strong showing of particularized need is required before any grand jury materials are disclosed." *Lucas v. Turner*, 725 F.2d 1095, 1101 (7th Cir. 1984) (citing *Sells Engineering*, 463 U.S. at 443; *Douglas Oil*, 441 U.S. at 217-24). Indeed, "courts have been reluctant to lift unnecessarily the veil of secrecy from the grand jury," and only in a case where a "particularized need" is established, may "the secrecy of the proceedings [be] lifted discretely and limitedly." *Douglas Oil*, 441 U.S. at 217, 219, 221 (citing *U.S. v. Procter & Gamble*

*Co.*, 356 U.S. 677, 683 (1958)). In *Lucas*, the Seventh Circuit stated:

> Indiscriminate lifting of the veil of secrecy from the grand jury will forever destroy the effectiveness of the grand jury as an investigative body by not allowing it "to ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution." Therefore, we will lift that veil only in very compelling and limited circumstances.

725 F.2d at 1109 (internal citations omitted).

In determining that the grand jury materials should be released to Plaintiffs, Judge Biebel cited *Board of Education v. Verisario*, 493 N.E.2d 355, 360 (Ill. App. 1986). (Defs.' Reply, Tr. Sept 26, 2007 at 13.) *Verisario*, in turn invoked the standard set out by the Supreme Court in *Douglas Oil*, 441 U.S. at 222: A party seeking to lift the veil of secrecy surrounding the grand jury must show that the material sought is necessary "to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only the material so needed."

Plaintiffs in these cases sought the grand jury materials from the OSP pursuant to a subpoena issued in the course of these lawsuits. These lawsuits are the "other judicial proceeding" that provided the justification for breaking the traditional seal of secrecy on grand jury proceedings. Plaintiffs are certainly correct that there is a strong public interest in the subject of these cases and of the OSP investigation. But that is not a justification for release of grand jury materials in light of the traditionally-recognized principles of grand jury confidentiality. That Judge Biebel ordered the release of the OSP Report, containing the factual and legal conclusions of the OSP, does not mandate similar release of the materials and transcripts of the grand jury impaneled by the OSP.

Including the grand jury materials under the scope of "Confidential Matter" pursuant to the Protective Order would allow the parties to use those materials for the purpose for which they were

7

released by Judge Biebel, while respecting the federal and state principles of grand jury secrecy. The Protective Order previously entered in these cases allows the parties to use "Confidential Matter" for discovery and trial preparation, but "Confidential Matter" may not be disclosed publicly during the pretrial period. The Protective Order here allows the veil of secrecy be lifted "discretely and limitedly" so that disclosure of grand jury material is "structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 221, 222. Whether any of the grand jury materials will be publicly disclosed if used in a trial of one of these cases is a matter for determination by the judge presiding at the trial.

**CONCLUSION**

For the foregoing reasons, the Movants' motion for entry of a protective order barring dissemination of the grand jury proceedings is GRANTED. The transcripts of the grand jury proceedings relating to the investigation of the Office of the Special Prosecutor shall be deemed "Confidential Matter" to be held "attorneys' eyes only" pursuant to Paragraph 12 of the Protective Order entered March 30, 2005. Any page of those transcripts that is copied must bear the legend required by Paragraph 7 of that Order.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

September 24, 2007